# Exhibit E

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## FORM 8-K

### CURRENT REPORT
### PURSUANT TO SECTION 13 OR 15(d)
### OF THE SECURITIES EXCHANGE ACT OF 1934

**Date of Report (Date of earliest event reported): January 20, 2021**

# CAREDX, INC.
**(Exact Name of Registrant as Specified in its Charter)**

| Delaware | 001-36536 | 94-3316839 |
|---|---|---|
| (State or Other Jurisdiction of Incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

**1 Tower Place**
**South San Francisco, California 94080**
**(Address of Principal Executive Offices) (Zip Code)**

**(415) 287-2300**
**Registrant's telephone number, including area code**

**N/A**
**(Former Name, or Former Address, if Changed Since Last Report)**

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐  Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)
☐  Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)
☐  Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))
☐  Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Securities registered pursuant to Section 12(b) of the Exchange Act:

| (Title of each class) | (Trading Symbol) | (Name of exchange on which registered) |
|---|---|---|
| Common Stock, $0.001 Par Value | CDNA | The Nasdaq Stock Market LLC |

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933 (§230.405 of this chapter) or Rule 12b-2 of the Securities Exchange Act of 1934 (§240.12b-2 of this chapter).

Emerging growth company ☐

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

**Item 1.01.        Entry into a Material Definitive Agreement.**

On January 20, 2021, CareDx, Inc. (the "Company") entered into an underwriting agreement (the "Underwriting Agreement") with Goldman Sachs & Co. LLC and Jefferies LLC (the "Representatives"), acting as joint book-running managers and representatives of the several underwriters named therein (the "Underwriters"), relating to an underwritten public offering (the "Offering") of 1,923,077 shares of the Company's common stock, $0.001 par value per share ("Common Stock"). The public offering price is $91.00 per share of Common Stock and the Underwriters have agreed to purchase the Common Stock pursuant to the Underwriting Agreement at a price of $85.54 per share. Under the terms of the Underwriting Agreement, the Company also granted to the Underwriters an option, exercisable in whole or in part at any time for a period of 30 days from the date of the Underwriting Agreement, to purchase up to an additional 288,461 shares of Common Stock at the public offering price.

The Offering is being made pursuant to the Company's registration statement on Form S-3ASR (File No. 333-239049), filed with the Securities and Exchange Commission (the "SEC") on June 9, 2020, which became effective immediately upon filing, including a base prospectus dated June 9, 2020, and a prospectus supplement dated January 20, 2021.

Net proceeds from the Offering are expected to be approximately $164.0 million (excluding any sale of shares of Common Stock pursuant to the option to purchase additional shares granted to the Underwriters), after deducting underwriting discounts and commissions and estimated Offering expenses payable by the Company. The purchase and sale of the Common Stock, and the closing of the Offering, is expected to take place on or about January 25, 2021, subject to the satisfaction of customary closing conditions.

The Underwriting Agreement contains customary representations, warranties and covenants made by the Company. It also provides for customary indemnification by each of the Company and the Underwriters, severally and not jointly, for losses or damages arising out of or in connection with the Offering, including for liabilities under the Securities Act of 1933, as amended, other obligations of the parties and termination provisions. In addition, pursuant to the terms of the Underwriting Agreement, each of the Company's directors and executive officers have entered into "lock-up" agreements with the Underwriters that generally prohibit, without the prior written consent of the Representatives, the sale, transfer or other disposition of securities of the Company prior to March 21, 2021, except for sales pursuant to a trading plan meeting the requirements of Rule 10b5-1 under the Securities Exchange Act of 1934, as amended, that was in effect as of the date of the Underwriting Agreement.

The foregoing description of the Underwriting Agreement does not purport to be complete and is qualified in its entirety by reference to the copy of the Underwriting Agreement, which is filed as Exhibit 1.1 to this Current Report on Form 8-K. A copy of the opinion of Paul Hastings LLP, counsel to the Company, relating to the validity of the shares of Common Stock to be issued in the Offering is filed with this Current Report on Form 8-K as Exhibit 5.1.

The representations, warranties and covenants contained in the Underwriting Agreement were made only for purposes of such agreement and as of specific dates, were solely for the benefit of the parties to the Underwriting Agreement, and may be subject to limitations agreed upon by the contracting parties. Accordingly, the Underwriting Agreement is incorporated herein by reference only to provide investors with information regarding the terms of the Underwriting Agreement, and not to provide investors with any other factual information regarding the Company or its business, and should be read in conjunction with the disclosures in the Company's periodic reports and other filings with the SEC.

*Forward-Looking Statements*

This Current Report on Form 8-K contains forward-looking statements that involve risks and uncertainties, such as statements related to the anticipated closing of the Offering and the amount of proceeds expected from the Offering. The risks and uncertainties involved include the Company's ability to satisfy certain conditions to closing on a timely basis or at all, market conditions, and other risks detailed from time to time in the Company's periodic reports and other filings with the SEC. You are cautioned not to place undue reliance on forward-looking statements, which are based on the Company's current expectations and assumptions and speak only as of the date of this Current Report on Form 8-K. The Company does not intend to revise or update any forward-looking statement in this Current Report on Form 8-K as a result of new information, future events or otherwise, except as required by law.

**Item 8.01.        Other Events.**

On January 20, 2021, the Company issued a press release announcing the pricing of the Offering. A copy of the press release is attached as Exhibit 99.1 to this Current Report on Form 8-K and is incorporated herein by reference.

**Item 9.01.**        **Financial Statements and Exhibits.**

**(d) Exhibits.**

| Number | Description |
|---|---|
| 1.1 | Underwriting Agreement, dated as of January 20, 2021, by and among CareDx, Inc. and Goldman Sachs & Co. LLC and Jefferies LLC as the representatives of the underwriters named therein. |
| 5.1 | Opinion of Paul Hastings LLP. |
| 23.1 | Consent of Paul Hastings LLP (included in Exhibit 5.1). |
| 99.1 | Press Release, dated January 20, 2021. |
| 104 | Cover Page Interactive Data File, formatted in Inline Extensible Business Reporting Language (iXBRL). |

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

Date: January 21, 2021                                        **CAREDX, INC.**

By:    /s/ Marcel Konrad
                                                                            Marcel Konrad
                                                                            Interim Chief Financial Officer

**Exhibit 1.1**

1,923,077 Shares

**CareDx, Inc.**

<u>**UNDERWRITING AGREEMENT**</u>

January 20, 2021

GOLDMAN SACHS & CO. LLC
JEFFERIES LLC
As Representatives of the several Underwriters

c/o Goldman Sachs & Co. LLC
200 West Street
New York, New York 10282

c/o Jefferies LLC
520 Madison Avenue
New York, New York 10022

Ladies and Gentlemen:

　　**Introductory.** CareDx, Inc., a Delaware corporation (the "**Company**"), proposes to issue and sell to the several underwriters named in <u>Schedule A</u> (the "**Underwriters**") an aggregate of 1,923,077 shares (the "**Shares**") of its common stock, par value $0.001 per share (the "**Common Stock**"). The 1,923,077 Shares to be sold by the Company are called the "**Firm Shares**." In addition, the Company has granted to the Underwriters an option to purchase up to an additional 288,461 Shares as provided in Section 2. The additional 288,461 Shares to be sold by the Company pursuant to such option are collectively called the "**Optional Shares**." The Firm Shares and, if and to the extent such option is exercised, the Optional Shares are collectively called the "**Offered Shares**." Goldman Sachs & Co. LLC ("**Goldman**") and Jefferies LLC ("**Jefferies**") have agreed to act as representatives of the several Underwriters (in such capacity, the "**Representatives**") in connection with the offering and sale of the Offered Shares. To the extent there are no additional underwriters listed on <u>Schedule A</u>, the term "Representatives" as used herein shall mean you, as Underwriters, and the term "Underwriters" shall mean either the singular or the plural, as the context requires.

　　The Company has prepared and filed with the Securities and Exchange Commission (the "**Commission**") a shelf registration statement on Form S-3ASR, File No. 333-239049, including a base prospectus (the "**Base Prospectus**") to be used in connection with the public offering and sale of the Offered Shares. Such registration statement, as amended, including the financial statements, exhibits and schedules thereto, in the form in which it became effective under the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder (collectively, the "**Securities Act**"), including all documents incorporated or deemed to be incorporated by reference therein and any information deemed to be a part thereof at the time of effectiveness pursuant to Rule 430A or 430B under the Securities Act, is called the "**Registration Statement**." Any registration statement filed by the Company pursuant to Rule 462(b) under the Securities Act in connection with the offer and sale of the Offered Shares is called the "**Rule 462(b) Registration Statement**," and from and after the date and time of filing of any such Rule 462(b) Registration Statement the term "Registration Statement" shall include the Rule 462(b) Registration Statement. The preliminary prospectus supplement dated January 19, 2021 describing the Offered Shares and the offering thereof (the "**Preliminary Prospectus Supplement**"), together with the Base

**(q)** *Independent Public Accounting Firms*. Deloitte & Touche LLP (the "**Accountant**") is an independent registered public accounting firm within the meaning of the Securities Act and the Public Company Accounting Oversight Board (United States). To the Company's knowledge, the Accountant is not and was not in violation of the auditor independence requirements of the Sarbanes-Oxley Act of 2002 (the "**Sarbanes-Oxley Act**") with respect to the Company.

**(r)** *Enforceability of Agreements*. All agreements between the Company and third parties expressly referenced in the Registration Statement, the Time of Sale Prospectus and the Prospectus are legal, valid and binding obligations of the Company enforceable in accordance with their respective terms, except to the extent that (i) enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws affecting creditors' rights generally and by general equitable principles and (ii) the indemnification provisions of certain agreements may be limited by federal or state securities laws or public policy considerations in respect thereof.

**(s)** *No Litigation*. Except as set forth in the Registration Statement, the Time of Sale Prospectus or the Prospectus, there are no legal, governmental or regulatory actions, suits or proceedings pending, nor, to the Company's knowledge, any legal, governmental or regulatory audits or investigations, to which the Company or a Subsidiary is a party or to which any property of the Company or any of its Subsidiaries is the subject that, individually or in the aggregate, would reasonably be expected to have a Material Adverse Effect and, to the Company's knowledge, no such actions, suits or proceedings are threatened or contemplated by any governmental or regulatory authority or threatened by others; and (i) there are no current or pending legal, governmental or regulatory audits or investigations, actions, suits or proceedings that are required under the Securities Act to be described in the Prospectus that are not so described; and (ii) there are no contracts or other documents that are required under the Securities Act to be filed as exhibits to the Registration Statement that are not so filed.

**(t)** *Health Care Authorizations*. The Company has submitted and possesses, or qualifies for applicable exemptions to, such valid and current registrations, listings, approvals, clearances, licenses, certificates, authorizations or permits and supplements or amendments thereto issued or required by the appropriate state, federal or foreign regulatory agencies or bodies necessary to conduct its business, including, without limitation, all such certificates, authorizations and permits required by the United States Food and Drug Administration (the "**FDA**"), the United States Department of Health and Human Services ("**HHS**"), the United States Centers for Medicare & Medicaid Services ("**CMS**"), the European Medicines Agency ("**EMEA**"), Health Canada or any other state, federal or foreign agencies or bodies engaged in the regulation of medical devices (including diagnostic products), drugs or biohazardous materials, and the Company have not received any notice of proceedings relating to the revocation or modification of, or non-compliance with, any such license, certificate, authorization or permit, except for such registrations, listings, approvals, clearances, licenses, certificates, authorizations or permits, the lack of which would not, individually or in the aggregate, have a Material Adverse Effect.

**(u)** *Compliance with Health Care Laws*. The Company and, to the Company's knowledge, its directors, employees and agents (while acting in such capacity) are in material compliance with, all health care laws applicable to the Company, or any of its products or activities, including, but not limited to, the federal Anti-Kickback Statute (42 U.S.C. Section 1320a-7b(b)), the Anti-Inducement Law (42 U.S.C. Section 1320a-7a(a)(5)), the civil False Claims Act (31 U.S.C. Section 3729 et seq.), the administrative False Claims Law (42 U.S.C. Section 1320a-7b(a)), the Stark law (42 U.S.C. Section 1395nn), the Health Insurance Portability and Accountability Act of 1996 (42 U.S.C. Section 1320d et seq.) as amended by the Health Information Technology for Economic and Clinical Health Act (42 U.S.C. Section 17921 et seq.),

8

the exclusion laws (42 U.S.C. Section 1320a-7), the Federal Food, Drug, and Cosmetic Act (21 U.S.C. Section 301 et seq.), the Controlled Substances Act (21 U.S.C. Section 801 et seq.), the Public Health Service Act (42 U.S.C. Section 201 et seq.), the Clinical Laboratory Improvement Amendments of 1988 (42 U.S.C. Section 263a), Medicare (Title XVIII of the Social Security Act), Medicaid (Title XIX of the Social Security Act), and the Patient Protection and Affordable Care Act of 2010, as amended by the Health Care and Education Reconciliation Act of 2010, the regulations promulgated pursuant to such laws, and any other state, federal or foreign law, accreditation standards, regulation, memorandum, opinion letter, or other issuance which imposes requirements on the manufacturing, development, testing, labeling, advertising, marketing or distribution of drugs and medical devices (including diagnostic products), kickbacks, patient or program charges, recordkeeping, claims process, documentation requirements, medical necessity, referrals, the hiring of employees or acquisition of services or supplies from those who have been excluded from government health care programs, quality, safety, privacy, security, licensure, accreditation or any other aspect of providing health care, clinical laboratory or diagnostics products or services (collectively, "**Health Care Laws**"). The Company has not received any notification, correspondence or any other written or oral communication, including notification of any pending or threatened claim, suit, proceeding, hearing, enforcement, investigation, arbitration or other action from any governmental authority, including, without limitation, the FDA, the EMEA, Health Canada, the United States Federal Trade Commission, the United States Drug Enforcement Administration, CMS, HHS's Office of Inspector General, the United States Department of Justice and state Attorneys General or similar agencies of potential or actual non-compliance by, or liability of, the Company under any Health Care Laws, except, with respect to any of the foregoing, such as would not, individually or in the aggregate, have a Material Adverse Effect. To the Company's knowledge, there are no facts or circumstances that would reasonably be expected to give rise to material liability of the Company under any Health Care Laws. The statements with respect to Health Care Laws and the Company's compliance therewith included in the Registration Statement, the Time of Sale Prospectus and the Prospectus fairly summarize the matters therein described.

(v) *Intellectual Property*. Except as disclosed in the Registration Statement, the Time of Sale Prospectus and the Prospectus, the Company and its Subsidiaries own, possess, license or have other rights to use all foreign and domestic patents, patent applications, trade and service marks, trade and service mark registrations, trade names, copyrights, licenses, inventions, trade secrets, technology, Internet domain names, know-how and other intellectual property (collectively, the "**Intellectual Property**"), necessary for the conduct of their respective businesses as now conducted except to the extent that the failure to own, possess, license or otherwise hold adequate rights to use such Intellectual Property would not, individually or in the aggregate, have a Material Adverse Effect. Except as disclosed in the Registration Statement, the Time of Sale Prospectus and the Prospectus (i) to the Company's knowledge, there are no rights of third parties to any such Intellectual Property owned by the Company and its Subsidiaries; (ii) to the Company's knowledge, there is no infringement by third parties of any such Intellectual Property; (iii) there is no pending or, to the Company's knowledge, threatened action, suit, proceeding or claim by others challenging the Company's and its Subsidiaries' rights in or to any such Intellectual Property, and the Company is unaware of any facts which could form a reasonable basis for any such action, suit, proceeding or claim; (iv) there is no pending or, to the Company's knowledge, threatened action, suit, proceeding or claim by others challenging the validity or scope of any such Intellectual Property; (v) there is no pending or, to the Company's knowledge, threatened action, suit, proceeding or claim by others that the Company and its Subsidiaries infringe or otherwise violate any patent, trademark, copyright, trade secret or other proprietary rights of others; (vi) to the Company's knowledge, there is no third-party U.S. patent or published U.S. patent application which contains claims for which an Interference Proceeding (as defined in 35 U.S.C. § 135) has been commenced against any patent or patent application described in the Prospectus as being owned by or licensed to the Company; and (vii) the Company and its Subsidiaries have complied with the terms of each agreement pursuant to which Intellectual Property has been licensed to the Company or such Subsidiary, and all such agreements are in full force and effect, except, in the case

9

If the foregoing is in accordance with your understanding of our agreement, kindly sign and return to the Company the enclosed copies hereof, whereupon this instrument, along with all counterparts hereof, shall become a binding agreement in accordance with its terms.

Very truly yours,

**CAREDX, INC.**

By:     /s/ Reginald Seeto, MBBS
Name:   Reginald Seeto, MBBS
Title:    President and Chief Executive Officer

The foregoing Underwriting Agreement is hereby confirmed and accepted by the Representatives in New York, New York as of the date first above written.

**GOLDMAN SACHS & CO. LLC**
**JEFFERIES LLC**
Acting individually and as Representatives
of the several Underwriters named in
the attached Schedule A.
**GOLDMAN SACHS & CO. LLC**

By:     /s/ Raffael M. Fiumara
Name:   Raffael Fiumara
Title:    Vice President
**JEFFERIES LLC**

By:     /s/ Real Leclerc
Name:   Real Leclerc
Title:    Managing Director

37