# Exhibit F

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## FORM 8-K

### CURRENT REPORT
### PURSUANT TO SECTION 13 OR 15(d)
### OF THE SECURITIES EXCHANGE ACT OF 1934

**Date of Report (Date of earliest event reported): April 14, 2022**

# CAREDX, INC.
**(Exact Name of Registrant as Specified in its Charter)**

| Delaware | 001-36536 | 94-3316839 |
|---|---|---|
| **(State or Other Jurisdiction** | **(Commission** | **(IRS Employer** |
| **of Incorporation)** | **File Number)** | **Identification No.)** |

**1 Tower Place, 9th Floor**
**South San Francisco, California 94080**
**(Address of Principal Executive Offices) (Zip Code)**

**(415) 287-2300**
**Registrant's telephone number, including area code**

**N/A**
**(Former Name, or Former Address, if Changed Since Last Report)**

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐   Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)
☐   Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)
☐   Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))
☐   Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Securities registered pursuant to Section 12(b) of the Exchange Act:

| (Title of each class) | (Trading Symbol) | (Name of exchange on which registered) |
|---|---|---|
| **Common Stock, $0.001 Par Value** | **CDNA** | **The Nasdaq Stock Market LLC** |

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933 (§230.405 of this chapter) or Rule 12b-2 of the Securities Exchange Act of 1934 (§240.12b-2 of this chapter).

Emerging growth company ☐

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

**Item 1.01.**          **Entry into a Material Definitive Agreement.**

On April 14, 2022, CareDx, Inc. (the "Company") entered into a Sales Agreement (the "Sales Agreement") with Jefferies LLC as sales agent (the "Agent"), pursuant to which the Company may offer and sell, from time to time, through the Agent (the "Offering") up to $200,000,000 in shares of its common stock (the "Shares"). Any Shares offered and sold in the Offering will be issued and sold pursuant to the Company's Registration Statement on Form S-3ASR (File No. 333-239049), filed with the Securities and Exchange Commission (the "SEC") on June 9, 2020, including a base prospectus dated June 9, 2020, and a prospectus supplement dated April 14, 2022.

Subject to the terms and conditions of the Sales Agreement, the Agent will use its commercially reasonable efforts to sell the Shares from time to time, based upon the Company's instructions. Under the Sales Agreement, the Agent may sell the Shares by any method permitted by law deemed to be an "at the market" offering as defined in Rule 415 promulgated under the Securities Act of 1933, as amended (the "Securities Act"), including sales made directly on the Nasdaq Global Market or on any other existing trading market for the Shares. Subject to the Company's prior written consent, the Agent may also sell Shares by any other method permitted by law, including but not limited to in privately negotiated transactions.

The Company has no obligation to sell any of the Shares, and may at any time suspend offers under the Sales Agreement. The Offering will terminate upon the earlier of (i) the sale of all of the Shares, or (ii) the termination of the Sales Agreement according to its terms by either the Company or the Agent. The Company and the Agent may each terminate the Sales Agreement at any time by giving advance written notice to the other party as required by the Sales Agreement.

Under the terms of the Sales Agreement, the Agent will be entitled to a commission at a fixed rate equal to 3.0% of the aggregate gross proceeds from each sale of Shares under the Sales Agreement. The Company will also reimburse the Agent for certain expenses incurred in connection with the Sales Agreement, and agreed to provide indemnification and contribution to the Agent with respect to certain liabilities, including liabilities under the Securities Act and the Securities Exchange Act of 1934, as amended.

The Company currently intends to use any net proceeds from the Offering for capital expenditures, research and development expenditures, clinical trial expenditures, acquisitions of new technologies and investments and business combinations.

The foregoing description of the Sales Agreement does not purport to be complete and is qualified in its entirety by reference to the copy of the Sales Agreement, which is filed as Exhibit 1.1 to this Current Report on Form 8-K. A copy of the opinion of Paul Hastings LLP, counsel to the Company, relating to the validity of the shares of Common Stock to be issued in the Offering is filed with this Current Report on Form 8-K as Exhibit 5.1.

The representations, warranties and covenants contained in the Sales Agreement were made only for purposes of such agreement and as of specific dates, were solely for the benefit of the parties to the Sales Agreement, and may be subject to limitations agreed upon by the contracting parties. Accordingly, the Sales Agreement is incorporated herein by reference only to provide investors with information regarding the terms of the Sales Agreement, and not to provide investors with any other factual information regarding the Company or its business, and should be read in conjunction with the disclosures in the Company's periodic reports and other filings with the SEC.

This Current Report on Form 8-K shall not constitute an offer to sell or the solicitation of an offer to buy the Shares, nor shall there be any offer, solicitation, or sale of the Shares in any state or country in which such offer, solicitation or sale would be unlawful prior to registration or qualification under the securities laws of any such state or country.

**Item 9.01**          **Financial Statements and Exhibits**

**(d) Exhibits.**

| Number | Description |
| --- | --- |
| 1.1 | Sales Agreement, dated as of April 14, 2022, by and between CareDx, Inc. and Jefferies LLC. |
| 5.1 | Opinion of Paul Hastings LLP. |
| 23.1 | Consent of Paul Hastings LLP (included in Exhibit 5.1). |
| 104 | Cover Page Interactive Data File, formatted in Inline Extensible Business Reporting Language (iXBRL). |

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

Date: April 14, 2022                                    **CAREDX, INC.**

By:  /s/ Ankur Dhingra
       Ankur Dhingra
       Chief Financial Officer

**Exhibit 1.1**

**CAREDX, INC.**
Shares of Common Stock
(par value $0.001 per share)

**Sales Agreement**

April 14, 2022

JEFFERIES LLC
520 Madison Avenue
New York, New York 10022

Ladies and Gentlemen:

CareDx, Inc., a Delaware corporation (the "**Company**"), confirms its agreement (this "**Agreement**") with Jefferies LLC (the "**Agent**"), as follows:

1. Issuance and Sale of Shares. The Company agrees that, from time to time during the term of this Agreement, on the terms and subject to the conditions set forth herein, it may issue and sell through the Agent up to $200,000,000 of shares of common stock (the "**Placement Shares**") of the Company, par value $0.001 per share (the "**Common Stock**"); *provided*, *however*, that in no event shall the Company issue or sell through the Agent such number or dollar amount of Placement Shares that would (a) exceed the number or dollar amount of shares of Common Stock registered on the effective Registration Statement (defined below) pursuant to which the offering is being made, (b) exceed the number of authorized but unissued shares of Common Stock (less shares of Common Stock issuable upon exercise, conversion or exchange of any outstanding securities of the Company or otherwise reserved from the Company's authorized capital stock), (c) exceed the number or dollar amount of shares of Common Stock permitted to be sold under Form S-3 (including General Instruction I.B.6 thereof, if applicable) or (d) exceed the number or dollar amount of shares of Common Stock for which the Company has filed a Prospectus Supplement (defined below) (the lesser of (a), (b), (c) and (d), the "**Maximum Amount**"). Notwithstanding anything to the contrary contained herein, the parties hereto agree that compliance with the limitations set forth in this Section 1 on the amount of Placement Shares issued and sold under this Agreement shall be the sole responsibility of the Company and that the Agent shall have no obligation in connection with such compliance. The issuance and sale of Placement Shares through the Agent will be effected pursuant to the Registration Statement (as defined below) filed by the Company after it is declared effective by the Securities and Exchange Commission (the "**Commission**"), although nothing in this Agreement shall be construed as requiring the Company to use the Registration Statement to issue Common Stock.

The Company has filed, in accordance with the provisions of the Securities Act of 1933, as amended (the "**Securities Act**"), and the rules and regulations thereunder (the "**Securities Act Regulations**"), with the Commission a registration statement on Form S-3 (File No. 333-239049), including one base prospectus (the "**Base Prospectus**"), relating to certain securities, including the Placement Shares to be issued from time to time by the Company, and which incorporates by reference documents that the Company has filed or will file in accordance with the provisions of the Securities Exchange Act of 1934, as amended (the "**Exchange Act**"), and the rules and regulations thereunder. The Company will, if necessary, prepare a prospectus or a prospectus supplement to the Base Prospectus included as part of the Registration Statement (as defined below, which prospectus or prospectus supplement will specifically relate to the Placement Shares to be issued from time to time by the Company (the "**Prospectus Supplement**")). The Company will furnish to the Agent, for use by the Agent, copies of the prospectus included as part of such registration statement, as supplemented, if necessary, by the Prospectus Supplement, relating to the Placement Shares to be issued from time to time by the Company. The Company may file one or more additional registration statements from time to time that will contain a base prospectus and related prospectus or prospectus supplement, if applicable (which shall be a Prospectus Supplement), with respect to the Placement Shares. Except where the context otherwise requires, such registration statement(s), including all documents filed as part thereof or incorporated by reference therein, and including any information contained in a Prospectus (as defined below) subsequently filed with the Commission pursuant to Rule 424(b) or Rule 462(b) under the Securities

reasonably be expected to have a Material Adverse Effect and, to the Company's knowledge, no such actions, suits or proceedings are threatened or contemplated by any governmental or regulatory authority or threatened by others; and (i) there are no current or pending legal, governmental or regulatory audits or investigations, actions, suits or proceedings that are required under the Securities Act to be described in the Prospectus that are not so described; and (ii) there are no contracts or other documents that are required under the Securities Act to be filed as exhibits to the Registration Statement that are not so filed.

(r) Health Care Authorizations. The Company has submitted and possesses, or qualifies for applicable exemptions to, such valid and current registrations, listings, approvals, clearances, licenses, certificates, authorizations or permits and supplements or amendments thereto issued or required by the appropriate state, federal or foreign regulatory agencies or bodies necessary to conduct its business, including, without limitation, all such certificates, authorizations and permits required by the United States Food and Drug Administration (the "**FDA**"), the United States Department of Health and Human Services ("**HHS**"), the United States Centers for Medicare & Medicaid Services ("**CMS**"), the European Medicines Agency ("**EMEA**"), Health Canada or any other state, federal or foreign agencies or bodies engaged in the regulation of medical devices (including diagnostic products), drugs or biohazardous materials, and the Company have not received any notice of proceedings relating to the revocation or modification of, or non-compliance with, any such license, certificate, authorization or permit, except for such registrations, listings, approvals, clearances, licenses, certificates, authorizations or permits, the lack of which would not, individually or in the aggregate, have a Material Adverse Effect.

(s) Compliance with Health Care Laws. The Company and, to the Company's knowledge, its directors, employees and agents (while acting in such capacity) are in material compliance with, all health care laws applicable to the Company, or any of its products or activities, including, but not limited to, the federal Anti-Kickback Statute (42 U.S.C. Section 1320a-7b(b)), the Anti-Inducement Law (42 U.S.C. Section 1320a-7a(a)(5)), the civil False Claims Act (31 U.S.C. Section 3729 et seq.), the administrative False Claims Law (42 U.S.C. Section 1320a-7b(a)), the Stark law (42 U.S.C. Section 1395nn), the Health Insurance Portability and Accountability Act of 1996 (42 U.S.C. Section 1320d et seq.) as amended by the Health Information Technology for Economic and Clinical Health Act (42 U.S.C. Section 17921 et seq.), the exclusion laws (42 U.S.C. Section 1320a-7), the Federal Food, Drug, and Cosmetic Act (21 U.S.C. Section 301 et seq.), the Controlled Substances Act (21 U.S.C. Section 801 et seq.), the Public Health Service Act (42 U.S.C. Section 201 et seq.), the Clinical Laboratory Improvement Amendments of 1988 (42 U.S.C. Section 263a), Medicare (Title XVIII of the Social Security Act), Medicaid (Title XIX of the Social Security Act), and the Patient Protection and Affordable Care Act of 2010, as amended by the Health Care and Education Reconciliation Act of 2010, the regulations promulgated pursuant to such laws, and any other state, federal or foreign law, accreditation standards, regulation, memorandum, opinion letter, or other issuance which imposes requirements on the manufacturing, development, testing, labeling, advertising, marketing or distribution of drugs and medical devices (including diagnostic products), kickbacks, patient or program charges, recordkeeping, claims process, documentation requirements, medical necessity, referrals, the hiring of employees or acquisition of services or supplies from those who have been excluded from government health care programs, quality, safety, privacy, security, licensure, accreditation or any other aspect of providing health care, clinical laboratory or diagnostics products or services (collectively, "**Health Care Laws**"). The Company has not received any notification, correspondence or any other written or oral communication, including notification of any pending or threatened claim, suit, proceeding, hearing, enforcement, investigation, arbitration or other action from any governmental authority, including, without limitation, the FDA, the EMEA, Health Canada, the United States Federal Trade Commission, the United States Drug Enforcement Administration ("**DEA**"), CMS, HHS's Office of Inspector General, the United States Department of Justice and state Attorneys General or similar agencies of potential or actual non-compliance by, or liability of, the Company under any Health Care Laws, except, with respect to any of the foregoing, such as would not, individually or in the aggregate, have a Material Adverse Effect. To the Company's knowledge, there are no facts or circumstances that would reasonably be expected to give rise to material liability of the Company under any Health Care Laws. The statements with respect to Health Care Laws and the Company's compliance therewith included in the Registration Statement and the Prospectus fairly summarize the matters therein described.

(t) Intellectual Property. Except as disclosed in the Registration Statement and the Prospectus, the Company and its Subsidiaries own, possess, license or have other rights to use all foreign and domestic patents, patent applications, trade and service marks, trade and service mark registrations, trade names, copyrights, licenses, inventions, trade secrets, technology, Internet domain names, know-how and other intellectual property

If the foregoing correctly sets forth the understanding between the Company and the Agent, please so indicate in the space provided below for that purpose, whereupon this letter shall constitute a binding agreement between the Company and the Agent.

Very truly yours,

CAREDX, INC.

By:    /s/ Ankur Dhingra

Name:  Ankur Dhingra
Title:   Chief Financial Officer

ACCEPTED as of the date first-above written:

JEFFERIES LLC

By:    /s/ Michael Magarro

Name:  Michael Magarro
Title:   Managing Director

SIGNATURE PAGE

CAREDX, INC. – SALES AGREEMENT