# Exhibit U

PAUL HASTINGS LLP
JENNIFER S. BALDOCCHI (SB# 168945)
jenniferbaldocchi@paulhastings.com
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071-2228
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

JESSICA MENDELSON (SB# 280388)
jessicamendelson@paulhastings.com
101 California Street
Forty-Eighth Floor
San Francisco, CA 94111
Telephone: (415) 856-7000
Facsimile: (415) 856-7100

Attorneys for Respondent
CareDx, Inc.

Electronically
**FILED**
by Superior Court of California, County of San Mateo
ON 4/21/2022
By /s/ Priscilla Tovar
Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN MATEO**

| | |
|---|---|
| MICHAEL OLYMBIOS,<br><br>　　　Plaintiff/Petitioner<br><br>　　vs.<br><br>CAREDX, Inc.,<br><br>　　　Defendant/Respondent | CASE NO. 22-CIV-01582<br><br>**DEFENDANT CAREDX, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, AND DISMISS, OR IN THE ALTERNATIVE STAY PLAINTIFF MICHAEL OLYMBIOS' COMPLAINT AND OPPOSITION/RESPONSE TO PETITION**<br>　　　AUGUST 5, 2022<br><br>Date:　~~July 8, 2022~~<br>Time:　9:00 a.m.<br>Dept.:　21<br>Judge:　Robert Foiles |

DEFENDANT CAREDX'S NOTICE OF MOTION & MOTION TO COMPEL ARBITRATION, AND
DISMISS, OR IN ALT. STAY PLAINTIFF OLYMBIOS' COMPLAINT AND OPP./RESP. TO PETITION

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION..........................................................................................................6

II.   FACTUAL BACKGROUND .......................................................................................8

    A.    Olymbios Engaged In Misconduct. .................................................................8

    B.    CareDx Commences Arbitration Against Olymbios.........................................9

III.  OLYMBIOS AGREED TO ARBITRATE DISPUTES WITH CAREDX.......................11

IV.   SECTION 1281.98 DOES NOT APPLY.......................................................................12

    A.    Section 1281.98 Was Designed To Address Recalcitrant Defendants Who Delay Arbitration By Refusing To Pay Fees And Costs; Here Olymbios, Not CareDx, Is The Party Dragging His Heels..........................................................13

    B.    The Deadline In Section 1281.98 Requires Fair Notice And Intentional Waiver; Neither Occurred Here. ....................................................................13

    C.    JAMS Fashioned The Payment As A "Deposit" Request For Prepayment, Not A Fee Or Cost As Delineated In Section 1281.98.......................................16

    D.    In Any Event, The Deposit Request Was Never Communicated As A Fee "Required To Continue The Arbitration Proceeding" If Payment Were Not Received Immediately. ....................................................................................17

    E.    Even If A Breach Occurred, The Point Is Moot Because CareDx Cured By Quickly Paying The Full Amount. ..................................................................19

    F.    Even If The Issue Were Not Moot, Any Breach Was Not Material. .....................19

V.    SECTION 1281.98 IS PREEMPTED BY THE FAA.......................................................19

VI.   CONCLUSION..........................................................................................................20

DEFENDANT CAREDX'S NOTICE OF MOTION & MOTION TO COMPEL ARBITRATION, AND DISMISS, OR IN ALT. STAY PLAINTIFF OLYMBIOS' COMPLAINT AND OPP./RESP. TO PETITION

### TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alan v. American Honda Motor Co., Inc.*,
40 Cal. 4th 894 (2007) ...................................................................................................13

*Ambler v. BT Americas Inc.*,
964 F. Supp. 2d 1169 (N.D. Cal. 2013) ..........................................................................11

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) .....................................................................................................10

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .................................................................................................. 18, 19

*Atkins v. Anderson*,
139 Cal. App. 2d 918 (1956) ..........................................................................................14

*Blair v. Rent-A-Ctr., Inc.*,
928 F.3d 819 (9th Cir. 2019) ..........................................................................................18

*Brulee v. GEICO Ins. Agency Inc.*,
2018 WL 3491680 (E.D. Cal. July 19, 2018) .................................................................18

*Chase v. Blue Cross of Cal.*,
42 Cal. App. 4th 1142 (1996) .........................................................................................14

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ........................................................................................11

*Christensen v. Dewor Devs.*,
33 Cal. 3d 778 (1983) .....................................................................................................13

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ........................................................................................................19

*Dekker v. Vivint Solar, Inc.*,
2021 WL 4958856 (9th Cir. Oct. 26, 2021) ...................................................................11

*DIRECTV, Inc. v. Imburgia*,
577 U.S. 47 (2015) ..........................................................................................................10

*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.*,
30 Cal. App. 4th 54 (1994) .............................................................................................13

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak St.*,
35 Cal. 3d 312 (1983) .....................................................................................................10

*Farmer v. Airbnb Inc.*,
2021 WL 4942675 (N.D. Cal. June 1, 2021) ..................................................................12

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) ........................................................................................................10

DEFENDANT CAREDX'S NOTICE OF MOTION & MOTION TO COMPEL ARBITRATION, AND
DISMISS, OR IN ALT. STAY PLAINTIFF OLYMBIOS' COMPLAINT AND OPP./RESP. TO PETITION

*Freiberg v. City of Mission Viejo*,
  33 Cal. App. 4th 1484 (1995) ...................................................................................... 19

*In re Sheena K.*,
  40 Cal. 4th 875 (2007) ....................................................................................... 14, 15

*Iskanian v. CLS Transp. Los Angeles, LLC*,
  59 Cal. 4th 348 (2014) .............................................................................................. 13

*Juiceme, LLC v. Booster Juice Ltd. P'ship*,
  730 F. Supp. 2d 1276 (D. Or. 2010)......................................................................... 11

*Leiter v. Handelsman*,
  125 Cal. App. 2d 243 (1954) ..................................................................................... 18

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
  89 Cal. App. 4th 1042 (2001) .................................................................................... 11

*Martinez v. BaronHR, Inc.*,
  51 Cal. App. 5th 962 (2020) ...................................................................................... 11

*McLellan v. Fitbit, Inc.*,
  2018 WL 3549042 (N.D. Cal. July 24, 2018) ........................................................... 18

*Pierce Cnty. v. MA Mortenson Co.*,
  798 F. App'x 160 (9th Cir. 2020) (unpublished).................................................... 11

*Root v. American Equity Specialty Ins. Co.*,
  130 Cal. App. 4th 926 (2005) .................................................................................... 14

*Sierra Club v. Superior Court*,
  57 Cal. 4th 157 (2013) ............................................................................................... 15

*Sophinos v. Quadriga Worldwide Ltd.*,
  2016 WL 10966561 (C.D. Cal. Aug. 4, 2016) ......................................................... 11

*St. Agnes Med. Ctr. v. PacifiCare of Cal.*,
  31 Cal. 4th 1187 (2003) ............................................................................................. 13

**STATUTES**

CAL. CIV. CODE § 1442 .................................................................................................. 14

CAL. CIV. PROC. CODE § 1281.98.............................................................................*passim*

CAL. CIV. PROC. CODE § 1281.98(a)............................................................ 12, 15, 16, 18

**RULES**

JAMS R. 31 ............................................................................................................... 17, 19

JAMS R. 31(b) .......................................................................................................... 16, 17

**LEGISLATIVE MATERIALS**

S.B. 707, 2019-2020 Reg. Sess. (Cal. 2019) ........................................................... 12, 18

DEFENDANT CAREDX'S NOTICE OF MOTION & MOTION TO COMPEL ARBITRATION, AND
DISMISS, OR IN ALT. STAY PLAINTIFF OLYMBIOS' COMPLAINT AND OPP./RESP. TO PETITION

## **NOTICE OF MOTION AND MOTION**

TO PLAINTIFF AND TO HIS ATTORNEYS OF RECORD, ROBERT FISHER, ALEX MEIER, JONATHAN BRAUNSTEIN AND IAN LONG OF SEYFARTH SHAW LLP:

PLEASE TAKE NOTICE that on July 8, 2022, at 9:00 a.m., in Department 21 of the above-entitled Court, located at 400 County Center, Redwood City, California 94063, Defendant CareDx, Inc. ("Defendant," "CareDx," or "the Company") will and hereby does petition the Court to compel arbitration of the claims in the Complaint and to dismiss this litigation in its entirety, or in the alternative, stay it pending the completion of arbitration.

Michael Olymbios ("Plaintiff" or "Olymbios") has confusingly styled his filing as a "Complaint for Petition" but it is unclear whether it was intended as a "petition" under some applicable law. To the extent it is so interpreted, this brief shall serve as a preliminary response and opposition to such, and if the matter is not immediately compelled into arbitration, CareDx requests a future briefing schedule to specifically address and respond to the petition.

This motion is made on the ground that Plaintiff Michael Olymbios agreed in writing to arbitrate the claims asserted in the Complaint and CareDx has not breached or waived the Arbitration Agreement under California Civil Procedure Code Section 1281.98. The motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed declarations of Jennifer Baldocchi and Martyn Edney, the pleadings and papers filed herein, and upon such arguments as may be made by counsel at the hearing.

DATED: April 20, 2022

PAUL HASTINGS LLP
JENNIFER S. BALDOCCHI
JESSICA MENDELSON

By: _____
JENNIFER S. BALDOCCHI

Attorneys for Claimant
CareDx, Inc.

DEFENDANT CAREDX'S NOTICE OF MOTION & MOTION TO COMPEL ARBITRATION, AND DISMISS, OR IN ALT. STAY PLAINTIFF OLYMBIOS' COMPLAINT AND OPP./RESP. TO PETITION

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

CareDx, Inc. instituted an arbitration action against Michael Olymbios in November of 2020 due to his extensive theft of confidential, privileged, and trade secret information. When Olymbios resigned from his high-level position at CareDx, he misrepresented his plans, claiming that his favored course of action was to work in the financial services industry. After his departure, CareDx learned this was untrue. Rather, he had accepted a job with its key competitor in the diagnostic testing industry, Natera, Inc. CareDx quickly investigated its computer and cloud storage systems and learned that Olymbios had accessed vast quantities of information related to his new job at Natera. Then, he destroyed all evidence of this on his company-issued laptop by resetting the computer to factory settings. CareDx sought a Temporary Restraining Order in San Mateo Superior Court, but when the matter was set for a later hearing, moved the case into arbitration.

That arbitration has been proceeding for nearly *18 months* before JAMS. Through the arbitration process, CareDx learned the full-extent of Olymbios' theft. He stole over 50,000 documents and emails, which amounted to over 150,000 pages, including CareDx's competitively sensitive, confidential, trade secret and attorney/client privileged information. Among the documents taken were competitive intelligence, information about pipeline products, and privileged litigation strategy documents for a lawsuit CareDx later won against Natera (and in which Olymbios had testified as a CareDx's corporate witness just weeks earlier).

Since November 2020, the parties have been engaging in extensive discovery and motion practice in the JAMS matter. Olymbios lodged a counterclaim for defamation. There have been 112 filings and 13 hearings covering a range of topics. The arbitration hearing was set to begin on June 27, 2022.

Olymbios, who is on his fourth set of attorneys, now seeks to derail the arbitration hearing by wrongfully invoking California Civil Procedure Code Section 1281.98 ("Section 1281.98"), which provides that a party who does not pay arbitration fees and costs required to continue the proceeding within 30 days waives its right to arbitrate. His Complaint claims that CareDx

-6-

"intentionally failed to pay this invoice in an attempt to impose a massive financial burden on Dr. Olymbios." Complaint ¶ 22. This statement is false and Olymbios and his attorneys *know* it is false. CareDx has, to date, paid at least $178,050 in fees, costs, and deposits to JAMS, and has consistently maintained a cash positive balance on deposit with JAMS. CareDx has *never* refused to pay any arbitration cost, fee, or deposit, and in fact, all such amounts have been timely paid. In his Complaint, Olymbios is trying to capitalize on a *JAMS mistake.* Although JAMS' customary billing process was to issue invoices via email, on March 1, 2022, a deposit request was posted on their online docket. The very next day, however, JAMS sent a clear statement to counsel for CareDx saying *no amount was due.* JAMS erroneously failed to attach any deposit request to the March 2, 2022 communication. JAMS' billing department corrected their mistake on March 13, 2022, by transmitting via their normal email billing process, a deposit request for $143,300. On April 4, 2022, JAMS again issued a statement indicating no amount was currently due, and again attached the deposit request. CareDx funded the deposit request on April 11, 2022, within 30 days of JAMS' March 13 email notice.

Olymbios nonetheless filed this lawsuit four days later on April 15, 2022 seeking to delay the arbitration and delay the date when he will be ordered to return all competitively-sensitive, confidential, proprietary, and privileged documents and emails stolen from CareDx. Not only is the Complaint a frivolous maneuver by Olymbios to further delay an adverse ruling on CareDx's meritorious claims, but it is a spurious litigation tactic to attempt to gain leverage by forcing CareDx to needlessly expend resources in pursuit of its claims, and publicly damage his new employer's direct competitor in the process in violation of the confidentiality obligations in the JAMS arbitration. CareDx strongly disputes the claims in the Complaint. Olymbios' tactics should not be condoned. CareDx asks that this Court dismiss this lawsuit and order Olymbios to proceed with the arbitration currently pending before JAMS.

## II.    FACTUAL BACKGROUND

### A.    Olymbios Engaged In Misconduct.[1]

Olymbios is a former employee of Claimant CareDx—a precision-medicine company that develops and commercializes testing products for organ transplant patients. Pursuant to the terms of his July 1, 2019, At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement (the "Agreement"), Olymbios agreed to arbitrate controversies, claims, or disputes "arising out of, relating to, or resulting from [Olymbios'] employment with the company or the termination of [Olymbios'] employment with the company, including any breach of this agreement." Declaration of Martyn Edney ("Edney Decl.") ¶ 4, Ex. A., Section 12A.

As CareDx's Head of Community Nephrology, Olymbios was a high-level executive with access to the most valuable confidential information belonging to CareDx. He reported directly to the Company's President, and occupied a special position of trust and confidence. In August 2020, Olymbios testified as CareDx's corporate designee in a false advertising lawsuit against CareDx's competitor, Natera, Inc. CareDx later prevailed on its claims and was awarded approximately $45 million in damages against Natera. Unbeknownst to CareDx, however, days after the deposition, Olymbios started communicating with Natera about working there. Then, in the weeks leading up to his departure, Olymbios began to engage in suspicious behavior. In providing his notice of resignation, Olymbios repeatedly represented to CareDx that he was leaving the Company to work in a noncompeting role, claiming he intended to take a position in the financial services field and that he needed to take a step back for the sake of family and marriage. *See generally* Declaration of Jennifer Baldocchi ("Baldocchi Decl.") Exs. A and J.

After his final day of work, CareDx learned that Olymbios had accepted a position at Natera. *Id.* A forensic investigation revealed that Olymbios engaged in extensive data theft, evidencing that in the days and weeks leading up to and immediately following his resignation, Olymbios surreptitiously copied CareDx's confidential and trade secret information. *Id.* The confidential, privileged, and trade secret information copied by Olymbios would offer him a

---

[1] In order to provide context, CareDx provides the factual allegations pending in arbitration.

-8-

competitive edge in his new role at Natera. *Id*. Olymbios had no ownership right over this confidential CareDx data. *Id*. He was not, and still is not, authorized to possess, disclose, or use these files. *Id*. When CareDx asked Olymbios to return the information, he refused. Instead, he threatened to report the Company to the Department of Justice unless the Company stopped trying to obtain the return of its stolen trade secrets.

**B.    CareDx Commences Arbitration Against Olymbios.**

CareDx commenced arbitration against Olymbios in November of 2020, and later amended its demand to add a claim for violation of the California Penal Code against Olymbios. Baldocchi Decl. ¶ 19, Ex. J. Olymbios in fact *did* arbitrate such claims before JAMS (in the currently pending *CareDx, Inc. v. Olymbios*, JAMS Reference No. 1220067171) for nearly 18 months before filing this Complaint. While the Arbitrator recently stayed that proceeding at Olymbios' request[2] because of the pendency of this lawsuit, arbitration has otherwise continued unabated since November of 2020. Up until the stay was entered on April 18, 2022, the parties were just two months from beginning their arbitration hearing. Baldocchi Decl. ¶ 17, Ex. I.

Since the inception of the arbitration, CareDx has diligently paid all billing statements issued by JAMS, and has maintained a positive cash balance on deposit for this purpose. Baldocchi Decl. ¶¶ 6, 14. The normal billing process arranged between JAMS and CareDx involved periodic transmissions from billingadmin220@jamsadr.com to certain individuals responsible for processing payments. Baldocchi Decl. ¶ 13. Indeed, although JAMS may sometimes post deposit requests on JAMS Access (an online docket), most law firms rely on the notices sent by JAMS' billing department. Baldocchi Decl. ¶ 15. In the present matter, prior invoices and deposit requests seeking payment were sent from JAMS' billing department, *i.e.*, billingadmin220@jamsadr.com, and those were processed promptly. Baldocchi Decl. ¶ 13.

At issue here is a deposit request that was posted on JAMS Access on March 1, 2022. Baldocchi Decl. ¶ 5, Ex. B.[3] The very next day, however, JAMS' billing department sent a

---

[2] CareDx opposed the arbitration stay. Baldocchi Decl. ¶ 17.
[3] JAMS never suggested it was preempting billing through its ordinary channel: e-mails sent by billingadmin2020@jamsadr.com.

-9-

statement to counsel for CareDx stating that no amounts were owed. Baldocchi Decl. ¶ 6, Ex. C. Rather, the billing statement sent on March 2, 2022 showed the arbitral fees incurred for the prior month subtracted from the prepaid deposit, with a cash positive balance remaining. *Id*. It contained a clear directive: "**Credit Balance, Do Not Pay**." *Id*. The March 2, 2022 transmission from JAMS' billing did not attach any deposit request, at all. *Id*.

A JAMS' billing specialist has stated that the March 2, 2022 email's omission of the deposit request, was a "mistake," but could not explain why it occurred. Baldocchi Decl. ¶ 15. On March 13, 2022, JAMS' billing department transmitted the deposit request to counsel for CareDx. Baldocchi Decl. ¶ 7, Ex. D. On April 4, 2022, JAMS' Billing Department sent an email attaching both a billing statement, which said "Credit Balance, Do Not Pay", meaning no amount was due for incurred fees and costs, and the same deposit request sent on March 13, 2022. Baldocchi Decl. ¶ 9, Ex. F.

In any event, CareDx made the requested deposit on April 11, 2022—prior to the filing of the Complaint, and within 30 days of the March 13, 2022 e-mail from the JAMS' billing department. Baldocchi Decl. ¶ 8, Ex. E; Baldocchi Decl. ¶ 9, Ex. F. As of the date of this motion, a billing statement for fees actually incurred in April 2022 has not been issued. Baldocchi Decl. ¶ 18. According to JAMS, CareDx is current on all payment requests and they are prepared to proceed. Baldocchi Decl. ¶ 16. JAMS has never suggested that CareDx is behind on fees or costs, or that any fee or cost issue threatened the continuation of the proceeding.

Arbitration has continued unabated since it was filed in November of 2020, and both parties have actively participated. Baldocchi Decl. ¶ 12. According to JAMS Access, a total of 112 filings have been made in this case, including by CareDx, Olymbios, Olymbios' current employer, Natera, and JAMS. *Id*. There have been at least 13 hearings. *Id*.

Yet on April 8, 2022, Olymbios' counsel suddenly emailed JAMS, without any prior warning, and unilaterally "withdrew" from arbitration, claiming that CareDx breached the Arbitration Agreement by failing to timely transmit funds in connection with the deposit request in the March 1, 2022 on-line entry (despite the subsequent March 2, 2022 statement saying nothing was owed). Baldocchi Decl. ¶ 10, Ex. G.

-10-

At an April 11, 2022 hearing, the Arbitrator decided that whether Olymbios had the right to withdraw was an issue for her to decide, rather than the court, and set a briefing schedule on the issue. *See* Baldocchi Decl. ¶ 11, Ex. H. Prior to filing this frivolous Complaint, Olymbios was aware of CareDx's historic positive credit balance with JAMS, the March 2 and April 4 statements from JAMS stating that no payment was due, and that CareDx had paid the deposit within thirty days of the corrected notice. Olymbios ignored the ruling and filed his Complaint with this Court on April 15, 2022. *See* Complaint. On April 18, 2021, over CareDx's objection, the Arbitrator granted a request by Olymbios to stay proceedings pending further instruction from this Court. Baldocchi Decl. ¶ 17, Ex. I.

### III. OLYMBIOS AGREED TO ARBITRATE DISPUTES WITH CAREDX

There is no genuine question that the dispute between Olymbios and CareDx is subject to arbitration: it has been pending there for nearly 18 months. A brief summary of the law is included here for the Court's convenience, and the remainder of this brief addresses the question at hand, namely whether Section 1281.98 allows Olymbios to negate the arbitration and move CareDx's claims into court.

The California Supreme Court has long recognized "this state's strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak St.*, 35 Cal. 3d 312, 322 (1983). In *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000), the Supreme Court reiterated: "California law, like federal law, favors enforcement of valid arbitration agreements. . . . California courts and its Legislature have 'consistently reflected a friendly policy toward the arbitration process.'" *Id*. at 97 (citations omitted).

By accepting his employment with CareDx, and signing the Agreement, Olymbios agreed to arbitrate his claims against CareDx. Edney Decl. ¶ 4, Ex. A ("***any and all controversies,*** claims, or disputes with [the company] ***arising out of, relating to,*** or resulting from my employment with the company or the termination of my ***employment*** with the company, ***including any breach of this agreement, shall be subject to binding arbitration***") (emphasis added).

-11-

Because arbitration agreements are contracts, assent is analyzed under "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-45 (1995); *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 55-59 (2015) (Breyer, J.) (reversing California Court of Appeal for not applying ordinary contract principles to arbitration agreement). Arbitration agreements are presumed to be valid; the party seeking to avoid arbitration bears the burden of demonstrating otherwise. *See, e.g., Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130-31 (9th Cir. 2000); *Ambler v. BT Americas Inc.*, 964 F. Supp. 2d 1169, 1174 (N.D. Cal. 2013).

Olymbios demonstrated his intent to be bound by accepting and signing the Agreement on July 1, 2019. Edney Decl. ¶ 4, Ex. A; *See Martinez v. BaronHR, Inc.*, 51 Cal. App. 5th 962, 967 (2020) (plaintiff is "deemed to have assented to all [the contract's] terms" because he does not dispute he signed the agreement); *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001) ("ordinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms. A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing."). Olymbios was well aware of his obligation to proceed in arbitration, and did so for nearly 18 months. *See* Baldocchi Decl. ¶ 12.

## IV.   SECTION 1281.98 DOES NOT APPLY

Olymbios argues, incorrectly, that he may unilaterally withdraw from the JAMS arbitration, and have CareDx's claims resolved in a trial, because CareDx purportedly waived its right to continue with the arbitration under Section 1281.98. Not so.

First, this Court should determine whether this issue is for the Arbitrator. If so, this Court should so order[4] and end this frivolous court proceeding without more.

---

[4] This decision should have been made by the arbitrator, and CareDx objects to proceeding with the merits in this forum. But given the arbitrator has stayed this matter while awaiting further direction from the court, CareDx addresses herein the inapplicability of Section 1281.98. *See* Edney Decl. Ex. A, ¶ 12 (delegating disputes regarding breach of contract to arbitrator); *Pierce Cnty. v. MA Mortenson Co.*, 798 F. App'x 160, 161 (9th Cir. 2020) (unpublished) (given "clear and unmistakable evidence" of delegation of questions of arbitrability, "it is for the arbitrator to decide whether [party's] 'Claims' should be deemed 'waived'"); *Juiceme, LLC v. Booster Juice Ltd. P'ship*, 730 F. Supp. 2d 1276, 1283 (D. Or. 2010) (whether failure to pay constitutes a default is an issue for the Arbitrator, not the court); *Sophinos v. Quadriga Worldwide Ltd.*, 2016 WL 10966561, at *1-2 (C.D. Cal. Aug. 4, 2016) ("[w]hether Defendant was obligated to pay the

-12-

However, we now assume, arguendo, that this Court will decide whether the JAMS billing mistake equates to the type of employer malfeasance covered by Section 1281.98.

### A. Section 1281.98 Was Designed To Address Recalcitrant Defendants Who Delay Arbitration By Refusing To Pay Fees And Costs; Here Olymbios, Not CareDx, Is The Party Dragging His Heels.

Contrary to Olymbios' position, Section 1281.98 does not apply here. It was enacted to give plaintiff employees a remedy when an arbitration agreement precluded court relief but nevertheless a "company's strategic non-payment of fees and costs severely prejudices the ability of employees or consumers to vindicate their rights." S.B. 707, 2019-2020 Reg. Sess. (Cal. 2019) (focusing on when "company's failure to pay the fees of an arbitration service provider in accordance with its obligations . . . hinders the efficient resolution of disputes and contravenes public policy"). In short, the statue was designed to correct abuse—such as a bad faith employer mandating arbitration but at the same time blocking arbitration from proceeding by refusing to pay the fees. Here, the opposite is true. CareDx – the claimant – has promptly paid JAMS all fees, costs, and deposits amounting to *$178,050*, in order to proceed efficiently with its claims. Olymbios – not CareDx – is hindering the "efficient resolution" of CareDx's claims against him.

### B. The Deadline In Section 1281.98 Requires Fair Notice And Intentional Waiver; Neither Occurred Here.

Section 1281.98 provides in pertinent part:

> In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, that the drafting party pay certain fees and costs during the pendency of an arbitration proceeding, if the fees or costs required to continue the arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel the employee or consumer to proceed with that arbitration as a result of the

---

filing fees, and, if so, whether Defendant's nonpayment amounted to default or waiver should be decided by the arbitrator, and not this Court" because "the responsibility of interpreting the AAA rules is appropriately addressed to the arbitrator, not this Court."); *Dekker v. Vivint Solar, Inc.*, 2021 WL 4958856, at *1, 2 (9th Cir. Oct. 26, 2021) (district court erred in vacating its order compelling arbitration because "this dispute concerns whether there has been a 'breach' of the arbitration agreements, . . . [it] falls squarely within the scope of the delegation clause, and it should have been left to the arbitrator to decide."); *Farmer v. Airbnb Inc.*, 2021 WL 4942675, at *1 (N.D. Cal. June 1, 2021)("the parties' delegation of arbitrability requires th[e] question [of whether defendant has complied with the requirements of section 1281.98] to be decided by the arbitrator.").

material breach.

Cal. Civ. Proc. Code § 1281.98(a). Here, Olymbios' contends that the March 1, 2022 JAMS Access filing triggered an immediate requirement to pay the requested deposit authorizing invocation of Section 1281.98 within 30 days. That position runs contrary to established California law on fair notice, waiver, and forfeiture. And it would render the statute unconstitutionally vague, a result this Court should interpret the statute to avoid.

First, California law recognizes that these type of time limits require fair notice. *See, e.g.*, *Alan v. American Honda Motor Co., Inc.*, 40 Cal. 4th 894, 898 (2007) (Alan could not be forced to speculate about when jurisdictional time limit began to run on his duty to file notice of appeal). There was no such notice here given JAMS' messages regarding billing, in which JAMS posted a request for deposit through an irregular channel on March 1, 2022,[5] but then stated on March 2, 2022 *after* the deposit request at issue, that there was a "***Credit Balance, Do Not Pay.***" Baldocchi Decl. ¶ 6, Ex. C.

Second, any claim that CareDx waived its rights to proceed in arbitration would require clear and convincing evidence of the "intentional relinquishment" of a "known right" after knowledge of the facts. *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.*, 30 Cal. App. 4th 54, 56 (1994) ("Waiver is the intentional relinquishment of a known right after knowledge of the facts."). The "burden, moreover, is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and 'doubtful cases will be decided against a waiver.'" *Id*. This applies fully to arbitration. California courts caution that "waivers [of the right to enforce a binding arbitration clause] are not to be lightly inferred and the party seeking to establish [such] a waiver bears a heavy burden of proof." *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 375 (2014) (internal

---

[5] The normal billing process followed throughout this Arbitration proceeding involved transmissions from JAMS billing department from the following email account: "billingadmin220@jamsadr.com." Baldocchi Decl. ¶ 13. According to JAMS, most law firms rely on these transmissions—not deposit requests found in hearing notices, such as the one at issue—when processing payments. Baldocchi Decl. ¶ 15. Billingadmin220@jamsadr.com sent the deposit request on March 13, 2022. Baldocchi Decl. ¶ 7, Ex. D. It was duly processed and the funds were wired on April 11, 2022, within 30 days. Baldocchi Decl. ¶ 8, Ex. E.

-14-

citations omitted); *Christensen v. Dewor Devs.*, 33 Cal. 3d 778, 782 (1983) (same). Furthermore, "any doubts regarding a waiver allegation should be resolved in favor of arbitration." *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal. 4th 1187, 1195 (2003). There is no evidence of this type of waiver here.

Third, Olymbios' misapplication of Section 1281.98 would result in a gross forfeiture disfavored under California law. At a minimum, CareDx would forfeit the money it has already paid to JAMS. But more importantly, it would suffer the irreparable loss of 18 months' time in recovering its stolen property. Forfeiture is unfavored under California statutory law. Cal. Civ. Code § 1442 (forfeiture of a contractual right not favored). Courts are in accord that forfeitures "are not favored; hence a contract, and conditions in a contract, will if possible be construed to avoid forfeiture." *Root v. American Equity Specialty Ins. Co.*, 130 Cal. App. 4th 926, 942 (2005) (citations omitted); *Chase v. Blue Cross of Cal.*, 42 Cal. App. 4th 1142, 1157 (1996) ("Forfeiture of a contractual right is not favored in the law. . . . Conversely, as set forth above, arbitration is favored in the law. Consequently, we hold that, as with waiver, the burden of proof is on the party asserting forfeiture and must be demonstrated by clear and convincing evidence.") (citation omitted); *Atkins v. Anderson*, 139 Cal. App. 2d 918, 920 (1956) ("a party should not be divested of valuable rights by way of forfeiture for default . . . unless it is clearly made to appear that the other party to the contract has suffered or will suffer serious detriment or damage by reason of such default, or unless it is made to appear that the default was intentional or willful.") (citation omitted, alteration in original).

Fourth, interpreting the statute in the manner Olymbios requests would produce an unconstitutionally vague statute due to uncertainty and lack of fair warning as to the deadline trigger.[6] California courts recognize that "the underpinning of a vagueness challenge is the due process concept of 'fair warning.'" *In re Sheena K.*, 40 Cal. 4th 875, 890 (2007) (citation omitted). "The vagueness doctrine bars enforcement of a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at

---

[6] Section 1281.98 was recently enacted.

DEFENDANT CAREDX'S NOTICE OF MOTION & MOTION TO COMPEL ARBITRATION, AND DISMISS, OR IN ALT. STAY PLAINTIFF OLYMBIOS' COMPLAINT AND OPP./RESP. TO PETITION

its meaning and differ as to its application." *Id.* (internal quotation marks and citation omitted). The California Supreme Court has recognized that "[i]n deciding the adequacy of any notice afforded those bound by a legal restriction, . . . abstract legal commands must be applied in a specific *context*." *Id.* (internal quotation marks and citation omitted, emphasis in original). Further, while the language does not require "mathematical certainty," it must have "*reasonable* specificity." *Id.* (internal quotation marks and citation omitted, emphasis in original). As described above, Olymbios' interpretation of Section 1281.98 would impose a statutory deadline based on a request for deposit made in an irregular manner that was followed by a clear statement that no fees were due with which no deposit request was made, a subsequent statement re-iterating that no fees were due even after the deposit request was made through the customary channel, and no statement ever that the continuance of the arbitration was in question. Imposing a waiver and forfeiture in the face of these circumstances would strip CareDx of its due process rights to fair warning and adequate notice. Olymbios' position on Section 1281.98 renders this statute unconstitutionally vague. The Court should interpret the statute to avoid this result. *People v. Garcia*, 2 Cal.5th 792, 815 (Cal. 2017) (recognizing "constitutional avoidance" doctrine of statutory construction).

### C.   JAMS Fashioned The Payment As A "Deposit" Request For Prepayment, Not A Fee Or Cost As Delineated In Section 1281.98.

It is axiomatic that "courts must generally follow [the] plain meaning" of statutes. *See, e.g.*, *Sierra Club v. Superior Court*, 57 Cal. 4th 157, 165-66 (2013) (in determining the meaning of statutory language, "courts must generally follow its plain meaning"). Olymbios' interpretation of the statute fails this test.

Section 1281.98(a) applies only to the payment of "certain fees [or] costs" required by the rules of the arbitration provider to continue an arbitration proceeding. Cal. Civ. Proc. Code § 1281.98(a). The predicate for Olymbios' claim – the March 1, 2022 JAMS Access statement, was a "deposit" request, *i.e.*, a prepayment for possible future work, yet to be performed. This does not implicate the statue, which refers exclusively to "fees and costs." A "deposit" is neither a fee nor a cost, which are considered payments made in exchange for a good received or service

-16-

rendered. *See* FEE, Black's Law Dictionary (11th ed. 2019) (a fee is "a charge or payment for labor or services"); COST, Black's Law Dictionary (11th ed. 2019) ("The amount paid or charged for something; price or expenditure."). By contrast, a deposit is money or property provided to someone "who promises to preserve it or to use it and return it in kind; esp., the act of placing money in a bank for safety and convenience." DEPOSIT, Black's Law Dictionary (11th ed. 2019).

Nor did the deposit request reflect a "certain" fee. Merriam-Webster defines the term "certain" as "fixed" or "settled." Yet the deposit request makes clear that what it will actually cover is unsettled—it will "be applied to professional time (session time, pre and post session reading, research, preparation, conference calls, travel, etc.), expenses, and case management fees"; "any unused portion of this deposit will be refunded at the conclusion of the case." Baldocchi Decl. ¶ 5, Ex. B.

### D. In Any Event, The Deposit Request Was Never Communicated As A Fee "Required To Continue The Arbitration Proceeding" If Payment Were Not Received Immediately.

Section 1281.98(a) applies only to fees "*required to continue* the arbitration proceeding." Cal. Civ. Proc. Code § 1281.98(a) (emphasis added). Here, there is a complete absence of any law or evidence that the deposit request here was required to continue the proceeding.

First, the notion that the March 1, 2022 deposit request was immediately required to continue the proceeding is contradicted by JAMS' March 2, 2022 and April 4, 2022 notices, which showed a positive credit balance and indicated no payment was due.

Second, in the March 1, 2022 notice itself, there is no language stating that payment is *required* by a particular deadline for arbitration to continue, only that failure to pay "may result in delay in service or cancellation of the session." Baldocchi Decl. ¶ 5, Ex. B. The lack of a compulsory deadline is further underscored by the "may" language.

Third, the JAMS Employment Rules nowhere suggest that the deposit was required to continue the arbitration proceeding. They defer any consequence to the arbitration itself and leave the determination of whether there should even be a penalty to the discretion of the arbitrator. JAMS Rule 31(b) states:

-17-

> JAMS requires that the Parties deposit the fees and expenses for the Arbitration from time to time during the course of the proceedings and prior to the Hearing. The Arbitrator *may* preclude a party that has failed to deposit its pro rata or agreed-upon share of the fees and expenses from offering evidence of any affirmative claim at the Hearing.

JAMS R. 31(b) (emphasis added). Thus, the consequence of not timely paying a deposit under JAMS Rule 31(b) at worst is possible later evidence preclusion, *not* automatic cancellation months in advance of the hearing. None of that has happened here.

Fourth, while the JAMS' Notice of Hearing states that "All fees are due upon receipt," it proceeds to explain that "All fees must be paid *prior to the service of an award* which the Arbitrator has rendered." Baldocchi Decl. ¶ 5, Ex. B (emphasis added).

Fifth, the General Fee Schedule is in accord. It states, "Receipt of payment for all fees is required *prior to service of an [arbitration] award*." Baldocchi Decl. ¶ 5, Ex. B (emphasis added). No arbitration award will be forthcoming until after the hearing occurs.

The General Fee Schedule also states that "JAMS reserves the right to cancel your hearing if fees are not paid by all parties by the applicable cancellation date and JAMS confirms the cancellation in writing." Baldocchi Decl. ¶ 5, Ex. B. The General Fee Schedule states that the cancellation date is "60 days or more prior to session," and the notice of hearing states it is on April 28, 2022. *Id*. Here, again, cancellation is at the discretion of JAMS, the "applicable cancellation date" has not yet occurred, and JAMS has never even suggested the possibility of cancellation (let alone confirmed it in writing, as required by the General Fee Schedule). Baldocchi Decl. ¶ 16.

Finally, nothing in either the law or the arbitration agreement specifically required CareDx to make prepayment deposits in order for the arbitration to continue. Under the terms of the agreement, CareDx was to pay "administrative or hearing fees charged by the arbitrator or JAMS." *See* Edney Decl. ¶ 4, Ex. A, § 12B. However, the agreement says nothing about deposits. Likewise, Section 1281.98 makes no reference to the payment of deposits, and Olymbios has not cited any other statute requiring deposits.

Not surprisingly, JAMS has never found CareDx to be in default, and the arbitration has indisputably "continued" uninterrupted, with a hearing occurring on April 11, 2022, *after*

-18-

Olymbios raised concerns regarding the payment of fees. JAMS has indicated its willingness to proceed, and the hearing would have remained on calendar, but for Olymbios' frivolous demand for a stay. Baldocchi Decl. ¶ 16. This situation falls far outside the purview of Section 1281.98, which was enacted to provide procedural options and remedies when a company's failure to pay fees hinders the efficient resolution of disputes. S.B. 707, 2019-2020 Reg. Sess. (Cal. 2019).

**E.      Even If A Breach Occurred, The Point Is Moot Because CareDx Cured By Quickly Paying The Full Amount.**

As set forth above, CareDx has not breached the arbitration agreement. But, even if it had, the point is moot. CareDx cured by paying the full amount on April 11, 2022. *Brulee v. GEICO Ins. Agency Inc.,* 2018 WL 3491680, at *9 (E.D. Cal. July 19, 2018) ("the breach of contract claim is now moot" where defendant paid in full).

**F.      Even If The Issue Were Not Moot, Any Breach Was Not Material.**

Even if the point were not moot, the purported breach is not material. *See McLellan v. Fitbit, Inc.*, 2018 WL 3549042, at *5-7 (N.D. Cal. July 24, 2018) (declining to terminate arbitration and finding that there was not a "material breach or default" for "slow payment of filing fees, as opposed to no payment at all"); *see also Leiter v. Handelsman*, 125 Cal. App. 2d 243, 251 (1954) (compliance within reasonable time after due date constitutes compliance).

**V.      SECTION 1281.98 IS PREEMPTED BY THE FAA**

The Court should summarily order this matter to continue in arbitration. Moreover, even apart from the noted deficiencies, Section 1281.98 is preempted by the FAA. The Ninth Circuit recognizes that a state law rule may be preempted by the FAA if: (1) it is not a "generally applicable contract defense" applying "equally to arbitration and non-arbitration agreements;" and (2) "it 'stand[s] as an obstacle to the accomplishment of the FAA's objectives.'" *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 825 (9th Cir. 2019) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011)). Here, both are true of Section 1281.98.

First, Section 1281.98 is not a "generally applicable contract defense" that applies "equally to arbitration and non-arbitration agreements," *Blair*, 928 F.3d at 825, because, by its very terms, it applies only to arbitration agreements and the drafter of such agreements. *See* Cal.

-19-

Civ. Proc. Code § 1281.98(a); *see also McLellan*, 2018 WL 3549042, at *5-7 (holding that "a finding of material breach or default" for "slow payment of filing fees, as opposed to no payment at all" would "be tantamount to a 'defense that is only applicable to arbitration agreements,' which the FAA does not permit") (citation omitted).

Second, applying Section 1281.98 to the right to compel arbitration here would displace the parties' agreement to arbitrate disputes pursuant to the JAMS Rules (Edney Decl. ¶ 4, Ex. A, § 12), thereby creating "an obstacle to the accomplishment of the FAA's objectives." *Concepcion*, 563 U.S. at 343. The JAMS Rules include provisions for the payment of fees and the consequences for nonpayment of fees. They do not include a requirement for a finding of default and waiver of the right to compel arbitration as a result of not paying fees within 30 days after their "due date." *See* JAMS R. 31; Cal. Civ. Proc. Code § 1281.98.

Accordingly, application of Section 1281.98 would displace the parties' agreement—the enforcement of which was the "preeminent concern of Congress in passing the [FAA]." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

## VI.   CONCLUSION

On March 2, 2022, and April 4, 2022, because of a prepaid deposit, JAMS informed CareDx in writing "Credit Balance, Do Not Pay." Baldocchi Decl. ¶ 6, Ex. C. CareDx nonetheless paid JAMS' requested deposit within thirty days of JAMS' March 13, 2022 e-mail request. JAMS has never suggested that this payment was late. This Court should compel arbitration, dismiss the Complaint, and award fees and costs associated with bringing this Motion.[7]

DATED: April 20, 2022                    PAUL HASTINGS LLP

By: _____
      JENNIFER S. BALDOCCHI
      Attorneys for Claimant CareDx, Inc.

---

[7] In the alternative, should the Court decline to dismiss this case, it should stay this proceeding pending completion of the arbitration. *See Freiberg v. City of Mission Viejo*, 33 Cal. App. 4th 1484, 1489 (1995) ("Trial courts generally have the inherent power to stay proceedings in the interests of justice and to promote judicial efficiency.").

-20-