ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS (213113)
JASON C. DAVIS (253370)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
jdavis@rgrdlaw.com
         – and –
SPENCER A. BURKHOLZ (147029)
SEAN C. MCGUIRE (319521)
NICOLE Q. GILLILAND (335132)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
smcguire@rgrdlaw.com
ngilliland@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PLUMBERS & PIPEFITTERS LOCAL UNION #295 PENSION FUND, Individually and on Behalf of All Others Similarly Situated, ) <br><br> Plaintiff, ) <br><br> vs. ) <br><br> CAREDX, INC., et al., ) <br><br> Defendants. ) | Case No. 3:22-cv-03023-TLT <br><br> CLASS ACTION <br><br> LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE ALLEGATIONS IN PLAINTIFFS' AMENDED COMPLAINT <br><br> Date:      May 16, 2023 <br> Time:      2:00 PM <br> Courtroom: 9, 19th Floor <br> Judge:     Hon. Trina L. Thompson |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................................1

II.     STATEMENT OF RELEVANT FACTS ..................................................................3

III.    ARGUMENT ..............................................................................................................6

IV.     CONCLUSION ..........................................................................................................13

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Bennett v. H&R Block Fin. Advisors, Inc.*,
    2005 WL 8178042 (N.D. Cal. May 1, 2005) ...........................................................................10

*Brado v. Vocera Commc'ns, Inc.*,
    14 F. Supp. 3d 1316 (N.D. Cal. 2014) ....................................................................................13

*CareDx, Inc. v. Olymbios*,
    No. 20-civ-04958 (Cal. Super. Ct. San Mateo Cnty. Nov. 12, 2020) .......................................2

*de la Fuente v. DCI Telecomms., Inc.*,
    259 F. Supp. 2d 250 (S.D.N.Y. 2003) ....................................................................................11

*Elliot v. China Green Agrics., Inc.*,
    2012 WL 5398863 (D. Nev. Nov. 2, 2012) ...........................................................................8, 9

*Erickson v. Corinthian Colls., Inc.*,
    2015 WL 12732435 (C.D. Cal. Apr. 22, 2015) .........................................................................9

*Evanston Police Pension Fund v. McKesson Corp.*,
    411 F. Supp. 3d 580 (N.D. Cal. 2019) ...................................................................................13

*Feyko v. Yuhe Int'l, Inc.*,
    2013 WL 816409 (C.D. Cal. Mar. 5, 2013) ............................................................................11

*Gearing v. China Agritech Inc.*,
    2012 WL 13008439 (C.D. Cal. Feb. 17, 2012) .......................................................................11

*Gordon v. Vanda Pharms. Inc.*,
    2021 WL 911755 (E.D.N.Y. Mar. 10, 2021) ..........................................................................11

*Hatamian v. Advanced Micro Devices, Inc.*,
    2015 WL 511175 (N.D. Cal. Feb. 6, 2015) ...............................................................................7

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
    298 F.R.D. 116 (S.D.N.Y. 2014) .........................................................................................3, 8

*In re 2TheMart.com, Inc. Sec. Litig.*,
    114 F. Supp. 2d 955 (C.D. Cal. 2000) ......................................................................................6

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*,
    851 F. Supp. 2d 746 (S.D.N.Y. 2012)....................................................................................10

**Page**

*In re Connetics Corp. Sec. Litig.*,
    542 F. Supp. 2d 996, 1005 (N.D. Cal. 2008) ("*Connetics I*")............................................7, 8, 9

*In re Connetics Corp. Sec. Litig.*,
    2008 WL 3842938 (N.D. Cal. Aug. 14, 2008) ("*Connetics II*").................................3, 7, 8, 9

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
    934 F. Supp. 2d 1219 (C.D. Cal. 2013) ...................................................................................10

*In re Cylink Sec. Litig.*,
    178 F. Supp. 2d 1077 (N.D. Cal. 2001) ..................................................................................8, 9

*In re JDS Uniphase Corp. Sec. Litig.*,
    238 F. Supp. 2d 1127 (N.D. Cal. 2002) ...................................................................................13

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) .....................................................................................9

*In re Musical Instruments and Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) ..................................................................................................13

*In re Mylan N.V. Sec. Litig.*,
    379 F. Supp. 3d 198 (S.D.N.Y. 2019).......................................................................................11

*In re OSG Sec. Litig.*,
    12 F. Supp. 3d 619 (S.D.N.Y. 2014).................................................................................2, 9, 10

*In re VeriFone Holdings, Inc. Sec. Litig.*,
    704 F.3d 694 (9th Cir. 2012) ....................................................................................................13

*Inchen Huang v. Higgins*,
    2019 WL 1245136 (N.D. Cal. Mar. 18, 2019)............................................................................9

*Iron Workers Local 580 Joint Funds v. NVIDIA Corp.*,
    522 F. Supp. 3d 660 (N.D. Cal. 2021) ........................................................................................7

*Johns v. Bayer Corp.*,
    2010 WL 2573493 (S.D. Cal. June 24, 2010)...........................................................................10

*Lako v. Loandepot, Inc.*,
    2023 WL 444151 (C.D. Cal. Jan. 24, 2023) ...............................................................................9

*Lipsky v. Commonwealth United Corp.*,
    551 F.2d 887 (2d Cir. 1976)...........................................................................................3, 9, 10

**Page**

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
2011 WL 4389689, at \*20 (C.D. Cal. May 5, 2011) ("*Countrywide I*") ............................9, 10

*Mart v. Tactile Sys. Tech., Inc.*,
595 F. Supp. 3d 788 (D. Minn. 2022)................................................................................10

*Neilson v. Union Bank of Cal., N.A.*,
290 F. Supp. 2d 1101 (C.D. Cal. 2003) ...............................................................................6

*Olymbios v. CareDx, Inc.*,
No. 22-civ-01582 (Cal. Sup. Ct. San Mateo Cnty.)..............................................................4

*Operating Eng'rs Pension Tr. v. A-C Co.*,
859 F.2d 1336 (9th Cir. 1988) ...........................................................................................13

*Pace v. Quintanilla*,
2015 WL 652719 (C.D. Cal. Feb. 13, 2015)..........................................................................8

*Rok v. Identiv, Inc.*,
2016 WL 4527448 (N.D. Cal. July 8, 2016)........................................................................11

*RSM Prod. Corp. v. Fridman*,
643 F. Supp. 2d 382 (S.D.N.Y. 2009),
*aff'd*, 387 F. App'x 72 (2d Cir. 2010)................................................................................10

*S.E.C. v. Sands*,
902 F. Supp. 1149 (C.D. Cal. 1995) .....................................................................................6

*Sapiro v. Encompass Ins.*,
221 F.R.D. 513 (N.D. Cal. 2004)..........................................................................................6

*Sec. & Exch. Comm'n v. Strong Inv. Mgmt.*,
2018 WL 8731559 (C.D. Cal. Aug. 9, 2018).........................................................................9

*Strougo v. Barclays PLC*,
105 F. Supp. 3d 330 (S.D.N.Y. 2015)..................................................................................10

*U.S. v. Rite Aid Corp.*,
2018 WL 4214887 (E.D. Cal. Sept. 5, 2018)........................................................................10

*VNB Realty, Inc. v. Bank of Am. Corp.*,
2013 WL 5179197 (S.D.N.Y. Sept. 16, 2013).......................................................................6

*Whittlestone, Inc. v. Handi-Craft Co.*,
618 F.3d 970 (9th Cir. 2010) ...............................................................................................6

**Page**

*Winthrop Res. Corp. v. Apollo Educ. Grp., Inc.*,
   2017 WL 3531516 (D. Minn. Aug. 16, 2017) ....................................................................3, 10

**STATUTES, RULES AND REGULATIONS**

False Claims Act
   Pub. L. 97-258, 96 Stat. 978 (1982).................................................................................1, 4

Private Securities Litigation Reform Act of 1995 ("PSLRA")
   Pub. L. No. 104-67, 109 Stat. 737 (1995)...........................................................................11

Federal Rules of Civil Procedure
   Rule 11 ....................................................................................................... *passim*
   Rule 11(b)(3)...........................................................................................................1
   Rule 12(f) .....................................................................................................1, 6, 7, 11

Federal Rules of Evidence
   Rule 410 .............................................................................................................3, 10

**SECONDARY AUTHORITIES**

5C Wright & Miller, Federal Practice and Procedure
   §1382 (3d ed.) ..........................................................................................................6

## I.    INTRODUCTION

On April 15, 2022, Dr. Michael Olymbios – one of the most senior officers of CareDx, who served as the Company's Head of Community Nephrology during the Class Period and reported directly to CareDx's President and CEO, Defendant Seeto – filed an extraordinary whistleblower complaint alleging rampant Medicare fraud by the Company. ¶¶9-10.[1] Specifically, Dr. Olymbios alleged that CareDx had implemented a host of illegal practices to fraudulently obtain Medicare reimbursements for the Company's AlloSure kidney tests, including "***extravagant inducements or kickbacks to physicians***," "***sham advisory boards***," "***misleading research***," and "***recommendations for clinically unsupported treatment***." *Id.* Significantly, Dr. Olymbios made clear that he had reported the illegal conduct directly to CareDx's most senior executives, who not only "***brushed off his concerns or berated him for raising them in the first place***" but "***took active measures to avoid creating a paper trail of their misconduct***." *Id.* Dr. Olymbios provided documentary evidence to federal law enforcement agencies concerning this "***unlawful campaign . . . to pad [the Company's] sales***," leading to ongoing investigations by the Department of Justice for False Claims Act violations and the Securities and Exchange Commission "***regarding certain business practices related to [CareDx's] kidney testing and phlebotomy services***" – *i.e.*, the **very** area that Dr. Olymbios oversaw as one of the highest-ranking executives at CareDx. ¶6.

Plaintiffs' Complaint included several of the highly detailed allegations set forth in Dr. Olymbios' complaint. Now, undoubtedly because they recognize that the detailed statements of one of the Company's most senior officers eviscerate the arguments set forth in their motion to dismiss, Defendants seek to strike 12 paragraphs in the Complaint under the guise of a motion brought pursuant to Federal Rules of Civil Procedure 12(f) and 11(b)(3). Defendants' motion is meritless. The challenged allegations in the Complaint are not only properly sourced from Dr. Olymbios' publicly filed whistleblower complaint, but they were also ***independently***

---

[1]    Unless otherwise noted, all "¶_" and "¶¶_" references are to the Amended Class Action Complaint for Violations of the Federal Securities Laws, filed November 28, 2022 (ECF 53) ("Complaint"). All terms not otherwise defined have the same meaning as in the Complaint. Additionally, all "Defs.' Ex." references are to the Declaration of Charles D. Cording in Support of Motion to Dismiss Amended Complaint (ECF 58-1). Emphasis is added and internal quotations and citations are omitted throughout.

*corroborated* by the accounts of no fewer than eight former employees of CareDx; the ongoing federal investigations against the Company; other evidence set forth in the Complaint; multiple consultations with counsel for Dr. Olymbios; and correspondence with Dr. Olymbios himself. Indeed, although constrained by a confidentiality agreement he entered into with CareDx, Dr. Olymbios himself has provided Lead Plaintiffs with an email in which he explicitly confirms the allegations set forth in the Complaint.

Further, and remarkably, Defendants attempt to impugn Dr. Olymbios' credibility even though in prior proceedings they have taken the position that Dr. Olymbios has both intimate and personal knowledge of the Company's business practices and is a highly credible witness. Indeed, in seeking to compel arbitration against Dr. Olymbios in his parallel action against CareDx, the Company itself admitted that in prior litigation against an industry competitor, Natera, CareDx designated Dr. Olymbios as the "corporate designee" (which, as the Company has admitted, means the Company deemed him the "person most knowledgeable" to answer questions about the Company) with the power to bind the Company in that action with his testimony.[2] The litigation with Natera was extremely significant to CareDx, resulting in a $44.9 million jury verdict and involving the potential invalidity of some of CareDx's most important patents. The facts that CareDx chose Dr. Olymbios to serve in that capacity and that he successfully fulfilled his duties as a corporate designee mean that Defendants themselves understood that not only was Dr. Olymbios knowledgeable about the Company's operations that form the basis for the instant action but also that Defendants fully believed in his credibility and *knew* he would give truthful testimony under oath. In sum, there are a plethora of facts directly supporting and corroborating the accuracy and reliability of the allegations set forth in the Olymbios complaint.

Under such circumstances, courts across the country routinely recognize the propriety of incorporating allegations from other pleadings. *See, e.g.*, *In re OSG Sec. Litig.*, 12 F. Supp. 3d 619, 622 (S.D.N.Y. 2014). Indeed, as *explicitly* recognized in the subsequent history of Defendants' own

---

[2]    *See* Ex. U at 8 ("corporate designee"); *see also CareDx, Inc. v. Olymbios*, No. 20-civ-04958, Complaint for Injunction at ¶40 (Cal. Super. Ct. San Mateo Cnty. Nov. 12, 2020) ("person most knowledgeable").

LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE ALLEGATIONS IN PLAINTIFFS' AMENDED COMPLAINT - 3:22-cv-03023-TLT                                                                 - 2 -

principal authority, it is only in the ***complete*** absence of ***any*** independent investigation that allegations from another pleading may be stricken. *See In re Connetics Corp. Sec. Litig.*, 2008 WL 3842938, at \*4 (N.D. Cal. Aug. 14, 2008) ("*Connetics II*") (denying the motion to strike and fully crediting ***all*** allegations drawn from the SEC complaint where plaintiff did not rely "***solely*** on the investigations of attorneys at the SEC."); *see also Homeward Residential, Inc. v. Sand Canyon Corp.*, 298 F.R.D. 116, 126 (S.D.N.Y. 2014) ("Rule 11 seems to allow incorporation of allegations from other complaints if they are combined with material the plaintiff has investigated personally that lend credence to the borrowed allegations.").

Fatally, the bright-line rule Defendants advance in their motion has been widely recognized by courts across the country as being improperly founded on a "stretched" misreading of Second Circuit precedent. *See Winthrop Res. Corp. v. Apollo Educ. Grp., Inc.*, 2017 WL 3531516, at \*4 n.5 (D. Minn. Aug. 16, 2017) ("[S]ubsequent cases in the Southern District of New York [analyzing the incorporation of other pleadings] make clear that *Lipsky* made no such pronouncement. Instead, [*Lipsky*'s] holding [preventing reliance on other pleadings] was limited to complaints that ultimately resulted in a consent decree or *nolo contendere* plea protected by FRE 410."). Thus, ***none*** of Defendants' authorities permits striking the facts provided by a credible, former high-ranking company executive – particularly one that Defendants themselves ***admit*** was a "person most knowledgeable" about CareDx's operations at the core of this case. As such, Defendants' transparent and improper attempt to discredit Dr. Olymbios and chill legitimate whistleblowing activity must be rebuffed, and their motion to strike must be denied.

## II.   STATEMENT OF RELEVANT FACTS

On April 15, 2022, Dr. Olymbios, one of CareDx's most senior officers,[3] filed an explosive complaint averring that Defendants were engaging in rampant Medicare fraud by implementing a variety of illegal Company-wide practices designed to improperly obtain Medicare reimbursement

---

[3]   "As CareDx's Head of Community Nephrology, Olymbios was a high-level executive with ***access to the most valuable confidential information*** belonging to CareDx. He ***reported directly to the Company's President***, and ***occupied a special position of trust and confidence***. In August 2020, Olymbios testified as CareDx's corporate designee in a false advertising lawsuit against CareDx's competitor, Natera, Inc." Defs.' Ex. U at 7.

for CareDx's AlloSure tests.  Specifically, according to his complaint,[4] Dr. Olymbios, CareDx's former Head of Community Nephrology, who reported directly to Defendant Seeto, provided significant documents to federal and state law enforcement agencies evidencing "an unlawful campaign . . . to pad [the Company's] sales," which was "bolstered by illegal inducements to physicians, misleading research, and recommendations for clinically unsupported treatment."

Dr. Olymbios' cooperation with federal and state law enforcement agencies bore fruit. Defendants' practices reported in Dr. Olymbios' complaint are the focus of an ongoing False Claims Act investigation by the Department of Justice and a related investigation by the Securities and Exchange Commission "***regarding certain business practices related to [CareDx's] kidney testing and phlebotomy services***," the ***very*** area Dr. Olymbios oversaw as an executive at CareDx.  ¶6. Dr. Olymbios' complaint detailed numerous "serious legal and compliance concerns," including that Defendants had used the Company's RemoTraC program to improperly bundle AlloSure with routine blood tests. ¶52.  These allegations were supported by documentary evidence retained by Dr. Olymbios.  Immediately after a recitation of Dr. Olymbios' explosive allegations, the Complaint explicitly states: "[n]umerous former employees have fully corroborated Dr. Olymbios'[] allegations, and reaffirmed that these practices and other illegal schemes continued unabated, even after Dr. Olymbios blew the whistle and left the Company."  ¶11.

Defendants do not argue that Dr. Olymbios did not have access to the information attributed to him in the Complaint or his specific allegations.  Indeed, Defendants readily admit that Dr. Olymbios, as a high-ranking former CareDx executive, "occupied a special position of trust and confidence" at CareDx and possessed highly sensitive confidential and trade secret information by virtue of his position as Head of Community Nephrology at CareDx and his interaction with Defendants.  *See* Defs.' Ex. U at 8.  Further, by Defendants' own admissions, Dr. Olymbios was a designated 30(b)(6) witness or "person most knowledgeable" about the Company's operations at the core of Plaintiffs' allegations against CareDx.  In other words, not only was Dr. Olymbios most

---

[4]    Plaintiff/Petitioner Michael Olymbios' Complaint and Petition for Declaratory Judgement, filed April 15, 2022 in the case titled, *Olymbios v. CareDx, Inc.*, No. 22-civ-01582 (Cal. Sup. Ct. San Mateo Cnty.).

knowledgeable about the very subject that is at the heart of this litigation; Defendants viewed him as completely trustworthy and credible, allowing him to testify as a corporate designee in high-stakes, bet-the-Company litigation against Natera, in which Natera sought to invalidate many of CareDx's core patents. Dr. Olymbios fulfilled his responsibilities, with CareDx ultimately securing a $44.9 million verdict against Natera. Tellingly, it was only after Dr. Olymbios filed his complaint, despite Defendant Maag being "fully supportive of what ever [Dr. Olymbios] decide[d] to do" and "hav[ing his] back," that he suddenly became not credible. Declaration of Lester R. Hooker in Support of Lead Plaintiffs' Opposition to Defendants' Motion to Strike Allegations in Plaintiffs' Amended Complaint ("Hooker Decl."), Ex. 3.

Dr. Olymbios' allegations were incorporated in the Complaint. Counsel for Lead Plaintiff conferred with counsel for Dr. Olymbios on multiple occasions, both prior to and after the filing of the Complaint, to discuss the basis for Dr. Olymbios' allegations. Hooker Decl. at ¶¶5-7. In the course of these discussions, Plaintiffs' counsel unequivocally believed in good faith that counsel for Dr. Olymbios had acted with diligence and professionalism in accurately reporting facts provided by Dr. Olymbios, which were supported and corroborated by documentary evidence also provided by Dr. Olymbios to his counsel. *Id.* Further, Lead Plaintiffs' extensive pre-filing investigation involved contacting over 85 former CareDx employees, eight of whom are detailed in the Complaint and corroborate the facts alleged by Dr. Olymbios in his complaint. Hooker Decl. at ¶8.[5]

Strikingly, on January 26, 2022, Dr. Olymbios himself emailed counsel for Lead Plaintiffs offering his full cooperation, fully reaffirming the allegations attributed to him in the Complaint, and stating his gratification that "other former employees were willing to come forward to corroborate [his] observations." Hooker Decl., Ex. 1. Dr. Olymbios fully endorsed the fundamental premise underlying his allegations and the Complaint, stating, in no uncertain terms, that CareDx "*is a house of cards, generating revenue through illicit conduct as you have found*." *Id.* Neither

---

[5] Defendants have attempted to restrain Dr. Olymbios' legitimate whistleblowing activity and prevent him from disclosing further information concerning Defendants' illegal schemes. Thus, for example, counsel for Lead Plaintiffs have been unable to interview or obtain documentary evidence from Dr. Olymbios by virtue of CareDx's repeated attempts to silence Dr. Olymbios through enforcement of both arbitration and confidentiality agreements purportedly preventing Dr. Olymbios from disclosing further facts about the illegal conduct witnessed during his employment at CareDx.

Dr. Olymbios nor his counsel have ***ever*** disputed any of the facts advanced in the Olymbios complaint or the Complaint and have, instead, confirmed the evidentiary basis for those allegations. Hooker Decl. at ¶¶5-7. Nevertheless, on January 27, 2023, Defendants moved to strike 12 paragraphs attributed to the Olymbios complaint from the Complaint and to further "chill legitimate whistleblowing activity."[6] *See* Defendants' Notice of Motion and Motion to Strike Allegations in Plaintiffs' Amended Complaint; Memorandum of Points and Authorities in Support Thereof (ECF 60) ("MTS").

**III.    ARGUMENT**

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, ***immaterial***, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). There is "'general judicial agreement, as reflected in the extensive case law on the subject, that [motions to strike under Rule 12(f)] should be denied unless the challenged allegations have ***no possible relation or logical connection to the subject matter of the controversy*** and may cause some form of significant prejudice to one or more of the parties to the action.'" *VNB Realty, Inc. v. Bank of Am. Corp.*, 2013 WL 5179197, at *3 (S.D.N.Y. Sept. 16, 2013) (quoting 5C Wright & Miller, Federal Practice and Procedure §1382 (3d ed.). The term "immaterial" has been understood in this broader context and has been held to mean "that which has no essential or important relationship to the claim for relief or the defenses being pled." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010).[7]

---

[6]    April 8, 2022, email from counsel for Dr. Olymbios to counsel for Defendants. Hooker Decl., Ex. 2 ("Dr. Olymbios believes that this proceeding was an attempt to chill legitimate whistleblowing activ[ity] . . . .").

[7]    "Courts have long disfavored Rule 12(f) motions, granting them only when necessary to discourage parties from making completely tendentious or spurious allegations." *Sapiro v. Encompass Ins.*, 221 F.R.D. 513, 518 (N.D. Cal. 2004). "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). "Accordingly, courts often require a showing of prejudice by the moving party" before granting the requested relief, which Defendants have utterly failed to articulate here. *S.E.C. v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995). In considering a motion to strike, the court views the pleadings in the light most favorable to the non-moving party and resolves any doubt as to the relevance of the challenged allegations in favor of plaintiff. *See In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).

LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE ALLEGATIONS IN PLAINTIFFS' AMENDED COMPLAINT - 3:22-cv-03023-TLT                - 6 -

First, on their faces, the allegations drawn from Dr. Olymbios' whistleblower complaint, which were discussed with counsel for Dr. Olymbios prior to inclusion in the Complaint and are generally corroborated by the other former employees in the Complaint, bear a clear relation and logical connection to Lead Plaintiffs' allegations of securities fraud.  Given this unassailable fact, Defendants' motion to strike Dr. Olymbios' allegations under Rule 12(f) is facially improper. Indeed, courts have routinely denied motions to strike witness' allegations concerning scienter *even when* those same witnesses signed sworn declarations repudiating their testimony.  *See, e.g.*, *Iron Workers Local 580 Joint Funds v. NVIDIA Corp.*, 522 F. Supp. 3d 660, 672 (N.D. Cal. 2021) (denying motion to strike portions of complaint attributed to recanting witnesses where "the allegations sought to be stricken may bear on the litigation because Plaintiffs cite these statements in support of their scienter arguments.  Accordingly, the allegations attributed to FE-5 do not fall within the categories for which striking is permissible."); *Hatamian v. Advanced Micro Devices, Inc.*, 2015 WL 511175, at *1 (N.D. Cal. Feb. 6, 2015) (denying motion to strike where, "[a]s an initial matter, it cannot be said that the subjects sought to be stricken do not pertain . . . to the issues in question as the allegations at issue pertain directly to the issue of defendants' scienter of the underlying securities fraud claim.") (citing Fed. R. Civ. P. 12(f)).

Second, Defendants' principal authority, *In re Connetics Corp. Sec. Litig.*, does not allow for the piecemeal excision of material incorporated from other pleadings where counsel has conducted an independent investigation.  542 F. Supp. 2d 996, 1005 (N.D. Cal. 2008) ("*Connetics I*"). Specifically, Defendants claim *Connetics I* requires plaintiffs to "demonstrate that they have 'additional bases for the *specific* allegations' lifted from the complaint."  MTS at 1, 4-7 (quoting *Connetics I*).  However, *Connetics I*, which dismissed a complaint with leave to amend, must be read in context of the *Connetics* court's denial of defendants' second motion to strike.  Therein, the court unequivocally observed that *Connetics I* concerned a situation in which plaintiffs had relied "'*entirely* on another complaint as the sole basis for [their] allegations.'"  *Connetics II*, 2008 WL 3842938, at *4.  In addition, upon examination of the plaintiffs' second amended complaint, the court expressly noted: "[a]lthough plaintiffs continue to rely in part on the SEC complaint, plaintiffs have explained what other sources they rely on to formulate their factual allegations and have

explained how ***these other sources corroborate some, though not all, of the allegations from the SEC complaint***." *Id.* The court then observed that the plaintiffs had also attempted to "talk with other witnesses who may possess information presented in the SEC complaint" but that those witnesses had "refused to talk with plaintiffs, and plaintiffs have explained that as a result, ***certain information found only in the SEC complaint may be too difficult or impossible to acquire absent formal discovery***." *Id.* In denying the motion to strike and fully crediting all allegations drawn from the SEC complaint, the *Connetics* court held the plaintiffs had conducted "an inquiry reasonable under the circumstances" as they were "no longer relying ***solely*** on the investigations of attorneys at the SEC." *Id.*

Thus, *Connetics I* and *Connetics II*, read together, unambiguously stand for the proposition that not ***every*** fact advanced by Dr. Olymbios requires additional, independent corroboration. Indeed, the *Connetics* court, addressing allegations taken from a complaint filed in a different action, unequivocally held the plaintiff complied with Rule 11 despite not independently verifying ***every*** allegation taken from a different complaint.

The majority of courts that have considered *Connetics I*, even without the apparent clarification provided in *Connetics II*, have reached the same conclusion. *See, e.g.*, *Homeward Residential*, 298 F.R.D. at 126 ("Thus, Rule 11 seems to allow incorporation of allegations from other complaints ***if they are combined with material the plaintiff has investigated personally that lend credence to the borrowed allegations***.") (citing *Connetics I*, 542 F. Supp. 2d at 1005) (noting "an attorney may rely in part on other sources . . . as part of his or her investigation into the facts"). *See also In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1080 (N.D. Cal. 2001) (holding that a complaint can combine the plaintiff's own allegations with allegations from an SEC complaint); *Elliot v. China Green Agrics., Inc.*, 2012 WL 5398863, at *3 (D. Nev. Nov. 2, 2012) ("When drafting a complaint, an attorney may rely in part on other sources, but may not rely ***entirely*** on other sources as the ***sole*** basis for the complaint's allegations.") (citing *Connetics I,* 542 F. Supp. 2d at 1005); *Pace v. Quintanilla*, 2015 WL 652719, at *7 (C.D. Cal. Feb. 13, 2015) ("An attorney cannot rely ***solely*** on another complaint as the ***sole*** basis for his or her allegations. However, sources such as newspaper articles and other complaints ***combined*** with an attorney's own investigative efforts

can be a reasonable source of allegations based on information and belief.") (citing *Connetics I*, 542 F. Supp. 2d at 1005).

Indeed, *Connetics I* distinguished cases such as *Cylink*, "which [held that] a complaint filed by the SEC may come into the mix of the materials considered by the court on a motion to dismiss." *Inchen Huang v. Higgins*, 2019 WL 1245136, at *5 (N.D. Cal. Mar. 18, 2019) (citing *Cylink*, 178 F. Supp. 2d at 1080, 1083). As such, courts across the country decline to strike allegations from other pleadings where a plaintiff has conducted some corroborative, independent investigation, even where the claims sound in fraud. *See, e.g.*, *OSG*, 12 F. Supp. 3d at 622 ("[P]laintiffs may plead facts contained in the Proskauer motion upon information and belief, and find admissible evidence to support those allegations at a later stage. Even allegations of fraud can be made upon information and belief where the matters alleged are peculiarly within the opposing party's knowledge . . . ."); *Elliot*, 2012 WL 5398863, at *3 (denying motion to strike and crediting allegations in short-seller report where plaintiff cited to some corroborating sources of information).[8]

Third, the conspicuous absence of *Connetics II* from Defendants' motion to strike mirrors similar flaws in Defendants' remaining authority. Specifically, Defendants advance *Maine State Ret. Sys. v. Countrywide Fin. Corp.* for the proposition that Plaintiffs here have not undertaken an independent investigation into the facts alleged in the Olymbios whistleblower complaint in violation of Rule 11. 2011 WL 4389689, at *20 (C.D. Cal. May 5, 2011) ("*Countrywide I*"). However, *Countrywide I*'s holding has been widely recognized as being premised on a profound misreading of Second Circuit precedent first articulated in *Lipsky v. Commonwealth United Corp.*,

---

[8]    *See also Lako v. Loandepot, Inc.*, 2023 WL 444151, at *6 (C.D. Cal. Jan. 24, 2023) ("Plaintiffs' attorneys have not merely lifted unsupported allegations wholesale from the Richards Complaint without independent investigation. Finding evidence of adequate independent investigation by Plaintiffs' counsel, the Court will not strike allegations drawn from the Richards Complaint."); *Sec. & Exch. Comm'n v. Strong Inv. Mgmt.*, 2018 WL 8731559, at *5 (C.D. Cal. Aug. 9, 2018) (citing *Connetics I*, 542 F. Supp. 2d at 1005) ("Second, even if the Court found that the SEC did not specifically verify the findings of Broker 1 as part of its investigation, these allegations are nonetheless properly included because they corroborate[] the rest of the allegations set forth in the Complaint."); *Erickson v. Corinthian Colls., Inc.*, 2015 WL 12732435, at *5 (C.D. Cal. Apr. 22, 2015) ("Moreover, it is appropriate for Plaintiff to offer these allegations 'to the extent that [they] corroborate[] plaintiff's own investigation and provide[] detailed factual allegations.'") (quoting *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1272 (N.D. Cal. 2000) (approving of a newspaper article as a "reasonable source of information and belief allegations").

551 F.2d 887 (2d Cir. 1976), and then improperly "stretched" in *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).  *See In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 768 n.24 (S.D.N.Y. 2012) ("Neither Circuit precedent nor logic supports such an absolute rule.").[9]  Defendants' reliance on *Bennett v. H&R Block Fin. Advisors, Inc.*, 2005 WL 8178042 (N.D. Cal. May 1, 2005), and *Fraker v. Bayer Corp.* is similarly defective and fails for the additional reason that plaintiffs therein had conducted no independent investigation.  2009 WL 5865687, at *6 (E.D. Cal. Oct. 6, 2009) ("Plaintiff has failed . . . to allege factual grounds that are not derived **solely** from prior proceedings.").

Finally, even *Countrywide I* recognizes that "contact[ing] the attorneys in the other cases from which they copied the allegations to discuss the basis for the allegations" is sufficient to satisfy Rule 11.  2011 WL 4389689, at *20.  *See also Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 343 (S.D.N.Y. 2015) (declining to strike the borrowed allegations that "counsel for plaintiffs have indicated that they have reached out to attorneys at the NYAG to verify."); *Johns v. Bayer Corp.*, 2010 WL 2573493, at *2 (S.D. Cal. June 24, 2010) (denying motion to strike where plaintiffs contacted the attorney in the other case to discuss the basis for the claims asserted therein); *Mart v. Tactile Sys. Tech., Inc.*, 595 F. Supp. 3d 788, 807-08 (D. Minn. 2022) (considering allegations from *qui tam* action where "[p]laintiff appears to have done what due diligence it could given its inability to access documents filed under seal."); *U.S. v. Rite Aid Corp.*, 2018 WL 4214887, at *10 (E.D. Cal. Sept. 5, 2018) (denying motion to strike where counsel conferred with counsel responsible for other

---

[9]    Defendants' citation to *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 934 F. Supp. 2d 1219, 1226 (C.D. Cal. 2013), an opinion also issued by Judge Pfaelzer and author of *Countrywide I*, likewise relies on *RSM* and its inappropriate "stretch[ing]" of Second Circuit precedent.  *See Winthrop*, 2017 WL 3531516, at *5 n.5 ("*Winthrop* also cites to *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y.) for the proposition that courts must strike allegations about other actions if they were not decided on the merits.  *RSM* relies on the Second Circuit case, *Lipsky v. Commonwealth United Corporation*, 551 F.2d 887 (2d Cir.1976).  But subsequent cases in the Southern District of New York make clear that *Lipsky* made no such pronouncement.  'Instead, [*Lipsky*'s] holding was limited to complaints that ultimately resulted in a consent decree or *nolo contendere* plea protected by FRE 410.'") (quoting *OSG*, 12 F. Supp. 3d at 621).

pleading).[10] Plaintiffs have done precisely that here, *see* Hooker Decl. ¶¶5-7, and have additionally provided correspondence from Dr. Olymbios himself corroborating the substance of the allegations attributed to him.  Hooker Decl., Ex. 1.

The allegations sourced from Dr. Olymbios' whistleblower action are thus sufficient under both Rules 11 and 12(f) as "the weight of authority holds that plaintiffs may base factual allegations on complaints from other proceedings" since logic and precedent fail to support "an absolute rule against doing so." *In re Mylan N.V. Sec. Litig.*, 379 F. Supp. 3d 198, 215 (S.D.N.Y. 2019) (collecting authorities and noting: "cases in this District have cogently explained that those decisions [striking allegations drawn from other pleadings] emanate from a misconstruction of Circuit precedent."). *See also de la Fuente v. DCI Telecomms., Inc.*, 259 F. Supp. 2d 250, 260 (S.D.N.Y. 2003) ("The PSLRA does not require that a plaintiff re-invent the wheel before filing a complaint.").  In fact, even with the dismissal of a whistleblower action from which a securities fraud complaint "repeats factual allegations," plaintiffs can ***still*** meet the heightened pleading standard.  *See Gordon v. Vanda Pharms. Inc.*, 2021 WL 911755, at *2 (E.D.N.Y. Mar. 10, 2021).

The facts provided by Dr. Olymbios in his whistleblower complaint also have independent support.  To start, Dr. Olymbios' own review of the Complaint further demonstrates that other sources of allegations in the Complaint support the fact-based allegations that Dr. Olymbios made in his complaint against the Company.  In his email to Lead Plaintiffs' counsel, Dr. Olymbios explained: "I was relieved to see that other former employees were willing to come forward to corroborate my observations."  Hooker Decl., Ex. 1.  The Complaint contains numerous examples supporting Dr. Olymbios' email.

---

[10]  *See also Feyko v. Yuhe Int'l, Inc.*, 2013 WL 816409, at *11 (C.D. Cal. Mar. 5, 2013) (permitting reliance on allegations in short-seller report where the "only source" of allegations in complaint was that "Lead Plaintiff's attorneys [had] multiple conversations with GeoInvesting about the basis for its investigatory report and its communications with [a witness]."); *Gearing v. China Agritech Inc.*, 2012 WL 13008439, at *3 (C.D. Cal. Feb. 17, 2012) (denying motion to strike where "Plaintiffs contend they have conducted an independent investigation and have provided the sources for publicly available information supporting their claims, and Plaintiffs contacted the attorney in [the other case] to discuss the basis for his claims."); *Rok v. Identiv, Inc.*, 2016 WL 4527448 (N.D. Cal. July 8, 2016) ("In order to satisfy the reasonable inquiry requirement, [i]t is not necessary that an investigation into the facts be carried to the point of absolute certainty").

LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE ALLEGATIONS IN PLAINTIFFS' AMENDED COMPLAINT - 3:22-cv-03023-TLT                                                    - 11 -

To cite one example, Dr. Olymbios' Complaint refers to management as "***crooks and frauds***." ¶10.  Defendants argue this allegation is "[e]xclusively" from Dr. Olymbios.  *See, e.g.*, App'x 1 to MTS.  That argument is false.  Another medical doctor ("FE-1") who worked at the Company explained that "***sales drove***" clinical decisions and that the Company was "***totally unethical***." ¶¶60-61.  Likewise, CareDx's compliance attorney (McCauley) fought a losing "uphill battle" to make the Company follow its compliance obligations; but management "***did not want to be compliant***," so McCauley quit.  ¶62.  Other former employees provided similar detailed facts showing the Company was operating an unlawful scheme.[11]  Dr. Olymbios is not alone.

To cite other examples, Defendants falsely argue that all the allegations regarding the Company's unlawful conduct and senior management's awareness of that conduct are "[e]xclusively" sourced from Dr. Olymbios' complaint.  MTS App'x 1.  Other former employees provide facts that the Company paid doctors improper kickbacks.[12]  The same is true regarding improper Medicare overbilling.[13]  The same is true regarding the way employees' reports to senior management were handled: for example, a medical doctor reported misconduct to the Company's top compliance attorney, who explained that senior management simply did not want to be compliant, and a Vice President of the Company told the medical doctor that the Company needed to engage in the improper practices for revenue reasons.  ¶62; *see also* ¶¶35, 63, 80, 127 (Defendants

---

[11]  *See, e.g.*, ¶63 (FE-2 noting "***scientific quality and ethical integrity did not exist at the Company's leadership positions***"); ¶64 (FE-3 observing sales and clinical operations intermingling); ¶¶66-67 (FE-4 observing unnecessary tests bundled with necessary tests); ¶68 (FE-5 noting "***huge red flag***" in how the Company obscured paper evidence for Medicare claims); *see also* ¶¶77, 83, 85, 89 (former employees observing "***sketchy***" conduct, business conduct "***way out of control***," just "***so [many] illegal actions***" alongside publications of clinical studies that lacked a "full data set" when published).

[12]  *See, e.g.*, ¶70 (FE-6 noting the Company paid for lavish Napa getaways for doctors); ¶71 (FE-1 noting the Company "***took doctors on booze cruises, helicopter tours, and expensive vacations***"); ¶73 (FE-4 noting the Company paid 20 times above the proper rate to induce improper blood tests); ¶83 (FE-8 observing "***excessive and very unusual***" payments of 600% to 700% above market rates).

[13]  *See, e.g.*, ¶¶60-61 (FE-1 noting the Company did "***at least 8X***" the number of tests "of what they should have been ***and on patients that did not need these tests***," which was "***totally inappropriate***"); ¶63 (FE-2 noting the Company required blood to be drawn for unnecessary tests as a condition to drawing blood for necessary tests); ¶¶64-65 (FE-3 observing the Company was not doing the "***standard of care***" tests at patients' homes and that sales were driving clinical operations leading to customer concerns about "***Medicare billing***"); ¶68 (FE-5 observing Medicare "***red flag[s]***"); *see also* ¶6 (DOJ and SEC launched formal investigations into the Company's Medicare billing conduct).

Maag and Seeto were personally involved in the scheme, based on other sources).  The Complaint presents data further corroborating Dr. Olymbios: those data show Medicare revenue collapsed as the SEC and DOJ investigations chilled the Company's unlawful scheme.  ¶¶8, 105, 123; *see also* Hooker Decl. at ¶8 (discussing independent consultants' empirical analyses).

In short, Plaintiffs' reliance here on the detailed, public, highly credible, corroborated, and confirmed allegations of a high-profile former CareDx executive-turned-whistleblower is not one of the "rare and exceptional" cases that warrants the extraordinary remedy of Rule 11.  *See Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988).  Indeed, the Ninth Circuit has repeatedly credited allegations imported from other complaints when ruling on a motion to dismiss. *See Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 593 (N.D. Cal. 2019) (citing *In re VeriFone Holdings,  Inc. Sec. Litig.*, 704 F.3d 694, 706-07 (9th Cir. 2012) (relying on allegations in an SEC complaint incorporated into the plaintiff's pleadings) (citing *In re Musical Instruments and Equip. Antitrust Litig.*, 798 F.3d 1186, 1199 (9th Cir. 2015) (relying on allegations in a U.S. Federal Trade Commission complaint and settlement).

As such, Defendants' attempt to chill legitimate whistleblowing activity and strike Dr. Olymbios' allegations from the Complaint must be denied.

## IV.    CONCLUSION

Based on the foregoing, Lead Plaintiffs respectfully request that the Court deny Defendants' motion to strike.  In the alternative, should the Court find that Lead Plaintiffs' counsel's multiple communications with Dr. Olymbios and his counsel concerning their investigative efforts, corroborating details provided by other witnesses alleged in the Complaint, and other extensive corroborating evidence adduced by Lead Plaintiffs' counsel are somehow insufficient to satisfy the requirements of Rule 11, Lead Plaintiffs respectfully request an order vitiating Dr. Olymbios' confidentiality agreement, permitting him to speak with counsel for Lead Plaintiffs, and allowing him to produce to Lead Plaintiffs the documentary evidence in his possession.  *See, e.g.*, *Brado v. Vocera Commc'ns, Inc.*, 14 F. Supp. 3d 1316, 1323 (N.D. Cal. 2014); *In re JDS Uniphase Corp. Sec. Litig.*, 238 F. Supp. 2d 1127 (N.D. Cal. 2002) (permitting plaintiffs to conduct interviews of the

defendant corporation's former employees to gather information about alleged securities fraud notwithstanding a broad confidentiality agreement binding the former employees).

DATED:  March 13, 2023                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
JASON C. DAVIS

                                       s/ Jason C. Davis
                                       JASON C. DAVIS

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
jdavis@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
SEAN C. MCGUIRE
NICOLE Q. GILLILAND
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
smcguire@rgrdlaw.com
ngilliland@rgrdlaw.com

DATED:  March 13, 2023                    SAXENA WHITE P.A.
                                       LESTER R. HOOKER

                                       s/ Lester R. Hooker
                                       LESTER R. HOOKER

7777 Glades Road, Suite 300
Boca Raton, FL  33434
Telephone:  561/394-3399
561/394-3382 (fax)
lhooker@saxenawhite.com

LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE ALLEGATIONS IN
PLAINTIFFS' AMENDED COMPLAINT - 3:22-cv-03023-TLT                          - 14 -

SAXENA WHITE P.A.
DAVID R. KAPLAN
12750 High Bluff Drive, Suite 475
San Diego, CA  92130
Telephone:  858/997-0860
858/369-0096 (fax)
dkaplan@saxenawhite.com

SAXENA WHITE P.A.
STEVEN B. SINGER
RACHEL A. AVAN
JOSHUA H. SALTZMAN (admitted *pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY  10606
Telephone:  914/437-8551
888/631-3611 (fax)
ssinger@saxenawhite.com
ravan@saxenawhite.com
jsaltzman@saxenawhite.com

Lead Counsel for Lead Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on March 13, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Jason C. Davis
JASON C. DAVIS

ROBBINS GELLER RUDMAN
& DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
Email:  jdavis@rgrdlaw.com

# Mailing Information for a Case 3:22-cv-03023-TLT Plumbers & Pipefitters Local Union #295 Pension Fund v. CareDx, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Alec T Coquin**
  acoquin@labaton.com

- **Charles Dean Cording**
  ccording@willkie.com,mao@willkie.com

- **Jason Cassidy Davis**
  jdavis@rgrdlaw.com,e_file_sd@rgrdlaw.com,bengfelt@rgrdlaw.com

- **Barrington E. Dyer**
  bdyer@willkie.com,CLee2@willkie.com,CCording@willkie.com,maosf1@willkie.com,BSullivan@willkie.com,cwindsor@willkie.com

- **Laura Leigh Geist**
  lgeist@willkie.com,tnocco@willkie.com,maosf1@willkie.com,cwindsor@willkie.com

- **Nicole Quaid Gilliland**
  ngilliland@rgrdlaw.com

- **Lester Rene Hooker**
  lhooker@saxenawhite.com,e-file@saxenawhite.com

- **David R. Kaplan**
  dkaplan@saxenawhite.com,e-file@saxenawhite.com,lmix@saxenawhite.com

- **Sean Christopher McGuire**
  smcguire@rgrdlaw.com

- **Erica Symone Miranda**
  emiranda@willkie.com,tnocco@willkie.com,maosf@willkie.com,ealcantara@willkie.com,mallard@willkie.com,cwindsor@willkie.com

- **Tariq Mundiya**
  tmundiya@willkie.com,mao@willkie.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,shawnw@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Joshua H Saltzman**
  jsaltzman@saxenawhite.com

- **Brady Michael Sullivan**
  bsullivan@willkie.com,CLee2@willkie.com,mao@willkie.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)