Laura Leigh Geist (CSB No. 180826)
Barrington Dyer (CSB No. 264762)
WILLKIE FARR & GALLAGHER LLP
One Front Street, 34th Floor
San Francisco, CA  94111
Telephone:  (415) 848-7400
E-mail:  lgeist@willkie.com
         bdyer@willkie.com

Tariq Mundiya (admitted *pro hac vice*)
Charles Cording (admitted *pro hac vice*)
Brady Sullivan (admitted *pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY  10019-6099
Telephone:  (212) 728-8000
E-mail:  tmundiya@willkie.com
         ccording@willkie.com
         bsullivan@willkie.com

Attorneys for Defendants
*CareDx, Inc., Reginald Seeto,*
*Ankur Dhingra, Marcel Konrad,*
*and Peter Maag*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PLUMBERS & PIPEFITTERS LOCAL UNION #295 PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>                     Plaintiff,<br><br>     vs.<br><br>CAREDX, INC., REGINALD SEETO, ANKUR DHINGRA, MARCEL KONRAD, and PETER MAAG,<br><br>                     Defendants. | Case No. 22-cv-03023-TLT<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**<br><br>Date:  May 16, 2023<br>Time:  2:00 PM<br>Courtroom:  9, 19th Floor<br>Judge:  Hon. Trina L. Thompson |

**TABLE OF CONTENTS**

I.      Introduction ...............................................................................................................1

II.     Plaintiffs Fail To Plead the Requisite Strong Inference of Fraudulent Intent.........................2

    A.      The AC Fails To Allege That Mr. Konrad and Mr. Dhingra Acted With Scienter .....2

    B.      Any Allegations As To Dr. Maag's Scienter Fail And Are Irrelevant In Any Event..3

    C.      The AC Fails To Allege Scienter As To Dr. Seeto........................................................3

    D.      The AC Fails To Allege Scienter As To CareDx ...........................................................7

III.    Plaintiffs Fail To Plead Materially False Statements or Omissions ........................................7

    A.      The AC Fails To Allege Falsity Because It Fails To Allege that CareDx Used RemoTraC To Bill Medicare For Medically Unnecessary Tests.................................7

    B.      Representations In Underwriter Agreements Prefaced With Express Warnings To Investors Not To Rely On Those Representations Are Not Actionable ......................8

    C.      Plaintiffs Ignore That the Vast Majority of the Other Challenged Statements Are Either Forward-Looking Statements Protected by the PSLRA Safe Harbor or Inactionable Statements of Corporate Optimism...........................................................9

    D.      The AC Fails To Allege That Statements About RemoTraC Fulfilling "Unmet Needs" Were False.......................................................................................................11

    E.      The AC Fails To Allege That Mr. Dhingra's Statement in October 2021 that CareDx Had Seen "No Change" In Medicare Billing Practices Was False...........................11

IV.     Plaintiffs Fail To Plead Scheme Liability...............................................................................12

V.      Plaintiffs Fail To Plead Loss Causation..................................................................................14

VI.     Conclusion ...............................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Akorn, Inc. Sec. Litig.*,
    240 F. Supp. 3d 802 (N.D. Ill. 2017) .......................................................................7

*In re Alphabet, Inc. Sec. Litig.*,
    1 F. 4th 687 (9th Cir. 2021) .....................................................................................13

*In re Bristol Myers Squibb Co. Sec. Litig.*,
    586 F. Supp. 2d 148 (S.D.N.Y. 2008) ......................................................................7

*Brendon v. Allegiant Travel Co.*,
    412 F. Supp. 3d 1244 (D. Nev. 2019) .......................................................................6

*In re CytRx Corp. Sec. Litig.*,
    2015 WL 5031232 (C.D. Cal. July 13, 2015) ...........................................................9

*Cozzarelli v. Inspire Pharms., Inc.*,
    549 F.3d 618, 628, n.2 (4th Cir. 2008) .....................................................................7

*Di Donato v. Insys Therapeutics Inc.*,
    2017 WL 3268797 (D. Ariz. Aug. 1, 2017) .............................................................15

*In re Galena Biopharma, Inc. Sec. Litig.*,
    117 F. Supp. 3d 1145 (D. Ore. 2015) ...............................................................8, 9, 13

*In re Gentiva Sec. Litig.*,
    932 F. Supp. 2d 352 (S.D.N.Y. 2008 ...................................................................4, 15

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2014) .................................................................................15

*Glazer Capital Management LP v. Magistri*,
    549 F.3d 736 (9th Cir. 2008) .......................................................................2, 5, 9, 12

*Hefler v. Wells Fargo & Co.*,
    2018 WL 1070116 (N.D. Cal. Feb. 27, 2019) .........................................................11

*In re Impac Mort. Holdings, Inc. Sec. Litig.*,
    554 F. Supp. 2d 1083 (C.D. Cal. 2008) .....................................................................7

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
    998 F.3d 397 (9th Cir. 2021) ...................................................................................14

*Jaroslawicz v. M&T Bank Corp.*,
    2017 WL 1197716 (D. Del. Mar. 30, 2017) ..............................................................9

*Knurr v. Orbital ATK, Inc.*,
  272 F. Supp. 3d 784 (E.D. Va. 2017) ..................................................................................7

*Konkol v. Diebold, Inc.*,
  590 F.3d 390 (6th Cir. 2009) ..............................................................................................7

*Lloyd v. CVB Fin. Corp.*
  811 F. 3d 1200 (9th Cir. 2016) .........................................................................................15

*Loftus v. Primero Mining Corp.*,
  230 F. Supp. 3d 1209 (C.D. Cal. 2017) ............................................................................12

*Loos v. Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014) ............................................................................................15

*Lorenzo v. SEC*,
  139 S. Ct. 1094 (2019) ......................................................................................................13

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ....................................................................................1, 5, 10

*Mineworkers' Pension Scheme v. First Solar*,
  881 F.3d 750 (9th Cir. 2018) ............................................................................................14

*In re Nektar Therapeutics*,
  2020 WL 3962004 (N.D. Cal. July 13, 2020) ...................................................................13

*In re Nektar Therapeutics Sec. Litig.*,
  34 F.4th 828 (9th Cir. 2022) .............................................................................................14

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
  998 F.3d 397 (9th Cir. 2021) ............................................................................................14

*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020) ..............................................................................................5

*Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*,
  2018 WL 3126393 (N.D. Cal. June 26, 2018) ....................................................................9

*Nozak v. Northern Dynasty Minerals Ltd.*,
  804 F. App'x 732 (9th Cir. 2020) .......................................................................................6

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004) .........................................................................................3, 4

*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014) ............................................................................................6

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014) ..............................................................................................2

iii

*Prodanova v. H.C. Wainwright & Co., LLC*,
　993 F.3d 1097 (9th Cir. 2021) .................................................................................6

*In re Rigel Pharms., Inc. Sec. Litig.*,
　697 F.3d 869 (9th Cir. 2012) ..................................................................................5

*Scheller v. Nutanix, Inc.*,
　450 F. Supp. 3d 1024 (N.D. Cal. 2020) ..................................................................4

*SEC v. Coldicutt*,
　2022 WL 17069835 (S.D. Cal. Nov. 17, 2022) ......................................................13

*SEC v. Smith*,
　2020 WL 6115077 (C.D. Cal. June 3, 2020) ..........................................................13

*Shearson/Am. Express, Inc. v. McMahon*,
　482 U.S. 220 (1987)................................................................................................8

*South Ferry LP, No. 2 v. Killinger*,
　542 F.3d 776 (9th Cir. 2008) ..............................................................................5, 6

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*,
　552 U.S. 148 (2008)...............................................................................................14

*Tellabs, Inc. v. Makor*,
　551 U.S. 308 (2007)............................................................................................5, 7

*In re WageWorks, Inc. Sec. Lit.*,
　2020 WL 2896547 (S.D. Cal. June 1, 2020)............................................................6

*Webb v. SolarCity Corp.*,
　884 F.3d 844 (9th Cir. 2018) ..................................................................................5

*West v. Ehealth, Inc.*,
　2016 WL 948116 (N.D. Cal. Mar. 14, 2016)....................................................11, 12

*Wochos v. Tesla, Inc.*,
　985 F.3d 1180 (9th Cir. 2021) ...............................................................................14

*Zucco Partners v. Digimarc Corp.*,
　552 F.3d 981 (9th Cir. 2009) ..................................................................................6

**STATUTES RULES AND REGULATIONS**

Securities Exchange Act of 1934
　Section 10(b) ........................................................................................................14
　Section 20(a) ........................................................................................................15

Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67............................ *passim*

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
No. 22-cv-03023-TLT

Federal Rules of Civil Procedure
  Rule 9(b)  .............................................................................................................................3

17 CFR § 240.10b5-1 (2023) ...........................................................................................12, 13

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
No. 22-cv-03023-TLT

## I.   INTRODUCTION

Plaintiffs' Opposition (ECF No. 68, "Opp.") doubles down on the claim that RemoTraC—a service designed by CareDx to make at-home testing services available to vulnerable transplant patients during a global pandemic—was a "guise" to commit Medicare fraud.  But the question presented is not whether Plaintiffs have pled *Medicare fraud* (they have not), but whether they have pled *securities fraud*.  On this dispositive question, the Opposition's failure to link their sweeping RemoTraC "scheme" to the statements CareDx actually made to investors only reinforces the parallels between this case and the Ninth Circuit's dismissal in *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008).  Regardless of whether the Court strikes the allegations from disgruntled former CareDx employee Michael Olymbios, or credits all of Plaintiffs' allegations of an illicit RemoTraC "scheme" (which CareDx vigorously disputes), Plaintiffs have failed to meet the rigorous pleading standards imposed by the PSLRA.

*First*, the PSLRA requires that Plaintiffs plead a "compelling" inference of scienter.  As to two Individual Defendants (Ankur Dhingra and Marcel Konrad), Plaintiffs do not dispute they have failed to plead facts that would support any inference of scienter.  As to Individual Defendant Dr. Peter Maag, Plaintiffs concede that he was not the "maker" of any statement challenged in the Amended Complaint ("AC").  Accordingly, any allegations concerning Dr. Maag's state of mind are irrelevant because his state of mind cannot be imputed to any other Defendants, including CareDx.  And Plaintiffs' attempt to avoid that result by pivoting from a theory of false statement liability to a theory of "scheme liability" in the Opposition is foreclosed by the allegations of their own complaint.  As to the final Individual Defendant (Dr. Reginald Seeto), the allegations are plainly insufficient.  None of the Former Employees ("FEs") alleges that Dr. Seeto was aware of any misconduct that would render false his statements to investors about the RemoTraC service (or other statements).  Plaintiffs' theory relies solely on:  (1) a single vague and conclusory allegation from Dr. Olymbios; (2) trades that were properly executed pursuant to a Rule 10b5-1 plan; and (3) a "core operations" theory that applies only in "rare circumstances" and has been repeatedly rejected by courts in this Circuit.  Accordingly, the AC should be dismissed on the failure to plead scienter alone.

DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT
No. 22-cv-03023-TLT

*Second*, the PSLRA requires that Plaintiffs plead the falsity of CareDx's public statements with particularity.  This inquiry requires review of each of the statements that the AC alleges to be materially false or misleading.  Here, the alleged misrepresentations broadly fall into three categories, each of which is deficient.

- *Underwriter agreement representations*.  These representations cannot, as a matter of law, form the basis for securities fraud claims because CareDx expressly warned investors <u>not</u> to rely on them.  *Glazer Capital Management LP v. Magistri*, 549 F.3d 736 (9th Cir. 2008), cited by Plaintiffs in response, is inapposite because the agreement at issue in that case was disclosed without any such warnings.

- *Representations Regarding RemoTraC, CareDx's Testing Services Segment, and CareDx's Overall Business Model*.  Plaintiffs concede that many of these statements are protected by the PSLRA "Safe Harbor" for forward-looking statements.  Other challenged statements are inactionable statements of corporate optimism, have no connection to Plaintiffs' core theory of RemoTraC fraud, or are otherwise deficient.

- *Representations Regarding Average Sales Price ("ASP")*.  The Opposition does not even mention the challenged statements regarding CareDx's declining ASPs.  Instead, it focuses on one statement by Mr. Dhingra about Medicare billing, but Plaintiffs' theory of falsity depends entirely on a gross mischaracterization of disclosures from a year later.  This is not improper fact argument, as Plaintiffs claim, but appropriate examination of the very disclosures at issue that are integrally relied on in the AC.

*Finally*, the AC does not plead loss causation because it fails to allege that any purported fraud was ever "revealed" to the market.  Opp. 23.

## II. PLAINTIFFS FAIL TO PLEAD THE REQUISITE STRONG INFERENCE OF FRAUDULENT INTENT

### A. The AC Fails To Allege That Mr. Konrad and Mr. Dhingra Acted With Scienter

There is not a single substantive allegation in the AC directed at Mr. Konrad, and the Opposition does not argue otherwise.  The claims against Mr. Konrad must be dismissed.  *See Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014) ("we require that the Plaintiffs allege scienter with respect to each of the individual defendants").

Likewise, the Opposition does not identify any allegations speaking to Mr. Dhingra's state of mind.  Indeed, Mr. Dhingra did not even work at CareDx during Dr. Olymbios' time at the Company.  The primary liability claims against Mr. Dhingra must therefore also be dismissed.

**B.    Any Allegations As To Dr. Maag's Scienter Fail And Are Irrelevant In Any Event**

Defendants' Motion to Dismiss ("Opening Brief" or "MTD") demonstrated that the AC fails to adequately allege intent to defraud as to Dr. Maag.[1]  Even if it does, such allegations would be irrelevant.  It is undisputed that:  (1) factually, Dr. Maag is not alleged to have "made" a false statement; and (2) legally, where an Individual Defendant (here, Dr. Maag) is not alleged to have made a false statement, that defendant's state of mind cannot be imputed to some other defendant who *is* alleged to have made a false statement (here, CareDx, Dr. Seeto, or Mr. Dhingra).  *See* MTD 20 n.25; Opp. 20 n.21.  Accordingly, Dr. Maag's state of mind is irrelevant to Plaintiffs' claims.[2]

**C.    The AC Fails To Allege Scienter As To Dr. Seeto**

The AC fails to plead facts giving rise to a strong inference that Dr. Seeto intended to defraud investors.  Each of the allegations directed at Dr. Seeto is addressed below.

Olymbios Allegations:  Plaintiffs rely heavily on a single allegation, copied directly from Dr. Olymbios' separate complaint, that Dr. Olymbios "raised concerns" to Dr. Seeto and others.  Opp. 20.[3] But the Opposition fails to demonstrate how this vague and generalized allegation passes muster under the PSLRA and Rule 9(b), even assuming it is not stricken.  Fatally, Plaintiffs still do not allege what Dr. Olymbios actually communicated to Dr. Seeto, what "concerns" were discussed (or whether they related to RemoTraC), or when.  *See* MTD 22.

Plaintiffs claim that this allegation is sufficient under *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004).  Opp. 20.  It is not.  In *Oracle*, plaintiffs challenged statements regarding sales projections.  *Oracle*, 380 F.3d at 1231.  The Ninth Circuit held that plaintiffs adequately alleged scienter because "all three top executives said that they monitored"

---

[1] *See* MTD 21 n.26.  For example, Dr. Olymbios' allegation that Dr. Maag told him in mid-2020 not to put in writing that CareDx "never billed patients," ¶ 57, does not contradict any of the alleged misstatements and therefore cannot suggest intent to defraud.  MTD 21.  Plaintiffs offer no response.
[2] As explained in Section IV *infra*, Plaintiffs cannot escape this conclusion by pivoting to a "scheme liability" theory against Dr. Maag.
[3] Contrary to Plaintiffs' suggestion, the AC does not allege that Dr. Seeto "behaved" like a "crook" or "fraud."  Opp. 20.  Rather, the AC alleges that an unidentified CareDx employee told Dr. Olymbios "[w]e're a bunch of crooks and frauds."  Opp. 20, 23.  Either way, this unsupported allegation—from an anonymous former employee whom the AC does not even identify, much less describe as required by Ninth Circuit law (*see* MTD 22–23)—is far too generalized to raise a strong inference of scienter.

3

DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT
No. 22-cv-03023-TLT

an "internal database covering global information about sales at Oracle," including forecast data "on a global basis . . . up to the minute at any level of detail that you want to see." *Id.* This is a far cry from Dr. Olymbios' vague and generalized allegation that he "discussed" unspecified "concerns" with Dr. Seeto and others at an unknown point in time. *See Scheller v. Nutanix, Inc.*, 450 F. Supp. 3d 1024, 1042 (N.D. Cal. 2020) (scienter not pled where plaintiff alleged that "the declining pipeline" was discussed with defendants because plaintiff did "not provide any specific information about any particular meeting or the content of what was discussed").

Notably, Plaintiffs do not cite any allegations by the eight FEs that even mention Dr. Seeto—none of the FEs reported to him—let alone suggest that Dr. Seeto was made aware or recklessly disregarded that the challenged statements were false or misleading. *See* MTD 22–23; *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 378 (S.D.N.Y. 2008) (cited at Opp. 23 n.22) ("The main issue with regard to the [confidential witness] allegations, and one that is potentially fatal, concerns whether the CWs' accounts sufficiently alleged that executives at the company—namely the Individual Defendants—knew or had access to information showing that" the challenged statements were false). This is a striking pleading deficiency that the Opposition simply ignores. The following table illustrates the AC's shortcomings in this respect:

| Former Employee | Allegations Concerning Dr. Seeto |
|---|---|
| FE-1 | None |
| FE-2 | None |
| FE-3 | None |
| FE-4 | None |
| FE-5 | None |
| FE-6 | None |
| FE-7 | None |
| FE-8 | None |
| Dr. Olymbios | Allegedly "raised concerns" to Dr. Seeto and others; no allegations of what concerns were raised (or whether they related to RemoTraC), how they were raised, or when. |

<u>Insider sales</u>:  Plaintiffs do not refute that all of the alleged "insider sales" by Dr. Seeto, Opp. 22, were made pursuant to a 10b5-1 trading plan.  That fact *negates* any inference of scienter as a

matter of law, and Plaintiffs do not argue otherwise.[4]  *See* MTD 21–22; *Webb v. SolarCity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) ("[W]e have recognized that a lack of stock sales can detract from a scienter finding.").  Indeed, a lack of non-plan stock sales weighs against a strong inference of scienter because it is "inconsistent with Plaintiff's theory that financial motive establishes scienter."  *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012); *see also Corinthian Colleges*, 540 F.3d at 1067 (holding absence of stock sales suggested that there was no insider information from which to benefit and supported finding that there was not a strong inference of scienter).

Core operations doctrine:  Plaintiffs rely heavily on the often rejected "core operations doctrine," whereby courts "in rare circumstances" may "conceivably" infer scienter if the complaint alleges facts such that it would be "absurd to suggest" that defendants were unaware of the alleged falsity.  *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 786 (9th Cir. 2008) (cited at Opp. 21).

Here, Plaintiffs point to the following allegations in support of their core operations argument: the Chief Medical Officer (not a defendant) "paid very close attention to sales of AlloSure"; Dr. Maag testified in unrelated litigation that AlloSure was "the one growth drive[r]"; senior management attended meetings to discuss "sales and marketing";[5] and Dr. Maag's assistant "observed [Dr. Maag] orchestrating kickbacks" six months before the Class Period.  Opp. 21.

These allegations fall well short of the "rare" circumstance in which the core operations doctrine is applicable.  First, these allegations largely involve other individuals and are therefore not imputable to Dr. Seeto.  *See* Sec. II.B., *supra.*  Second, allegations about monitoring the business and attending meetings do not give rise to a strong inference such that it would be "absurd" to suggest that Dr. Seeto was unaware that the statements at issue were false, particularly when not a *single one* of the eight FEs said anything about Dr. Seeto's knowledge of RemoTraC—the conduct at the core of

---

[4] In assessing whether the complaint has alleged a strong inference of scienter, "the court must take into account plausible opposing inferences," *Tellabs, Inc. v. Makor*, 551 U.S. 308, 323 (2007), "including inferences unfavorable to the plaintiffs," *Corinthian Colleges*, 540 F.3d at 1061.  The inference "must be cogent, and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.  The result "is an 'exacting' pleading obligation . . . that 'present[s] no small hurdle'" for Plaintiffs. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020).

[5] *See Glazer*, 549 F.3d at 745–46 (allegations of "attendance at meetings" are insufficient to adequately plead scienter).

5

DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT
No. 22-cv-03023-TLT

the AC. *See Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1109 (9th Cir. 2021) ("[C]orporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud."); *Nozak v. Northern Dynasty Minerals Ltd.*, 804 F. App'x 732, 734 (9th Cir. 2020) ("The core operations theory cannot support a strong inference of scienter because Plaintiffs have not provided detailed and specific allegations about management's exposure to factual information within the company"); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063–64 (9th Cir. 2014) ("absent some additional allegation of specific information conveyed to management and related to the fraud or other allegations supporting scienter, the core operations inference will generally fall short of a strong inference of scienter"); *S. Ferry*, 542 F.3d at 784 ("Where a complaint relies on allegations that management had an important role in the company but does not contain additional detailed allegations about the defendants' actual exposure to information, it will usually fall short of the PSLRA standard").[6]

WhatsApp and Related Messaging:  The AC does not even allege that Dr. Seeto used WhatsApp or related messaging applications, but, even if it did, the Opposition cites no authority suggesting that the use of message applications with ephemeral functionality may contribute to, let alone establish, a strong inference of scienter.

CFO Resignation:  Plaintiffs claim that the "timing of Dhingra's departure" is "suspicious." Opp. 23.  But there are no allegations leading to a strong inference that CareDx, let alone Dr. Seeto, "forced [Mr. Dhingra] to resign because of its knowledge of [his] role in the fraudulent representations." *Zucco Partners v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009).  As such, Mr. Dhingra's resignation does not give rise to a strong inference of scienter.[7]

---

[6] Contrast the allegations here with those in *Brendon v. Allegiant Travel Co.* (cited at Opp. 21), where the complaint "contain[ed] particularized allegations from the FEs that the individual defendants knew of the airline's maintenance issues[.]"  412 F. Supp. 3d 1244, 1261 (D. Nev. 2019).

[7] In *In re WageWorks, Inc. Sec. Lit.*, 2020 WL 2896547 (S.D. Cal. June 1, 2020) (cited at Opp. 23), the same press release that announced the simultaneous resignation of the CEO and CFO also announced a restatement of financials caused by "'*management's failure* to timely communicate all pertinent information.'"  2020 WL 2896547, at *6 (S.D. Cal. June 1, 2020) (emphasis added).  Here, by contrast, CareDx stated that Mr. Dhingra's resignation was "'not a result of . . . any matter relating to [CareDx's] accounting or financial policies or procedures or regulatory matters.'"  ¶ 109.

6

Government Investigations:  The existence of government investigations, Opp. 22–23, does not support a strong inference of scienter.  *See Konkol v. Diebold, Inc.*, 590 F.3d 390, 403 (6th Cir. 2009) ("a decision by government agencies to investigate a company is not sufficient to meet the heightened *Tellabs* standards on its own").  Indeed, "the allegation that the SEC is conducting an investigation 'is too speculative to add much, if anything, to an inference of scienter.'"  *Knurr v. Orbital ATK, Inc.*, 272 F. Supp. 3d 784, 807 (E.D. Va. 2017) (quoting *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 628 n.2 (4th Cir. 2008)).  The cases cited by Plaintiffs (Opp. 22 n.22) involved extreme facts that go far beyond the mere announcement of a government investigation.  *See, e.g.*, *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 168 (S.D.N.Y. 2008) (defendant pleaded guilty to two felony charges); *In re Akorn, Inc. Sec. Litig.*, 240 F. Supp. 3d 802, 811 (N.D. Ill. 2017) (DOJ and SEC commenced investigations after company restated its financials).

**D.      The AC Fails To Allege Scienter As To CareDx**

Because the AC fails to allege scienter against any of the Individual Defendants, the AC also fails to allege scienter against CareDx.  *See In re Impac Mort. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1101 n.12 (C.D. Cal. 2008) ("Because Plaintiffs have not properly alleged that the individual Defendants . . . acted with the requisite state of mind, they also have failed to plead corporate scienter. A corporation cannot act without human agents[.]").

* * *

The AC fails to plead facts giving rise to a strong inference of scienter, and therefore, the AC should be dismissed irrespective of whether it pleads other elements of securities fraud.

**III.     PLAINTIFFS FAIL TO PLEAD MATERIALLY FALSE STATEMENTS OR OMISSIONS**

**A.      The AC Fails To Allege Falsity Because It Fails To Allege that CareDx Used RemoTraC To Bill Medicare For Medically Unnecessary Tests**

The foundation of Plaintiffs' theory of falsity is that CareDx used RemoTraC to "induce physicians to order AlloSure" tests that were "medically unnecessary." Opp. 5.  But the Opposition does little to defend the AC's allegations in this respect, which rely exclusively on statements from unreliable FEs, and suffer from a foundational lack of plausibility.

FE-1 claims they believed some AlloSure tests were medically unnecessary based on a review of "patient records," and that physicians whom others spoke to "didn't fully understand" they were ordering AlloSure tests with RemoTraC, ¶¶ 60–61, but the Opposition cites no detail particularizing this allegation, such as: (a) what these "patient records" contained; (b) from what time period; (c) FE-1's qualifications to make this type of medical assessment; (d) how many physicians did not understand they were ordering AlloSure; or (e) when these hearsay conversations occurred. MTD 9–10. Accordingly, FE-1's allegations should not be credited. *Id.*

Dr. Olymbios and FE-4 allege that "AlloSure was bundled together with other blood tests . . . to promote and induce physicians to order AlloSure," ¶¶ 51, 66, but this conclusory allegation alone is not sufficient under the PSLRA. MTD 10 n.11. *See also* ¶¶ 63–64 (FE-2 and FE-3 allege that RemoTraC included blood draws for both routine blood tests as well as AlloSure tests).

FE-7 states that CareDx did not charge for the extra blood draw itself, ¶¶ 75–76, but the Opposition fails to explain how that practice induced physicians to order medically unnecessary AlloSure tests. Plaintiffs claim that an extra blood draw, which the AC values at $3–5, offered "value to a patient" and therefore was "valuable to doctors." Opp. 13. But the notion that this *de minimis* amount induced medically unnecessary orders is implausible. *See* MTD 9.

**B.     Representations In Underwriter Agreements Prefaced With Express Warnings To Investors Not To Rely On Those Representations Are Not Actionable**

As stated in Plaintiffs' own authorities, only statements upon which "an investor would presumably rely" are actionable under the securities laws. *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1191 (D. Ore. 2015) (cited at Opp. 14). But CareDx's contractual representations to underwriters fall outside the scope of what an investor would rely on, because CareDx expressly informed investors in the 8-K filings attaching the Underwriting Agreements that the representations were "***not* [meant] to provide investors with any other factual information regarding the Company**."[8] *Id.*; Exs. E and F (ECF Nos. 58-6, 58-7) (emphasis added).

---

[8] This warning was not a "contractual waiver of the substantive obligations imposed by the Exchange Act." Opp. 14. The Underwriting Agreements were not contracts with Plaintiffs, like in *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 223–24 (1987) (cited at Opp. 14).

DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT
No. 22-cv-03023-TLT

Plaintiffs are incorrect that "the *Glazer* court rejected the same disclaimer argument Defendants make here." Opp. 14. Defendants in *Glazer* relied on a boilerplate no-third-party-beneficiary clause within the contract itself. *Glazer*, 549 F.3d at 741.[9] Here, CareDx disclosed the Underwriting Agreements through an 8-K filing with the SEC that included unambiguous warnings directed at investors that representations contained in those agreements were not meant to convey "factual information" about CareDx.[10] That distinction is dispositive, as illustrated by *Jaroslawicz v. M&T Bank Corp.*, 2017 WL 1197716, at *5 (D. Del. Mar. 30, 2017), where the court held that statements in a merger agreement were not actionable because the company warned investors in its SEC filing that representations were "not intended by the parties to the merger agreement to be characterizations of the actual state of facts or condition of" the company.

### C.    Plaintiffs Ignore That the Vast Majority of the Other Challenged Statements Are Either Forward-Looking Statements Protected by the PSLRA Safe Harbor or Inactionable Statements of Corporate Optimism

Plaintiffs do not dispute that the statements set forth in Appendix A-1 of the Opening Brief are forward-looking and protected by the PSLRA safe harbor, MTD at 14–16 & Appendix A-1, which "constitute[s] waiver." *Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*, 2018 WL 3126393, at *3 n.3 (N.D. Cal. June 26, 2018). The Opening Brief also demonstrated, citing Ninth Circuit case law, that ten additional challenged statements constituted inactionable statements of corporate optimism. MTD at 16–17 & Appendix A-2. Again, Plaintiffs ignore Defendants' arguments.

Instead, Plaintiffs contend that every time Defendants uttered the word "RemoTraC" during the Class Period, they were making "false statements about the source of [CareDx's] success." Opp. 15–16. This same kind of sweeping theory of a securities fraud was rejected by the Ninth Circuit in

---

[9] Similarly, in *Galena*, 117 F. Supp. 3d at 1178–79, the court did not address the type of warning language present here, where CareDx investors were expressly warned that contractual representations in the Underwriting Agreements were not meant to convey factual information about CareDx. The court in *In re CytRx Corp. Sec. Litig.*, 2015 WL 5031232 (C.D. Cal. July 13, 2015) (cited at Opp. 14 n.14) did not even analyze this particular issue.

[10] It is also worth noting that in *Glazer*, the Ninth Circuit affirmed dismissal because the complaint failed to "plead individual scienter with respect to [the defendant] . . . responsible for actually making" the challenged statements—the same pleading defect from which the AC suffers in this case. 549 F.3d at 745.

9

DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT
No. 22-cv-03023-TLT

*Corinthian Colleges*. *See* 540 F.3d at 1070 ("this Circuit has consistently held that the PSLRA's falsity requirement is not satisfied by conclusory allegations that a company's class period statements regarding its financial well-being are per se false based on the plaintiff's allegations of fraud generally"). Furthermore, Plaintiffs mischaracterize their own allegations.

For example, Plaintiffs suggest that Dr. "Seeto told investors that the Company had a 'record' year because they 'creat[ed] this mobile phlebotomy service' called RemoTraC." Opp. 15. Not so. An analyst asked Dr. Seeto about what the analyst called a "record year," but plaintiffs do not challenge *any* statement from Dr. Seeto's response to that question. Ex. P (ECF No. 58-17) at 3–4. Instead, when Dr. Seeto said CareDx "creat[ed] this mobile phlebotomy service," it was in response to a separate question by an analyst about the future prospects for RemoTraC "beyond the pandemic," and had no connection to CareDx's financial success or "record year." *Id.*

As another example, Dr. Seeto *never said* "RemoTraC was part of the Company's 'nice engine of growth.'" Opp. 16 n.17. Asked about the company's future prospects, Dr. Seeto responded: "we actually got a really nice engine of growth. And I think testing serves as the area that we have focused on. We have a really great winning formula, and we'll continue to win protocols within centers . . . ." Ex. I (ECF No. 58-10) at 8. Dr. Seeto did not say *anything* about RemoTraC, and these statements are corporate puffery in any event. MTD 16–17.

Plaintiffs even twist forward-looking statements into past-tense statements to support their theory that CareDx was attributing financial success to RemoTraC. For example, Plaintiffs argue that Dr. Seeto said RemoTraC was "'the core part of our business,'" Opp. 16 n.17, but omit that he actually said: "*we expect* to have RemoTraC as the core part of our business *moving forward*."

All of the other statements that Plaintiffs group under the umbrella of "false statement[s] about the sources of [CareDx's] success" either (a) do not attribute financial success to RemoTraC and/or (b) constitute safe-harbor protected forward-looking statements or inactionable puffery. *See* ¶¶ 139, 140, 141, 143, 146, 148, 149, 150, 151, 161; Opp. 15–17.

DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT
No. 22-cv-03023-TLT

**D.    The AC Fails To Allege That Statements About RemoTraC Fulfilling "Unmet Needs" Were False**

As Plaintiffs now acknowledge, the AC itself alleges that RemoTraC tests "were needed by the patients" and transplant centers, given the urgent demand for mobile at-home services during the height of the pandemic. *See* Opp. 17; *see* ¶ 60. Thus, Dr. Seeto's statements describing RemoTraC as "addressing an unmet need" during COVID were true. MTD 17.

Plaintiffs argue that these statements were nevertheless misleading because RemoTraC's "true purpose was to administer medically unnecessary tests." Opp. at 17–18. But this ignores the context of Dr. Seeto's statements, where he was referring to the COVID-derived *need for mobile phlebotomy services*, not the *medical necessity* of CareDx's AlloSure tests for specific patients. *E.g.*, ¶ 129 ("[W]hat worked really, really well for us [in the kidney space] during COVID is that centers were able to ask us for help and support and we were able to address their needs and demands."). Indeed, none of the challenged statements even implicate medical necessity. *See West v. Ehealth, Inc.*, 2016 WL 948116, at *5 (N.D. Cal. Mar. 14, 2016) (finding challenged statements about insurance claims not false or misleading because "when read in context, [defendants'] statements . . . were referring to the submitted to approved rate, not the submitted to payment rate").

The allegations here bear no resemblance to *Hefler v. Wells Fargo & Co.*, 2018 WL 1070116 (N.D. Cal. Feb. 27, 2019) (cited at Opp. 17–18). In *Wells Fargo*, defendants touted sales metrics from so-called "cross sales," when in fact "many of the purported 'sales' . . . never took place[.]" *Id.* at *2. Thus, the court held that statements claiming Wells Fargo's cross-selling strategy "satisf[ied] all our customers' financial needs" were false. *Id.* at *6. Here, the AC does not allege that CareDx fabricated RemoTraC orders that did not exist. And, importantly, there were no allegations in *Wells Fargo* that customers had *any* need for the additional accounts (because the customers were not even aware that Wells Fargo was adding accounts). *Id.* at *2.

**E.    The AC Fails To Allege That Mr. Dhingra's Statement in October 2021 that CareDx Had Seen "No Change" In Medicare Billing Practices Was False**

The Opposition wholly ignores the challenged statements relating to Average Sales Price, thus conceding that those statements were not false. ¶¶ 153, 156, 162; *see* MTD 18–20.

DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT
No. 22-cv-03023-TLT

Plaintiffs focus only on Mr. Dhingra's October 28, 2021 statement that CareDx had not observed any "change" in "Medicare billing practices," Opp. 19, but they cannot point to any well-pleaded allegations suggesting that Mr. Dhingra's statement was false or misleading.[11]

Plaintiffs merely restate their claims that "Medicare reimbursements plummeted 50%" and that CareDx's ASPs declined because of "government scrutiny," relying on an unsupported interpretation of statements made by Mr. Jain on November 15, 2022. Opp. 19. Plaintiffs do not even attempt to grapple with the Opening Brief, in which Defendants demonstrated that Mr. Jain *never said* that Medicare reimbursements had declined by 50%, and attributed declining ASPs exclusively to factors *other than* Medicare scrutiny. MTD 18–19. This is not a factual dispute, as Plaintiffs suggest. Opp. 19. Plaintiffs' mischaracterization of Mr. Jain's statements is evidenced by the very disclosure Plaintiffs purport to rely on and thus need not be credited even at the pleading stage. *See Ehealth, Inc.*, 2016 WL 948116, at *5 (the "Court will not accept interpretations of the statements that are taken out of context and are not plausible on its face").

Plaintiffs also state that Medicare used "harsh language" when it allegedly "start[ed] its inquiry into the Company's billing" in mid-November 2022. Opp. 19. Even accepting this allegation—which is not well-pleaded, MTD 20 n.24—the "start" of an "inquiry" into "billing" in *November 2022* does not plausibly suggest that Medicare was rejecting CareDx reimbursement claims because of alleged fraud in *October 2021*, when Mr. Dhingra made the challenged statement. *See Loftus v. Primero Mining Corp.*, 230 F. Supp. 3d 1209, 1233 (C.D. Cal. 2017) ("the fact that an allegedly fraudulent statement and a later statement are *different* does not necessarily establish falsity because the statement must be evaluated at the time it was made and not by hindsight").

## IV.    PLAINTIFFS FAIL TO PLEAD SCHEME LIABILITY

Recognizing that the AC fails to allege that Dr. Maag made any false statements, *see* Sec. II.B. *supra*, Plaintiffs argue that Dr. Maag committed a different type of securities fraud—so-called "scheme liability" under SEC Rule 10b-5(a) and (c). Opp. 20 n.21, 21–22, 25. Rules 10b-5(a) and

---

[11] In any event, the AC fails to allege that the maker of the statement, Mr. Dhingra, had the requisite scienter, and therefore the "no change" statement cannot form the basis of Plaintiffs' claims. *See Glazer*, 549 F.3d at 742, 745 (9th Cir. 2008).

DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT
No. 22-cv-03023-TLT

(c) "prohibit manipulative or deceptive acts, versus material misrepresentations or omissions," which are implicated under Rule 10b-5(b). *Galena*, 117 F. Supp. 3d at 1192.

To plead scheme liability, Plaintiffs must allege: "(1) the defendant committed a deceptive or manipulative act in furtherance of the alleged scheme; (2) scienter; (3) a connection between the alleged deceptive or manipulative act and the purchase or sale of a security; (4) reliance upon the alleged deceptive or manipulative act; (5) economic loss; and (6) loss causation." *In re Nektar Therapeutics*, 2020 WL 3962004, at *13 (N.D. Cal. July 13, 2020). Classic examples of "schemes" to defraud investors include Ponzi schemes, market manipulation through wash trades, "pump and dump" schemes, or financial statement fraud effected through sham companies.[12]

Here, Plaintiffs' attempt to pivot to a theory of scheme liability is foreclosed by the AC, which alleges misstatement liability, not scheme liability.[13] The crux of the AC is that Defendants (not including Dr. Maag) (1) "made false and misleading statements"; (2) "as a result of the materially false and/or misleading statements and/or omissions . . . CareDx's common stock traded at artificially inflated prices"; and (3) "relying directly or indirectly on the false and misleading statements," Plaintiffs "purchased CareDx common stock during the Class Period at artificially inflated prices and were damaged thereby." ¶¶ 125, 210, 224. But this is insufficient to establish the requisite elements of scheme liability against Dr. Maag (or any other defendant):

- ***No alleged deceptive or manipulative act in furtherance of a scheme to defraud investors***. The AC does not allege the sort of "scheme to defraud" investors that has been previously recognized. It instead relies on allegations that Dr. Maag engaged in a scheme to defraud Medicare, Opp. 25, and that others, but not Dr. Maag, "made false

---

[12] *See SEC v. Coldicutt*, 2022 WL 17069835, at *6 (S.D. Cal. Nov. 17, 2022) (defendants "participated in fraudulent scheme to create a sham public company and register an offering of its securities with the SEC"); *SEC v. Smith*, 2020 WL 6115077, at *3 (C.D. Cal. June 3, 2020) (defendants "engaged in a Ponzi scheme"); *Galena Biopharma*, 117 F. Supp. 3d at 1193–94 (defendants allegedly "manipulate[ed] the stock price" as part of a pump and dump scheme).

[13] The Ninth Circuit, following the Supreme Court's decision in *Lorenzo v. SEC*, 139 S. Ct. 1094, 1101–02 (2019), has held that conduct amounting to a scheme to defraud investors may "overlap" with the making of false statements to investors, such as when a defendant "disseminates" false statements. *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 709 (9th Cir. 2021) (citing *Lorenzo*, 139 S. Ct. at 1101–02 (2019)). However, as Plaintiffs concede, the AC does not allege that Dr. Maag "disseminated" any false statements. *See* Opp. 20 n.21.

DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT
No. 22-cv-03023-TLT

and misleading statements and material omissions" that caused CareDx's stock to trade "at artificially inflated prices," ¶¶ 125, 210.  This is insufficient.

- ***No alleged reliance upon a scheme to defraud investors***.  The AC does not allege that Plaintiffs relied on Dr. Maag's alleged RemoTraC "scheme" in purchasing CareDx securities.  To the contrary, the AC alleges that Defendants *concealed* this scheme from investors.  *E.g.*, ¶¶ 47, 125, 193–95.  Similar allegations prompted the Supreme Court to affirm dismissal of a scheme liability claim for failure to plead reliance.  *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 160–61 (2008) (rejecting scheme liability claims because "respondents' deceptive acts, which were not disclosed to the public, are too remote to satisfy the requirement of reliance").

- ***No alleged loss caused by Dr. Maag's conduct***.  The AC fails to allege that Plaintiffs' losses were caused by Dr. Maag's alleged regulatory misconduct.  The AC alleges instead that Plaintiffs' losses were caused exclusively by the challenged statements that Dr. Maag did not make or disseminate.[14]

Accordingly, the AC fails to allege that Dr. Maag is primarily liable under Section 10(b).

## V.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

The Opposition acknowledges the well-established rule that "loss causation is satisfied by allegations that the defendant revealed the truth through corrective disclosures[.]"  Opp. 23; MTD 24.[15]  And it does not dispute that loss causation must be pleaded with particularity.  MTD 8.  But the

---

[14] *See, e.g.*, ¶ 224 ("As a result of the *dissemination of the materially false and/or misleading information and/or failure to disclose material facts* . . . the market price of CareDx common stock was artificially inflated; and relying directly or indirectly on *the false and misleading statements made by Defendants* or on the integrity of the market in which the stock trades, and/or in the absence of material adverse information known or recklessly disregarded by Defendants but *not disclosed in public statements by Defendants* during the Class Period, Plaintiffs . . . purchased CareDx common stock during the Class Period at artificially inflated prices and were damaged thereby.") (emphasis added).

[15] *See In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 839–40 (9th Cir. 2022) (corrective disclosure must "expose[] the alleged falsity" of prior misstatements); *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1197 (9th Cir. 2021).  *Mineworkers' Pension Scheme v. First Solar*, 881 F.3d 750, 753 (9th Cir. 2018) (cited at Opp. 24 n.23), did not change this rule.  Although "disclosure of the fraud is not a *sine qua non* of loss causation," *id.*, *First Solar* and subsequent circuit opinions made clear that "'when plaintiffs plead a causation theory based on market revelation of the fraud, this court naturally evaluate[s] whether plaintiffs have pleaded . . . the facts relevant to their theory.'"  *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 410 (9th Cir. 2021) (quoting *First Solar*).  There is no question that Plaintiffs have pleaded a revelation of the fraud theory of loss causation, as Plaintiffs themselves acknowledge in their Opposition.  Opp. at 23 ("Loss causation is satisfied by allegations that the defendant revealed the truth through corrective disclosures"); *see also* ¶ 6 ("Investors began to learn the truth regarding Defendants' Class Period misrepresentations . . . on October 28, 2021"); ¶ 13 ("Finally, on November 3, 2022, the truth of Defendants' fraudulent scheme was disclosed.").

14

DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT
No. 22-cv-03023-TLT

AC fails to satisfy this burden:  there are no particularized allegations demonstrating that the purported corrective disclosures "revealed the truth" of the allegedly false statements.

Plaintiffs point to CareDx's October 2021 disclosure of government subpoenas, relying on *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016).  Opp. 23–24.  However, in *Lloyd*, analysts explicitly linked the announcement of a government investigation to the alleged fraud— CVB's loan exposure with its largest borrower.  *Id.* at 1204–05.  Here, there is no allegation that anyone linked the DOJ/SEC investigation to the RemoTraC misconduct alleged in the AC, and therefore, the "announcement of an investigation . . . simply put[] investors on notice of a *potential* future disclosure of fraudulent conduct." *Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014). Furthermore, the announcement in *Lloyd* was "coupled with a subsequent revelation of the inaccuracy of" the prior representation, *Lloyd*, 811 F.3d at 1203, which is not alleged here.

Likewise, the Opposition fails to connect the announcements about declining ASPs on May 5, 2022 and November 3, 2022 with the alleged fraud.  Opp. 24.  For the same reasons set forth in the Opening Brief (MTD 18–19, 25)—which the Opposition ignores—these announcements provided no indication whatsoever that CareDx had been fraudulently billing Medicare.[16]

Lastly, analysts did not "connect[]" Mr. Dhingra's departure to the government investigations. Opp. 25.  Rather, one analyst noted that the resignation took place "in the midst of certain ongoing gov't investigations."  ¶ 109.[17]

**VI.    CONCLUSION**

Defendants respectfully request that the Court dismiss the AC with prejudice.

---

[16] Plaintiffs' comparison to *In re Gilead Scis. Sec. Litig.* is off-base because the earnings announcement in that case was "expressly alleged to have been caused by" the Company's receipt of an FDA Warning Letter implicating the alleged fraud.  536 F.3d 1049, 1058 (9th Cir. 2014).  As discussed, Plaintiffs fail to allege that CareDx's declining ASPs were caused by the alleged fraud.  *See Di Donato v. Insys Therapeutics Inc.*, 2017 WL 3268797, at *20 (D. Ariz. Aug. 1, 2017) (analyzing *Gilead* and finding loss causation not alleged where plaintiffs "failed to explicitly connect the [corrective disclosure] to accusations of fraud").

[17] Plaintiffs do not dispute that their Section 20(a) claims must at least be narrowed as set forth in the Opening Brief.  *See* MTD 25.

DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT
No. 22-cv-03023-TLT

Dated:  April 13, 2023

Respectfully submitted,


By: */s/ Laura Leigh Geist*
         Laura Leigh Geist


WILLKIE FARR & GALLAGHER LLP
Laura Leigh Geist (CSB No. 180826)
Barrington Dyer (CSB No. 264762)
One Front Street, 34th Floor
San Francisco, CA  94111
Telephone:  (415) 848-7400
E-mail:  lgeist@willkie.com
               bdyer@willkie.com


WILLKIE FARR & GALLAGHER LLP
Tariq Mundiya (admitted *pro hac vice*)
Charles Cording (admitted *pro hac vice*)
Brady Sullivan (admitted *pro hac vice*)
787 Seventh Avenue
New York, NY  10019-6099
Telephone:  (212) 728-8000
E-mail:  tmundiya@willkie.com
               ccording@willkie.com
               bsullivan@willkie.com

Attorneys for Defendants
*CareDx, Inc., Reginald Seeto,*
*Ankur Dhingra, Marcel Konrad,*
*and Peter Maag*

DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT
No. 22-cv-03023-TLT