ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
JASON C. DAVIS (253370)
ALAINA L. GILCHRIST (335807)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
jdavis@rgrdlaw.com
agilchrist@rgrdlaw.com
        – and –
SPENCER A. BURKHOLZ (147029)
NICOLE Q. GILLILAND (335132)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
ngilliland@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PLUMBERS & PIPEFITTERS LOCAL UNION #295 PENSION FUND, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) | Case No. 3:22-cv-03023-TLT |
| Plaintiff, ) ) | CLASS ACTION |
| vs. ) ) | OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE |
| CAREDX, INC., et al., ) ) | |
| Defendants. ) ) | |

4907-9949-1587.v2

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................................1

II.     LEGAL STANDARDS GOVERNING THE INCORPORATION-BY-REFERENCE VS. JUDICIAL NOTICE EXCEPTIONS TO THE PLEADING RULES ...................................................................................................................2

        A.      Judicial Notice Is an Explicitly Limited Doctrine ...................................................3

        B.      Incorporation by Reference Only Applies to Documents the TAC "Extensively" References or that "Form the Basis" of the TAC's Claims ..............3

III.    ARGUMENT: OPPOSED DOCUMENTS AND DISPUTED FACTS............................4

        A.      The Disputed SEC, DOJ, and State Materials (Exhibits N-O, Q, and T) ...............4

                1.      Defendants' "Unscrupulous" Statements About an SEC Decision Cannot Be Considered and Must "in No Way Be Construed as Indicating that [Defendants] Have Been Exonerated"................................4

                2.      The DOJ Notice "Allows the [Plaintiff] to Maintain the [Whistleblower] Action in the Name of the United States" ........................6

        B.      The Disputed "Medicare" Materials (Exhibits B-C, P) ...........................................9

                1.      Defendants' Use of an August 2024 CMS Press Release (Exhibit P)...................................................................................................................9

                2.      Defendants' Unscrupulous Use of Two Internet "Medicare" Articles Requiring "Individualized Clinical Suspicion of Rejection" (Exhibits B-C)........................................................................12

        C.      The Remaining Disputed Materials (Analyst Report, Webpage, Earnings Calls) that Are Not Cited in the Complaint (Exhibits A, D, F-H, and K).............14

        D.      Limited Opposition to Remaining Documents (Exhibits E, I-J, L-M, and R-S)........................................................................................................................16

IV.     CONCLUSION............................................................................................................17

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Bagley v. United States*,
　963 F. Supp. 2d 982 (C.D. Cal. 2013) ...............................................................................7

*Balko v. Senior Home Care, Inc.*,
　2017 WL 11037320 (M.D. Fla. Jan. 3, 2017) .....................................................................8

*Bargetto v. Walgreen Co.*,
　2022 WL 18539360 (N.D. Cal. Dec. 19, 2022) ...................................................................3

*Carroll v. Myriad Genetics, Inc.*,
　2022 WL 16860013 (N.D. Cal. Nov. 9, 2022) .....................................................................8

*DiGiacinto v. RB Health (US) LLC*,
　2023 WL 7141263 (N.D. Cal. Oct. 30, 2023)....................................................................14

*Erickson v. Neb. Mach. Co.*,
　2015 WL 4089849 (N.D. Cal. July 6, 2015)......................................................................16

*Fire & Police Ass'n of Colo. v. Abiomed, Inc.*,
　778 F.3d 228 (1st Cir. 2015) ..............................................................................................6

*Habelt v. iRhythm Techs., Inc.*,
　2022 WL 971580 (N.D. Cal. Mar. 31, 2022).................................................................8, 11

*Heckler v. Chaney*,
　470 U.S. 821 (1985)............................................................................................................6

*Hsu v. Puma Biotechnology, Inc.*,
　213 F. Supp. 3d 1275 (C.D. Cal. 2016) .........................................................................3, 15

*In re Aqua Metals, Inc. Sec. Litig.*,
　2019 WL 3817849 (N.D. Cal. Aug. 14, 2019) ..................................................................16

*In re Bos. Sci. Corp. Sec. Litig.*,
　646 F. Supp. 3d 249 (D. Mass. 2022) ................................................................................6

*In re Century Aluminum Co. Sec. Litig.*,
　2011 WL 830174 (N.D. Cal. Mar. 3, 2011),
　*aff'd*, 704 F.3d 1119 (9th Cir. 2013)................................................................................16

*In re Eventbrite, Inc. Sec. Litig.*,
　2020 WL 2042078 (N.D. Cal. Apr. 28, 2020) ...................................................................16

**Page**

*In re Lucid Grp., Inc. Sec. Litig.*,
2024 WL 3745605 (N.D. Cal. Aug. 8, 2024) .................................................................3, 16

*In re Philip Morris Int'l Inc. Sec. Litig.*,
2021 WL 4135059 (S.D.N.Y. Sept. 10, 2021),
*aff'd*, 89 F.4th 408 (2d Cir. 2023) ...........................................................................11

*In re Pixar Sec. Litig.*,
450 F. Supp. 2d 1096 (N.D. Cal. 2006) .....................................................................16

*In re Trader Joe's Co. Dark Chocolate Litig.*,
726 F. Supp. 3d 1150 (S.D. Cal. 2024).....................................................................11

*In re UTStarcom, Inc. Sec. Litig.*,
617 F. Supp. 2d 964 (N.D. Cal. 2009) .......................................................................5

*In re VeriFone Holdings, Inc. Sec. Litig.*,
704 F.3d 694 (9th Cir. 2012) .................................................................................1, 5

*Jasin v. Vivus, Inc.*,
2016 WL 1570164 (N.D. Cal. Apr. 19, 2016),
*aff'd*, 721 F. App'x 665 (9th Cir. 2018).....................................................................11

*Jedrzejczyk v. Skillz Inc.*,
2022 WL 2441563 (N.D. Cal. July 5, 2022).............................................................9, 10

*Kessman v. Myriad Genetics, Inc.*,
2019 WL 1330363 (D. Utah Mar. 25, 2019) .............................................................7

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ........................................................................... *passim*

*Kovtun v. VIVUS, Inc.*,
2012 WL 4477647 (N.D. Cal. Sept. 27, 2012),
*aff'd*, 591 F. App'x 592 (9th Cir. 2015)....................................................................11

*Love v. Int'l Hotel Assocs.*,
2021 WL 4482106 (N.D. Cal. Sept. 30, 2021) .........................................................15

*Mart v. Tactile Sys. Tech., Inc.*,
595 F. Supp. 3d 788 (D. Minn. 2022).......................................................................8

*McNeil v. Toor*,
2023 WL 5613805 (E.D. Cal. Aug. 30, 2023)...........................................................10

**Page**

*Mehedi v. View, Inc.*,
    2024 WL 3236706 (N.D. Cal. June 28, 2024) ..................................................................................11

*Mills v. Molina Healthcare, Inc.*,
    2022 WL 17825534 (C.D. Cal. Dec. 8, 2022) ..................................................................................14

*Mollaei v. Otonomo Inc.*,
    651 F. Supp. 3d 1135 (N.D. Cal. 2023) ..................................................................................11, 12, 15

*Newman v. San Joaquin Delta Cmty. Coll. Dist.*,
    272 F.R.D. 505 (E.D. Cal. 2011) ..................................................................................3

*Ortiz v. Todres & Co., LLP*,
    2018 WL 1626140 (S.D.N.Y. Mar. 30, 2018) ..................................................................................7

*Pardi v. Tricida, Inc.*,
    2024 WL 1056013 (N.D. Cal. Mar. 11, 2024) ..................................................................................8

*Rollins v. Dignity Health*,
    338 F. Supp. 3d 1025 (N.D. Cal. 2018) ..................................................................................10

*Simon v. Abiomed, Inc.*,
    37 F. Supp. 3d 499 (D. Mass. 2014),
    *aff'd sub nom. Abiomed, Inc.*, 778 F.3d 228 ..................................................................................8

*Sneed v. AcelRx Pharms., Inc.*,
    2024 WL 2059121 (N.D. Cal. May 7, 2024) ..................................................................................16

*Stamas v. Cnty. of Madera*,
    2010 WL 2556560 (E.D. Cal. June 21, 2010) ..................................................................................10

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ..................................................................................1, 6

*U.S. ex rel. Roberts v. Sunrise Senior Living, Inc.*,
    2009 WL 499764 (D. Ariz. Feb. 26, 2009) ..................................................................................7

*U.S. ex rel. Walle v. Martin Marietta Corp.*,
    1996 WL 748456 (E.D. La. Dec. 30, 1996) ..................................................................................8

*United States ex rel. Polansky v. Exec. Health Res., Inc.*,
    599 U.S. 419 (2023) ..................................................................................8

*United States v. CareDx, Inc.*,
    No. 1:21-cv-0774-AMD-LKE (E.D.N.Y.) ..................................................................................7

**Page**

*United States v. Carolina Liquid Chemistries, Corp.*,
2019 WL 3207851 (N.D. Cal. July 16, 2019)........................................................................10

*United States v. Cigna Corp.*,
2022 WL 3051010 (M.D. Tenn. Aug. 2, 2022) .......................................................................8

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*,
2014 WL 3891351 (S.D.N.Y. Aug. 8, 2014)............................................................................6

*Weston v. DocuSign, Inc.*,
669 F. Supp. 3d 849 (N.D. Cal. 2023) ...................................................................................15

*Wong v. Arlo Techs., Inc.*,
2019 WL 7834762 (N.D. Cal. Dec. 19, 2019).......................................................................16

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§77............................................................................................................................................5

31 U.S.C.
§3730(b)(1) ..............................................................................................................................7
§3730(c)(2)(A)..........................................................................................................................8

Private Securities Litigation Reform Act of 1995
Pub. L. No. 104-67, 109 Stat. 737 (1995)...............................................................................6

Federal Rules of Civil Procedure
Rule 12(b)(6)............................................................................................................................2

Federal Rules of Evidence
Rule 201 ...................................................................................................................................3

## I.  INTRODUCTION

In connection with their motion to dismiss Plaintiffs' Third Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF 133) (the "Complaint" or "TAC"), Defendants have moved for judicial notice of 20 separate exhibits.  *See* Notice of Documents Incorporated by Reference and Request for Judicial Notice in Support of Motion to Dismiss Third Amended Class Action Complaint (ECF 137) ("RJN").  Defendants' request should be denied because they have improperly used their exhibits to present their own, skewed version of disputed facts at the pleading stage.

*First*, Defendants use several exhibits concerning the governmental agencies' investigations to support Defendants' inaccurate factual argument that the agencies "found no wrongdoing." Defendants' request is improper because it concerns their version of disputed "facts" contained within these documents, and the Court may not notice documents for the truth of their facts.  Worse, these exhibits do not support Defendants' conclusion that the agencies "found no wrongdoing."  To the contrary, Defendants ignore that the DOJ *permitted* a private party to sue Defendants *in the name* of the United States.  Defendants ignore that the SEC's letter, per the SEC, "must in no way be construed as indicating that the party has been exonerated or that no action may ultimately result from the staff's investigation of that particular matter."  The DOJ and SEC are well aware that private parties are litigating Defendants' conduct; and, as Justice Ginsburg wrote, the Supreme "Court has long recognized that meritorious private actions to enforce federal antifraud securities laws *are an essential supplement* to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission (SEC)." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007).[1]  For this reason and others, the Ninth Circuit "draw[s] *no inference* from the SEC's decision not to . . . charge defendants with fraud."  *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 707 n.5 (9th Cir. 2012).  But that is exactly what Defendants invite this Court to do.  And in so doing, they invite clear error.

---

[1]  Unless otherwise noted, all emphasis is added and citations are omitted.

***Second***, Defendants offer incomplete Medicare materials that they found on the internet. Again, Defendants improperly use these exhibits to contest disputed facts. Defendants also selectively quote from these exhibits and ignore facts and related materials that contradict Defendants' inaccurate interpretations. Many of these exhibits are also dated outside of the Class Period, and none of them is an actual coverage determination. Accordingly, none has any bearing on the propriety of CareDx's billing practices during the Class Period – contrary to Defendants' misinterpretations.

Defendants also request notice of earnings call transcripts, a screen capture of a webpage, and a securities analyst's report. Defendants offer no particularized arguments regarding why these exhibits are appropriate for judicial notice or what facts from them are judicially noticeable; instead, they state generally that courts sometimes notice the existence of these types of documents. Because Defendants have not identified the specific facts for which they are requesting judicial notice, their request fails. Their request should also be rejected because they are offering these documents for the truth of the matters asserted therein.

***Finally***, Plaintiffs do not contest that the Court may notice the existence of Defendants' Exhibits E, I-J, and L-M. Plaintiffs do, however, contest noticing the documents for the truth of any "facts" asserted therein.

For all of these and the below reasons, Defendants' request for judicial notice of Exhibits A-D, F-H, K, N-Q, and T should be denied.

## II.    LEGAL STANDARDS GOVERNING THE INCORPORATION-BY-REFERENCE VS. JUDICIAL NOTICE EXCEPTIONS TO THE PLEADING RULES

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). There are two narrow and different exceptions to this rule: (1) the incorporation-by-reference doctrine; and (2) judicial notice. *See id.* These two doctrines are often abused by defendants in SEC fraud cases like this one. As the Ninth Circuit explains: "the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid

after discovery." *Id.* "This risk **is especially significant in SEC fraud matters**, where there is already a heightened pleading standard, and the defendants possess materials to which the plaintiffs do not yet have access." *Id.*

### A.    Judicial Notice Is an Explicitly Limited Doctrine

Judicial notice is an "explicitly limited doctrine" that allows "a court to consider 'a fact that is **not subject to reasonable dispute** because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1280 (C.D. Cal. 2016) (citing Fed. R. Evid. 201). A party requesting judicial notice bears the burden of persuading the trial judge that the fact is proper for judicial notice. *Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 272 F.R.D. 505, 516 (E.D. Cal. 2011). A court must "consider – and identify – which **fact or facts** it is noticing." *Khoja*, 899 F.3d at 999. "Just because the **document** itself is susceptible to judicial notice does not mean that every assertion of **fact** within that document is judicially noticeable for its truth." *Id*; *see also In re Lucid Grp., Inc. Sec. Litig.*, 2024 WL 3745605, at *5 (N.D. Cal. Aug. 8, 2024) ("The Court does not take judicial notice of the contents of those documents [SEC filings and earnings call transcripts] for their truth."); *Bargetto v. Walgreen Co.*, 2022 WL 18539360, at *2 (N.D. Cal. Dec. 19, 2022) ("Judicial notice may be taken of publications introduced to 'indicate what was in the public realm at the time, **not** whether the contents of those articles **were in fact true**.'").

### B.    Incorporation by Reference Only Applies to Documents the TAC "Extensively" References or that "Form the Basis" of the TAC's Claims

Under the incorporation-by-reference doctrine, a court may consider an extrinsic document only if: (1) the complaint "'refers extensively to the document'"; or (2) the document "'forms the basis of the plaintiff's claim.'" *Khoja*, 899 F.3d at 1002; *see also Hsu*, 213 F. Supp. 3d at 1281 (same). The Ninth Circuit has further cautioned:

> Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage. . . . If defendants are permitted to present their own version of the facts at the pleading stage – and district courts accept those facts as uncontroverted and

true – it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief.

*Khoja*, 899 F.3d at 998-99.

Here, Defendants improperly "pile on" 20 exhibits, misrepresent the content of those exhibits, and use them to "present their own version" of facts that are "subject to reasonable dispute." *Id.* Defendants' request should be denied.

## III.    ARGUMENT: OPPOSED DOCUMENTS AND DISPUTED FACTS

### A.    The Disputed SEC, DOJ, and State Materials (Exhibits N-O, Q, and T)

#### 1.    Defendants' "Unscrupulous" Statements About an SEC Decision Cannot Be Considered and Must "in No Way Be Construed as Indicating that [Defendants] Have Been Exonerated"

Defendants improperly ask the Court to take judicial notice of Exhibit O,[2] which appears nowhere in the TAC and is not central to it. Exhibit O is an SEC filing where CareDx makes this self-serving assertion: "the SEC has concluded its investigation as to the Company and does not intend to recommend an enforcement action by the SEC against the Company." Ex. O at 3. Bootstrapping from that statement, Defendants make a factual misrepresentation that the SEC and other government agencies "separately investigated Dr. Olymbios' allegations and *found no wrongdoing*." Defendants' Motion to Dismiss Third Amended Class Action Complaint (ECF 136) ("MTD") at 1. That is false.

*First*, this Court already declined to consider Exhibit O in a prior round of briefing because it was "*not central to the Complaint*" (ECF 103).[3] Indeed, Exhibit O is not even mentioned in the

---

[2]    "Exhibit" or "Ex." references are to exhibits to the Declaration of Charles D. Cording in Support of Motion to Dismiss Third Amended Class Action Complaint (ECF 136-1) ("Cording Decl.").

[3]    Exhibit N merely states that the "state regulatory agency recently advised us that it has completed its review of our business practices and determined that no further information or action is required." Ex. N at 51. It does *not* say that the agency "found no wrongdoing" or what the state regulatory agency's focus was in its "review." Exhibit N is not mentioned in the TAC, is not central to it, is disputed to the extent Defendants claim the agency "found no wrongdoing," and is further disputed because CareDx never filed any correspondence from the "state regulatory agency," meaning Defendants have not shown what the "state regulatory agency" in fact told CareDx. And CareDx's creative mischaracterizations of the DOJ and SEC materials show CareDx's descriptions lack merit.

TAC.  The facts contradict Defendants' mischaracterization of Exhibit O: specifically, fact witnesses, including 17 former CareDx employees, as well as the third-most-senior CareDx employee during the Class Period (Dr. Olymbios), contradict Maag's and Seeto's self-serving "no wrongdoing" legal "argument," which is actually a representation of fact based on inadmissible hearsay.  Defendants did not even file the SEC correspondence itself, only their self-serving characterization of it in a Form 8-K.  The Court cannot consider this "unscrupulous" and warped use of a document that is neither central to nor even "mentioned" in the TAC.  *Khoja*, 899 F.3d at 998, 1003.

Moreover, Exhibit O is not judicially noticeable for the truth of the matter asserted – *i.e*., for Defendants' misleading "no wrongdoing" assertion of fact.  *See Khoja*, 899 F.3d at 999 ("a court cannot take judicial notice of disputed facts" even if the disputed facts are set forth in a "public record[]" that a court can notice).  Indeed, as CareDx's Form 8-K admits, the SEC's letter "was provided under the guidelines set out in the final paragraph of Securities Act Release No. 5310." Ex. O at 3.  Tellingly, Defendants omit Release No. 5310's admonition that the SEC's letter "***must in no way be construed as indicating that the party has been exonerated or that no action may ultimately result from the staff's investigation of that particular matter***."  In fact, the SEC warns that Defendants'

> attempted use of such a communication ***as a purported defense*** in any action that might subsequently be brought against the party . . . ***would be clearly inappropriate and improper*** since such a communication, at the most, can mean that, as of its date, the staff of the Commission does not regard enforcement action as called for based upon whatever information it then has.

*Id.*  The SEC Release further explains that "this conclusion may be based upon various reasons, some of which . . . are ***clearly irrelevant to the merits of any subsequent action***."  *Id.*  In sum, the SEC never made the "no wrongdoing" statement that Defendants' advance now.  Notice is improper.

Even if the Court "noticed" Defendants' self-serving mischaracterization of the SEC's decision, the SEC's non-action cannot be used to negate scienter.  As the Ninth Circuit has stated: "[w]e draw ***no inference*** from the SEC's decision not to . . . charge defendants with fraud." *VeriFone*, 704 F.3d at 707 n.5; *see also In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 975 n.15 (N.D. Cal. 2009) ("the SEC's discretionary determination with respect to prosecution is not

determinative of whether Defendants, in fact, committed securities fraud"); *Vanleeuwen v. Keyuan Petrochemicals, Inc.*, 2014 WL 3891351, at \*4 n.5 (S.D.N.Y. Aug. 8, 2014) ("The SEC's decision to not prosecute its claims is irrelevant as to whether Plaintiffs have plausibly alleged claims in ***this*** case.") (emphasis in original); *In re Bos. Sci. Corp. Sec. Litig.*, 646 F. Supp. 3d 249, 273 n.28 (D. Mass. 2022) (non-action letter irrelevant to PSLRA motion to dismiss as "[t]he SEC's letter explains that it '***must in no way be construed as indicating that [the defendant company] has been exonerated or that no action may ultimately result from the staff's investigation***'").[4]

As the Supreme Court has explained, a government agency's decision not to take action against a Company is ***not*** a finding of "no wrongdoing" because: "***an agency decision not to enforce often involves a complicated balancing of a number of factors***." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

> Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, ***whether the agency has enough resources*** to undertake the action at all.

*Id.* This reasoning is particularly persuasive where, as here, private parties ***are already*** taking action to address CareDx's false claims, kickbacks, and related securities fraud violations. "This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws ***are an essential supplement*** to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission (SEC)." *Tellabs*, 551 U.S. at 313.

> **2.      The DOJ Notice "Allows the [Plaintiff] to Maintain the [Whistleblower] Action in the Name of the United States"**

As to the U.S. Government's "Notice of Election to Decline Intervention" filed in the Whistleblower Action (Ex. T), Defendants again claim that the notice shows that the DOJ "found no wrongdoing."  MTD at 1.  Exhibit Q is a CareDx press release about the DOJ notice, stating that

---

[4]   By contrast, in *Fire & Police Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 244 (1st Cir. 2015) (MTD at 9-10), the FDA expressly stated that it had closed its investigation because "[defendants'] corrective actions undertaken in response to the . . . Warning Letter had adequately addressed the FDA's concerns."  Moreover, unlike here, in *Abiomed* the defendants had made extensive disclosures about their correspondence with the FDA and their work to correct the problems.

CareDx "understands" the notice means the DOJ "closed" its case. The DOJ notice is neither mentioned in the TAC, nor does it form the basis of the TAC's claims, which means that it cannot be considered under the incorporation-by-reference exception to the pleading rules. *Khoja*, 899 F.3d at 1002.

The "judicial notice" exception also does not apply to the "no wrongdoing" factual assertion that Defendants foist upon the DOJ's notice. *Khoja*, 899 F.3d at 999 (improper to notice disputed facts in public records). The DOJ notice expressly states that the Whistleblower Action[5] can continue on behalf of the government: "Although the United States declines to intervene, we respectfully refer the Court to 31 U.S.C. §3730(b)(1), which ***allows the relator to maintain the action in the name of the United States***." Ex. T at 2; *see also Ortiz v. Todres & Co., LLP*, 2018 WL 1626140, at *3 (S.D.N.Y. Mar. 30, 2018) ("A *qui tam* [*i.e.*, whistleblower] action does not terminate in defendant's favor when the government declines to intervene."). Moreover, ***the notice expressly contemplates intervening at a later time***, stating that all filings in the action be served upon the United States so that the government may continue to follow the progress of the whistleblower lawsuit, and that "***[t]he United States reserves the right . . . to intervene in this action, for good cause, at a later date***[.]" Ex. T at 2-3. And, in fact, the court in the Whistleblower Action ***expressly ordered that the United States "is entitled to intervene in this action, for good cause, at any time."*** Whistleblower Action, ECF 21 (Oct. 7, 2024); Ex T at 2-4.[6]

When whistleblowers maintain *qui tam* actions, they may act as "private prosecutors" on behalf of the government even if the government opts not to intervene. *See, e.g.*, *Bagley v. United States*, 963 F. Supp. 2d 982, 991 (C.D. Cal. 2013). Moreover, "***even when the United States does not intervene . . . , a district court may 'permit the government to intervene at a later date upon a showing of good cause*.'" *U.S. ex rel. Roberts v. Sunrise Senior Living, Inc.*, 2009 WL 499764, at

---

[5] "Whistleblower Action" refers to *United States v. CareDx, Inc.*, No. 1:21-cv-0774-AMD-LKE (E.D.N.Y.).

[6] By contrast, in *Kessman v. Myriad Genetics, Inc.,* 2019 WL 1330363 (D. Utah Mar. 25, 2019) (MTD at 9-10), the plaintiffs merely alleged that, at the end of the class period, the company disclosed government investigations of their practices. Unlike here, the plaintiffs in *Kessman* did not allege that the investigations led to a sharp reduction in the company's Medicare billing revenue or otherwise put an end to unsustainable business practices.

*1 (D. Ariz. Feb. 26, 2009). Indeed, the government regularly intervenes in *qui tam* actions months or even years after filing a notice of non-intervention.[7] Further, **if** the DOJ **had** found Dr. Olymbios' *qui tam* action was meritless, it could have intervened and then moved to dismiss the action. *See* 31 U.S.C. §3730(c)(2)(A) ("The Government may dismiss the action notwithstanding the objections of the person initiating the action[.]"); *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 426 (2023) (the government retains the "unilateral authority" to intervene and dismiss or settle the action); *see also Mart v. Tactile Sys. Tech., Inc.*, 595 F. Supp. 3d 788, 801, 808 (D. Minn. 2022) ("The Court will consider the Complaint allegations from the qui tam action" even though "the government declined to intervene in the action."). But here, the DOJ chose to allow the case to proceed. As such, the government's present non-intervention in the Whistleblower Action does not negate scienter or falsity in this case, and the extensive liberties that Defendants have taken with the notice itself further undercut their "notice" argument because they show the document is subject to dispute. *Khoja*, 899 F.3d at 999; *Carroll v. Myriad Genetics, Inc.*, 2022 WL 16860013, at *2 (N.D. Cal. Nov. 9, 2022) ("defendant seeks notice of these documents for the sole purpose of disputing the factual allegations in the SAC, rendering judicial notice, reserved for facts not subject to reasonable dispute, inappropriate as well").

Defendants' cases are unpersuasive. *See Pardi v. Tricida, Inc.*, 2024 WL 1056013, at *4 (N.D. Cal. Mar. 11, 2024) (noticing the existence of various public records but stating "the Court does not assume the truth of any of the facts asserted"); *Habelt v. iRhythm Techs., Inc.*, 2022 WL 971580, at *6 (N.D. Cal. Mar. 31, 2022) (taking judicial notice of SEC filings where there was no dispute regarding the document's relevance or whether its content was misrepresented); *Simon v. Abiomed, Inc.*, 37 F. Supp. 3d 499, 510 (D. Mass. 2014), *aff'd sub nom. Abiomed, Inc.*, 778 F.3d 228

---

[7]    *See, e.g., United States v. Cigna Corp.,* 2022 WL 3051010, at *3 (M.D. Tenn. Aug. 2, 2022) (U.S. government intervened more than two years after electing not to intervene and more than four years after action was initiated); *Balko v. Senior Home Care, Inc.*, 2017 WL 11037320 (M.D. Fla. Jan. 3, 2017) (U.S. government intervened in false claims act case two years after filing a notice declining to intervene). Further, the fact that the government asked to continue to have all pleadings in the Whistleblower Action served on it suggests that it **is still considering intervention at a later date**. *See, e.g.*, *U.S. ex rel. Walle v. Martin Marietta Corp.*, 1996 WL 748456, at *1 (E.D. La. Dec. 30, 1996) ("The purpose of the service requirement in §3730(c)(3) is to **enable the government to monitor the action and exercise its right to intervene**.").

(lacking any mention of judicial notice or incorporation by reference).[8]  Here, the DOJ did ***not*** make any "no wrongdoing" finding as the face of the DOJ notice itself shows as discussed above.

### B.    The Disputed "Medicare" Materials (Exhibits B-C, P)

#### 1.    Defendants' Use of an August 2024 CMS Press Release (Exhibit P)

Defendants continue to improperly "pile on numerous documents to their motions to dismiss to undermine the complaint," *Khoja*, 899 F.3d at 998 (9th Cir. 2018), by making factual assertions on the basis of a few snippets from Medicare documents they found on the internet.  To start, Defendants cite a CMS press release issued on August 16, 2024 (Ex. P) – ***two years after*** the end of the Class Period on November 3, 2022 – to argue that they had no scienter because their billing practices ***during*** the Class Period were in fact proper and lawful all along.  MTD at 6-7, 9.  This tactic fails.

***First***, this document is not incorporated by reference into the TAC as it is neither mentioned in nor central to the TAC.  *Khoja*, 899 F.3d at 1001.  It is also irrelevant.  Exhibit P is a press release – not a coverage determination – and it was issued in August 2024.  It says nothing about coverage rules during the Class Period in discussing an "August 10, 2023" LCD that post-dates the Class Period (2020-2022).  Exhibit P is not subject to judicial notice because it is irrelevant.  *See Jedrzejczyk v. Skillz Inc.*, 2022 WL 2441563, at *3 (N.D. Cal. July 5, 2022) ("As for the post-class period press release, this document is irrelevant because it is outside of the class period, and thus is not subject to judicial notice.").

***Second***, Defendants completely ignore the facts that contradict their false interpretation of Exhibit P.  *Khoja*, 899 F.3d at 999 (improper to notice disputed facts).  While Exhibit P discusses so-called "surveillance" testing in specific, narrow circumstances, Defendants' billing practices did not meet these criteria.  Specifically, the press release discusses the use of tests "***[a]fter a physician-assessed pretest***, including for surveillance testing."  Ex. P at 2.  But Defendants' RemoTraC program did ***not*** involve getting "physician-assessed pretests" for AlloSure – instead, CareDx would

---

[8]    If the Court does judicially notice these Exhibits, they can be noticed only for their existence, but not for the truth of the facts they contain, for the same reasons discussed above.

*automatically* have AlloSure bundled in ***every single time a patient received routine bloodwork***, without any "pretest." *See, e.g.*, ¶116 (FE-1 describing systematic use of AlloSure without a medical necessity determination); ¶119 (FE-2 corroborating same); ¶¶121-123 (FE-3 and FE-4 corroborating same); ¶¶135-136 (FE-13 and FE-14 corroborating same). Indeed, FE-10, who reviewed denied claims, explained that many patients were getting AlloSure as often as "***every other week***" (¶128) and that "***90% of CareDx's patients were getting tested at least every month with their expensive tests***" (¶130), which is far more than allowed by any so-called surveillance "protocol." MTD at 4-5.[9]

Because Exhibit P is subject to dispute, the Court cannot consider it. *See Khoja*, 899 F.3d at 1000 ("Reasonable people could debate what exactly this [exhibit] disclosed . . . . It is improper to judicially notice a[n] [exhibit] when the substance of the [exhibit] 'is subject to varying interpretations, and there is a reasonable dispute as to what the [exhibit] establishes.'"); *McNeil v. Toor*, 2023 WL 5613805, at *2 (E.D. Cal. Aug. 30, 2023) ("When a document is subject to varying interpretations, then facts are 'subject to reasonable dispute' and are not properly subject to judicial notice."); *Stamas v. Cnty. of Madera*, 2010 WL 2556560, at *3 (E.D. Cal. June 21, 2010) (denying request for judicial notice because "interpretation of these documents go to the heart of the dispute in this litigation"); *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1032-33 (N.D. Cal. 2018) (noting a document is not susceptible to judicial notice "simply because it appears on a publicly available website, regardless of who maintains the website or the purpose of the document").

Even if the "existence" of Exhibit P may be noticeable, Defendants' unscrupulous use of the document to make disputed fact assertions is improper. *Khoja*, 899 F.3d at 998; *see also United*

---

[9]  Defendants' other CMS documents are even less persuasive. For example, Defendants attach a Company website screenshot and a handful of ambiguous comments from a CMS website. Exs. B-D. Such documents were not referenced in any way in the TAC and are not properly the subject of judicial notice, as the meaning of these documents "'is subject to varying interpretations, and there is a reasonable dispute as to what the[y] establish[].'" *Khoja*, 899 F.3d at 1000. And even if the Court considered these documents, they would in no way negate scienter. For example, one of the documents appears to contain comments from 2017 – ***three years before the Class Period*** and a year before Defendant Seeto even joined the Company (*see* Ex. B at 3) – and merely contain discussions, not conclusions, about "guidelines" for testing. Moreover, these discussions support the TAC's allegation that AlloSure requires "clinical suspicion of rejection." *See* Ex. B at 2-3 (guidelines recommend tests "***informed by individualized clinical suspicion of rejection***"); *id.* at 3 (AlloSure "used to inform on the probability of rejection ***at the time of clinical suspicion***."). Another such document relays comments about tests made by a ***different company*** (EuroFins). Ex. C.

*States v. Carolina Liquid Chemistries, Corp.*, 2019 WL 3207851, at *4 (N.D. Cal. July 16, 2019) ("Defendants' first request asks the Court to judicially notice various documents published by the [FDA] or CMS and available on those agencies' websites.  These records themselves are judicially noticeable as a general matter. . . .  But, as addressed in greater detail below, Defendants rely on those records '***to argue a fact that is in dispute[]***' . . . .  Because 'there is a reasonable dispute as to what [these records] establish[],' the Court will not take judicial notice for this purpose.") (cleaned up); *In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1164 (S.D. Cal. 2024) ("the Court can take judicial notice of government documents from a reliable source; however, they will ***not be considered*** for purposes of disputing the allegations of the CAC"); *Mollaei v. Otonomo Inc.*, 651 F. Supp. 3d 1135, 1139-40 (N.D. Cal. 2023) (Marshall, J.) ("As the facts within these exhibits go towards addressing the merits of Plaintiff's claim, the Court takes judicial notice of only the existence of these documents, ***not the facts*** contained within.").[10]

Defendants' improper use of Exhibit P is further demonstrated by other CMS "press releases" that they obviously know about but decided not to share with the Court.  In the same "Newsroom" where Defendants found Exhibit P, CMS published another "press release" dated February 29, 2024 that states:[11]

> In March 2023, the Centers for Medicare & Medicaid Services' (CMS), through its local contractors (known as Medicare Administrative Contractors or MACs) issued revised billing instructions for these tests ***in response to improper billing and overutilization***.  Billing instructions help health care providers understand when and how to bill Medicare for a covered service.  Today, the MACs updated these instructions to clarify that these tests remain available to patients ***when medically necessary and ordered by a physician***.

[10]  Defendants rely on cases that do not call for a different result.  *See Mehedi v. View, Inc.*, 2024 WL 3236706, at *4-*6 (N.D. Cal. June 28, 2024) (noticing government document where there was no dispute regarding the document's relevance or whether its content was misrepresented); *Habelt v. iRhythm Techs., Inc.*, 2022 WL 971580, at *6 (N.D. Cal. Mar. 31, 2022) (same); *Jasin v. Vivus, Inc.*, 2016 WL 1570164, at *3 n.3, *14, *21-*22 (N.D. Cal. Apr. 19, 2016), *aff'd*, 721 F. App'x 665 (9th Cir. 2018) (same); *In re Philip Morris Int'l Inc. Sec. Litig.*, 2021 WL 4135059 (S.D.N.Y. Sept. 10, 2021), *aff'd*, 89 F.4th 408 (2d Cir. 2023) (same, and discussing FDA approvals; not responses to public comments on a government website); *Kovtun v. VIVUS, Inc.*, 2012 WL 4477647 (N.D. Cal. Sept. 27, 2012), *aff'd*, 591 F. App'x 592 (9th Cir. 2015) (same, with no analysis regarding judicial notice or the specific facts or documents noticed).

[11]  February 29, 2024, CMS.gov Newsroom, "CMS Statement on Current Status of Blood Tests for Organ Transplant Rejection," https://www.cms.gov/newsroom/press-releases/cms-statement-current-status-blood-tests-organ-transplant-rejection-0 (last visited Dec. 13, 2024).

This press release, in turn, refers to the CMS March 2023 billing guidance set forth in an article that defines what a "pretest" is.[12]  That billing guidance is readily accessible in the "Medicare Coverage Database" that Defendants selectively present.  *See* ECF 137 at 2 (Cording Decl., ¶¶2-3).  There, CMS provided:

> "*A pre-test* is defined here as "other physiologic/laboratory/clinical evidence *consistent with rejection*."  Therefore, performing the molecular test [here, AlloSure] at the same time as the pre-test is *NOT compliant* with the policy.  The results of *the pre-test must* be available to the treating clinician to inform the need for a molecular test or biopsy.

*Id.*

In other words, while Defendants tout Exhibit P as "evidence" that their RemoTraC and kickback schemes were always proper, the reality is that Exhibit P, in context, simply reinforces the fact that CMS observed "improper billing."  And CMS always required a medical reason to administer AlloSure – a "pretest" showing medical necessity, at least.  This context further demonstrates the core fraud theory in this case: RemoTraC's automatic and mandatory imposition of AlloSure tests on patients – as a condition to drawing blood for standard-of-care tests, and in the context of pervasive kickbacks – was never permitted by CMS and certainly not condoned by Exhibit P.

### 2. Defendants' Unscrupulous Use of Two Internet "Medicare" Articles Requiring "Individualized Clinical Suspicion of Rejection" (Exhibits B-C)

Similarly, Exhibits B-C are incomplete documents from websites that, according to Defendants, contain "Medicare" staff's responses to public comments regarding Medicare's testing coverage rules.  MTD at 3-4.  These documents are neither referenced in the TAC nor central to the TAC's claims: they are not "incorporated by reference" into the TAC and cannot be considered under that exception to the pleading rules.  *Khoja*, 899 F.3d at 1002.

They are also heavily disputed, so they cannot be noticed for the truth of any "facts."  *Id.* at 999.  Defendants basically argue that Exhibits B and C stand for the proposition that AlloSure can be

_____

[12]  March 31, 2023, MCD Archive, "Billing and Coding: MolDX: Molecular Testing for Solid Organ Allograft Rejection" ("Original Effective Date" of "06/06/2021" with "Revision Effective Date" of "*03/31/2023*," https://localcoverage.cms.gov/mcd_archive/view/article.aspx? articleInfo= 58061:16 (last visited Dec. 13, 2024)

used 12 times a year (at an annual cost of over $34,000) (¶¶9, 93) on stable kidney patients whose standard-of-care blood tests reveal ***no clinical evidence of kidney rejection at all***.  But Exhibit B contradicts that assertion:

> Allograft rejection can occur at any time post-transplant, although it is generally more of a concern during the first year.  Guidelines that recommend frequency of testing with other non-invasive tests takes this occurrence of rejection into consideration and recommend greater frequency in the first year and decreased frequency in the years beyond the first year, ***but informed by individualized clinical suspicion of rejection***.

Ex. B at 3.  And CareDx's ***own website*** further contradicts that claim:[13]



Thus, as CareDx knows, its "Medicare Coverage" (*id.*) is limited to "[p]atients who meet clinical criteria for coverage," which requires "clinical suspicion of rejection."  *Id.*  At Exhibit C, CMS did not ***rescind*** the requirement that AlloSure have some medical necessity to obtain Medicare coverage, nor did CMS greenlight CareDx's mandatory, additional blood draws for AlloSure every time a patient needed a "standard-of-care" blood draw to test for kidney rejection.  To the contrary, Medicare required a "pretest" raising suspicion of rejection before it would pay for AlloSure, as discussed above.  Moreover, Exhibit C also does not even present the entirety of the document, but

---

[13]    CareDx, "Coverage and Reimbursement" webpage, https://caredx.com/patients-and-caregivers/coverage-and-reimbursement/ (last visited Dec. 13, 2024).

merely cherry-picks a handful of pages from that document, which is yet another reason the exhibit is unreliable and inappropriate for judicial notice.

**C.    The Remaining Disputed Materials (Analyst Report, Webpage, Earnings Calls) that Are Not Cited in the Complaint (Exhibits A, D, F-H, and K)**

Defendants acknowledge that Exhibits A, D, F-H, and K were not cited in the Complaint and that they cannot be noticed for their truth.  RJN at 3.  Instead, Defendants incorrectly assert that the Court can judicially notice "the fact that investors were aware of the information contained therein." *Id.*  Defendants' argument fails.

*First*, Defendants group these exhibits together and argue generally that other courts have noticed these types of documents.  RJN at 3-4.  In so doing, Defendants fail to identify the specific facts within these exhibits that they are requesting the Court to notice or why those specific facts meet the requirements for judicial notice.  Their request should fail for this reason alone.  *See DiGiacinto v. RB Health (US) LLC*, 2023 WL 7141263, at *3 (N.D. Cal. Oct. 30, 2023) (a party's "failure to provide a clear explanation of which facts . . . it contends are judicially noticeable precludes the court's ability to . . . determine whether the unspecified facts are subject to judicial notice"); *Mills v. Molina Healthcare, Inc.*, 2022 WL 17825534, at *6 (C.D. Cal. Dec. 8, 2022) ("Defendants argue in their reply that even though their RJN does not identify specific facts for which they seek judicial notice, their motion to dismiss does.  But the Court declines Defendants' invitation to sift through dozens of pages of briefing on their motion to dismiss to attempt to determine the scope of each of Defendants' requests for judicial notice.").

Based on their motion to dismiss, it appears Defendants are suggesting the Court should judicially notice Exhibit A for the fact that "investors were carefully attuned to the LCD during the Class Period."  MTD at 3.  But whether investors were "carefully attuned" to any "LCD" is irrelevant.  Plaintiffs do not allege that investors were unaware of the *LCD itself*.  Rather, they allege that investors were unaware Defendants were *violating* the LCD and the law by billing Medicare for "automatic" surveillance testing, without regard to medical necessity, and bumping up test volumes via illegal kickbacks.  None of this conduct was permitted by any "LCD."  Because Defendants are

asking the Court to notice Exhibit A for a fact that is not relevant, their request should be denied. *See Weston v. DocuSign, Inc.*, 669 F. Supp. 3d 849, 872 (N.D. Cal. 2023) ("I will not consider the remaining exhibits . . . because they are not relevant to my analysis.").

Defendants' arguments regarding Exhibits D, F-H, and K also fail.  From their motion to dismiss, it appears Defendants are asking the Court to notice Exhibits D, F-H, and K for the fact that investors were aware surveillance testing was part of CareDx's strategy *generally*.  *See* MTD at 4-5 ("CareDx was fully transparent with Plaintiffs and other investors that AlloSure was used for *surveillance* testing").  But none of these Exhibits discloses that CareDx was *billing Medicare* for surveillance testing that was illegal due both (a) to the kickback scheme; and (b) due to the Company's scheme to *automatically* require additional AlloSure blood draws *in order* for patients to get their standard of care test blood draws, without a physician determination of medical necessity. Accordingly, any statement that surveillance testing was part of CareDx's strategy *generally* is irrelevant because it does not show CareDx was improperly billing *Medicare* for *illegal* surveillance testing under the illegal kickback and RemoTraC schemes.  Because Defendants ask this Court to notice these Exhibits for facts that are irrelevant, their request should be denied.  *See Weston*, 669 F. Supp. 3d at 872.

Rather than make particularized arguments regarding these Exhibits, Defendants lean on the generalized statement that courts "customarily" take judicial notice of these types of documents. RJN at 4.  Not so.  Courts often refuse to take judicial notice of these types of documents, especially where, as here, Defendants are offering them to dispute the Complaint's well-pled allegations.  *See Hsu*, 213 F. Supp. 3d at 1282 (refusing to notice analyst reports "to demonstrate the information publicly available and known to the market" and refusing to notice webpage from the Wayback Machine); *Mollaei*, 651 F. Supp. 3d at 1139-40 (Marshall, J.) ("Exhibits 4 to 7 are documents that can be retrieved online. . . .  Exhibit 4 contain[s] excerpts from [company's] annual report filed with the [SEC]. . . .  As the facts within these exhibits go towards addressing the merits of Plaintiff's claim, the Court takes judicial notice of only the existence of these documents, *not the facts* contained within."); *Love v. Int'l Hotel Assocs.*, 2021 WL 4482106, at *2 (N.D. Cal. Sept. 30, 2021) ("the Ninth Circuit held that for a transcript of a conference call, the court may take judicial notice

of the fact that there was a conference call on the specified date, but may not take judicial notice of a fact mentioned in the transcript").

Defendants' cases are distinguishable. *See In re Century Aluminum Co. Sec. Litig.*, 2011 WL 830174, at \*9 (N.D. Cal. Mar. 3, 2011), *aff'd*, 704 F.3d 1119 (9th Cir. 2013) (noticing an analyst report for the fact that defendants had disclosed certain information to the market; ***not*** to show that investors generally were able to access information the defendants themselves had not disclosed); *In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at \*6-7 (N.D. Cal. Apr. 28, 2020) (noticing analyst reports that the plaintiffs had "explicitly and repeatedly" referenced); *Wong v. Arlo Techs., Inc.*, 2019 WL 7834762, at \*4 (N.D. Cal. Dec. 19, 2019) (granting request where "Plaintiff d[id] not object"); *In re Pixar Sec. Litig.*, 450 F. Supp. 2d 1096, 1100 (N.D. Cal. 2006) (not identifying specific facts noticed and pre-*Khoja*); *Sneed v. AcelRx Pharms., Inc.*, 2024 WL 2059121, at \*4 (N.D. Cal. May 7, 2024) ("Plaintiffs d[id] not oppose Defendants' requests for judicial notice."); *Erickson v. Neb. Mach. Co.*, 2015 WL 4089849, at \*1 n.1 (N.D. Cal. July 6, 2015) (non-securities-case and so not subject to the concerns outlined in *Khoja*).

### D. Limited Opposition to Remaining Documents (Exhibits E, I-J, L-M, and R-S)

Pursuant to the doctrine of incorporation by reference, Plaintiffs do not object to the Court's consideration of Exhibits E, I-J, and L-M, which are SEC filings and transcripts of earnings calls that are cited in the Complaint. Plaintiffs also do not oppose judicial notice of Exhibits R-S, which are SEC filings filed with the underwriting statements Plaintiffs claim were false and misleading. However, the Court may consider these documents for their existence only; they may not be considered for the truth of the matters asserted therein. *Lucid Grp.*, 2024 WL 3745605, at \*5 (noticing earnings calls, press releases, and SEC filings, but noting "[t]he Court does not take judicial notice of the contents of those documents for their truth"); *In re Aqua Metals, Inc. Sec. Litig.*, 2019 WL 3817849, at \*5 (N.D. Cal. Aug. 14, 2019) ("The Court will only consider the SEC filings, press releases, and conference call transcripts that Plaintiff alleges contain false and/or misleading statements for the purpose of determining what was disclosed to the market.").

## IV.    CONCLUSION

Defendants' request for judicial notice of Exhibits A-D, F-H, K, N-Q, and T and the truth of any "facts" therein should be denied in full.  Their request for notice of the truth of any "facts" in Exhibits E, I-J, and L-M also should be denied.  The Court should not consider any of the factual assertions or arguments that Defendants make on the basis of those documents.

DATED:  December 13, 2024

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
JASON C. DAVIS
ALAINA L. GILCHRIST


                                    s/ Jason C. Davis
                                 JASON C. DAVIS

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
jdavis@rgrdlaw.com
agilchrist@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
NICOLE Q. GILLILAND
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
ngilliland@rgrdlaw.com

SAXENA WHITE P.A.
LESTER R. HOOKER


                                    s/ Lester R. Hooker
                                 LESTER R. HOOKER

7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: 561/394-3399
561/394-3382 (fax)
lhooker@saxenawhite.com

SAXENA WHITE P.A.
DAVID R. KAPLAN
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Telephone: 858/997-0860
858/369-0096 (fax)
dkaplan@saxenawhite.com

SAXENA WHITE P.A.
STEVEN B. SINGER
RACHEL A. AVAN
JOSHUA H. SALTZMAN (admitted *pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: 914/437-8551
888/631-3611 (fax)
ssinger@saxenawhite.com
ravan@saxenawhite.com
jsaltzman@saxenawhite.com

Lead Counsel for Lead Plaintiffs

## ATTESTATION PURSUANT TO LOCAL RULE 5-1(i)(3)

I, Jason C. Davis, am the ECF user whose identification and password are being used to file Lead Plaintiffs' Opposition to Defendants' Request for Judicial Notice. Pursuant to Local Rule 5-1(i)(3) and in compliance with General Order No. 45 X.B., I hereby attest that Lester R. Hooker has concurred in this filing.

s/ Jason C. Davis
JASON C. DAVIS