**WILLKIE FARR & GALLAGHER LLP**
Laura Leigh Geist (CSB No. 180826)
Barrington Dyer (CSB No. 264762)
333 Bush Street, 34th Floor
San Francisco, CA  94104
Telephone:  (415) 848-7400
lgeist@willkie.com
bdyer@willkie.com

**WILLKIE FARR & GALLAGHER LLP**
Tariq Mundiya (admitted *pro hac vice*)
Charles Cording (admitted *pro hac vice*)
Brady Sullivan (admitted *pro hac vice*)
787 Seventh Avenue
New York, NY  10019-6099
Telephone:  (212) 728-8000
tmundiya@willkie.com
ccording@willkie.com
bsullivan@willkie.com

Attorneys for Defendants
*CareDx, Inc., Reginald Seeto,*
*and Peter Maag*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLUMBERS & PIPEFITTERS LOCAL UNION #295 PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAREDX, INC., PETER MAAG, and REGINALD SEETO,<br><br>Defendants. | Case No. 22-cv-03023-TLT<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT**<br><br>Date:   January 28, 2025<br>Time:  2:00 pm PT<br>Ctrm.: 10, 19th Floor – San Francisco<br>          Hon. Trina L. Thompson |

## TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER...................2

    A.    Plaintiffs Fail to Plead Scienter Through their Surveillance Allegations ..........2

    B.    Plaintiffs Fail to Plead Scienter Through their "Kickback" Allegations ...........5

    C.    "Other Factors" Do Not Support Scienter .........................................................7

III. PLAINTIFFS FAIL TO PLEAD FALSITY ........................................................................9

    A.    Plaintiffs Fail to Plead That Statements About the Stark Law Were False .......9

    B.    Plaintiffs Fail to Plead that Statements About Testing Services Revenues Were False ......................................................................................................11

    C.    Plaintiffs Fail to Plead that Underwriter Representations Were Actionable or False ................................................................................................................13

IV. PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION ....................................................14

V. CONCLUSION ................................................................................................................15

REPLY ISO MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 22-cv-03023-TLT

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Applestein v. Medivation, Inc.*,
2011 WL 3651149 (N.D. Cal Aug. 18, 2011) ...............................................................................4

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) ......................................................................................................11

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) ......................................................................................................15

*Chew v. Moneygram Int'l, Inc.*,
2024 WL 4346522 (N.D. Ill. Sept. 30, 2024) ............................................................................12

*City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software LTD*,
2024 WL 4349289 (S.D.N.Y. Sept. 30, 2024) ...........................................................................11

*Flynn v. Sientra, Inc.*,
2016 WL 3360676 (C.D. Cal. June 9, 2016) ..............................................................................11

*Gammel v. Hewlett-Packard Co.*,
905 F. Supp. 2d 1052 (C.D. Cal. 2012) ........................................................................................8

*Glazer Cap. Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) ......................................................................................................13

*Habelt v. iRhythm Techs., Inc.*,
2022 WL 971580 (N.D. Cal. Mar. 31, 2022).................................................................................3

*Helo v. Sema4 Holdings, Corp.*,
2024 WL 3593677 (D. Conn. July 31, 2024) .......................................................................12, 13

*Karam v. Corinthian Colls., Inc.*,
2012 WL 8499135 (C.D. Cal. Aug. 20, 2012)...............................................................................6

*Kessman v. Myriad Genetics, Inc.*,
2019 WL 1330363 (D. Utah Mar. 25, 2019) .................................................................................3

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016) ....................................................................................................14

*Macquarie Infrastructure Corp. v. Moab Partners, L. P.*,
601 U.S. 257 (2024)...............................................................................................................11, 12

*Meyer v. Greene*,
710 F.3d 1189 (11th Cir. 2013) .............................................................................................14, 15

REPLY ISO MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 22-cv-03023-TLT

*Mineworkers' Pension Scheme v. First Solar, Inc.*,
  881 F.3d 750 (9th Cir. 2018) .................................................................................15

*Mulligan v. Impax Lab'ys, Inc.*,
  36 F. Supp. 3d 942 (N.D. Cal. 2014) .................................................................8, 9

*Okla. Firefighters Pension & Ret. Sys. v. Snap Inc.*,
  2024 WL 5182634 (9th Cir. Dec. 20, 2024) .............................................................7

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015).......................................................................................2, 9, 10

*In re Petco Animal Supplies Inc. Sec. Litig.*,
  2006 WL 6829623 (S.D. Cal. Aug. 1, 2006) ............................................................8

*In re Philip Morris Int'l Inc. Sec. Litig.*,
  89 F.4th 408 (2d Cir. 2023) ......................................................................................3

*Reese v. BP Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) ..............................................................................13, 14

*SEB Inv. Mgmt. AB v. Wells Fargo & Co.*,
  2024 WL 3579322 (N.D. Cal. July 29, 2024)............................................................8

*Sneed v. AcelRx Pharms., Inc.*,
  2022 WL 4544721 (N.D. Cal. Sept. 28, 2022) ..........................................................5

*Sneed v. AcelRx Pharms., Inc.*,
  2024 WL 2059121 (N.D. Cal. May 7, 2024) ..............................................................3

*Teamsters Loc. 456 Pension Fund v. Universal Health Servs.*,
  396 F. Supp. 3d 413 (E.D. Pa. 2019) ........................................................................4

*In re Zillow Grp., Inc. Sec. Litig.*,
  2019 WL 1755293 (W.D. Wash. Apr. 19, 2019)........................................................10

*In re Zoom Sec. Litig.*,
  2022 WL 484974 (N.D. Cal. Feb. 16, 2022) ..............................................................5

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d (9th Cir. 2009) .........................................................................................4, 8

**STATUTES AND RULES**

15 U.S.C. § 78u-4..............................................................................................1, 5, 6

**OTHER AUTHORITIES**

U.S. Dep't of Just., Just. Manual § 4-4.110 (2018) ..............................................4

REPLY ISO MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 22-cv-03023-TLT

## I.     INTRODUCTION

To avoid dismissal for a third time, the opposition (ECF No. 138, "Opp." or "Opposition")[1] argues that: (i) Plaintiffs can plead securities fraud claims on the basis of government investigations but the Court cannot consider that those investigations resulted in declinations; (ii) the Court must credit Olymbios' views on whether Medicare covers surveillance testing but is prohibited from considering *Medicare's* public pronouncements that it covers this type of testing; and (iii) more generally, Plaintiffs can plead away unhelpful—even fatal—facts central to the TAC by ignoring them.  That is not how securities litigation works, even at the pleadings stage, where the TAC is subject to heightened pleadings standards, where the Court may take judicial notice of indisputable facts, and where Plaintiffs must present accurate pleadings.

Indeed, the Opposition continues to rely heavily on Olymbios' "Whistleblower Complaint," claiming that Olymbios and his qui tam complaint "provide *exactly* what the Court stated was missing from the SAC."  Opp. 2.  They do not.  The Opposition also notably omits a recent filing in that case, which calls into question whether Olymbios intends to stand behind those allegations in their current form or at all.  On December 9, 2024, days before the Opposition was filed, Olymbios filed a letter in the qui tam action seeking additional time to serve it because he is actively seeking replacement counsel and "evaluating a potential amendment."[2]  Ex. U at PDF p.2.

Regardless, the TAC fails to meet the demanding pleading standards of the PSLRA:

- **Scienter**. Like the SAC, the TAC fails to plead a compelling inference of scienter. The Opposition glosses over the facts that CareDx *repeatedly disclosed* that surveillance testing—the centerpiece of the TAC—was central to its business model and that the underlying coverage policy was publicly available (as was Medicare's endorsement of surveillance testing); fails to distinguish authority addressing scienter in cases that turn on the government's position vis-à-vis defendants' practices; seeks to infer scienter based on Defendants' alleged participation in events that happened well *after* the relevant statements were made; and recycles scienter allegations already rejected by the Court in dismissing the last two complaints on scienter grounds.

---

[1] Except as noted, defined terms have the same meanings as those provided in the Motion to Dismiss, ECF No. 136 (the "Motion" or "MTD").

[2] On December 16, 2024, CareDx filed a letter in the qui tam action, objecting to Olymbios' extension request.  *See* Ex V at 1.  Olymbios responded on December 20, citing the pendency of this case, among other factors, for why an extension should be granted.  *See* Ex. W at 2, 4.

1

- **Falsity**. Plaintiffs argue that the new challenged statements concerning the Stark Law are "similar to the compliance statements the Court already upheld." Opp. 5. Not so. Plaintiffs ignore the specific language of the statements and, in any case, did not plead falsity under the Supreme Court's decision in *Omnicare* or given CareDx's accompanying warning. Nor is it true that Defendants ask the Court to revisit its prior holdings regarding testing service revenue and underwriting representations "without citing to any intervening change in law or fact." Opp. 4. As to testing service revenue, Defendants cited an intervening ***Supreme Court decision***. As to both, Defendants cited a critical factual development: the conclusion of the government investigations.

- **Loss Causation**. It is now nonsensical to argue, as Plaintiffs do, that the government investigations revealed Defendants' misconduct to the market when those investigations closed with no finding of wrongdoing. And the other purported corrective disclosures cannot corroborate that disclosure even if it were credited or otherwise establish loss causation independently.

## II.    PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER

The Opposition does not dispute that Plaintiffs pled no motive for securities fraud, such as insider stock sales, an important consideration that weighs heavily in assessing scienter. MTD 8. Instead, the Opposition argues that the TAC pleads a compelling inference of scienter through its allegations that Dr. Seeto and Dr. Maag knew that it was improper to bill Medicare for "surveillance" tests (relevant only to the testing revenue statements and underwriting representations), that they knew of or participated in alleged kickbacks (purportedly relevant to all alleged misrepresentations), and through various holistic factors on scienter (same). It does not.

### A.    Plaintiffs Fail to Plead Scienter Through their Surveillance Allegations

Plaintiffs rely almost entirely on two meetings in July 2020 in which Olymbios allegedly raised concerns about surveillance testing to Dr. Seeto.[3] Opp. 9 (citing ¶¶ 28, 196, 284). But these allegations fail to give rise to a compelling inference of scienter because: (i) the allegedly improper business practice (surveillance testing) was disclosed to investors (MTD 3–5, 11); (ii) Olymbios'

---

[3] Plaintiffs emphasize that RDRI allegedly raised concerns to Dr. Maag about CareDx billing Medicare for tests as part of a clinical study. Opp. 9–10 & n.5. But this is irrelevant to Plaintiffs' core allegation that CareDx defrauded Medicare by billing it for medically unnecessary surveillance tests. Furthermore, even as to RDRI's alleged concern, the TAC says nothing about what study was at issue, whether CareDx went through with that study, and whether the study complied with Medicare's specific billing requirements for clinical studies. In addition, the exchange with RDRI happened *after* Dr. Maag's compliance-with-law statement. *See* MTD App. C, row 1.

REPLY ISO MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 22-cv-03023-TLT

opinion was not one shared by *Medicare* (MTD 9[4]); (iii) there is no allegation the Defendants shared Olymbios' opinion or were reckless in disregarding it (MTD 10[5]); (iv) just as in *Kessman v. Myriad Genetics, Inc.*, 2019 WL 1330363 (D. Utah Mar. 25, 2019), CareDx suffered no adverse consequences from Medicare from the alleged overbilling (MTD 9[6]); and (v) the government investigated these very allegations and closed them with no findings of wrongdoing (MTD 9–10).

None of Plaintiffs' responses are convincing.

First, Plaintiffs attempt to rewrite the TAC to suggest that Olymbios warned Dr. Seeto about business practices that CareDx did not disclose. Plaintiffs argue that CareDx's disclosures do not negate scienter because Defendants did not disclose their use of "RemoTraC, the KOAR study, and various illegal kickbacks" to induce doctors to order medically unnecessary AlloSure tests. Opp. 10 n.6. But Olymbios did not even allegedly raise these concerns to Dr. Seeto or Dr. Maag. All he purportedly warned Dr. Seeto about was his (misplaced) opinion that surveillance testing as a practice is not covered under the terms of the LCD. ¶¶ 28, 196, 284. But CareDx's practice of

---

[4] Plaintiffs fail to distinguish *In re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 422 (2d Cir. 2023). *See* Opp. 14 n.10. According to Plaintiffs, "no agency has 'endorsed' CareDx's" position. *Id.* This entirely ignores Medicare's August 2024 statement doing just that as well as similar statements in 2021 and 2017. As for the September 2023 statement by Medicare referencing "improper billing and overutilization of these tests" (¶ 344), the release makes no specific reference to CareDx tests but refers to molecular diagnostic tests for transplant patients *as a class* and, in any event, was superseded by a later release by Medicare. *See* Ex. X at 1.

[5] *Habelt v. iRhythm Techs., Inc.*, 2022 WL 971580 (N.D. Cal. Mar. 31, 2022), is in accord. There, the court concluded that an expert's warning of the potential for future Medicare rate cuts did not establish scienter (Opp. 9 n.3), notwithstanding the claim defendants downplayed the risk of future rate cuts, in the absence of allegations that the defendants "ever held [that] belief" and where that warning was "not borne out." As for *Sneed v. AcelRx Pharms Inc.*, 2024 WL 2059121, at *12 (N.D. Cal. May 7, 2024), Plaintiffs do not dispute that employee warnings fail to show scienter absent "facts that Defendants ever accepted the views on which those concerns were based." Instead, they attempt to minimize the employee warning. Opp. 9 n.3. This is irrelevant to the holding. It is also wrong because the warning there was serious and "raised concerns that [a marketing] campaign oversimplified the use of a powerful opioid, contained sexual overtones that could be misinterpreted, and that the slogan put the company at risk of an FDA warning letter." 2024 WL 2059121 at *11.

[6] Plaintiffs claim that here, unlike *Myriad Genetics*, "the investigations led to a sharp reduction in [] Medicare billing revenue." Opp. 16 n.13. But that claim has twice been rejected by this Court as insufficiently pled (*see infra* at 15) and is non-responsive to the core holding that "Defendants submitted thousands upon thousands of claims over multiple years" and "neither CMS nor any other agency notified [Defendant] its billing practices were improper." 2019 WL 1330363, at *7.

3

REPLY ISO MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 22-cv-03023-TLT

surveillance testing was disclosed to investors.  MTD 4–5.

Second, attempting to buttress Olymbios' concern about surveillance testing given his lack of expertise, Plaintiffs claim that CareDx's former Director of Reimbursement, Danielle Scelfo, shared the same concern.  Opp. 8, 9 & n.4.  But the TAC does not allege that Ms. Scelfo shared this alleged concern *with Defendants*.  Opp. 8, 9 & n.4.  Regardless, this claim is entitled to little or no weight.  This is because the source of this allegation is not Ms. Scelfo—who is not one of Plaintiffs' "FEs"—but Olymbios (s*ee* ¶¶ 28, 122, 126, 195, 197, 208, 284–85, 290) and courts have rightfully dismissed attempts to plead scienter through hearsay and, even more so, to "self-corroborate" cooperating witnesses.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 991, 997 (9th Cir. 2009); *see also Applestein v. Medivation, Inc.*, 2011 WL 3651149, at *6 (N.D. Cal. Aug. 18, 2011) ("Dr. Schneider"—a cooperating witness—"cannot corroborate himself").

Third, Plaintiffs attempt to downplay the significance of DOJ's decision not to intervene in the qui tam action.  Opp. 16–17.  However, that was the culminating decision in an investigation in which it was required to "confer with the relevant agency during the investigative, litigation, and settlement phases of the matter" and "solicit the agency's views on the False Claims Act matter, including, for example, on the falsity and materiality aspects of any alleged violations of the relevant agency requirements, in order to assist the Department in determining whether the elements of the False Claims Act can be established."  U.S. Dep't of Just., Just. Manual § 4-4.110 (2018). Furthermore, Plaintiffs' claim DOJ could reverse course and intervene for "good cause" at a future date is entirely speculative, especially given the uncertain future of the qui tam action.  *See supra*. At bottom, the unsubstantiated and unsupported allegations of a qui tam action do not give rise to a compelling inference of scienter.  *See Teamsters Loc. 456 Pension Fund v. Universal Health Servs.*, 396 F. Supp. 3d 413, 467–68 (E.D. Pa. 2019) (finding no scienter pled based on the allegations of qui tam lawsuits by former employees questioning Medicare billing and patient care practices at behavioral health service facilities since none resulted in findings against defendant).

Fourth, Plaintiffs suggest that Defendants acted improperly in citing the SEC declination because SEC guidance provides that a declination should not be construed as exonerating any party. Opp. 17–18.  But Defendants use the declination for the limited and proper purpose of demonstrating

4

that the SEC has completed its investigation and no charges were brought. *See* ECF No. 136, at 5–6. Those facts weigh against scienter as a matter of law. *See* MTD 9–10.

Finally, Plaintiffs attempt to downplay the August 16, 2024 press release from Medicare as "not . . . a coverage determination" or of "unclear" significance. Opp. 15–16. However, the release was a "MolDx Local Coverage Determination Statement" by CMS—i.e., Medicare—and addressed the very coverage issue (surveillance testing) that Plaintiffs are challenging. Ex. P. While it was issued after the Class Period, it expressly states that "neither CMS nor the MACs have changed coverage for these blood tests that monitor for organ transplantation rejection," making clear that this was Medicare's position during the Class Period. *Id.* Indeed, the statement is consistent with prior statements in 2021 and 2017. MTD 4. And while Plaintiffs question whether CareDx billed Medicare for surveillance testing after "a physician-assessed pretest" (one of the non-exhaustive covered circumstances), there are no allegations in the TAC about "physician-assessed pretests" at all, much less that Dr. Seeto or Dr. Maag were warned that any such requirement was not followed.

## B.    Plaintiffs Fail to Plead Scienter Through their "Kickback" Allegations

Plaintiffs' other primary theory of scienter rests on allegations that Dr. Seeto and Dr. Maag attended and approved expenses for "lavish" CareDx-sponsored events with physicians that supposedly violated applicable law. Opp. 10–12.[7] But the Opposition, like the TAC, fails to connect these alleged violations to the challenged statements Dr. Seeto and Dr. Maag actually made, when they made them. *See In re Zoom Sec. Litig.*, 2022 WL 484974, at *2 (N.D. Cal. Feb. 16, 2022) ("Scienter must be alleged on a statement-by-statement" basis); *Sneed v. AcelRx Pharms., Inc.*, 2022 WL 4544721, at *5 (N.D. Cal. Sept. 28, 2022) (PSLRA requires allegations of "*contemporaneous knowledge that the statement was false when made*") (quotations omitted) (emphasis in original).

---

[7] Plaintiffs also say that Defendants "took deliberate steps to hide" expenses for these events, citing paragraphs 298–300 of the TAC. Opp. 11. But Paragraph 298 is the "Paper Trail" allegation, which concerns billing practices, not event expenses. And Paragraphs 299-300 are from FE-21 and his "manager," neither of whom are alleged to have reported to or communicated with Dr. Seeto or Dr. Maag. Plaintiffs also point to FE-19's allegations about the late-2021 "Business Leadership Team" meeting, where there was allegedly discussion about "keeping a lower profile about CareDx's lavish expenditures[.]" Opp. 11. But the Court already considered and rejected this same allegation as part of its holding that Plaintiffs failed to plead scienter. Slip Op. 8, 35–37.

REPLY ISO MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 22-cv-03023-TLT

First, with respect to the revenue reporting statements, Plaintiffs do not dispute that the alleged "kickbacks" are far too removed from the subject of those statements—testing services revenue—to suggest an intent to deceive or deliberate recklessness; nor do they attempt to distinguish Defendants' authorities on this point.  *See* MTD 13–14.

Second, with respect to the Stark Law statements in February 2021 and February 2022, the Opposition incorrectly assumes that Dr. Seeto certified compliance with the Stark Law, and therefore any conceivable violation of the Stark Law—such as alleged "kickback" dinners— supports scienter.  Opp. 2, 5, 10–12.  What Dr. Seeto actually said was the Company intends its "compensation arrangements with a number of physicians for ***personal services***" to comply with the Stark Law.  ¶¶ 246, 264 (emphasis added).  Attending a dinner is not a "personal service," and Plaintiffs do not argue otherwise.  Aside from the dinners, Plaintiffs point to clinical studies and advisory boards as supposedly violating the Stark Law, *see* Opp. 22, n.22; however, Plaintiffs fail to plead that Dr. Seeto knew about the compensation terms that Plaintiffs allege were improper.  Moreover, the Court already considered and rejected the same allegations about the KOAR study and "conferences and marketing events where CareDx bribed doctors."  Slip Op. 4, 6, 29–38.

Third, with respect to the underwriter statements, Plaintiffs concede that the vast majority of the allegedly improper events—including all of those described by FE-21—took place after the last underwriter representation was made on January 21, 2021.  MTD 12–13; Opp. 11–12.  Nor do they cite any authority for the proposition that alleged misconduct occurring *after* the challenged statements can support scienter.  Instead, they vaguely assert that, because FE-21 attended events in 2021 and 2022, the Court should infer that similar events took place in 2020.  Opp. 12.  Putting aside the fact that COVID-era restrictions made any large gatherings difficult, the PSLRA requires pleading particularized facts, not innuendo, especially when relying on confidential witnesses.[8]

And, while Plaintiffs highlight two alleged events prior to January 21, 2021 (both derived exclusively from Olymbios), neither suffices.

---

[8] *Karam v. Corinthian Colls., Inc.*, 2012 WL 8499135, at *13 (C.D. Cal. Aug. 20, 2012) (confidential witness allegations in support of scienter "could only establish that [defendants] acted with scienter when [defendants] made statements during or near the time of CW2's employment").

REPLY ISO MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 22-cv-03023-TLT

- Plaintiffs cite a January 2020 event at a Miami hotel allegedly attended by Dr. Maag and Dr. Seeto. Opp. 12. But the only factual allegation about the event is that CareDx "held a poolside party with an open bar for roughly 100 medical professionals." ¶ 148. Olymbios does not say who these "medical professionals" were, whether they included physicians prescribing AlloSure, how much money was spent per doctor, or whether it was material. Nor can Plaintiffs mend these pleading defects by pointing to generalized allegations from Olymbios that CareDx "entice[d] physicians to cooperate in Defendants' fraudulent scheme." Opp. 12 (citing ¶¶ 146–48).

- Plaintiffs also point to Olymbios' allegation that, at some unspecified time prior to the pandemic, "when CareDx was planning to attend the National Kidney Foundation's conference in New Orleans, LA, it offered physicians $3,000, plus one night's hotel stay, two meals, and airfare to attend a four-hour meeting as part of the conference." ¶ 146; *See also* Opp. 12, n.9. Even if the Court infers from this allegation that CareDx in fact attended this event—for which Plaintiffs provide no factual support—the TAC fails to allege that *Dr. Maag or Dr. Seeto* attended, much less that they were aware of the terms of the "offer" allegedly made. *See* ¶ 146.

- For both, the Opposition fails to explain how these pre-January 2021 events—even if they were allegedly improper—give rise to a strong inference that Dr. Seeto or Dr. Maag intended to deceive investors when they signed compliance representations to underwriters. In this respect, Plaintiffs take the Court's prior opinion too far. While the Court did conclude that the underwriter representations were *actionable* on *falsity* grounds, it did not conclude that Plaintiffs adequately alleged *intent to deceive investors* with respect to those statements—notwithstanding many of the same types of "kickback" allegations that Plaintiffs now emphasize in the TAC. Slip Op. 29, 34.

## C.     "Other Factors" Do Not Support Scienter

Plaintiffs also present a grab-bag of peripheral scienter allegations, Opp. 13–14, but provide no basis for the Court to depart from its prior opinion, which held that none of these allegations—individually or holistically—gave rise to a strong inference of scienter.[9]

First, the Court already held that Olymbios' "Paper Trail" allegation (Opp. 13) was "contradict[ed]" by Olymbios' other allegations. Slip Op. 16 (noting contradiction between (i) allegation of not putting in writing practice of not billing patients and (ii) allegation that CareDx

---

[9] Plaintiffs' attempt to analogize to *Okla. Firefighters Pension & Ret. Sys. v. Snap Inc.*, 2024 WL 5182634 (9th Cir. Dec. 20, 2024), fails. *See* ECF No. 141. In *Snap*, the defendant touted advertisers' adoption of "SKAN." Based on plaintiffs' allegation that the defendant regularly met with advertisers combined with internal data showing minimal adoption of SKAN, the court determined that it would be absurd to suggest that she "did not [] know that advertisers representing a majority of DR revenue had not implemented SKAN." *Id.* at *3.

REPLY ISO MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 22-cv-03023-TLT

publicly advertised AlloSure as "fully covered by Medicare"); MTD 14, n.13.[10]  Rather than attempting to explain this contradiction—despite having now purportedly spoken with Olymbios himself—Plaintiffs' principal response to the Court's observation was to eliminate the contradiction by removing the allegation that CareDx advertised AlloSure as fully covered by Medicare.  Plaintiffs also attempt to support the Paper Trail allegations with accounts from FE-21 about "skipping" sign in sheets at events, Opp. 13.  But Plaintiffs fail to connect the Paper Trail allegations to their core theory of fraud—that CareDx billed for medically unnecessary tests (MTD at 14, n.13)—and the sign-in sheet allegations do not implicate Dr. Seeto or Dr. Maag.

Second, the "retaliation" allegations (Opp. 13) fail.  The Court already considered most of these allegations and found no scienter.  The TAC fails to allege that Dr. Seeto or Dr. Maag were responsible for (or even knew about) any alleged retaliation—which allegations are contradicted by other allegations in the TAC.  *See* MTD 14.  Once again, Plaintiffs have no response.[11]

Third, Plaintiffs recycle their allegations about resignations and the core operations theory.  Opp. 13–14.  But the Court has now twice rejected both the resignation allegations (Slip Op. 38)[12] and core operations theory (Slip Op. 35).[13]  Plaintiffs offer no reason for the Court to change course.

---

[10] Although the Court made this finding in the context of determining whether the "Paper Trail" allegations were sufficiently corroborated, courts frequently find that contradictory allegations undercut an inference of scienter.  *See, e.g.*, *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1077 (C.D. Cal. 2012) (allegations that Defendants "knowingly lied about HP's commitment to webOS are undermined by [complaint's] inconsistent allegations").

[11] In *In re Petco Animal Supplies Inc. Sec. Litig.*, 2006 WL 6829623, at *12 (S.D. Cal. Aug. 1, 2006) (Opp. 13), employees alleged that senior management, including *the individual defendants themselves*, "instructed" employees to engage in accounting gimmicks to defer expenses.

[12] In *SEB Investment Management AB v. Wells Fargo & Company*, 2024 WL 3579322, at *13 (N.D. Cal. July 29, 2024), the Court found that plaintiffs connected the allegedly suspicious departure of an executive to the alleged fraud—sham interviews—including because the executive left only two months after complaints had been made to the board about that same executive's role in the alleged sham interviews.  Here, there are no allegations tying Mr. Dhingra's or Ms. King's resignations to the allegedly improper Medicare billing.  The claim that Olymbios and Clarice McCauley resigned allegedly because of perceived violations (Opp. 14) does not amount to the type of "suspicious circumstances" that can be indicative of scienter.  *See Zucco Partners*, 552 F.3d at 1002.

[13] Plaintiffs rely on *Mulligan v. Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942, 970 (N.D. Cal. 2014) where the Court applied the core operations doctrine.  Opp. 14.  However, in *Mulligan*, the FDA had taken adverse action against the defendant in response to non-compliance, including by issuing a

8

REPLY ISO MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 22-cv-03023-TLT

## III.　PLAINTIFFS FAIL TO PLEAD FALSITY

### A.　Plaintiffs Fail to Plead That Statements About the Stark Law Were False

The Motion to Dismiss showed that (i) the challenged Stark Law statements spoke only to "personal service" arrangements with physicians and said that those arrangements were "structured with terms intended to comply with applicable exceptions to the Stark Law;" (ii) Plaintiffs failed to plead that CareDx's personal service arrangements were not, in fact, structured with terms intended to comply with the Stark Law; (iii) Defendants' statements were ones of opinion subject to the Supreme Court's decision in *Omnicare*, which Plaintiffs failed to satisfy; and (iv) the statements' qualified nature and companion acknowledgement that CareDx may nevertheless be deemed not to be in compliance defeat Plaintiffs' theory of falsity.　MTD 16–19.　Plaintiffs' responses all fail.

First, Plaintiffs wrongly suggest that these statements are similar to the compliance with law statements the Court previously addressed.　Opp. 22.　But Defendants did not generally represent compliance with the Stark Law.　The challenged statements were much more limited—that CareDx structured its "personal service" arrangements with terms intended to comply with the Stark Law.

Second, the Opposition fails to show that the "personal service" arrangements that were the subject of the statements at issue were not structured with the intent to comply with the Stark Law. The Opposition instead largely focuses on activities like dinners and events that are definitionally not within the ambit of the statements.　To the extent it focuses on personal service arrangements with physicians, which were potentially within its domain, Plaintiffs fail to plead with particularity that the arrangements did not qualify for applicable Stark Law exceptions.　For example, with respect to advisory boards, the TAC alleges broadly that advisory boards were "unlawful kickbacks to induce physicians to prescribe AlloSure," ¶ 145, but fails to allege with particularity which attending physicians, if any, actually referred patients to CareDx, or that CareDx in turn submitted claims from those referrals to Medicare.　Plaintiffs also fail to allege the qualifications of the clinicians who attended the advisory boards as necessary to assess the fair market value of their

---

"Warning Letter" intended to inform "top management" of "significant objectionable conditions." *Mulligan*, 36 F. Supp. 3d at 970.　Here, there are no well-pled allegations that Medicare (or any other governmental authority) took any adverse action against CareDx.

REPLY ISO MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 22-cv-03023-TLT

time, nor do Plaintiffs plead a benchmark for fair market value, as required.  *See* MTD 17 n.14.

Third, while Plaintiffs claim Defendants are "wrong" that the Stark Law statements are opinions, their sole support is a case in which the court analyzed the challenged statement under the *Omnicare* framework for opinions.  Opp. 23 (citing *In re Zillow Grp., Inc. Sec. Litig.*, 2019 WL 1755293, at *13 (W.D. Wash. Apr. 19, 2019)).

Fourth, the Opposition fails to demonstrate falsity under the second *Omnicare* prong, the sole prong relied upon by Plaintiffs.  MTD 18.[14]  Under the second prong, a statement of opinion is false if it omits "material facts about the issuer's inquiry into or knowledge concerning" the statement, "and if those facts conflict with what a reasonable investor would take from the statement itself." *Id.*  Here, the statements' maker was Dr. Seeto and the Opposition fails to offer allegations that satisfy the weighty burden of showing falsity under *Omnicare*.  This is because the Opposition relies on: (i) an allegation that "Seeto . . . personally directed and approved these inducements" sourced to FE-21, who is not alleged to have worked with or spoken with Dr. Seeto (*see* Opp. at 23 (citing ¶¶ 155, 158, 161, 165)); and (ii) a claim that "Defendants deliberately hid their improper expenses," which relies on allegations that either do not mention Dr. Seeto at all and/or are not alleged to have concerned the type of clinician "service" arrangements covered by the challenged statements (*see id.* (citing ¶¶124–27, 182–188, 270–283)).[15]

Finally, irrespective of whether Plaintiffs plead a violation of the Stark Law, the TAC still fails to allege falsity because the challenged statements specifically warned that CareDx may not be in compliance with the Stark Law.  ¶¶ 246, 264.  Plaintiffs argue that this warning cannot be relied upon because the risk warned of had "already [] come to fruition."  Opp. 23.  The Court already rejected this line of reasoning.  Slip Op. 26–28.  But either way, Plaintiffs once again ignore what

---

[14] Plaintiffs do not contest that the other *Omnicare* prongs are inapplicable here.  MTD 18.

[15] Plaintiffs rely on *Zillow* as an example of pleading falsity under the second *Omnicare* prong (Opp. 23) but *Zillow* is distinguishable because (i) the compliance-related opinion statement was "supported by embedded facts," which the court found made the opinion misleading; (ii) the challenged statement was not accompanied by warnings of potential non-compliance; and (iii) after the challenged statement was made, the defendant was implicated in a CFPB consent judgment.  *See Zillow*, 2019 WL 1755293, at *5, *12–13.

REPLY ISO MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 22-cv-03023-TLT

Dr. Seeto actually said, which is that "***regulators***" might "***find***" that CareDx's personal services arrangements violate the Stark Law.  ¶¶ 246, 264 (emphasis added).  Because the TAC fails to allege any adverse regulatory findings against CareDx as to the Stark Law (or any law), the TAC fails to allege that Dr. Seeto's disclaimer was misleading.[16]

As a result, *Cognyte Software LTD*, 2024 WL 4349289 (S.D.N.Y. Sept. 30, 2024) (MTD 18–19) is on all fours.  In that case, defendants made a similar statement:  "[w]hile we endeavor to implement policies, procedures, and systems designed to achieve compliance with these regulatory requirements, we cannot assure you that . . . we or our personnel will not violate . . . applicable laws and regulations."  *Id.* at *2.  In holding that falsity had not been pled, the court concluded: "[t]his warning cannot be read to say that Defendants were in compliance with all applicable laws, and in fact expressly describes how they may not be."  *Id.* at *7.  The same reasoning applies here.[17]

**B.    Plaintiffs Fail to Plead that Statements About Testing Services Revenues Were False**

The Motion to Dismiss demonstrated that there have been intervening developments that warrant revisiting the Court's prior holding: (i) factually, the claim was undermined by the closure of the government investigations and Medicare's August 2024 re-affirmation of surveillance coverage; and (ii) legally, the Supreme Court's decision in *Macquarie* forecloses Plaintiffs' theory even if Plaintiffs' allegations of Medicare fraud are credited.  MTD 19–21.

On the first point, Plaintiffs argue that the Court should not judicially notice the government declinations and Medicare's endorsement.  Opp. 19.  That is wrong for the reasons detailed in Defendants' Request for Judicial Notice.  Regardless, these developments undermine the TAC's

---

[16] By contrast, in *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 984–86 (9th Cir. 2008) (Opp. 23), defendants warned that the company "may experience significant contract cancellations" without disclosing that the risk had already materialized in "stop-work" orders.  *See also* Slip Op. at 27 (discussing *Berson*).  And in *Flynn v. Sientra, Inc.*, 2016 WL 3360676, at *11 (C.D. Cal. June 9, 2016) (Opp. 23, n.23), defendants warned that their medical devices may not be manufactured in compliance with regulatory requirements when in fact regulators had suspended the sale of defendants' devices.

[17] Plaintiffs try to distinguish *Cognyte* by noting that the complaint in that case failed to allege a violation of law, Opp. 23, n.23, but that was in part because of the complaint's failure to allege "authorities had charged Cognyte with any violation" of law, *Cognyte*, 2024 WL 4349289, at *8—the same pleading deficiency from which the TAC suffers.

11

REPLY ISO MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 22-cv-03023-TLT

reliance on Olymbios when the government's position is now clear.

On the second point, Plaintiffs argue that the TAC pled actionable "half-truths." *See* Opp. 19, n.18. It did not. *Macquarie* defined "half-truths" as "representations that state the truth only so far as it goes, while omitting critical qualifying information." MTD 19 (quoting 601 U.S. at 264). Under this definition, general statements of financial performance, like the ones here, bear no meaningful relationship to an undisclosed "fraud." MTD 19–21. Thus, so long as the statements do not put the fraud in play, the fraud does not amount to "critical qualifying information." *Id.*

Plaintiffs' attempt to distinguish recent authority applying this principle are unavailing. Plaintiffs argue that CareDx's testing services revenue statements are more "connected" to the alleged fraud than the challenged financial disclosures in *Chew v. Moneygram Int'l, Inc.*, 2024 WL 4346522 (N.D. Ill. Sept. 30, 2024). Opp. 19, n.17. Not so. The challenged statements in *Moneygram* were *not* merely "general financial results." Opp. 19, n.17. In fact, just like in this case, defendants in *Moneygram* attributed their growth to the specific business segment that plaintiffs alleged was tainted by fraudulent conduct: money transfers. *Compare Moneygram*, 2024 WL 4346522, at *7 (allegedly false statement attributing "'really solid quarter for MoneyGram'" to "'the largest number of money transfer transactions in our history'") *with* ¶ 257 (allegedly false statement attributing CareDx 2021 Q3 "record revenues" to increased "testing services" revenue).

Likewise, Plaintiffs' description of *Helo v. Sema4 Holdings, Corp.*, 2024 WL 3593677, at *3–4, *7 (D. Conn. July 31, 2024) is misleading. *See* Opp. 19, n.17. Plaintiffs argue that "the statements at issue [in *Sema4*] were immaterial puffery" (Opp. 19, n.17) but the puffery ruling concerned different statements, not the financial result statements cited by Defendants. *See Sema4*, 2024 WL 3593677, at *9. Plaintiffs also argue that the *Sema4* defendants "merely reported financial results without attributing the results to any factors impacted by the underlying fraud." Opp. 19, n.17. That is false. The challenged statements in *Sema4* attributed revenue growth "primarily" to increased testing volume that was allegedly improperly billed to insurance. *See Sema4*, 2024 WL 3593677, at *3 (allegedly false statement in a press release stating "the Company's increased revenue . . . was '*driven primarily by* an increase in testing volumes of both our Women's Health and Oncology product lines'") (emphasis added). Here, the attribution—more revenue from more

12

REPLY ISO MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 22-cv-03023-TLT

tests/testing service revenue—is indistinguishable from the one rejected in *Sema4*.

**C.      Plaintiffs Fail to Plead that Underwriter Representations Were Actionable or False**

The Motion to Dismiss demonstrated that underwriter representations are not actionable since they were (i) accompanied by a clear disclaimer and direction to read CareDx's fuller disclosures which warned investors of potential non-compliance, (ii) "contained in a document attached to SEC filings made to fulfill unrelated regulatory requirements," and (iii) part of "one section of a large and detailed contract whose main purpose" had nothing to do with the compliance-related representations.   MTD 21–23.   Furthermore, years later, they have proven *true*: no underwriter has claimed breach and no regulator has found a healthcare law violation.  *Id.*  Other than reiterating their opposition to the RJN, Plaintiffs offer little in response:

- Plaintiffs do not dispute the numerous reasons why *Glazer Capital Management, LP v. Magistri*, 549 F.3d 736 (9th Cir. 2008) is inapposite.  MTD 23.

- Plaintiffs do not dispute that the Ninth Circuit in *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 692–93 (9th Cir. 2011), decided three years after *Glazer*, held that contractual representations disclosed in public filings were *not* actionable.  *See* MTD 22.  Plaintiffs note that *one* reason for the Ninth Circuit's holding in *Reese* was the forward-looking nature of the representation (Opp. 21 n.20) but they do not dispute that the court also rejected plaintiff's theory of falsity because, just like in this case, the contract was attached to an SEC filing only to fulfill regulatory requirements, and the representations were only one small section of a large and detailed contract whose purpose had nothing to do with the challenged representations.  MTD 22.

- Plaintiffs fail to meaningfully address the fact that CareDx told investors to read the underwriter agreements in conjunction with the Company's risk disclosures, which warned that CareDx might *not* be in compliance with applicable laws.  MTD 21. Plaintiffs respond that "Defendants do not identify specific warnings," but those warnings are identified in Defendants' motion.  *See, e.g.*, Ex. E at 50 (warning that "we are subject to numerous fraud and abuse and other laws and regulations pertaining to our business, the violation of any one of which could harm our business," that "[o]ur employees . . . may engage in misconduct or other improper activities, including non-compliance with regulatory standards and requirements," and listing various laws that are also referenced in the underwriter agreements).  Plaintiffs then argue that these risk warnings were themselves misleading.  Opp. 22 n.21.  The Court, however, already rejected that theory.  *See* Slip Op. 26–28.

- Plaintiffs offer only a conclusory response to the straightforward proposition that investors' alleged close interest in the underwriting agreement would, if anything, undermine Plaintiffs' theory because they would have been keenly aware of the limitations of the representations and not taken them as "certificate[s] of []

REPLY ISO MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 22-cv-03023-TLT

compliance." *Reese*, 643 F.3d at 691.  Plaintiffs likewise have nothing to say about the extraordinary consequences that such a ruling would impose on public companies: it would mean that any time a company "breaches" a disclosed contractual representation, it has "defrauded" investors.

## IV.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

The Motion to Dismiss demonstrated that the closure of the government investigations defeats Plaintiffs' theory of loss causation.  MTD 23–25.  That is because having pled that the "fraud" was revealed to investors through the government investigations, Plaintiffs must corroborate—as a matter of Ninth Circuit law—the inference of fraud with subsequent disclosures of actual wrongdoing.  *Id.* (citing *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016)).  But now that the investigations have been closed with no findings of wrongdoing, there is no longer any inference of fraud to corroborate.  In any event, none of the later alleged corrective disclosures are corroborative or independently plead loss causation.  *Id.*  Beyond repeating their arguments against granting judicial notice to the outcome of the government investigations and resting on selected portions of the SAC decision, Plaintiffs offer little by way of response.  Opp. 23–25.

First, Plaintiffs argue that they may plead loss causation based on government investigations that were closed with no findings of wrongdoing because they need only provide "some indication of the loss and the causal connection that the plaintiff has in mind."  Opp. 24 (emphasis, citation omitted).  They are wrong. *Meyer v. Greene*, 710 F.3d 1189 (11th Cir. 2013), is instructive. There, the Eleventh Circuit affirmed dismissal based on a failure to plead loss causation where, much like here, the plaintiff attempted to plead loss causation based on the announcement of an SEC investigation that never resulted in any finding of wrongdoing. *Id.* at 1201.[18]  The Eleventh Circuit reasoned that "[i]t is, after all, impossible to say that an SEC investigation was the moment when the 'relevant truth beg[an] to leak out' if the truth never actually leaked out." *Id.* at 1201 n.13.  The Eleventh Circuit held open the possibility that in a different case an SEC investigation could qualify

---

[18] Plaintiffs' response to *Lloyd* is similarly misguided.  Plaintiffs argue that "the Court already found Plaintiffs' allegations were similar to the allegations *Lloyd* upheld."  Opp. 24.  But what has changed is that the government investigations are now closed.  That was not the case previously or in *Lloyd*. 811 F.3d at 1209–10.

REPLY ISO MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 22-cv-03023-TLT

as a corrective disclosure "when the investigation is coupled with a later finding of fraud or wrongdoing." *Id.* Critically, however, the court concluded: "[W]here, as here, ***there is no later finding of wrongdoing,*** that theory is obviously inapplicable." *Id.* (emphasis added).

Second, none of the remaining alleged corrective disclosures either "corroborate" the inference of fraud from the investigations or suffice standing on their own. Opp. 25. Principally, Plaintiffs argue that "[w]here financial results are connected to the fraud, they suffice to plead loss causation." *Id.* (citing *Mineworkers' Pens. Scheme v. First Solar, Inc.*, 881 F.3d 750, 754 (9th Cir. 2018)). But Plaintiffs fail to plead CareDx's financial results were connected to the "fraud." None of the various paragraphs they cite show that CareDx's revenue declined because the Company could no longer bill Medicare for medically unnecessary tests. ¶¶ 313, 315, 318, 320–26, 329–32, 334–35. In fact, the Court has twice rejected the claim on which this theory principally rests: the claim that Medicare rejected 50% of CareDx's tests because of fraud.[19] ECF No. 75 at 18–19; Slip Op. 23–24. And Plaintiffs fail to offer a substantive argument explaining why the remaining alleged corrective disclosures suffice: (i) executive resignations, which the TAC did not connect to the alleged fraud; or (ii) Olymbios' complaint, which the market did not deem credible as a revelation of fraud given the modest stock market reaction. *See In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781 790–92 (9th Cir. 2020); *see also* ECF No. 89 at 23–24.[20]

**V.　CONCLUSION**

Defendants respectfully request that the Court dismiss the TAC with prejudice.

---

[19] Plaintiffs now attempt to buttress this argument by claiming that "[a] September 2023 CMS statement further confirmed that CareDx lost Medicare revenue because CMS 'became aware of improper billing and overutilization of these tests.'" Opp. 25 n.27 (citing ¶ 344; emphasis omitted). But nothing in the cited Paragraph (¶ 344) says *anything* about CareDx losing Medicare revenue. Furthermore this release also said nothing about CareDx—having been addressed on an industry-wide basis—and, in any case, was later superseded by Medicare. *See supra* Sec. II.A.

[20] Notably, Olymbios has acknowledged that, notwithstanding the outlandish claims he made against CareDx in the San Mateo County complaint, the dispute ultimately resulted in him making a settlement payment ***to CareDx***. Ex. W at 4. The fact that Olymbios was the losing party further negates the complaint being a corrective disclosure.

REPLY ISO MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 22-cv-03023-TLT

Respectfully submitted,

Dated: January 10, 2025

**WILLKIE FARR & GALLAGHER LLP**

By:   /s/ Laura Leigh Geist
     Laura Leigh Geist

Laura Leigh Geist
Barrington Dyer
Tariq Mundiya (*pro hac vice)*
Charles Cording (*pro hac vice*)
Brady Sullivan (*pro hac vice*)

Attorneys for Defendants
CAREDX, INC., REGINALD SEETO, and
PETER MAAG

16
REPLY ISO MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT
Case No. 22-cv-03023-TLT