# Exhibit V

# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

December 16, 2024

**<u>VIA ECF</u>**

Magistrate Judge Lara K. Eshkenazi
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201
Courtroom N322

RE:     *U.S. ex rel. Olymbios v. CareDx, Inc., et al.*, No. 1:21-cv-00774

Dear Judge Eshkenazi:

We represent Defendant CareDx, Inc. ("CareDx") in the above-captioned action. We write on behalf of CareDx and with the consent of all co-defendants in this action in opposition to the Relator's request for an extension of time to effect service.

As detailed below, Relator has had nearly four years to prepare for service and has known for over five months that he would need to decide whether – and with what counsel – to proceed following the Department of Justice's declination in July of this year. Relator has not provided good reason to further postpone the service deadline. In the meantime, CareDx continues to suffer significant prejudice by having this lawsuit remain unresolved. Additional delay is also not warranted based on the Relator's bad faith including strong evidence that the Relator improperly disseminated the then-sealed qui tam complaint.

## I.    Background

CareDx is a technology company 100% focused on serving transplant patients. It offers innovative services including non-invasive blood testing to help transplant patients determine whether they are undergoing rejection of the transplanted organ.

Relator Michael Olymbios ("Olymbios" or the "Relator") is a former employee of CareDx. Olymbios left CareDx in 2020 for its principal rival, Natera, after stealing thousands of competitively sensitive documents. After CareDx demanded the return of these materials, Olymbios threatened to

report CareDx to the Department of Justice.  When CareDx did not back down, Olymbios filed this qui tam action under seal on February 12, 2021, triggering a confidential government investigation.  (Dkt. No. 1.)

While Relator's complaint remained under seal, an individual with access to a pre-filed version of the complaint sent an anonymous email using an encryption service to the incoming and outgoing presidents of a prominent association of transplant surgeons, the International Society for Heart and Lung Transplantation ("ISHLT"), accusing CareDx of committing fraud and urging the organization to no longer associate with or promote CareDx's vital testing services.  The email included a copy of the sealed complaint.  An individual used the same or similar email addresses to send similar messages to another prominent transplant surgeon as well as the Medicare contractors charged with overseeing coverage for CareDx's testing.  CareDx alerted the Department of Justice to these communications, and expects that the government investigated their source.  Additionally, undersigned counsel sent correspondence to Relator's counsel seeking confirmation as to the Relator's involvement in sending these communications.  Relator's counsel did not deny that their client had been involved.

After investigating the Relator's allegations, the federal government declined to intervene in this action on July 12, 2024.  (Dkt. No. 15.)  On October 7, 2024, the Court ordered that the qui tam complaint be unsealed and served upon the Defendants by the Relator.  (Dkt. No. 21.)  Pursuant to Federal Rule of Civil Procedure 4(m), Olymbios' deadline to serve Defendants is January 1, 2025.

On December 9, 2024, Olymbios' counsel filed a letter with the Court seeking a 60-day extension of time to serve the qui tam complaint on the Defendants (Dkt. No. 22).  On December 10, 2024, CareDx filed a letter with the Court requesting the opportunity to respond and oppose the extension.  (Dkt. No. 24.)  On the same day, Your Honor granted Olymbios' motion to extend the service deadline.  (Dkt. Text Order Only.)  The following day, Your Honor granted CareDx's request to respond, and ordered that the Court "will consider the submission to be a motion for reconsideration of the Court's Order granting the extension."  (Dkt. Text Order Only.)

## II.      Relator's Request to Extend His Time to Serve the *Qui Tam* Complaint Should Be Denied

CareDx respectfully requests that the Court: (1) consider this submission as an opposition in the ordinary course; and (2) deny Olymbios' motion to extend the service deadline and deny the extension.

### A.  This Submission Should be Treated as an Ordinary Opposition Brief

Ordinarily, a motion for reconsideration should be granted only where the movant identifies "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013).

"Where, however, the opposing party previously had been unable to respond to the motion before the court has rendered an opinion, it is appropriate to consider the 'motion for reconsideration and supporting memoranda ...as [an] opposition in the normal course instead of under the more exacting

standards of a motion for reconsideration.'" *In re Turquoise Hill Resources Ltd. Securities Litigation*, 2024 WL 791545 (S.D.N.Y. 2024) (quoting *Gerber Sci. Int'l, Inc. v. Satisloh AG*, 2009 WL 10689139, at *1 (D. Conn. Oct. 9, 2009).

That is precisely the situation here where the Court granted the Relator's motion for an extension of time before CareDx had the opportunity to respond.

### B.  The Motion Should be Denied

A court may extend a plaintiff's time for service upon a showing of "good cause" or if it concludes that a discretionary extension is appropriate.  *See* Fed. R. Civ. P. 4(m); *see also* Dkt. No. 22 at 1.

In analyzing whether a plaintiff has shown good cause, courts in this Circuit weigh the plaintiff's diligence and/or reasonable efforts to effect service and the prejudice to the defendant from the delay.  *Tolchin v. County of Nassau*, 322 F.Supp.3d 307, 313-14 (E.D.N.Y. 2018).  When determining whether to exercise discretion to extend the time for service of the complaint in the absence of good cause, one of the factors to be considered is whether the defendant would be prejudiced by the extension.  *See* Advisory Committee Notes to Fed. R. Civ. P. 4(m); *see also Benites v. New York Dep't of Corr. & Cmty. Supervision*, No. 21-CV-06863 (CM), 2023 WL 1966181, at *2 (S.D.N.Y. Feb. 13, 2023) ("In deciding a motion to extend the time limit of Rule 4(m), courts typically consider four factors . . .).

Applying these principals here, the motion should be denied.

### 1.  The Relator Has Failed to Show the Diligence and Reasonableness Necessary to Demonstrate Good Cause

According to the Relator's counsel, the requested extension is based on the fact that "[t]he Relator has been engaged in ongoing discussions with potential co-counsel or substitute counsel to prosecute his claims on a declined basis" and is also considering potential amendment to his claims.  (Dkt. No. 22.)

These are not the bases for good cause because they do not reflect diligent and reasonable efforts towards serving CareDx, but rather present entirely different challenges.  In any event, these explanations fail on their own merits.

With respect to the purported need for potential new counsel, the case has been pending for nearly four years, the government declined over five months ago, and the action was unsealed nearly three months ago.  The Relator has had ample time to secure counsel that is willing to prosecute this case. With respect to the potential amendment of the complaint, any possible reason why the Relator would choose to amend the complaint would have been long known and can, if warranted, be made within the normal course after service is effectuated.

On both arguments, the fact that the Relator has been represented by counsel since the inception of the case also militates against a finding of good cause.  Courts have recognized that: "the fact that

plaintiff [is] not proceeding pro se, but [is] represented by a licensed attorney, favors denial of the motion [for an extension]." *Benites*, 2023 WL 1966181, at *5.

At bottom, the Relator's justification for an extension of time does not relate to challenges in effecting service that would support good cause for delay. They instead reflect Relator's counsel's unwillingness to proceed and the apparent difficulty in securing new counsel to pursue a meritless case which both the DOJ and SEC declined.[1]

This is in significant part because the Relator's core allegation in the qui tam complaint—that CareDx improperly obtained reimbursement from Medicare for surveillance testing—is without basis. From the outset, the applicable Local Coverage Determination ("LCD") that set Medicare's coverage policy for the testing included coverage for surveillance. Among other things, the two Medicare Administrative Contractors responsible for issuing and interpreting the applicable LCD expressly stated in a contemporaneous Local Coverage Article that accompanied the LCD that surveillance testing was covered. More recently, the Centers for Medicare & Medicaid Services reaffirmed that surveillance testing is and has always been covered under the applicable LCD.[2]

### 2. Good Cause Is Also Absent Because Additional Delay Prejudices CareDx

In addition to the absence of a good reason for additional delay, further delay prejudices CareDx. This is so for at least two reasons.

First, the delay enables the Relator's false and incendiary allegations to continue without challenge. The Relator's allegations malign CareDx's reputation and standing in the patient, clinician, and investment communities. Delay only serves to further perpetuate this harm. *See United States v. Cooperatieve Rabobank, U.A.*, 2019 WL 13223280, at *3 (S.D.N.Y. Oct. 2, 2019) (explaining how the avoidance of this type of harm to a defendant in a qui tam action is one of the primary purposes for the False Claims Act's sealing provision because it is intended to "protect[] the defendants' reputations").

Second, the delay in service is also prejudicial to CareDx because this case already involves alleged events that took place between 5–8 years ago, which further delay will exacerbate.[3] *See, e.g., Junior-Donohue v. Fudge*, 2023 WL 5152299, at *4 (S.D.N.Y. Aug. 10, 2023) (holding that, in a case involving events that took place over ten years before the suit was filed, "[t]he specter of prejudice to Defendants from delays in service compound the challenges of defending the action because of the passage of time"); *Khanukayev v. City of New York*, No. 09-CV-6175 (CM) (GWG), 2011 WL 5531496, at *4 (S.D.N.Y. Nov. 15, 2011) ("As to prejudice to the defendants, the Court's decision is informed by the fact that the 39 individual police officers, if required to defend this action, will be called upon to recall 44 summonses they issued many years ago."); *Georgiadis v. First Bos. Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996) ("The passage of time always threatens difficulty as memories fade. Given the age of

---

[1] The Department of Justice's declination (Dkt. No. 15) followed a decision by the U.S. Securities and Exchange Commission in September 2023 to close its investigation and take no action against CareDx.

[2] *See* MolDx Local Coverage Determination Statement (Aug. 16, 2024), *available at* https://www.cms.gov/newsroom/press-releases/moldx-local-coverage-determination-statement.

[3] *See, e.g.,* Complaint ¶¶ 47, 71, and 80 (referencing events from 2016 and 2018).

this case, that problem probably is severe already. The additional delay that plaintiff has caused here can only make matters worse.").

### 3.   The Motion Should Also Be Denied As a Matter of Discretion

An extension of the time for service is also not warranted as a matter of the Court's discretion.

First, additional time is not warranted for all of the reasons described above, including the complete lack of a colorable excuse and the substantial prejudice to CareDx.

Second, the broader equities weigh heavily in favor of denial.  This is because the Relator has acted in bad faith, including—CareDx believes—by violating the sealing requirements of the False Claims Act in an effort to harm CareDx.

During the pendency of the government's investigation, CareDx learned that the sealed qui tam complaint was improperly disseminated through an anonymous email account to leaders in the transplant community.   Specifically,   on   May   7,   2023,   someone   using   the   email   address fight.medicare.fraud@proton.me, purporting to represent a (fictitious) organization, called "Fight Medicare Fraud," anonymously emailed a copy of the sealed qui tam complaint to the outgoing and incoming presidents of ISHLT.   Upon receiving this information, CareDx immediately brought the anonymous email to the attention of the DOJ.

All available evidence suggests that the Relator was behind that email.  Both ISHLT physicians were included on a list of CareDx's key opinion leaders which Olymbios stole when he left the company. Moreover, the title of the document attached to the email was labeled as the "final" draft of the qui tam complaint, suggesting that it was a pre-filed version as opposed to a document that was downloaded by a member of the Court from PACER.  No one other than Olymbios or his counsel would reasonably have had access to the pre-filed version of the sealed complaint.  CareDx has repeatedly sought confirmation from Olymbios and his counsel as to the simple fact of whether he was behind the disclosure, but Olymbios and his counsel have refused to provide a straight answer.

If this case proceeds, CareDx intends to move for appropriate relief, including potential dismissal, on this basis.  As multiple courts in the Second Circuit have held, "[a] failure to abide by [the sealing] procedure is typically fatal and requires dismissal of the complaint with prejudice."[4]  Indeed, numerous courts have dismissed qui tam actions because of violations of the sealing requirement.[5]   This is

---

[4] *James v. Well Life Network Inc.*, 22-CV-7469 (NRM) (AYS), 2023 WL 3997264, at *2 (E.D.N.Y. June 14, 2023) *citing U.S. ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 999-1000 (2d Cir. 1995) and collecting cases.

[5] *See, e.g.*, *U.S. ex rel. Pilon*, 60 F.3d at 999 (abuse of discretion for district court to not dismiss complaint when relator failed to file under seal, and then participated in an interview with a local reporter in which relator revealed the confidential substance of the *qui tam* complaint and made salacious allegations regarding the defendant); *U.S. ex rel. Lyon v. Am. Med. Response*, 2011 WL 13377407, at *3-4 (E.D.N.Y. Jan. 19, 2011) (dismissing *qui tam* complaint with prejudice where relator attempted to sell information about the sealed *qui tam* complaint); *U.S. ex rel. Le Blanc v. ITT Indus., Inc.*, 492 F. Supp. 2d 303, 305 (S.D.N.Y. 2007) (dismissing *qui tam* complaint with prejudice when relator failed to file under seal, notwithstanding that there was no indication that relator acted in bad faith); *see also State Farm Fire and Cas. Co. v. U.S. ex rel. Rigsby*, 580

especially so where the relator has acted in bad faith, and possibly compromised the government's investigation or prevented the defendant from being able to protect its reputation while the investigation is ongoing.[6]

\*          \*          \*

Relator launched this matter nearly four years ago leveling serious accusations that triggered DOJ and SEC investigations.  Relator provides no good reason why, now that these matters have concluded, he is unable to proceed with the simple service of the complaint.

Relator's motion for an extension should be denied.  To the extent this matter proceeds, it should proceed promptly so that CareDx can address the breach of the sealing order and seek appropriate relief from the Court, including potential dismissal of the qui tam complaint.

Respectfully submitted,

*/s/ Samantha G. Prince*
Samantha G. Prince

cc: Honorable Ann M. Donnelly

---

U.S. 26, 37 (2016) (whether dismissal is an appropriate sanction for violations of sealing requirement is "left to the sound discretion of the district court").

[6] *See, e.g.*, *U.S. ex rel. Lyon*, 2011 WL 13377407, at \*3–4 (relator's "bad faith [was] obvious in her willful attempt to profit from the [sealing] violation"); *see also U.S. ex rel. Pilon*, 60 F.3d at 998 (dismissing *qui tam* complaint with prejudice because of relator's "considerable lack of good faith" in failing to file under seal and then giving interview to the press, and relator's "primary objective was to obtain reinstatement [of his employment]").