**WILLKIE FARR & GALLAGHER LLP**
Laura Leigh Geist (CSB No. 180826)
Barrington Dyer (CSB No. 264762)
333 Bush Street, 34th Floor
San Francisco, CA  94104
Telephone: (415) 858-7400
lgeist@willkie.com
bdyer@willkie.com

**WILLKIE FARR & GALLAGHER LLP**
Tariq Mundiya (*pro hac vice*)
Charles Cording (*pro hac vice*)
Brady Sullivan (*pro hac vice*)
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8000
tmundiya@willkie.com
ccording@willkie.com
bsullivan@willkie.com

Attorneys for Defendants
*CareDx, Inc., Reginald Seeto,*
*and Peter Maag*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLUMBERS & PIPEFITTERS LOCAL UNION #295 PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiffs,<br><br>      v.<br><br>CAREDX, INC., PETER MAAG, and REGINALD SEETO,<br><br>              Defendants. | Case No. 22-cv-03023-TLT<br><br>**DEFENDANTS' REPLY IN SUPPORT OF REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**<br><br>Date: January 28, 2025<br>Time: 2:00 pm PT<br>Ctrm: 10, 19th Floor – San Francisco<br>              Hon. Trina L. Thompson |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................................1

II.   ARGUMENT ........................................................................................................................3

    A.    The Court May Consider Documents Incorporated by Reference for Purposes of Determining Information Available to the Market: Exhibits E, I, J, L, and M..............3

    B.    The Court May Take Judicial Notice of Public Statements for Purposes of Determining Information Available to the Market:  Exhibits A, D, F, G, H, K, R, and S.......................................................................................................................4

    C.    The Court May Take Judicial Notice of the Fact that the State, SEC, and DOJ Investigations Have Concluded With No Findings of Wrongdoing and That DOJ Declined to Intervene in the Qui Tam Action:  Exhibits N, O, Q, and T .....................6

    D.    The Court May Judicially Notice Medicare's Stated Positions About Surveillance Testing:  Exhibits B, C, and P.................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carroll v. Myriad Genetics, Inc.*,
2022 WL 16860013 (N.D. Cal. Nov. 9, 2022) ...................................................................9

*In re eSpeed, Inc. Sec. Litig.*,
457 F. Supp. 2d 266 (S.D.N.Y. 2006)..................................................................................3

*In re Fastly, Inc. Sec. Litig.*,
2021 WL 5494249 (N.D. Cal. Nov. 28, 2021) ...................................................................8

*Gammel v. Hewlett-Packard Co.*,
2013 WL 1947525 (C.D. Cal. May 8, 2013) .....................................................................11

*Hsu v. Puma Biotechnology, Inc.*,
213 F. Supp. 3d 1275 (C.D. Cal. 2016) ..............................................................................6

*In re Intelligroup Sec. Litig.*,
527 F. Supp. 2d 262 (D.N.J. 2007) .....................................................................................7

*In re Iso Ray Sec. Litig.*,
189 F. Supp. 3d 1057 (E.D. Wash. 2016)...................................................................2, 5, 8

*Jasin v. Vivus, Inc.*,
2016 WL 1570164 (N.D. Cal. Apr. 19, 2016) ..................................................................11

*Jedrzejczyk v. Skillz Inc.*,
2022 WL 2441563 (N.D. Cal. July 5, 2022)......................................................................11

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ..........................................................................................4, 6

*Love v. Int'l Hotel Assocs.*,
2021 WL 4482106 (N.D. Cal. Sept. 30, 2021) ...................................................................6

*In re Lucid Grp., Inc. Sec. Litig.*,
2024 WL 3745605 (N.D. Cal. Aug. 8, 2024) .....................................................................4

*Marder v. Lopez*,
450 F.3d 445, 448 (9th Cir. 2006) ......................................................................................4

*McNeil v. Toor*,
2023 WL 5613805 (E.D. Cal. Aug. 30, 2023)...................................................................12

*Mollaei v. Otonomo Inc.*,
651 F. Supp. 3d 1135 (N.D. Cal. 2023) ..............................................................................6

ii

*In re Philip Morris Int'l Inc. Sec. Litig.*,
   2021 WL 4135059 (S.D.N.Y. Sept. 10, 2021)................................................................10, 11

*Rollins v. Dignity Health*,
   338 F. Supp. 3d 1025 (N.D. Cal. 2018) ...............................................................................12

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
   2016 WL 7117455 (M.D. Pa. Dec. 7, 2016)...........................................................................7

*Simon v. Abiomed, Inc.*,
   37 F. Supp. 3d 499 (D. Mass. 2014) ......................................................................................7

*Stamas v. Cnty. of Madera*,
   2010 WL 2556560 (E.D. Cal. June 21, 2010) ......................................................................12

*Teamsters Loc. 456 Pension Fund v. Universal Health Servs.*,
   396 F. Supp. 3d 413 (E.D. Pa. 2019) ...............................................................................7, 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).................................................................................................................9

*In re Trader Joe's Co. Dark Chocolate Litig.*,
   726 F. Supp. 3d 1150 (S.D. Cal. 2024).........................................................................12, 13

*In re Treasury Sec. Auction Antitrust Litig.*,
   595 F. Supp. 3d 22 (S.D.N.Y. 2022).......................................................................................7

*United States v. Carolina Liquid Chemistries, Corp.*,
   2019 WL 3207851 (N.D. Cal. July 16, 2019).......................................................................13

*Uribe v. Perez*,
   2020 WL 1318358 (C.D. Cal. Mar. 3, 2020).........................................................................11

*In re UTStarcom, Inc. Sec. Litig.*,
   617 F. Supp. 2d 964 (N.D. Cal. 2009) ...................................................................................9

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*,
   2014 WL 3891351 (S.D.N.Y. Aug. 8, 2014).........................................................................9

*In re VeriFone Holdings, Inc. Sec. Litig.*,
   704 F.3d 694 (9th Cir. 2012) .................................................................................................8

*Wash. Cnty. Health Care Auth., Inc. v. Baxter Int'l Inc.*,
   2020 WL 1666454 (N.D. Ill. Apr. 3, 2020) ...........................................................................7

*Weston v. DocuSign, Inc.*,
   669 F. Supp. 3d 849 (N.D. Cal. 2023) ...................................................................................5

iii

**Rules**

Rule 11 ........................................................................................................................................3

Rule 12(b)(6)..............................................................................................................................4

DEFENDANTS' REPLY ISO REQUEST FOR JUDICIAL NOTICE
No. 22-cv-03023-TLT

Defendants[1] submit this Reply in further support of Defendants' Notice of Documents Incorporated by Reference and Request for Judicial Notice ("RJN," ECF No. 137) and in response to Plaintiffs' Opposition to Defendants' RJN ("RJN Opp.," ECF No. 139).

## I.    INTRODUCTION

The vast majority of the exhibits attached to the RJN are SEC filings, investor call transcripts, and analyst reports, which Defendants offer to show that certain information reflected in those documents was available to investors. *See* Exs. A, D–M, R, S.  Courts routinely recognize that, in securities fraud cases, judicial notice is appropriate at the pleading stage where publicly available information is being offered to show what investors knew (not for the truth of matters asserted). Plaintiffs offer no authority to the contrary.

As for the other exhibits—public documents showing the status of the government investigations and Medicare's publicly stated position regarding surveillance testing, the Request for Judicial Notice likewise demonstrated that these documents are regularly judicially noticed by courts at the pleading stage.  RJN 4–6.  The documents reflect the following undisputed facts that are appropriate for judicial notice: (1) the years'-long DOJ investigation has now concluded and DOJ did not bring any charges against Defendants (or anyone at CareDx); (2) DOJ declined to intervene in the Olymbios qui tam "whistleblower" suit; (3) the SEC investigation has also now concluded, the SEC did not make any findings of wrongdoing, and it sent a declination notice to CareDx; (4) the state regulatory investigation concluded with no findings of wrongdoing; and (5) Medicare and the "MACs" responsible for overseeing the AlloSure LCD have made public statements about "surveillance testing," including an August 2024 Local Coverage Determination Statement, which stated that the Olymbios-disputed LCD covering AlloSure has always covered AlloSure "after a physician-assessed pretest, including for surveillance testing."  *See* Exs. B, C, N–Q, T.

Plaintiffs rely on cases where defendants have sought to use extrinsic documents to improperly dispute facts at the motion to dismiss stage, but those cases bear no resemblance to the circumstances

---

[1] Unless otherwise noted, all defined terms used herein have the same meaning as those set forth in Defendants' Motion to Dismiss the Third Amended Complaint ("Motion to Dismiss" or "MTD," ECF No. 136).

1

of this case where the status of the investigations and public pronouncements by Medicare are not subject to dispute.  What Plaintiffs really dispute is not these facts, but what *inferences* the Court should draw from them.  For instance, Plaintiffs do not argue—because they cannot—that the DOJ or SEC investigations are active or resulted in any charges against CareDx or any Defendant.  Instead, they point to the fact that the government reserves the right to intervene in the qui tam action at a later date.  RJN Opp. 6–9.  They note that the SEC's declination contains all of the standard caveats.  *Id.* at 5.  And they argue that CareDx's surveillance testing did not comply with the August 2024 CMS release.  *Id.* at 9–10.  Plaintiffs are free to raise these arguments in opposition to the merits of the Motion to Dismiss, but none of this matters for purposes of the RJN.  "[T]he fact [that] Plaintiffs may dispute the legal significance of" exhibits appended to defendants' motion to dismiss "does not mean those exhibits cannot be judicially noticed by the court."  *In re Iso Ray Sec. Litig.*, 189 F. Supp. 3d 1057, 1066 (E.D. Wash. 2016).

Plaintiffs' opposition is particularly galling because Olymbios' claims regarding surveillance testing and the government investigations are so central to Plaintiffs' case.  According to Plaintiffs' own allegations, it was Olymbios' whistleblower claims that ***led to*** the three government investigations into CareDx.  MTD 6.  Moreover, Plaintiffs rely on the government investigations as the foundation of their loss causation theory, claiming that CareDx's revelation of the government investigations revealed the "fraud" to the market.[2]  The TAC attempts to buttress that allegation by citing analyst reports claiming the investigations by three different entities, on the state and federal level, were "notable" and "typically bear some degree of merit."  ¶ 33.  The TAC likewise attempts to plead, albeit in conclusory terms, that CareDx's Medicare revenues plummeted *because*, amid these investigations, the government "caught on" to the "overbilling scheme."[3]  And, at oral argument on a prior motion to dismiss, Plaintiffs' counsel touted the relevance of ongoing investigations to the Court's resolution of

---

[2] *See, e.g.*, ¶¶ 313–14, 318 (alleging that announcement of DOJ, SEC, and state regulatory investigations was a "corrective disclosure" that demonstrates loss causation and that "'disclosures of these sort typically bear *some degree of merit*'") (emphasis added).

[3] *See, e.g.*, ¶ 32 ("Government investigations started to bring CareDx's scheme to light"); ¶ 124; ¶ 350 (alleging that CareDx's "path to profitability was severely and adversely affected" because "DOJ and SEC pulled the plug" on CareDx's Medicare "overbilling scheme").

DEFENDANTS' REPLY ISO REQUEST FOR JUDICIAL NOTICE
No. 22-cv-03023-TLT

the motion to dismiss. *See* May 16, 2023 Mot. Hearing Tr. at 13:16–14:7 (counsel for Plaintiffs: "According to CareDx's most recent filings, the investigations by the Department of Justice and the Securities and Exchange Commission are ongoing; and the fact that there are two parallel investigations, Department of Justice and Securities and Exchange Commission, I would submit are relevant to the Court's question how does Dr. Olymbios relate to this securities case.").

Now, having effectively bet on Olymbios and lost, Plaintiffs cannot have it both ways, relying on the investigations and the qui tam complaint to plead securities fraud while at the same time claiming the actual outcome of the investigations and the government's position vis-à-vis the qui tam complaint are off limits because Plaintiffs refused to disclose them in their pleading. Indeed, it is difficult to understand how, consistent with their Rule 11 obligations, Plaintiffs' counsel can raise allegations about the government investigations and the qui tam complaint without mentioning these developments. *Cf. In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 290 n.182 (S.D.N.Y. 2006) ("The incomplete information in the Complaint renders particularly curious plaintiffs' assertion that defendants' use of SEC filings to calculate the magnitude of the insider selling amounts to 'inappropriate factual argument.'").

The RJN should be granted in full.

## II.    ARGUMENT

### A.    The Court May Consider Documents Incorporated by Reference for Purposes of Determining Information Available to the Market: Exhibits E, I, J, L, and M

Defendants rely on Exhibit E (Form 10-K) to show (i) that CareDx disclosed to the market its allegedly fraudulent practice of "surveillance testing" and (ii) that CareDx warned investors about potential non-compliance with healthcare laws (MTD 4, 19); Exhibits I and J (earnings call transcripts) to show that CareDx disclosed to the market the number of centers adopting AlloSure surveillance protocols (MTD 4); Exhibit L (Form 10-K) to show that CareDx disclosed to the market the "bundled" nature of its RemoTraC service (MTD 5); and Exhibit M (earnings call transcript) to show that CareDx

disclosed to the market that one of the purposes of RemoTraC was to apply the surveillance schedule (MTD 5).[4]

Plaintiffs do not dispute that these exhibits are incorporated by reference in the TAC. RJN Opp. 16. Plaintiffs claim that the Court "may consider these documents for their existence only; they may not be considered for the truth of the matters asserted therein." RJN Opp. 16. That is not the law in the Ninth Circuit.[5] In any event, Defendants are not relying on these exhibits for the truth of the matters asserted therein, but for the fact that CareDx disclosed certain information to investors. Plaintiffs' own authorities recognize that courts may consider these types of documents for the fact that the information contained therein was disclosed to investors. *See, e.g.*, *In re Lucid Grp., Inc. Sec. Litig.*, 2024 WL 3745605, at *5 (N.D. Cal. Aug. 8, 2024) (RJN Opp. 16) (considering SEC filings and earnings call transcripts for "purpose of noting the representations Defendants made to the market").

**B.  The Court May Take Judicial Notice of Public Statements for Purposes of Determining Information Available to the Market: Exhibits A, D, F, G, H, K, R, and S**

Defendants rely on Exhibit A (analyst report) to show that investors were aware of the LCD that Plaintiffs claim CareDx systematically violated (MTD 3); Exhibits D (CareDx webpage); F and G (earnings call transcripts) to show that CareDx disclosed to the market its practice of surveillance testing that Plaintiffs allege violated the LCD (MTD 4); Exhibits H and K (earnings call transcripts) to show that CareDx disclosed to the market the number of centers adopting AlloSure surveillance protocols (MTD 4); and Exhibits R and S (Forms 8-K) to show that CareDx's SEC disclosures attaching the underwriter agreements warned investors to read the underwriter agreements in conjunction with CareDx's periodic filings (MTD 21–22).[6]

---

[4] The Court previously took judicial notice of Exhibits I, J, L, and M. *See* Orders (ECF Nos. 75 and 123).

[5] A "court may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)).

[6] The Court previously took judicial notice of Exhibits G, K, R, and S. *See* Orders (ECF Nos. 75 and 123).

DEFENDANTS' REPLY ISO REQUEST FOR JUDICIAL NOTICE
No. 22-cv-03023-TLT

Exhibits A, D, F–H, and K may be judicially noticed for the fact that the information contained in these exhibits was disclosed to the market. RJN 3–4 (citing cases).[7] As noted above, Plaintiffs' own authorities acknowledge that courts may consider these types of company disclosures for the fact that the information contained therein was disclosed to investors. Nevertheless, Plaintiffs lodge a series of baseless objections.

Plaintiffs complain that Defendants fail to "identify the specific facts within these exhibits that they are requesting the Court to notice[.]" RJN Opp. 14. But, as illustrated above, Defendants' motion papers clearly describe the "facts" Defendants are asking the Court to notice.

Plaintiffs also take issue with Exhibits A, D, F–H, and K because, they claim, whether investors were aware of the LCD and the fact that CareDx engaged in surveillance testing are "irrelevant" facts of which the Court *cannot* take judicial notice. RJN Opp. 14–15. This argument is illogical and at odds with Plaintiffs' own cited authority.[8] Investors' awareness of the LCD and surveillance testing goes to the heart of Plaintiffs' theory of securities fraud: that CareDx failed to disclose that surveillance testing violated the LCD. What Plaintiffs are really arguing is that investors' awareness of these facts does not undermine their theory of falsity and scienter, but that is an argument for the merits, not the RJN.[9] Whether documents are "relevant"—in Plaintiffs' self-serving view—has no bearing on whether the documents are properly subject to judicial notice. *See In re Iso Ray*, 189 F. Supp. 3d at 1066.

Nor are Defendants offering these exhibits to "dispute the Complaint's well-pled allegations," as Plaintiffs claim. RJN Opp. 15. The RJN Opposition does not affirmatively argue, for instance, that any of these disclosures were not made publicly available to investors or dispute the authenticity of any of these exhibits. To the contrary, Plaintiffs readily admit in their RJN Opposition that investors

---

[7] Plaintiffs do not oppose judicial notice of Exhibits R and S. *See* RJN Opp. 16.

[8] In the one case cited by Plaintiffs in support of this "relevance" theory, *Weston v. DocuSign, Inc.*, 669 F. Supp. 3d 849, 871–72 (N.D. Cal. 2023) (RJN Opp. 15), the court took judicial notice of earnings call transcripts, SEC filings, and analyst reports "to determine the information available to the market." The small number of SEC filings that the court deemed "not relevant to [its] analysis" were filings made by *other companies*, not the defendant. *Id.*

[9] Plaintiffs are also wrong on the merits. *See* MTD 11.

5

were, in fact, "aware surveillance testing was part of CareDx's strategy generally" and that investors were aware of "the LCD itself."  RJN Opp. 14–15.  Thus, these facts are not in dispute and therefore appropriate for judicial notice.  Notably, Plaintiffs do not point to a single "well-pled allegation" that Defendants actually dispute through these exhibits.  *See* RJN Opp. 15.[10]

### C.    The Court May Take Judicial Notice of the Fact that the State, SEC, and DOJ Investigations Have Concluded With No Findings of Wrongdoing and That DOJ Declined to Intervene in the Qui Tam Action:  Exhibits N, O, Q, and T

Defendants rely on Exhibit N (Form 10-K) for the fact that the state regulatory agency completed its review of CareDx's business practices and determined that no further information or action was required (MTD 6); Exhibit O (Form 8-K press release) for the fact that the SEC told CareDx that it concluded its investigation and did not intend to recommend enforcement action (MTD 6); Exhibit Q (Form 8-K press release) for the fact that CareDx understands the DOJ closed its investigation of the Company (MTD 7); and Exhibit T (government's non-intervention filing) for the fact that DOJ declined to intervene in Dr. Olymbios' qui tam action (MTD 7).

The RJN demonstrated that judicial notice of these Exhibits is proper because SEC filings and court filings are matters of public record not reasonably subject to dispute, notice is consistent with existing case law, and because the TAC relies on the qui tam action and SEC/state regulatory investigation but says nothing about the outcome of those proceedings.  *See* RJN 4–6.  Beyond presenting improper merits-based arguments and attempting to manufacture a factual dispute, Plaintiffs cite no cases where courts have refused to judicially notice the outcome of government

---

[10] Plaintiffs rely on *Love v. Int'l Hotel Assocs.*, 2021 WL 4482106, at *2 (N.D. Cal. Sept. 30, 2021) (RJN Opp. 15–16), a disability discrimination case, which cites the portion of *Khoja* where the Ninth Circuit found that taking judicial notice of an earnings call transcript was improper.  However, in *Khoja*, the court determined that the excerpts of the transcript on which defendants relied were "unclear," "not entirely consistent," and that "[r]easonable people could debate" whether the conference call disclosed to investors the facts defendants claimed it disclosed.  *Khoja*, 899 F.3d at 1000.  Here, Plaintiffs do not identify any ambiguities or inconsistencies in the disclosures upon which Defendants rely.  In *Mollaei v. Otonomo Inc.*, 651 F. Supp. 3d 1135, 1140 (N.D. Cal. 2023) (RJN Opp. 15), a case arising under California's vehicle tracking privacy law, the court declined to take judicial notice of the defendant's privacy policies, because the defendant was using them to dispute the merits of plaintiff's claim.  And in *Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1282 (C.D. Cal. 2016) (RJN Opp. 15), the court declined to take judicial notice of analyst reports where plaintiffs disputed whether the reports were "publicly available" and claimed that they "reflect an inherent bias favoring" defendant.  Plaintiffs raise no such arguments here.

DEFENDANTS' REPLY ISO REQUEST FOR JUDICIAL NOTICE
No. 22-cv-03023-TLT

investigations. RJN Opp. 4–9. That is because overwhelming authority supports that courts may notice the conclusion of government investigations at the pleading stage, especially when the investigations feature prominently in the complaint. *See Teamsters Loc. 456 Pension Fund v. Universal Health Servs.*, 396 F. Supp. 3d 413, 421 n.4, 429, 439, 469–70 (E.D. Pa. 2019) (where "[p]laintiffs point[ed] to the coordinated federal investigation as evidence of scienter," considering defendant's "Notice Regarding the Government's Investigation," which "disclosed in a Form 8-K . . . that the DOJ Criminal Frauds Section had closed the criminal investigation," and weighing that fact in finding that plaintiff failed to plead scienter); *Wash. Cnty. Health Care Auth., Inc. v. Baxter Int'l Inc.*, 2020 WL 1666454, at *9 n.2 (N.D. Ill. Apr. 3, 2020) (holding that the "Court may properly take judicial notice of the formal closure of a DOJ investigation" and that "[h]aving vested the ongoing DOJ investigation with substantial probative force, the plaintiffs would be hard pressed now to assert that closure of that investigation does nothing to weaken the plausibility of their claims."); *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 2016 WL 7117455, at *6 (M.D. Pa. Dec. 7, 2016) ("As the SEC Order is the culmination of the SEC investigation referenced in the [complaint] . . . it clearly 'relate[s]' to matters at issue' before the Court. Accordingly, the Court will take judicial notice of the SEC Order in connection with its ruling on the pending motions to dismiss") (internal citation omitted); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 274 (D.N.J. 2007) ("this Court takes judicial notice of the SEC No-action Letter for the limited purpose of acknowledging that the SEC investigation of the matters related to Intelligroup's Restatement was terminated without any enforcement action by the Commission"); *Simon v. Abiomed, Inc.*, 37 F. Supp. 3d 499, 510 (D. Mass. 2014) (considering FDA's "Close-Out Letter," disclosed in defendant's 8-K filing, and the fact that "FDA terminated its investigation without assessing any penalty or sanction")[11]; *In re Treasury Sec. Auction Antitrust Litig.*, 595 F. Supp. 3d 22, 51 (S.D.N.Y. 2022) ("the fact that DOJ's investigation appears to have concluded without a prosecution or any sort of enforcement action weakens Plaintiffs' arguments concerning the significance of the DOJ investigation").

---

[11] Although there was no express discussion of judicial notice in the *Abiomed* opinion (RJN Opp. 8–9), the court nonetheless considered extrinsic facts not pled in the complaint—at the request of the defendant—about the FDA closing its investigation without any findings of wrongdoing. *See Abiomed*, No. 1:12-cv-12137-FDS (D. Mass. July 8, 2013), ECF No. 51.

7

None of Plaintiffs' objections holds merit.

Conclusion of SEC investigation and SEC declination notice (Exhibit O):  Plaintiffs argue that because the Court previously declined to consider Exhibit O, it should do so again here.  RJN Opp. 4–5.  But they ignore the context of the Court's ruling.  Defendants previously made an administrative motion to file Exhibit O as "supplemental" material *after* briefing on the Motion to Dismiss the SAC had already concluded.  ECF No. 101.  (Defendants did so because CareDx did not receive the declination until after briefing had closed.)  In a docket entry, the Court denied Defendants' administrative motion because "[b]riefing is complete and the requested material is not central to the complaint."  ECF No. 103.  Thus, the Court never ruled on whether Exhibit O was appropriate for judicial notice on a timely RJN.

Next, Plaintiffs claim that Defendants misinterpret Exhibit O when they represent that the SEC "found no wrongdoing."  RJN Opp. 4–6.  But Plaintiffs cannot meaningfully dispute that "the SEC has concluded its investigation as to [CareDx] and does not intend to recommend an enforcement action by the SEC against the Company."  Ex. O.  Accordingly, the Court may take judicial notice of those facts.  If Plaintiffs wish to dispute the significance or implications of those facts, they are free to do so on the merits, but that does not implicate Defendants' request for judicial notice.  *See In re Fastly, Inc. Sec. Litig.*, 2021 WL 5494249, at *7 (N.D. Cal. Nov. 28, 2021) (finding plaintiff's argument that the "conclusions drawn from the [judicially noticed] report are improper, where it is not as clear as defendants pose," went to the "merits, not whether this document is the proper subject of judicial notice"); *In re Iso Ray*, 189 F. Supp. 3d at 1066 ("[T]he fact Plaintiffs may dispute the legal significance of Exhibits 6 and 7 as pertains to what Plaintiffs contend is Defendants' 'truth-on-the-market' affirmative defense, does not mean those exhibits cannot be judicially noticed by the court.").

Plaintiffs then argue that "the SEC's non-action cannot be used to negate scienter."  RJN Opp. 5–6. Again, the "use" of a judicially noticeable fact is not relevant to whether the fact can be judicially noticed, but in any event, this argument is baseless.  Plaintiffs analogize to cases where the SEC *did* charge the defendant with non-fraud violations of the securities laws, and the defendant tries to weaponize the fact that the SEC did not *also* charge fraud in order to defeat plaintiff's scienter claims. *See In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 700, 707 n.5 (9th Cir. 2012) (RJN Opp.

8

5) (where the SEC brought non-fraud charges against defendant for making false statements, drawing "no inference" from fact that SEC did not also charge fraud); *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 975, 975 n.15 (N.D. Cal. 2009) (RJN Opp. 5) (where SEC charged defendants with certifying "false revenue data," the fact that SEC did not also bring a fraud charge was "not determinative of whether Defendants, in fact, committed securities fraud"); *Vanleeuwen v. Keyuan Petrochemicals, Inc.*, 2014 WL 3891351, at *4, *4 n.5 (S.D.N.Y. Aug. 8, 2014) (same).[12]

That is not what Defendants are attempting to do here. Defendants are asking that, when the Court considers the totality of the facts alleged in the TAC, including those about the SEC investigation, it takes notice of the fact that the SEC investigation has concluded and no charges were brought against Defendants. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding that, in assessing securities fraud claims, "courts must consider the complaint in its entirety, as well as . . . matters of which a court may take judicial notice").

<u>Conclusion of DOJ investigation and non-intervention in the qui tam (Exhibits Q and T)</u>: Plaintiffs' objections to judicial notice of the conclusion of the DOJ investigation and DOJ's non-intervention in the qui tam mirror their (meritless) objections to the status of the SEC investigation and fail for the same reasons. *See* RJN Opp. 6–7 (arguing that the Court should not infer that DOJ found "no wrongdoing"); *id.* (arguing that DOJ reserves rights to intervene in the qui tam action at a later time and has done so in other matters). Once again, just because Plaintiffs disagree with Defendants about what inferences the Court should draw from judicially noticeable facts does not mean those facts are in "dispute." *See* RJN Opp. 8.[13] Plaintiffs are *not* disputing that DOJ declined to intervene in the qui tam action or that DOJ did not bring any charges against CareDx. Nor are they

---

[12] Moreover, in all of these cases, unlike here, the SEC investigation and class action did not depend on a common "whistleblower" such that the outcome of the SEC investigation properly undermines reliance on the whistleblower in the class action.

[13] *Carroll v. Myriad Genetics, Inc.*, 2022 WL 16860013, at *2 (N.D. Cal. Nov. 9, 2022) (RJN Opp. 8) provides an illustrative contrast. *Myriad Genetics* was a breach of warranty case concerning the accuracy of defendant's prenatal screening test. 2022 WL 16860013, at *1. The court declined to judicially notice academic articles attached to defendants' motion to dismiss discussing the same prenatal screening and purportedly showing that the test *was* accurate. *Id.* at *2. Thus, unlike here, defendants offered the articles to present their own (disputed) version of the facts, which the court found was improper.

9

claiming the DOJ is actively investigating Defendants for Medicare fraud.  The Court should take notice of those facts in evaluating the sufficiency of the TAC.  *See Teamsters*, 396 F. Supp. 3d at 451–52, 466–70 (considering existence and status of qui tam actions as well as closed government investigations into defendants' purported misconduct in determining whether scienter sufficiently pled).

State regulatory agency (Exhibit N):  Plaintiffs do not dispute that the state regulatory agency "completed its review of [CareDx's] business practices and determined that no further information or action is required."  RJN Opp. 4, n.3 (citing Ex. N).  Thus, the Court may take judicial notice of that fact.

**D.     The Court May Judicially Notice Medicare's Stated Positions About Surveillance Testing:  Exhibits B, C, and P**

Defendants rely on Exhibit B (2017 MAC policy article concerning the LCD for AlloSure) for the fact that the MAC's publicly stated position was: "Since a biopsy is not frequently performed for surveillance due to its invasive nature, the use of AlloSure may be performed at a frequency established for other non-invasive tests such as viral testing and donor-specific antibody testing (4-6x during the first year; 2-4x in subsequent years)" (MTD 4; *see also* MTD 3); Exhibit C (2021 MAC policy article concerning a revised LCD for AlloSure) for the fact that (i) the MAC's publicly stated position was that the revised LCD "was not intended to rescind coverage for tests used for low-risk patients using such tests for surveillance" and (ii) CareDx submitted a public comment to the MAC describing doctors' use of AlloSure for "surveillance testing" (MTD 4–5); and Exhibit P (August 2024 CMS Local Coverage Determination Statement) for the fact that Medicare, when it withdrew a proposed revised LCD covering AlloSure, clarified that the existing LCD was not "changed" and would "continue to" cover tests "after a physician-assessed pretest, including for surveillance testing." MTD 6–7.

As the RJN demonstrated, all of these facts—offered to demonstrate Medicare's public position on surveillance testing—are subject to judicial notice.  Courts frequently consider public statements made by governmental entities in evaluating securities fraud claims, especially when the fraud is premised on alleged regulatory misconduct.  *See In re Philip Morris Int'l Inc. Sec. Litig.*, 2021

10

WL 4135059, at *1, *7, *10–11 (S.D.N.Y. Sept. 10, 2021) (taking judicial notice of FDA approvals because they were public and finding FDA approval undermined plaintiffs' securities claims); *Jasin v. Vivus, Inc.*, 2016 WL 1570164, at *14, *21–22 (N.D. Cal. Apr. 19, 2016) (finding judicially noticed reports issued by European regulatory agency undermined allegations that defendants misrepresented obstacles barring drug approval).[14] *See also Uribe v. Perez*, 2020 WL 1318358, at *4 (C.D. Cal. Mar. 3, 2020) ("the CDC information is not subject to dispute because it can be accurately and readily determined from the CDC website. . . . The information provided was published on the official website of the CDC, which is a government entity.  It is accessible to the public.").

Plaintiffs' objections fail.

August 2024 CMS Local Coverage Determination Statement (Exhibit P):  Plaintiffs claim that Exhibit P is "irrelevant" because it was issued after the Class Period and "says nothing about coverage rules during the Class Period in discussing an 'August 10, 2023' LCD that post-dates the Class Period." RJN Opp. 9.  That is not correct.  The Local Coverage Determination Statement clearly indicates that the "August 2023" LCD to which Plaintiffs refer was only a "*proposed*" LCD that Medicare was "*not finalizing*."  Ex. P (emphases added).  The Local Coverage Determination Statement goes on to describe how coverage for the "*existing*" LCD—which had been in place since July 2021 and, prior to that, was substantively unchanged (vis-à-vis AlloSure)—has not "changed" and still covers AlloSure "after a physician assessed pretest, including for surveillance testing."  Ex. P.  Accordingly, on its face, the Local Coverage Determination Statement is backwards-looking, and in any event, the fact that it was issued outside the Class Period is not dispositive.  *See Gammel v. Hewlett-Packard Co.*, 2013 WL 1947525, at *3 (C.D. Cal. May 8, 2013) (finding items dated "before and after the class period . . . appropriate for judicial notice").[15]

---

[14] Plaintiffs fail to distinguish *Philip Morris* and *Jasin*, merely observing that in those cases there was "no dispute regarding the document's relevance or whether its content was misrepresented."  RJN Opp. 11, n.10.  There is no such dispute here.

[15] By contrast, in *Jedrzejczyk v. Skillz Inc.*, 2022 WL 2441563, at *1–3 (N.D. Cal. July 5, 2022) (RJN Opp. 9), there is no indication that the post-class period press release for which defendants sought judicial notice was backwards-looking and implicated the class period.

DEFENDANTS' REPLY ISO REQUEST FOR JUDICIAL NOTICE
No. 22-cv-03023-TLT

Plaintiffs also claim that Exhibit P is subject to "dispute" and "varying interpretations."  RJN Opp. 9–12.  Not so.  Plaintiffs' primary argument in this respect is that Defendants failed to conduct a "physician-assessed pretest" and so their surveillance use of AlloSure was still allegedly improper,[16] but that does not mean Medicare's statement in Exhibit P is in any way in "dispute."  Nor does the fact that CMS put out a prior press release referencing unidentified "improper billing and overutilization," or that "medical necessity" has always remained a requirement for billing for AlloSure prevent the Court from considering Medicare's statement in adjudicating the Motion to Dismiss.  *See* RJN Opp. 11–12.

Plaintiffs cite a litany of cases in which defendants improperly disputed facts at the motion to dismiss stage, but none of them suggests that the Court may not take judicial notice of Medicare's stated position regarding surveillance testing as set forth in Exhibit P.  In *McNeil v. Toor*, 2023 WL 5613805, at *2 (E.D. Cal. Aug. 30, 2023) (RJN Opp. 10), a *pro se* plaintiff sought judicial notice of a news article for the truth of the matters asserted therein.  *Stamas v. Cnty. of Madera*, 2010 WL 2556560, at *3 (E.D. Cal. June 21, 2010) (RJN Opp. 10) involved a dispute over an easement.  When the defendant sought judicial notice of decades'-old maps and property records relevant to the easement, the court declined to take judicial notice of defendants' "interpretation" of the maps and property records because they were "subject to expert testimony."  *Id.*  In *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1032–33 (N.D. Cal. 2018), the court declined to take judicial notice of statements from defendant's own website, and noted that "courts have often admitted records taken from websites maintained by government agencies."  In *In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1164 (S.D. Cal. 2024) (RJN Opp. 11), the defendant was accused of violating false advertising and consumer protection laws by selling dark chocolate containing undisclosed harmful metals.  The defendant sought judicial notice of various FDA publications discussing the health risks of metals in foods.  *Id.* at 1163. The court granted judicial notice, but refused to consider the publications for the truth of the matters asserted:  "whether and to what extent heavy metals in food are avoidable and the amount of heavy metals that pose a significant risk to human health."  *Id.*

---

[16] Here, too, Plaintiffs' argument fails on the merits.  The TAC contains no allegations whatsoever concerning a "pretest," as Defendants explain further in their merits reply.

12

at 1163–64.  Importantly, in *Trader Joe's*, unlike here, the government's position vis-à-vis the defendant's alleged misconduct was not central to plaintiffs' allegations.  And, in *United States v. Carolina Liquid Chemistries, Corp.*, 2019 WL 3207851, at *1–2, *4 (N.D. Cal. July 16, 2019), the parties disputed whether defendant's drug testing product was appropriately billed to Medicare as a "quantitative" test.  The defendant sought judicial notice of FDA approvals of *other* products deemed "quantitative."  *Id.* at *6.  The court granted the request for judicial notice, but declined to infer from the documents that defendant's test was "quantitative," because "there is no indication of the relationship between" the products referenced in the documents and defendant's products.  *Id.*

2017 and 2021 Medicare Statements Concerning Surveillance Testing (Exhibits B and C): Plaintiffs' objections with respect to Exhibits B and C are more of the same, presenting merits argumentation about the significance of the Exhibits, not reasons judicial notice may be declined, and likewise should be rejected.  *See* RJN Opp. at 12–13 (arguing that Medicare statements about surveillance testing are "heavily disputed" because CMS maintained its requirement that "AlloSure have some medical necessity"); *id.* at 13 ("Medicare required a 'pretest'").  *Id.*

* * *

For these reasons, Defendants respectfully request that the Court grant the RJN.

DEFENDANTS' REPLY ISO REQUEST FOR JUDICIAL NOTICE
No. 22-cv-03023-TLT

Dated: January 10, 2025

By: */s/ Laura Leigh Geist*
**WILLKIE FARR & GALLAGHER LLP**
Laura Leigh Geist (CSB No. 180826)
Barrington Dyer (CSB No. 264762)
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone: (415) 848-7400
lgeist@willkie.com
bdyer@willkie.com

**WILLKIE FARR & GALLAGHER LLP**
Tariq Mundiya (admitted *pro hac vice*)
Charles Cording (admitted *pro hac vice*)
Brady Sullivan (admitted *pro hac vice*)
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8000
tmundiya@willkie.com
ccording@willkie.com
bsullivan@willkie.com

*Attorneys for Defendants*
*CareDx, Inc., Reginald Seeto,*
*and Peter Maag*

14