**WILLKIE FARR & GALLAGHER LLP**
Laura Leigh Geist (CSB No. 180826)
Barrington Dyer (CSB No. 264762)
333 Bush Street, 34th Floor
San Francisco, CA  94104
Telephone: (415) 858-7400
lgeist@willkie.com
bdyer@willkie.com

**WILLKIE FARR & GALLAGHER LLP**
Tariq Mundiya (*pro hac vice*)
Charles Cording (*pro hac vice*)
Brady Sullivan (*pro hac vice*)
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8000
tmundiya@willkie.com
ccording@willkie.com
bsullivan@willkie.com

Attorneys for Defendants
*CareDx, Inc., Reginald Seeto,*
*and Peter Maag*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLUMBERS & PIPEFITTERS LOCAL UNION #295 PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>CAREDX, INC., PETER MAAG, and REGINALD SEETO,<br><br>    Defendants. | Case No. 22-cv-03023-TLT<br><br>**DEFENDANTS' RESPONSES TO INQUIRIES FOR HEARING**<br><br>Date: January 28, 2025<br>Time: 2:00 pm PT<br>Ctrm: 10, 19th Floor – San Francisco<br>        Hon. Trina L. Thompson |

**Question One: Relevance of Exhibits A, D, F, G, H, and K**

Exhibits A, D, F, G, H, and K are relevant because they fundamentally undermine Plaintiffs' core theory of scienter: that Defendants deceived investors by failing to disclose that CareDx was billing Medicare for "surveillance tests" that were not covered by the LCD issued by Medicare.  ¶¶ 28-29, 189, 259, 272.  Exhibits D, F, G, H, and K are public statements that show Defendants disclosed CareDx's practice of "surveillance testing" to investors and even discussed its importance to CareDx's business growth and operations.  Furthermore, Exhibit A demonstrates that investors were aware of and attuned to the LCD, which was itself publicly available.  *See also* ¶ 90, n.8.

CareDx's transparent disclosure, which these exhibits demonstrate, is inconsistent with an intent to deceive investors.  MTD at 11 (citing *Pardi v. Tricida, Inc.*, 2024 WL 1056013, at *12 (N.D. Cal. Mar. 11, 2024)).   These materials also illustrate that investors could independently assess CareDx's statements against Medicare's public coverage position.  MTD at 11.[1]

**Question Two: Judicial Notice of Exhibit P**

Defendants ask the Court to take judicial notice of the fact that Medicare stated publicly that the LCD covers "surveillance testing" after a physician assessed pretest.  Plaintiffs cannot, and do not, dispute this fact, and therefore, it is subject to judicial notice.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).   Courts routinely take judicial notice of statements made by regulators in adjudicating motions to dismiss securities actions.  *See, e.g.*, *Jasin v. Vivus, Inc.*, 2016 WL 1570164, at *21–22 (N.D. Cal. June. 19, 2016) (taking judicial notice of internal reports from the European Medicines Agency because they undermined plaintiffs' scienter and falsity allegations); *In re Philip Morris Int'l Inc. Sec. Litig.*, 2021 WL 4135059, at *1, *7 (S.D.N.Y. Sept. 10, 2021).

Plaintiffs advance no good reason why this document cannot be noticed, instead raising an improper merits argument why this CMS statement does not defeat their theory of fraud.  They argue that the TAC still successfully alleges fraud because "Defendants' RemoTraC program did not involve

---

[1] This use reinforces why judicial notice is proper.  *See* RJN (ECF No. 137) at 3-4 (showing courts routinely take judicial notice to determine what information was available to investors).  Plaintiffs' authorities acknowledge as much.  *See In re Lucid Grp., Inc. Sec. Litig.*, 2024 WL 3745605, at *5 (N.D. Cal. Aug. 8, 2024) (RJN Opp. at 16) (considering SEC filings and earnings call transcripts for "purpose of noting the representations Defendants made to the market").

DEFENDANTS' RESPONSES TO INQUIRIES FOR HEARING
No. 22-cv-03023-TLT

getting 'physician-assessed pretests' for AlloSure" since "CareDx would automatically have AlloSure bundled" with "routine bloodwork." RJN Opp. 9–10. But the TAC lacks a single allegation about a "physician-assessed pretest" (*see* MTD Reply at 5), much less the specific allegation that CareDx "bundled" AlloSure with routine bloodwork via RemoTraC absent a pretest. More broadly, this Court already considered and rejected Plaintiffs' RemoTraC "bundling" allegations, which remain unchanged from the SAC and lack particularization. ECF No. 123 at 5, 7, 18.

**Question Three: Falsity – Stark Law Statements**

Plaintiffs cannot establish that Dr. Seeto's Stark Law statements are false based on Plaintiffs' allegations regarding the KOAR study. First, Dr. Seeto did not certify compliance with the Stark Law. To the contrary, he warned investors that CareDx "cannot be certain that regulators would find these arrangements to be in compliance with the Stark Law[.]" ¶¶ 246, 264. Because the TAC fails to plead any regulator found the KOAR study to violate the Stark Law, the TAC fails to plead these statements were false when made. *See City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*, 2024 WL 4349289 at *8 (S.D.N.Y. Sept. 30, 2024) (MTD at 17).

Second, Dr. Seeto's statements are statements of opinion within the Supreme Court's decision in *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015) (MTD at 18). Therefore, to plead falsity, Plaintiffs would need to plead that Dr. Seeto was aware of material facts that "conflict with what a reasonable investor would take from the statement[s]" themselves. *Id.* at 189. But no such facts are pled in the TAC. There is no link between Dr. Seeto and any allegation in the TAC concerning the KOAR study. Indeed, the relevant portions of the TAC do not mention Dr. Seeto at all, much less plead that Dr. Seeto was aware that KOAR was being conducted in violation of the Stark Law. ¶¶ 185-94. The only particularized allegation regarding the KOAR study comes from FE-8 who alleged that doctors were being paid $35,000 to $40,000 to enroll patients, which he claimed was "excessive and very unusual." ¶ 186. However, while FE-8 claims to have brought concerns about these payments to the attention of others at CareDx (¶ 186), neither FE-8 nor any other witness claims to have raised any concerns about the KOAR study to Dr. Seeto.

**Question Four: Scienter – *Tellabs* Analysis**

This Court has twice rejected finding scienter based on a holistic analysis and Plaintiffs' scienter allegations are now even less cogent and compelling.  In August 2024, Medicare publicly reaffirmed its coverage of "surveillance testing," the basis for the claim that Defendants billed Medicare for medically unnecessary tests (Ex. P).  As of October 2024, all of the government investigations have concluded with declinations across the board, no charges, no settlements, no findings of wrongdoing, and no reversal of any claims by Medicare (Exs. O, Q, T).  And, while Olymbios' qui tam complaint was unsealed in October 2024, Olymbios has not served it, apparently unable to retain counsel to prosecute it, and is contemplating an amendment (Ex. U).

These developments buttress what is evident on the face of the TAC: none of Plaintiffs' various scienter allegations present a coherent theory of a fraud.  Plaintiffs fail to answer basic questions like Defendants' motive to commit fraud.  Nor do they provide a cogent chronology of the "fraud," including when the fraud began and when it ended.  Plaintiffs' theory is instead riddled with internal contradictions: CareDx knowingly defrauded Medicare by seeking payment for uncovered surveillance tests, but then disclosed what it was doing to investors and Medicare (*see supra*, Question One); CareDx told employees not to put in writing that its tests were 100% covered by Medicare, but then put just that in writing (¶¶ 72, 298); and the RemoTraC program "deliberately obscure[ed]" from doctors and patients the "bundling" of AlloSure with routine bloodwork, but CareDx repeatedly disclosed that same bundling to the market (¶¶ 96, 117, Ex. L).

On this record, the strongest inference is the simple and straightforward one: that RemoTraC was a bona fide response to the COVID-19 crisis, not a massive fraud on Medicare and investors.  Plaintiffs base their claims principally on the allegations of Olymbios—a disgruntled former employee who became subject to contentious trade secrets litigation with the Company after he was caught stealing 50,000 documents from the Company and joining its largest competitor.  But, after multiple investigations, spanning multiple years, his concerns have proven unfounded and his views on *Medicare* coverage of surveillance testing have been specifically rejected by *Medicare*.

DEFENDANTS' RESPONSES TO INQUIRIES FOR HEARING
No. 22-cv-03023-TLT

Dated: January 27, 2025

By: */s/ Laura Leigh Geist*

**WILLKIE FARR & GALLAGHER LLP**
Laura Leigh Geist (CSB No. 180826)
Barrington Dyer (CSB No. 264762)
333 Bush Street, 34th Floor
San Francisco, CA  94104
Telephone: (415) 848-7400
lgeist@willkie.com
bdyer@willkie.com


**WILLKIE FARR & GALLAGHER LLP**
Tariq Mundiya (admitted *pro hac vice*)
Charles Cording (admitted *pro hac vice*)
Brady Sullivan (admitted *pro hac vice*)
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8000
tmundiya@willkie.com
ccording@willkie.com
bsullivan@willkie.com

*Attorneys for Defendants*
*CareDx, Inc., Reginald Seeto,*
*and Peter Maag*

DEFENDANTS' RESPONSES TO INQUIRIES FOR HEARING
No. 22-cv-03023-TLT