1  ROBBINS GELLER RUDMAN
      & DOWD LLP
2  SHAWN A. WILLIAMS (213113)
   JASON C. DAVIS (253370)
3  Post Montgomery Center
   One Montgomery Street, Suite 1800
4  San Francisco, CA 94104
   Telephone: 415/288-4545
5  415/288-4534 (fax)
   shawnw@rgrdlaw.com
6  jdavis@rgrdlaw.com
         – and –
7  SPENCER A. BURKHOLZ (147029)
   THEODORE J. PINTAR (131372)
8  HEATHER G. GEIGER (322937)
   NICOLE Q. GILLILAND (335132)
9  EVELYN SANCHEZ GONZALEZ (360232)
   655 West Broadway, Suite 1900
10 San Diego, CA 92101
   Telephone: 619/231-1058
11 619/231-7423 (fax)
   spenceb@rgrdlaw.com
12 tedp@rgrdlaw.com
   hgeiger@rgrdlaw.com
13 ngilliland@rgrdlaw.com
   egonzalez@rgrdlaw.com
14
   Lead Counsel for Lead Plaintiffs
15 [Additional counsel appear on signature page.]

16              UNITED STATES DISTRICT COURT

17            NORTHERN DISTRICT OF CALIFORNIA

18                 SAN FRANCISCO DIVISION

19 PLUMBERS & PIPEFITTERS LOCAL          )  Case No. 3:22-cv-03023-TLT (Securities
   UNION #295 PENSION FUND, Individually )  Case)
20 and on Behalf of All Others Similarly Situated, )
                                         )  CLASS ACTION
21                          Plaintiff,   )
                                         )  LEAD PLAINTIFFS' UNOPPOSED
22        vs.                            )  MOTION FOR PRELIMINARY
                                         )  APPROVAL OF CLASS ACTION
23 CAREDX, INC., et al.,                 )  SETTLEMENT, AND FOR APPROVAL
                                         )  OF MODIFIED SCHEDULE, AND
24                          Defendants.  )  MEMORANDUM OF POINTS AND
                                         )  AUTHORITIES IN SUPPORT
25                                       )  THEREOF
                                         )
26                                       )  DATE:    July 31, 2025
                                         )  TIME:    2:00 p.m.
27 ──────────────────────────────────    )  DEPT:    Courtroom 9, 19th Floor
                                         )  JUDGE:   Honorable Trina L. Thompson
28

4905-7309-0118.v2

**TABLE OF CONTENTS**

                                                                                    **Page**

I.      INTRODUCTION ......................................................................................1

II.     FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION..........................3

III.    SUMMARY OF SETTLEMENT NEGOTIATIONS ...........................................5

IV.     SETTLEMENT TERMS ..............................................................................5

V.      THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ..................7

        A.      Lead Plaintiffs and Lead Counsel Have Adequately Represented the Class...........9

        B.      The Settlement Results from Good-Faith, Arm's-Length Negotiations................10

        C.      The Relief Provided for the Class Is Adequate.......................................11

                1.      The Amount Offered in the Settlement Favors Approval.........................11

                2.      The Settlement Weighs the Strength of Lead Plaintiffs' Claims
                        with the Substantial Risks of Continuing Litigation..................................13

                3.      The Proposed Method for Distributing Relief Is Effective.......................15

                4.      Lead Counsel's Fee and Expense Request Is Fair and Reasonable...........16

                5.      The Parties Have No Other Agreements Besides Opt-Outs .....................17

                6.      All Class Members Are Treated Equitably.................................17

VI.     THE CLASS SHOULD BE CERTIFIED.........................................................18

        A.      Numerosity...........................................................................18

        B.      Commonality.........................................................................19

        C.      Typicality ...........................................................................19

        D.      Adequacy ...........................................................................20

        E.      The Requirements of Rule 23(b)(3) Are Also Met.................................20

VII.    NOTICE TO THE CLASS IS WARRANTED ..................................................21

VIII.   PROPOSED SCHEDULE OF EVENTS.........................................................22

IX.     NORTHERN DISTRICT OF CALIFORNIA PROCEDURAL GUIDANCE.................23

X.      CONCLUSION.......................................................................................23

1

**TABLE OF AUTHORITIES**

2

Page

3

CASES

4

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...................................................................................21

5

6

*Baron v. HyreCar Inc.*,
    2024 WL 3504234 (C.D. Cal. July 19, 2024)............................................. *passim*

7

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
    No. 3:19-cv-06361, ECF 468 (N.D. Cal. Aug. 9, 2024)............................22

8

9

*Brown v. China Integrated Energy Inc.*,
    2015 WL 12720322 (C.D. Cal. Feb. 17, 2015)..........................................19

10

11

*Cheng Jiangchen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019).................................13, 15, 17

12

13

*Davis v. Yelp, Inc.*,
    2022 WL 21748777 (N.D. Cal. Aug. 1, 2022) ..........................................15

14

*Davis v. Yelp, Inc.*,
    2023 WL 3063823 (N.D. Cal. Jan. 27, 2023).......................................16, 17

15

16

*Destefano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .............................................6

17

18

*DZ Reserve v. Meta Platforms, Inc.*,
    96 F.4th 1223 (9th Cir. 2024) .................................................................8

19

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011)...............................................................................20

20

21

*Ferreira v. Funko, Inc.*,
    2022 WL 22877154 (C.D. Cal. Dec. 13, 2022) ........................................10

22

*Fleming v. Impax Lab'ys Inc.*,
    2022 WL 2789496 (N.D. Cal. July 15, 2022).....................................16, 21

23

24

*Hameed-Bolden v. Forever 21 Retail, Inc.*,
    2021 WL 5107729 (C.D. Cal. Sept. 27, 2021) .........................................10

25

26

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .......................................................8, 9, 13

27

*Hatamian v. Advanced Micro Devices, Inc.*,
    2016 WL 1042502 (N.D. Cal. Mar. 16, 2016)...........................................18

28

Page

*Hefler v. Wells Fargo & Co.*,
 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .................................................................. *passim*

*Hefler v. Wells Fargo & Co.*,
 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
 *aff'd sub nom., Hefler v. Pekoc*,
 802 F. App'x 285 (9th Cir. 2020) ...................................................................................9, 16

*Hesse v. Sprint Corp.*,
 598 F.3d 581 (9th Cir. 2010) ................................................................................................7

*In re Alphabet, Inc. Sec. Litig.*,
 2024 WL 4354988 (N.D. Cal. Sept. 30, 2024) ..................................................................10

*In re Banc of Cal. Sec. Litig.*,
 2020 WL 1283486 (C.D. Cal. Mar. 16, 2020)....................................................................16

*In re Bluetooth Headset Products Liability Litig.*,
 654 F.3d 935 (9th Cir. 2011) ................................................................................................8

*In re BofI Holding, Inc. Sec. Litig.*,
 2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) ......................................................................7

*In re Carrier IQ, Inc. Consumer Priv. Litig.*,
 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016)
 *amending in part*, 2016 WL 6091521 (N.D. Cal. Oct. 19, 2016) ...........................................6

*In re Cooper Cos. Sec. Litig.*,
 254 F.R.D. 628 (C.D. Cal. 2009) .......................................................................................18

*In re Dropbox, Inc, Sec. Litig.*,
 No. 5:19-cv-06348, ECF 121 (N.D. Cal. Aug. 3, 2021).....................................................22

*In re Extreme Networks, Inc. Sec. Litig.*,
 2019 WL 3290770 (N.D. Cal. July 22, 2019).................................................................11, 13

*In re Genworth Fin. Sec. Litig.*,
 210 F. Supp. 3d 837 (E.D. Va. 2016) .................................................................................12

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
 279 F.R.D. 151 (S.D.N.Y. 2011) .......................................................................................18

*In re Heritage Bond Litig.*,
 2005 WL 1594389 (C.D. Cal. June 10, 2005) ...................................................................16

*In re Hewlett-Packard Co. Sec. Litig.*,
 2015 WL 13917012 (C.D. Cal. Nov. 9, 2015)......................................................................6

Page

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007)...................................................................14

*In re JDS Uniphase Corp. Sec. Litig.*,
  2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) .......................................................14

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010) ..................................................................................14

*In re Stable Rd. Acquisition Corp.*,
  2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) .........................................................10

*In re Tesla Inc., Sec. Litig.*,
  2023 WL 4032010 (N.D. Cal. June 14, 2023),
  *aff'd*, 2024 WL 4688894 (9th Cir. Nov. 6, 2024) ..................................................14

*In re Tezos Sec. Litig.*,
  2020 WL 13699946 (N.D. Cal. Aug. 28, 2020) ......................................................16

*In re TracFone Unlimited Serv. Plan Litig.*,
  112 F. Supp. 3d 993 (N.D. Cal. 2015) ....................................................................15

*In re VeriFone Holdings, Inc. Sec. Litig.*,
  2014 WL 12646027 (N.D. Cal. Feb. 18, 2014) .......................................................17

*In re Viropharma Inc. Sec. Litig.*,
  2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ...............................................................6

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2018 WL 6198311 (N.D. Cal. Nov. 28, 2018) ..........................................................7

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2019 WL 2077847 (N.D. Cal. May 10, 2019) ...........................................................9

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
  No. 4:16-cv-05541-JST, ECF 274 (N.D. Cal. May 14, 2019)..................................11

*In re Zynga Inc. Sec. Litig.*,
  2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)..........................................................17

*Katz v. China Century Dragon Media, Inc.*,
  2013 WL 11237202 (C.D. Cal. Oct. 10, 2013).........................................................13

*Lamartina v. VMware, Inc.*,
  2024 WL 3286059 (N.D. Cal. July 2, 2024) ............................................................19

*Lea v. Tal Educ. Grp.*,
  2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ...........................................................7

Page

*Loomis v. Slendertone Distrib., Inc.*,
    2021 WL 873340 (S.D. Cal. Mar. 9, 2021) ...................................................................8

*Oliveira v. Language Line Servs., Inc.*,
    __ F. Supp. 3d __, 2025 WL 586589 (N.D. Cal. Feb. 24, 2025)..............................17

*Patel v. Trans Union, LLC*,
    2018 WL 1258194 (N.D. Cal. Mar. 11, 2018)..........................................................11

*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*,
    2021 WL 1387110 (D. Colo. Apr. 13, 2021)............................................................12

*Redwen v. Sino Clean Energy, Inc.*,
    2013 WL 12129279 (C.D. Cal. Mar. 13, 2013).......................................................13

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .....................................................................................7

*Saliba v. KS Statebank Corp.*,
    2021 WL 2105608 (D. Ariz. May 25, 2021)............................................................18

*SEB Inv. Mgmt. AB v. Wells Fargo & Co.*,
    2025 WL 1243818 (N.D. Cal. Apr. 25, 2025).....................................................19, 20

*Shvager v. ViaSat, Inc.*,
    2014 WL 12585790 (C.D. Cal. Mar. 10, 2014).........................................................9

*Utne v. Home Depot U.S.A., Inc.*,
    2018 WL 11373654 (N.D. Cal. Aug. 21, 2018) .......................................................22

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) .....................................................................................7

*Vataj v. Johnson*,
    2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) .........................................................18

*Wicks v. Alphabet, Inc.*,
    2024 WL 5484607 (N.D. Cal. Apr. 2, 2024)..............................................................7

*Ziegler v. GW Pharms., PLC*,
    2024 WL 1470532 (S.D. Cal. Apr. 3, 2024)................................................2, 11, 13

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §78j(b)........................................................................................................................4
    §78t(a)........................................................................................................................4
    §78u-4(a)(4)...............................................................................................................5

Page

Federal Rules of Civil Procedure
    Rule 23.................................................................................................2, 22
    Rule 23(a).....................................................................................18, 20, 21
    Rule 23(a)(1)...............................................................................................18
    Rule 23(a)(2)...............................................................................................19
    Rule 23(a)(3)...............................................................................................19
    Rule 23(a)(4)...............................................................................................20
    Rule 23(b)(3)................................................................................18, 20, 21
    Rule 23(e)......................................................................................................9
    Rule 23(e)(1)..................................................................................................8
    Rule 23(e)(2)......................................................................................8, 9, 15
    Rule 23(e)(2)(A)............................................................................................9
    Rule 23(e)(2)(C)(i)......................................................................................13
    Rule 23(e)(2)(C)(ii).....................................................................................15
    Rule 23(e)(2)(C)(iii)....................................................................................16
    Rule 23(e)(2)(C)(iv)....................................................................................17
    Rule 23(e)(2)(D).........................................................................................17
    Rule 23(e)(3)..................................................................................................8

17 C.F.R.
    §240.10b-5.....................................................................................................4

**SECONDARY AUTHORITIES**

*Securities Class Action Settlements, 2024 Review and Analysis* (2025) ............................2, 11, 12

1  **LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
   CLASS ACTION SETTLEMENT, AND FOR APPROVAL OF MODIFIED SCHEDULE
2  WITH RESPECT TO FINAL APPROVAL OF SETTLEMENT**

3  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

4      **PLEASE TAKE NOTICE** that on July 31, 2025, at 2:00 p.m., before the Honorable Trina

5  L. Thompson, United States District Judge, at the United States District Court, Northern District

6  of California, San Francisco Division, 450 Golden Gate Avenue, Courtroom 9, 19th Floor, San

7  Francisco, California 94102, lead plaintiffs Oklahoma Police Pension and Retirement System,

8  Sheet Metal Workers Local 19 Pension Fund, Local 353, I.B.E.W. Pension Fund, and Beaumont

9  Firemen's Relief & Retirement Fund (together, "Lead Plaintiffs" or "Plaintiffs") will and hereby

10 do respectfully move this Court, under Federal Rule of Civil Procedure ("Rule") 23, for entry of

11 an order: (i) preliminarily approving the proposed $20,250,000 cash settlement of the above-

12 captioned action; (ii) approving the form and manner of notice of the proposed Settlement to the

13 Class; (iii) appointing A.B. Data, Ltd. ("A.B. Data") as the Claims Administrator for the

14 Settlement; (iv) provisionally certifying a settlement class; and (v) scheduling a hearing to consider

15 final approval of the Settlement, as well as the schedule for various deadlines in connection with

16 the Settlement.

17     This motion is supported by the Stipulation of Settlement and exhibits thereto[1]; the

18 accompanying memorandum of points and authorities; the Schedule for Settlement-Related

19 Events, attached as Appendix A hereto; the Appendix Addressing the Court's Procedural Guidance

20 for Class Action Settlements ("Appendix"), attached as Appendix B hereto;[2] the Declaration of

21 Eric A. Nordskog ("Nordskog Declaration"); and all other papers and proceedings herein.  In

22

23

---

24 [1] All capitalized terms used herein that are not otherwise defined herein have the meanings ascribed
25 to them in the Stipulation of Settlement dated May 16, 2025 ("Stipulation"), a true and correct
   copy of which is attached as Exhibit 1 to the Declaration of Jason C. Davis, submitted herewith.
26 Unless otherwise noted, all emphasis is added and citations are omitted.

   [2] The Appendix identifies preliminary approval criteria under the N.D. Cal. Procedural Guidance
27 for Class Action Settlements, how the Settlement meets these criteria, and the relevant sections of
   the preliminary approval submissions where relevant information can be found.

28

LEAD PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 3:22-CV-03023-TLT                                    - 1 -
4905-7309-0118.v2

accordance with the terms of the Stipulation, Defendants do not oppose the Motion.[3]  A proposed Order is submitted herewith.

Pursuant to Local Rule 7-1(b), and in the interest of providing notice to Class Members at the earliest possible date, the Parties waive oral argument.  The Parties wish to inform the Court they believe the Motion is appropriate for resolution without a hearing but are pleased to proceed as the Court deems fit.  *See In re Alphabet, Inc. Sec. Litig.*, No. 3:18-cv-06245-TLT, ECF 227 (N.D. Cal. Mar. 1, 2024) (Thompson, J.) ("The Court finds the [unopposed preliminary settlement approval motion] suitable for determination without oral argument pursuant to Civ. L.R. 7-1(b). Accordingly, the hearing . . . is [vacated].").[4]

Furthermore, pursuant to Local Rules 6-1 and 6-3, the Parties respectfully submit modified proposed deadlines for the Class notice program and final Court approval of the Settlement, the proposed Plan of Allocation, and the anticipated attorneys' fee and expense request.  The Parties' proposed deadlines shorten the schedule set forth in Appendix A to the Court's May 19, 2025 Order (ECF 176).  The Parties respectfully submit that the modified, shortened schedule is warranted because prompt resolution of proceedings and payment of settlement proceeds to absent class members furthers important and well-established public policy goals, and prevents unduly prejudicing Class Members by avoiding additional delay in receiving their *pro rata* share of the recovery obtained in this Litigation.  The Parties respectfully submit that their proposed dates are consistent with other settlement schedules in this Court and this District.  *See Alphabet*, ECF 228, 232 (Thompson, J.) (setting settlement schedule with substantially similar timeline in PSLRA class action).

---

[3] Given Lead Plaintiffs' Motion for Preliminary Approval is unopposed, the opposition and reply deadlines of August 8, 2025 and August 15, 2025 are unnecessary and the Parties respectfully request that they be adjourned.

[4] Provided the Court agrees that this Unopposed Motion is suitable for determination without oral argument, the Parties respectfully request that the Court vacate the July 31, 2025 case management conference and the hearing for the Motion for Preliminary Approval of Class Action Settlement scheduled for September 23, 2025.

**STATEMENT OF ISSUES TO BE DECIDED**

1.     Whether the Court should preliminarily approve the Settlement on the terms set forth in the Stipulation and schedule a final Settlement Hearing to determine whether the Settlement should receive final approval as fair, adequate, and reasonable.

2.     Whether the Court should preliminarily certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure for purposes of the Settlement only.

3.     Whether the Court should approve the form and content of the Notice, the Postcard Notice and the Summary Notice, the methods for the dissemination of the Notice, the Postcard Notice and the Summary Notice to Class Members, and the selection of A.B. Data as Claims Administrator.

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3         Lead Plaintiffs respectfully submit the Parties' proposed $20.25 million cash Settlement of

4    this securities class action to the Court.  The proposed Settlement is the product of good-faith,

5    arm's-length negotiations between experienced counsel under the supervision of former U.S.

6    District Judge, the Hon. Gary A. Feess (Ret.), a highly respected mediator with extensive

7    experience in complex litigation.  The Settlement represents a very good result for the Class, as it

8    secures a substantial and immediate monetary recovery well within (if not above) that of similar

9    securities class action settlements, in the face of significant legal risks and practical considerations,

10   including the risk of a significantly lower recovery, or no recovery at all, had this Action continued

11   to trial.

12        Plaintiffs reached the Settlement only after they had a thorough appreciation of the

13   strengths and weaknesses (and practical realities) of the case.  Specifically, Lead Plaintiffs and

14   Lead Counsel achieved the Settlement after: (i) thoroughly evaluating their claims and Defendants'

15   defenses, which included the review and analysis of over 2.4 million pages of documents produced

16   by Defendants; (ii) interviews of numerous former CareDx employees; (iii) the filing of three

17   detailed amended complaints; (iv) defeating Defendants' motion to dismiss the Third Amended

18   Complaint; (v) consultation with multiple financial and industry experts; (vi) moving for class

19   certification; (vii) exchanging comprehensive mediation statements with Defendants setting forth

20   the Parties' positions on highly disputed issues in the case; and (viii) engaging in a mediation

21   session overseen by Judge Feess, and several subsequent email exchanges and telephone

22   conferences, before the Parties accepted his mediator's recommendation.  Moreover, had it not

23   been for Lead Counsel's efforts, the Class would have almost certainly recovered nothing for their

24   claims, as Saxena White initiated this Action and Lead Counsel submitted the sole leadership

25   application at the lead plaintiff stage.

26        Defendants asserted aggressive defenses throughout the Litigation and, had the Settlement

27   not been reached, the putative class would have faced complex hurdles in proving its case,

28   particularly with respect to overcoming Defendants' defenses to falsity, loss causation, and

1    scienter, and ultimately collecting on any judgment.  Indeed, Defendants were prepared to

2    vigorously defend the case on the merits and would have made numerous arguments regarding

3    both liability and damages that could have defeated some part of, or all of, Plaintiffs' claims at

4    class certification, summary judgment, or trial, thus reducing or even eliminating the damages

5    available to the Class.  The Settlement Amount represents a recovery well above the Company's

6    applicable insurance, and thus includes a substantial monetary contribution directly from the

7    Company, notwithstanding the Company's diminished financial condition and limited cash on

8    hand.  Had the litigation continued, those limited insurance and Company funds would have further

9    wasted in defending against the Action rather than going toward a recovery for the Class.  Thus,

10   this risk of a smaller recovery—or no recovery at all—weighs heavily in favor of settlement

11   approval.

12          The Settlement avoids these risks (and others), as well as the further delay and expense of

13   continued litigation, while providing a substantial and certain benefit to the Class.  Indeed, the

14   $20,250,000 Settlement secures a substantial and immediate monetary recovery; it is more than

15   double the $10 million median settlement amount in securities class actions in the Ninth Circuit

16   over the past decade, and falls well within the range of settlements courts in this Circuit regularly

17   approve.[5]

18          At this time, only "a preliminary fairness evaluation" of the proposed Settlement and a

19   determination that the Class should be notified of the Settlement are required.  *See Ziegler v. GW*

20   *Pharms., PLC*, 2024 WL 1470532, at *3 (S.D. Cal. Apr. 3, 2024).  Lead Plaintiffs respectfully

21   request that the Court enter the Preliminary Approval Order, which will, among other things:

22          (i)     preliminarily approve the Settlement on the terms set forth in the Stipulation;

23          (ii)    approve the form and content of the Notice, Postcard Notice, and Summary Notice;

24          (iii)   find that the procedures for distribution of the Notice and Postcard Notice and
25                  publication of the Summary Notice in the manner and form set forth in the
                    Preliminary Approval Order constitute the best notice practicable under the
26                  circumstances, and comply with the notice requirements of due process, Rule 23 of

27   ───────────────────
     [5] *See Securities Class Action Settlements, 2024 Review and Analysis*, at 20 (2025) available at
28   https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-Class-Action-Settlements-
     2024-Review-and-Analysis.pdf (the "Cornerstone Report").

1    the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA");

2

3    (iv)    set a schedule and procedures for: (1) disseminating the Postcard Notice and Notice and publication of the Summary Notice; (2) requesting exclusion from the Class; (3) objecting to the Settlement, the Plan of Allocation, Lead Counsel's application for an award of attorneys' fees and litigation expenses, or Lead Plaintiffs' awards; (4) submitting papers in support of final approval of the Settlement; and (5) the Settlement Hearing; and

4

5

6    (v)    certify the Class.

7

## II.    FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

8

On May 23, 2022, the initial complaint in this Action was filed.  ECF No. 1.  On July 22, 2022, Plaintiffs filed their unopposed motion for an order appointing them as lead plaintiffs and approving their selection of lead counsel.  ECF No. 31.  On August 25, 2022, the Court granted Lead Plaintiffs' motion, appointing Lead Plaintiffs and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Saxena White P.A. ("Saxena White") as lead counsel.  ECF No. 43.

On November 28, 2022, Plaintiffs filed their first amended complaint ("FAC").  ECF No. 53.  On January 27, 2023, Defendants filed a motion to dismiss and to strike portions of the FAC, and a request for judicial notice.  ECF Nos. 58-60.  Plaintiffs filed their consolidated opposition to the three motions on March 13, 2023.  ECF Nos. 68-70.  Defendants filed their reply briefs on April 13, 2023.  ECF Nos. 71-73.  On May 16 and May 24, 2023, the Court held a hearing and granted Defendants' motions, striking some paragraphs from the FAC and dismissing the FAC entirely, with leave to amend.  ECF Nos. 74-75.

On June 28, 2023, Plaintiffs filed their second amended complaint ("SAC").  ECF No. 81.  On July 26, 2023, Defendants again moved to dismiss and to strike portions of the SAC, with an accompanying request for judicial notice.  ECF Nos. 89-91.  Plaintiffs filed their opposition papers on August 30, 2023 (ECF Nos. 96-97), and Defendants filed their reply briefs and another request for judicial notice on September 22, 2023 (ECF Nos. 98-100).  Plaintiffs opposed that motion on October 5, 2023.  ECF No. 102.

On September 18, 2024, the Court issued an order granting in part and denying in part Defendants' motion to dismiss the SAC and motion to strike portions of the SAC.  ECF No. 123.

1    The Court granted the motion to dismiss on scienter grounds, with leave to amend.  However, the

2    Court found that Plaintiffs had sufficiently alleged falsity as to statements regarding underwriting

3    representations and statements regarding testing services revenue and historical RemoTraC data.

4    *Id*. at 43.  The Court also found that Plaintiffs had sufficiently alleged loss causation.  *Id*.

5         On November 1, 2024, Plaintiffs filed their third amended complaint ("TAC").  ECF No.

6    133.  Plaintiffs alleged that Defendants CareDx, Dr. Maag, and Dr. Seeto violated: (1) Section

7    10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder; and (2) Section 20(a) of the

8    Exchange Act.  *Id.*, ¶¶367-380.  The TAC alleges that throughout the Class Period, CareDx made

9    false and misleading statements about its compliance with federal healthcare laws and about the

10   sources and legitimacy of its revenue, while failing to disclose that it was engaged in improper

11   billing of Medicare for medically unnecessary tests and that it was providing improper kickbacks

12   to prescribing doctors.  The TAC further alleges that, when the truth came out gradually through

13   a series of corrective disclosures, CareDx's stock price fell precipitously.

14        On November 15, 2024, Defendants filed a motion to dismiss the TAC, accompanied by a

15   request for judicial notice.  ECF Nos. 136-137.  Lead Plaintiffs filed their opposition and response

16   to the request for judicial notice on December 13, 2024.  ECF Nos. 138-139.  Defendants filed

17   their reply briefs on January 10, 2025.  ECF Nos. 143-145.

18        The Court heard oral argument on Defendants' motion to dismiss the TAC on January 28,

19   2025, and on February 18, 2025, denied Defendants' motion.  ECF No. 154.

20        The Parties thereafter exchanged Initial Disclosures pursuant to Fed. R. Civ. P. 26 and

21   began formal fact discovery and negotiations regarding an ESI Protocol and Protective Order.

22   Plaintiffs served two sets of Requests for Production of Documents, Interrogatories and several

23   deposition subpoenas and notices, as well as several third-party subpoenas, and Defendants served

24   Interrogatories, Requests for Production of Documents and notices for the depositions of all

25   Plaintiffs.  During this time, Plaintiffs commenced reviewing and analyzing over 2.4 million pages

26   of documents produced by Defendants.

27

28

1          On April 18, 2025, Plaintiffs filed their Motion to Certify Class, Appoint Class

2   Representatives, and Appoint Class Counsel.  ECF No. 170.  Settlement negotiations were ongoing

3   at the time.

4   **III.    SUMMARY OF SETTLEMENT NEGOTIATIONS**

5          The Parties engaged an experienced neutral, third-party mediator, the Hon. Gary A. Feess

6   (Ret.) of Phillips ADR Enterprises, to aid in settlement negotiations.  The Parties participated in

7   an in-person mediation session on April 1, 2025, and exchanged mediation briefs ahead of the

8   mediation session, setting forth their respective arguments concerning liability and damages and

9   respective views of the merits of the Action.  Though the Parties' initial mediation session was

10  unsuccessful in resolving the case, the Parties continued to have telephonic and email exchanges

11  with Judge Feess regarding a potential resolution.  On April 21, 2025, Judge Feess issued a

12  mediator's proposal to resolve the Action for $20,250,000, which the Parties accepted, subject to

13  the negotiation of the terms of a stipulation of settlement and approval by the Court.

14  **IV.    SETTLEMENT TERMS**

15         The Settlement requires Defendants to cause to be paid $20,250,000 into the Escrow

16  Account, which amount, plus any interest accrued thereon, comprises the Settlement Fund.  Notice

17  and Administration Costs, Taxes, and Tax Expenses will be funded by the Settlement Fund.  Lead

18  Plaintiffs propose A.B. Data, a nationally recognized class action settlement administrator, to be

19  retained as Claims Administrator here subject to the Court's approval.  The proposed notice plan

20  and plan for claims processing is discussed below and detailed in the Nordskog Declaration.

21         The Postcard Notice and Notice state that Lead Counsel will move for final approval of the

22  Settlement and approval of an award of attorneys' fees in the amount of no more than 30% of the

23  Settlement Amount, as well as an award of litigation expenses in an amount not to exceed

24  $450,000, plus any interest on such amounts at the same rate and for the same period as earned by

25  the Settlement Fund.  The Notice further explains that such fees and litigation expenses shall be

26  paid from the Settlement Fund, and that Lead Plaintiffs intend to request an amount not to exceed

27  $7,500 each, pursuant to 15 U.S.C. §78u-4(a)(4), in connection with their representation of the

28  Class.

Once Notice and Administration Costs, Taxes, Tax Expenses, and Court-approved attorneys' fees and expenses and any award to the Lead Plaintiffs have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, shall be distributed pursuant to the Court-approved Plan of Allocation (set forth in the Notice) to Authorized Claimants who are entitled to a distribution of at least $10.[6] The Plan of Allocation treats all Class Members equitably based on the timing of their purchases, acquisitions, and sales of CareDx common stock. Any amount remaining following this distribution shall then be redistributed in an economically feasible manner. Any *de minimis* balance that remains after such reallocation(s) that is not feasible or economical to reallocate shall be donated (subject to Court approval) to the Council of Institutional Investors, a non-profit "that advocates for corporate governance measures and shareowner rights." *In re Hewlett-Packard Co. Sec. Litig.*, 2015 WL 13917012, at *2 (C.D. Cal. Nov. 9, 2015) (approving Council of Institutional Investors as a cy pres recipient); *In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *15 (E.D. Pa. Jan. 25, 2016) (same).

The Parties have also entered into a Supplemental Agreement, which provides that if, prior to the Settlement Hearing, Class Members representing a certain threshold of CareDx common stock purchased or acquired during the Class Period request exclusion from the Class, Defendants shall have the option to terminate the Settlement.[7]

Next, in exchange for the benefits provided under the Stipulation, Class Members will release "all claims (including, but not limited to, Unknown Claims), demands, losses, rights, and causes of action of any nature whatsoever, . . . which arise out of, are based on, or relate in any

---

[6] It is standard practice in securities class actions to utilize a $10 minimum check threshold. *See, e.g., Destefano v. Zynga, Inc.*, 2016 WL 537946, at *4 (N.D. Cal. Feb. 11, 2016) ("[N]o Settlement Class Member will be issued a check for a Recognized Loss of less than $10.00 due to the expenses associated with administering the claims."); *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *12 (N.D. Cal. Sept. 4, 2018) ("*Wells Fargo I*") (approving $10 minimum and noting that "'numerous cases . . . have approved similar or higher minimum thresholds'") (alteration in original).

[7] This type of agreement is standard in securities class actions and does not bear on the fairness of the Settlement. *See, e.g., Wells Fargo I*, 2018 WL 4207245, at *11 ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *In re Carrier IQ, Inc. Consumer Priv. Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) ("[O]pt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest."), *amending in part*, 2016 WL 6091521 (N.D. Cal. Oct. 19, 2016).

1    way to, directly or indirectly: (i) any of the allegations, acts, transactions, facts, events, matters,

2    occurrences, representations or omissions involved, set forth, alleged or referred to, in the Action,

3    or which could have been alleged in the Action; and (ii) the purchase or acquisition of CareDx

4    common stock by any member of the Class during the Class Period." Stipulation, ¶1.24. This

5    release "is limited to claims that relate to both the complaint's factual allegations and to the

6    purchase or ownership of" CareDx common stock and therefore "ensure[s] that 'the released

7    claim[s] [are] based on the identical factual predicate as that underlying the claims in the settled

8    class action.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2018

9    WL 6198311, at *5 (N.D. Cal. Nov. 28, 2018) ("*Volkswagen I*") (alterations in original) (quoting

10   *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)).

11       Lastly, there is no reversion in this Settlement. Under the terms of the Stipulation, there is

12   no clear sailing agreement, and Defendants have no right to the return of the Settlement Fund for

13   any reason upon the occurrence of the Effective Date. Stipulation, ¶5.12. *See also* N.D. Cal. Guid.

14   1(g) (requiring the disclosure of any reversions).

15   **V.       THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL**

16       Courts within the Ninth Circuit and around the country recognize that there is a "'strong

17   judicial policy that favors settlements, particularly where complex class action litigation is

18   concerned.'" *In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at *4 (S.D. Cal. Oct. 14,

19   2022); *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *4 (S.D.N.Y. Nov. 30, 2021) (same).

20   "'Settlement is the offspring of compromise; the question [that courts] address is not whether the

21   final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from

22   collusion.'" *Wells Fargo I*, 2018 WL 4207245, at *8; *see also Wicks v. Alphabet, Inc.*, 2024 WL

23   5484607, at *3 (N.D. Cal. Apr. 2, 2024) (Thompson, J.) ("[A] court need not address whether the

24   settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion,

25   and consistent with plaintiff's fiduciary obligations to the class."). Moreover, courts should defer

26   to "the private consensual decision of the parties" to settle and advance the "overriding public

27   interest in settling and quieting litigation." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th

28   Cir. 2009); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

1        Approval of a proposed class action settlement is a two-step process. *Wells Fargo I*, 2018

2  WL 4207245, at *7. First, the Court performs a preliminary review of the terms of the proposed

3  settlement to determine whether to send notice of the proposed settlement to the class; second,

4  after notice and a hearing, the Court determines whether to approve the settlement as "fair,

5  reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Pursuant to Rule 23(e)(1), preliminary

6  approval is appropriate where "the parties[] show[] that the Court will likely be able to: (i) approve

7  the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the

8  proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(e)(2) identifies factors that courts must consider at

9  final approval in determining whether the settlement is "fair, reasonable, and adequate," including

10  whether:

11          (A)     the class representatives and class counsel have adequately represented the class;

12          (B)     the proposal was negotiated at arm's length;

13          (C)     the relief provided for the class is adequate, taking into account:

14                 (i)     the costs, risks, and delay of trial and appeal;

15                 (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

16

17                 (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

18                 (iv)   any agreement required to be identified under Rule 23(e)(3); and

19          (D)     the proposal treats class members equitably relative to each other.

20  Fed. R. Civ. P. 23(e)(2).

21        The Court may also consider the factors identified by the Ninth Circuit in *Hanlon v.*

22  *Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruling recognized*, *DZ Reserve v. Meta*

23  *Platforms, Inc.*, 96 F.4th 1223 (9th Cir. 2024),[8] and *In re Bluetooth Headset Products Liability*

24

---

25  [8] The *Hanlon* factors are: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout

26  the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

27  participant; and (8) the reaction of the class members to the proposed settlement. *See Hanlon*, 150 F.3d at 1026. Lead Plaintiffs address *Hanlon* factors 1-6 in the analysis of Rule 23(e)(2). *See*

28  *Loomis v. Slendertone Distrib., Inc.*, 2021 WL 873340, at *4, n.4 (S.D. Cal. Mar. 9, 2021)

1    *Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011), many of which overlap with the Rule 23(e) factors.

2    As summarized below, and as will be detailed further in Lead Plaintiffs' motion for final approval

3    of the Settlement, all of these factors support approval of the Settlement.

4              **A.    Lead Plaintiffs and Lead Counsel Have Adequately Represented the Class**

5              Rule 23(e)(2)(A) asks whether the plaintiff and its counsel have adequately represented the

6    class.  This factor overlaps with the Ninth Circuit's factor regarding "the extent of discovery

7    completed and the stage of the proceedings."  *Hanlon*, 150 F.3d at 1026.  As explained above,

8    Lead Plaintiffs and Lead Counsel satisfy this factor as they have diligently prosecuted this Action

9    for three years.  *See supra*, §§I-II.  Indeed, absent Lead Counsel's efforts, the Class would have

10   almost certainly had no recovery for their claims, as Saxena White not only initiated this Action,

11   but Lead Counsel filed the only leadership application submitted at the lead plaintiff stage.

12             Given Lead Plaintiffs' and Lead Counsel's demonstrated prosecution of the Action, it is

13   without question that they have adequately represented the Class.  *See In re Volkswagen "Clean*

14   *Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10,

15   2019) ("*Volkswagen II*") (finding securities class settlement to be procedurally fair where "Lead

16   Counsel vigorously litigated this action during motion practice and discovery, and the record

17   supports the continuation of that effort during settlement negotiations"); *Hefler v. Wells Fargo &*

18   *Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018) ("*Wells Fargo II*") (granting final approval

19   and stating that at preliminary approval "the Court found that Class Counsel had vigorously

20   prosecuted this action through dispositive motion practice, extensive initial discovery, and formal

21   mediation" and that "given this prosecution of the action, counsel 'possessed "sufficient

22   information to make an informed decision about settlement"'"), *aff'd sub nom.*, *Hefler v. Pekoc*,

23   802 F. App'x 285 (9th Cir. 2020).

24

25

26   ("Because of the overlap . . . , the Court folds the Ninth Circuit's factors into its analysis of Rule
     23(e)(2).").  Regarding *Hanlon* factor 7, the reaction of the Class cannot be properly gauged until
27   notice is given.  Regarding *Hanlon* factor 8, no governmental body is a party to this Action.
     *Shvager v. ViaSat, Inc.*, 2014 WL 12585790, at *11 (C.D. Cal. Mar. 10, 2014) ("This factor is
28   inapplicable and neutral because no government entity participated in the case.").

**B.    The Settlement Results from Good-Faith, Arm's-Length Negotiations**

The fact that the Parties reached the Settlement after arm's-length negotiations between experienced counsel and with the assistance of an experienced mediator creates a presumption of its fairness.  Here, counsel engaged in a mediation process supervised by Judge Feess.  *See, e.g.*, *Hameed-Bolden v. Forever 21 Retail, Inc.*, 2021 WL 5107729, at *5 (C.D. Cal. Sept. 27, 2021) (recognizing "arm's-length negotiations using the services of former District Court Judge Gary Feess as mediator" as a factor supporting fairness of settlement).

As part of the mediation process, Lead Counsel and Defendants' counsel prepared and presented submissions concerning their respective views on the merits of the Action, including Defendants' defenses and issues relating to causation and damages, along with supporting evidence obtained through discovery.  The negotiations were at all times adversarial, with Judge Feess providing his input on the pertinent issues and the strengths and challenges of the Parties' various claims and defenses.   Simply put, the mediator's involvement in the settlement negotiations helped to ensure that the proceedings were free of collusion and undue pressure and is evidence that the Settlement was reached at arm's length.  *See, e.g.*, *In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at *6 (C.D. Cal. Apr. 23, 2024) ("The Ninth Circuit, as well as courts in this District, 'put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution' in approving a class action settlement."); *Ferreira v. Funko, Inc.*, 2022 WL 22877154, at *5 (C.D. Cal. Dec. 13, 2022) ("'The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.'").

Additionally, "'[t]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.'"  *Baron v. HyreCar Inc.*, 2024 WL 3504234, at *6 (C.D. Cal. July 19, 2024).  Here, Lead Counsel Robbins Geller and Saxena White are experienced class action litigators, and their substantial experience in cases of this nature gives further weight to their judgment that the Settlement is fair and reasonable.  *See, e.g.*, *In re Alphabet, Inc. Sec. Litig.*, 2024 WL 4354988, at *7 (N.D. Cal. Sept. 30, 2024) (Thompson, J.) (approving $350 million settlement and finding that Robbins Geller "represented their clients with skill and diligence and obtained an excellent result for the class, taking into

1    account the possible outcomes and risks of proceeding trial"); *In re Wells Fargo & Co. S'holder*

2    *Derivative Litig.*, No. 4:16-cv-05541-JST, ECF 274 at 13 (N.D. Cal. May 14, 2019) (granting

3    preliminary approval of $240 million cash payment from defendants' insurers, the then largest

4    insurance-funded monetary component of any shareholder derivative settlement, and noting

5    Saxena White's "significant experience obtaining favorable results as lead counsel" in shareholder

6    litigation). Similarly, the fact that Lead Plaintiffs are sophisticated institutional investors, favored

7    by Congress when it passed the PSLRA, lends further credibility to their recommendation that the

8    Settlement be approved.  *See In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *7

9    (N.D. Cal. July 22, 2019) (granting final approval where lead plaintiff "actively participated in the

10   prosecution of this case, including reviewing filings and discovery, and attending and participating

11   in settlement negotiations").

12           **C.      The Relief Provided for the Class Is Adequate**

13                  **1.      The Amount Offered in the Settlement Favors Approval**

14           "To evaluate the adequacy of the settlement amount, 'courts primarily consider plaintiffs'

15   expected recovery balanced against the value of the settlement offer.'" *Wells Fargo I*, 2018 WL

16   4207245, at *9.  "'[I]t is well-settled law that a [cash] settlement . . . amount[ing] to only a fraction

17   of the potential recovery'" does not per se render the settlement inadequate or unfair.  *Ziegler*,

18   2024 WL 1470532, at *4; *see also Patel v. Trans Union, LLC*, 2018 WL 1258194, at *4 (N.D. Cal.

19   Mar. 11, 2018) (the "court need not ask whether the proposed settlement is ideal or the best

20   possible"; rather, "it determines only whether the settlement is fair, free of collusion, and consistent

21   with the named plaintiffs' fiduciary obligations").

22           Here, the $20,250,000 Settlement Amount is an exceptional result for the Class.  It is more

23   than 40% higher than the $14 million median settlement amount for securities class actions in

24   2024.[9] It is also 80% higher than the $11.3 million median settlement amount for federal securities

25

26

27   ───────────────
     [9] Cornerstone Report at 19.

28

1  class actions from 2015-2023, and more than double the median settlement for securities class

2  actions in the Ninth Circuit from 2015-2024.[10]

3          Moreover, the Settlement Amount is particularly remarkable given that "the recovery for

4  investors not only includes the proceeds of Defendants' insurance tower, but also includes a

5  substantial monetary contribution by [CareDx]." *Peace Officers' Annuity & Benefit Fund of Ga.*

6  *v. DaVita Inc.*, 2021 WL 1387110, at *4 (D. Colo. Apr. 13, 2021); *see also In re Genworth Fin.*

7  *Sec. Litig.*, 210 F. Supp. 3d 837, 842 (E.D. Va. 2016) (company's contribution "of its own cash to

8  the Settlement" "strongly demonstrate[d] the adequacy of the Settlement amount").

9          Additionally, the $20.25 million all-cash Settlement is well within the range of

10  reasonableness under the circumstances to warrant final approval of the Settlement.  Plaintiffs'

11  damages expert estimates that if Plaintiffs fully prevailed on each of their claims at both summary

12  judgment and trial, and if the Court and jury fully accepted Plaintiffs' loss causation and damages

13  arguments – *i.e.*, Plaintiffs' best case scenario – the total estimated damages are just north of $400

14  million.  Defendants, on the other hand, would have continued to argue that Plaintiffs' and the

15  Class's damages were zero, as Defendants maintained that none of their statements were

16  actionably false or misleading, none of their statements were made with fraudulent intent, and none

17  of the six corrective disclosures alleged in the TAC were causally connected to the alleged fraud.

18  Importantly, however there was a very practical limitation on Plaintiffs' recovery here – CareDx's

19  extremely limited insurance and other funds available to fund a recovery.  Accordingly, it is

20  extremely unlikely that the Class could have recovered anything close to Plaintiffs' damages

21  estimates (or, indeed, anything meaningfully above the Settlement Amount) had they continued

22  litigating.

23          Finally, even though CareDx has a dwindling cash position and limited financial resources,

24  the recovery is nevertheless substantially ***above*** Defendants' available insurance and includes a

25  meaningful cash contribution from the Company.  As of March 31, 2025, CareDx had just $88

26  million in cash and cash equivalents—a 23% decline from December 31, 2024.  Moreover, CareDx

27

28  [10] *Id.* at 1, 20.

has suffered net losses in nearly every quarter for the past five years. And CareDx's limited available D&O insurance, usually the most reliable source of settlement funds in securities fraud cases, would have been rapidly consumed if the Action were to continue. *See HyreCar*, 2024 WL 3504234, at *9 ("'It is not unreasonable for counsel and the class representative to prefer the bird in hand, given concerns about Diamond's strained financial state and its ability to pay a judgment following further litigation.'").

### 2. The Settlement Weighs the Strength of Lead Plaintiffs' Claims with the Substantial Risks of Continuing Litigation

"In assessing the 'costs, risks, and delay of trial and appeal,' Fed R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate 'the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial.'" *Extreme Networks*, 2019 WL 3290770, at *8 (quoting *Hanlon*, 150 F.3d at 1026) (alteration in original). Courts favor settlements because they "'[a]void[] trial and subsequent appeals'" and "'protracted and uncertain litigation.'" *Katz v. China Century Dragon Media, Inc.*, 2013 WL 11237202, at *5 (C.D. Cal. Oct. 10, 2013) (first alteration in original). "'In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Ziegler*, 2024 WL 1470532, at *4.

Here, Lead Plaintiffs have considered the difficulties inherent in litigating a securities fraud class action to a jury verdict. As an initial matter, securities fraud class actions such as this one "are complex cases that are time-consuming and difficult to prove." *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019). Indeed, complex securities fraud class actions present myriad risks that plaintiffs must overcome to ultimately secure a recovery. *See Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12129279, at *5 (C.D. Cal. Mar. 13, 2013) ("Various issues would require extensive discovery and motion and trial practice, including proof of material misrepresentations, scienter and loss causation. Courts experienced with securities fraud litigation "'routinely recognize that securities class actions present hurdles to proving liability that are

1  difficult for plaintiffs to clear."'").[11] The uncertainty created by these circumstances weighs in

2  favor of approval.

3        While Lead Plaintiffs at all times remained confident in their ability to ultimately succeed

4  at trial, they would be required to prove all elements of their claims to prevail, while Defendants

5  needed to succeed on only one defense to potentially defeat the entire action.  Indeed, Defendants

6  made several credible arguments which the Court at summary judgment, a jury at trial, or an

7  appellate court could have accepted.  For example, had the Action continued, Defendants would

8  have likely continued to vigorously contest the core elements of falsity and scienter.  *See, e.g.*, *In

9  re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) ("[T]he issue[] of

10 scienter . . . [is] complex and difficult to establish at trial.").  For example, Defendants likely would

11 have continued to argue at summary judgment or trial that their statements were not false and

12 misleading because neither CMS nor any regulatory body or court ever concluded that their billing

13 practices were clearly improper.  For similar reasons, Defendants would likely have argued that

14 they had no scienter, because they had a good faith belief that their practices were proper and legal.

15 Indeed, the DOJ and SEC both concluded their investigations of the Company without taking

16 further action, and while a whistleblower continues to maintain a *Qui Tam* action, there is no

17 guarantee that said action will lead to any finding of liability on Defendants' part.

18        Likewise, Defendants likely would have vigorously contested loss causation, price impact,

19 and damages at class certification, summary judgment, and trial.  *HyreCar*, 2024 WL 3504234, at

20 *8 ("'In any securities litigation case, it is difficult for plaintiff to prove loss causation and damages

21 at trial.'").  For example, Defendants likely would have argued that several of the alleged corrective

22 disclosures did not directly discuss or refer to even the possibility of illegal or improper billing

23 activities, and, further, that the one corrective disclosure that did directly concern such alleged

24 practices merely disclosed DOJ and SEC investigations, which investigations were later concluded

25

---

26 [11] *See also In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary
   judgment in favor of defendants); *In re Tesla Inc., Sec. Litig.*, 2023 WL 4032010, at *1 (N.D. Cal.
27 June 14, 2023) (jury returned verdict for defendants despite grant of partial summary judgment in
   plaintiff's favor), *aff'd*, 2024 WL 4688894 (9th Cir. Nov. 6, 2024); *In re JDS Uniphase Corp. Sec.
28 Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (jury verdict in defendants' favor).

without any action being taken.  Defendants also would likely have presented evidence from a well-qualified expert who would opine that the Class's damages were small or non-existent.  As such, the trial likely would involve "'a battle of experts,'" with "'no guarantee whom the jury would believe'" and the possibility of damages materially reduced or eliminated.  *Davis v. Yelp, Inc.*, 2022 WL 21748777, at *4 (N.D. Cal. Aug. 1, 2022) ("*Yelp I*").  In sum, Defendants had "plausible defenses that could have ultimately left class members with a reduced or non-existent recovery," which weighs in favor of approving the Settlement.  *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 999 (N.D. Cal. 2015).  Indeed, absent settlement now, the Parties would face years litigating this Action to a final resolution, including further discovery, class certification, dispositive motions, trial, and likely post-trial appeals.  *See Rentech*, 2019 WL 5173771, at *6 (addressing another securities class action in which shareholders had still not received any recovery "two years after jury verdict in plaintiffs' favor and ten years after the case was filed").

Finally, as described further above, even if Lead Plaintiffs were to fully prevail on all of their claims and obtain a judgment for maximum damages, there was a significant risk that they would have been unable to collect more than the Settlement Amount, and would possibly collect nothing at all, due to CareDx's "'rapidly depleting'" resources, which would have continued to waste in costly and protracted litigation.  *HyreCar*, 2024 WL 3504234, at *9.

### 3. The Proposed Method for Distributing Relief Is Effective

Under Rule 23(e)(2), courts consider "the effectiveness of [the] proposed method of distributing relief to the class."  Fed. R. Civ. P. 23(e)(2)(C)(ii).  Here, the method for processing Class Members' claims and distributing relief to eligible claimants include well-established, effective procedures for processing claims submitted by Class Members.  *See* Nordskog Decl. at ¶¶18-19.  A.B. Data, if approved by the Court as Claims Administrator, will process claims under the supervision of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval.  The claims administration process being proposed here is standard in securities class

action settlements and has long been found to be effective. *See, e.g.*, *Wells Fargo II*, 2018 WL 6619983, at *7 ("The Court further finds that the proposed claims process provides an effective method of implementing that plan by ensuring that the claimant provides sufficient information to calculate the recognized loss amount. Therefore, this factor weighs in favor of approval.").

### 4. Lead Counsel's Fee and Expense Request Is Fair and Reasonable

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Lead Counsel intends to seek an award of attorneys' fees of no more than 30% of the Settlement Amount, and up to $450,000 in litigation expenses, plus any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund. This request is consistent with awards in similar complex class action cases. *See, e.g.*, *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (awarding 30% fees on $33 million securities class action settlement); *Davis v. Yelp, Inc.*, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) ("*Yelp II*") (awarding 33.3% attorneys' fees of $22.25 million and reimbursing over $930,000 in litigation expenses); *In re Banc of Cal. Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding 33% of $19.75 million settlement fund); *In re Tezos Sec. Litig.*, 2020 WL 13699946, at *1 (N.D. Cal. Aug. 28, 2020) (awarding 33.33% of $25 million settlement fund); *In re Heritage Bond Litig.*, 2005 WL 1594389, at *9 (C.D. Cal. June 10, 2005) (awarding one-third of a $27.78 million settlement).

Moreover, Lead Counsel's current estimated lodestar is approximately $6.89 million and would therefore represent a negative multiplier of approximately 0.88—far below the range commonly approved in comparable cases.[12] "In similar cases, courts in this Circuit have approved multipliers ranging from 1.0 to 4.0." *Impax*, 2022 WL 2789496, at *9 (approving fees equal to a lodestar multiplier of 2.6 given "numerous decisions from this [D]istrict approving multipliers ranging from 2.5 to 4.3"). Courts have found that "a multiplier of less than one suggests that the

---

[12] If preliminary approval is granted, Lead Counsel will present their total lodestar in connection with their fee application at the final approval stage, after further detailed review and adjustment of their time entries to account for reasonable billing judgment.

1  negotiated fee award is reasonable." *Yelp II*, 2023 WL 3063823, at *2.  Accordingly, a lodestar

2  cross-check would support the reasonableness of such a fee request.  *See, e.g.*, *Oliveira v.

3  Language Line Servs., Inc.*, __ F. Supp. 3d __, 2025 WL 586589, at *10-*11 (N.D. Cal. Feb. 24,

4  2025) (finding "reasonable" "an award of 30% of the common fund" and "a multiplier of

5  approximately 2.0"); *In re VeriFone Holdings, Inc. Sec. Litig.*, 2014 WL 12646027, at *2 (N.D.

6  Cal. Feb. 18, 2014) (noting "over 80% of multipliers fall between 1.0 and 4.0").

7       **5.    The Parties Have No Other Agreements Besides Opt-Outs**

8       Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreement.  As detailed above,

9  the Parties have entered into a confidential supplemental agreement pursuant to which Defendants

10  may terminate the Settlement if requests for exclusion from the Class reach a certain threshold—

11  generally called a "blow provision."  *See* Stipulation, ¶7.3.  Such an agreement is standard in

12  securities class action settlements; is kept confidential to prevent objectors from threatening to

13  trigger the blow provision to obtain self-interested payments at the expense of the Class; and has

14  no negative impact on fairness.  *See, e.g.*, *Wells Fargo I*, 2018 WL 4207245, at *7 (finding

15  "compelling reasons to keep this information confidential in order to prevent third parties from

16  utilizing it for the improper purpose of obstructing the settlement").  Lead Plaintiffs are willing to

17  submit the agreement for *in camera* review should the Court so request.

18       **6.    All Class Members Are Treated Equitably**

19       Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members

20  equitably relative to one another.  Here, the proposed Plan of Allocation is fair, reasonable, and

21  adequate because it does not treat Lead Plaintiffs (or any other Class Member) preferentially.  *See*

22  *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *10 (N.D. Cal. Oct. 27, 2015) (finding plan of

23  allocation "distributes the funds without giving undue preferential treatment to any class

24  members").  The Plan of Allocation, which is set out in the Notice, explains how the Settlement

25  proceeds will be distributed among Authorized Claimants.  Each eligible Class Member, including

26  Lead Plaintiffs, will be subject to the same formulas for distribution of the Settlement.  *See*

27  *Rentech*, 2019 WL 5173771, at *7 ("[T]he [c]ourt sees no significant indication of preferential

28  treatment" where the "'[n]et [s]ettlement [f]und will be distributed to [a]uthorized [c]laimants on

1   a *pro rata* basis based on the relative size of their [r]ecognized [c]laims.'").  Courts have found

2   similar plans that award *pro rata* shares of a settlement fund to each class member to be fair and

3   reasonable.  *See, e.g.*, *Vataj v. Johnson*, 2021 WL 1550478, at *10 (N.D. Cal. Apr. 20, 2021) ("The

4   Settlement Fund will thus be distributed on a *pro rata* basis according to each class member's

5   recognized loss.").

6   **VI.     THE CLASS SHOULD BE CERTIFIED**

7           Defendants have agreed, for the sole purpose of settlement, to certification of the following

8   Class: "all persons or entities who purchased CareDx, Inc. common stock between May 1, 2020

9   and November 3, 2022, inclusive, and were damaged thereby."  The proposed Class is the same

10  as that described in Plaintiffs' class certification motion (ECF 170) and satisfies all of the

11  applicable requirements of Rule 23(a) and Rule 23(b)(3).

12          Certification of a settlement class "'has been recognized throughout the country as the best,

13  most practical way to effectuate settlements involving large numbers of claims by relatively small

14  claimants.'"  *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 158 (S.D.N.Y. 2011).

15  In deciding whether to certify a settlement class, courts consider the same factors as would be

16  relevant in connection with the certification of a proposed litigation class, except that the Court

17  need not consider the manageability of a potential trial, since the settlement, if approved, would

18  obviate the need for a trial.  *See Saliba v. KS Statebank Corp.*, 2021 WL 2105608, at *2 (D. Ariz.

19  May 25, 2021).  In this Circuit, "'Rule 23 is to be liberally construed in a securities fraud context

20  because class actions are particularly effective in serving as private policing weapons against

21  corporate wrongdoing.'"  *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009).

22          **A.      Numerosity**

23          A class may be properly certified only if "the class is so numerous that joinder of all

24  members is impracticable."  Fed. R. Civ. P. 23(a)(1); *HyreCar*, 2024 WL 3504234, at *12.  "While

25  no specific minimum number of potential class members exists, a 'proposed class of at least forty

26  members presumptively satisfies the numerosity requirement.'"  *Hatamian v. Advanced Micro

27  Devices, Inc.*, 2016 WL 1042502, at *4 (N.D. Cal. Mar. 16, 2016).  Because CareDx was publicly

28  traded on the NASDAQ stock exchange, Lead Plaintiffs estimate that the Class will encompass

1    "'hundreds, if not thousands'" of putative class members.  *HyreCar*, 2024 WL 3504234, at *12.

2    "Given the substantial scope of the expected class size in this case" (*id.*), Lead Plaintiffs contend

3    that joinder of all class members would be impracticable, and therefore, that the numerosity

4    requirement is met.

5          **B.**    **Commonality**

6          A class action requires "questions of law or fact common to the class."  Fed. R. Civ. P.

7    23(a)(2); *HyreCar*, 2024 WL 3504234, at *12.  "'So long as there is "even a single common

8    question," a would-be class can satisfy the commonality requirement of Rule 23(a)(2).'"  *SEB Inv.*

9    *Mgmt. AB v. Wells Fargo & Co.*, 2025 WL 1243818, at *3 (N.D. Cal. Apr. 25, 2025) (Thompson,

10    J.).  Plaintiffs in securities fraud litigation generally satisfy this prerequisite "'very easily.'"  *Brown*

11    *v. China Integrated Energy Inc.*, 2015 WL 12720322, at *14 (C.D. Cal. Feb. 17, 2015).  Here, too,

12    this Action presents numerous factual questions common to the Class, including: (i) whether

13    Defendants omitted or misrepresented material facts; (ii) whether Defendants acted with scienter;

14    (iii) whether the price of CareDx's common stock was artificially inflated or maintained during

15    the Class Period; and (iv) whether disclosure of the truth caused Class Members to suffer economic

16    loss and damages.  *See HyreCar*, 2024 WL 3504234, at *12; *Lamartina v. VMware, Inc.*, 2024

17    WL 3286059, at *3 (N.D. Cal. July 2, 2024).

18          **C.**    **Typicality**

19          Under Rule 23(a)(3), "the claims or defenses of the representative parties [must be] typical

20    of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Representative claims are

21    "typical" if they are "'reasonably co-extensive with those of absent class members; they need not

22    be substantially identical.'"  *HyreCar*, 2024 WL 3504234, at *13.  The typicality element is met

23    here.  As with the other members of the Class, Lead Plaintiffs allege that they purchased CareDx

24    common stock during the Class Period and were subsequently damaged due to Defendants'

25    conduct.  Lead Plaintiffs "share[] identical interests with the Settlement Class in 'obtaining a fair,

26    reasonable, and adequate settlement of the claims asserted,'" and "'will receive the same *pro rata*

27    share of the Settlement Fund as the rest of the Settlement Class.'"  *Id*.

28

1

### D.     Adequacy

2      With respect to the final element of Fed. R. Civ. P. 23(a), "the representative parties" in a

3 class action must "fairly and adequately protect the interests of the class" they represent.  Fed. R.

4 Civ. P. 23(a)(4).  The adequacy requirement has two components: "'(1) whether there are conflicts

5 within the class; and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the

6 class.'"  *SEB Inv. Mgmt. AB*, 2025 WL 1243818, at *4.

7      As detailed above, Lead Plaintiffs and Lead Counsel readily satisfy the adequacy

8 requirement.  First, based upon their purchases of CareDx common stock during the Class Period

9 and their alleged losses, Lead Plaintiffs' interests are directly aligned with the interests of other

10 Class Members, who were injured by the same alleged materially false and misleading statements

11 and omissions as Lead Plaintiffs.  Second, there are no conflicts between Lead Plaintiffs and the

12 Class.  *See id.* (finding that the class representatives were adequate because there was no evidence

13 of conflicts of interest with the class).

14      Lead Plaintiffs have also retained highly proficient counsel.  As discussed above, Lead

15 Counsel, Robbins Geller and Saxena White, are two nationally recognized and experienced

16 securities fraud class action firms with substantial experience in cases such as this one.  Lead

17 Plaintiffs and Lead Counsel have demonstrated their willingness to commit considerable resources

18 to prosecuting this Action, and have vigorously represented the Class's interests.  Thus, the

19 adequacy requirement is satisfied.

20

### E.     The Requirements of Rule 23(b)(3) Are Also Met

21      Rule 23(b)(3) requires that common questions of law or fact predominate over individual

22 questions, and that a class action is superior to other available methods of adjudication.  *See Erica*

23 *P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).  Here, there are numerous

24 common questions of law and fact that predominate, including whether Defendants' statements

25 were false or misleading, whether Defendants acted with scienter, and whether, and to what extent,

26 Class Members suffered damages caused by the revelation of Defendants' alleged fraud.

27 Moreover, a class action is the superior method available to fairly and efficiently adjudicate this

28 Action.  The superiority of class actions to resolve the claims of a large, geographically dispersed

1   class of investors in securities fraud cases is well recognized. *See Amchem Prods., Inc. v. Windsor*,

2   521 U.S. 591, 625 (1997). The geographically dispersed nature of the Class, the inefficiency of

3   multiple lawsuits, and the size of individual recoveries in comparison to the cost of litigation

4   strongly support a finding of superiority here.

5       Thus, all of the requirements of Rules 23(a) and (b)(3) are satisfied. Accordingly, this

6   Court should certify the Class, appoint Lead Plaintiffs as class representatives, and appoint Lead

7   Counsel as class counsel for the Class.

8   **VII.    NOTICE TO THE CLASS IS WARRANTED**

9       In order to comport with due process, "[t]he Court 'must direct notice in a reasonable

10   manner to all class members who would be bound by the proposal.'" *Impax*, 2022 WL 2789496,

11   at *5. Additionally, the "notice must 'clearly and concisely state in plain, easily understood

12   language' the nature of the action, the class definition, and the class members' right to exclude

13   themselves from the class." *Id*.

14      As outlined in the agreed-upon form of proposed Preliminary Approval Order and

15   described above, Lead Counsel will cause the Claims Administrator to notify Class Members of

16   the Settlement by emailing, or mailing by first class mail where no email is available, individual

17   copies of the Postcard Notice (Exhibit A-4 to the Stipulation) to all Class Members who can be

18   identified with reasonable effort, as well as to the thousands of brokerage firms and other nominees

19   who regularly act as nominees for beneficial purchasers of stock. *See* Nordskog Decl. at ¶¶7-17;

20   Appendix at §3 (Notice). Contemporaneously with the emailing or mailing of the Postcard Notice,

21   as applicable, copies of the (long-form) Notice (Exhibit A-1 to the Stipulation) and the Proof of

22   Claim and Release (Exhibit A-2 to the Stipulation) will be posted on a website to be developed for

23   the Settlement, from which copies of the Notice and Proof of Claim and Release can be

24   downloaded, and where claims can be submitted online. The Claims Administrator will also mail

25   copies of the Notice and/or Proof of Claim and Release upon request. No more than seven (7)

26   calendar days after mailing the Postcard Notice, the Summary Notice (Exhibit A-3 to the

27   Stipulation) will be published in *The Wall Street Journal* and over a national newswire service.

28

1    The Postcard Notice, Summary Notice, and long-form Notice will advise Class Members

2  of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii)

3  information regarding Lead Counsel's application for an award of attorneys' fees and litigation

4  expenses.  *See generally* Stipulation, Exs. A-1, A-3, A-4.  They also will provide specifics on the

5  date, time, and place of the Settlement Hearing and set forth the procedures, as well as deadlines,

6  for opting out of the Class, for objecting to the Settlement, the proposed Plan of Allocation and/or

7  the application for attorneys' fees and litigation expenses, and for submitting a Proof of Claim and

8  Release.  *Id*.  Courts regularly hold that this form and manner of providing notice to the Class

9  satisfies the requirements of due process, Rule 23, and the PSLRA.[13]

10  **VIII.    PROPOSED SCHEDULE OF EVENTS**

11    Pursuant to Local Rule 6-1 and 6-3, and in light of the May 23, 2025 filing of this

12  Unopposed Motion for Preliminary Approval of Class Action Settlement, the Parties respectfully

13  submit proposed deadlines for the Settlement, if preliminarily approved, that shorten the proposed

14  deadlines set forth in Appendix A to the Court's May 19, 2025 Order (ECF 176).  Such

15  modification is warranted in this case, because (1) prompt resolution of proceedings and payment

16  of settlement proceeds furthers important and well-established public policy goals; and (2) no

17  similar time modifications have been made with respect to Plaintiffs' Unopposed Preliminary

18  Approval Motion.  The Parties respectfully submit that their proposed dates are consistent with

19  other settlement schedules in this Court and this District.  Further, the Parties' proposed schedule

20  ensures that Class Members are not unduly prejudiced by additional delay in receiving their *pro*

21  *rata* share of the recovery obtained in this Litigation.

22

23

---

24  [13] *See, e.g., Bos. Ret. Sys. v. Uber Techs., Inc.*, No. 3:19-cv-06361, ECF 468 at 5 (N.D. Cal. Aug.

25  9, 2024) ("The Court approves the form, substance and requirements of . . . the Settlement Postcard . . . ."); *In re Dropbox, Inc, Sec. Litig.*, No. 5:19-cv-06348, ECF 121 at 5 (N.D. Cal. Aug. 3, 2021)

26  (finding that a combination of postcard notice, summary notice, and a detailed notice available online "is the best notice practicable under the circumstances" in securities class action); *Utne v.*

27  *Home Depot U.S.A., Inc.*, 2018 WL 11373654, at *1 (N.D. Cal. Aug. 21, 2018) ("[D]irect mail postcard notice supplemented with additional information accessible via the internet fully meets

28  the requirements of Rule 23.").

1      The Parties propose the schedule for the Settlement-related events in this case set forth in

2  the attached Appendix A.  *See Alphabet, Inc. Sec. Litig.*, ECF 228, 232 (Thompson, J.) (setting

3  settlement schedule with substantially similar timeline in PSLRA class action).

4  **IX.     NORTHERN DISTRICT OF CALIFORNIA PROCEDURAL GUIDANCE**

5      The Procedural Guidance for class action settlements has been satisfied and weighs in favor

6  of approving the Settlement.  *See generally* Appendix B attached hereto; Nordskog Decl.

7  **X.     CONCLUSION**

8      For the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant

9  preliminary approval of the Settlement and enter the accompanying Preliminary Approval Order.

10  DATED: May 23, 2025                    Respectfully submitted,

11                                         ROBBINS GELLER RUDMAN
                                            & DOWD LLP
12                                         SHAWN A. WILLIAMS
                                           JASON C. DAVIS
13

14

15                                                  */s/ Jason C. Davis*
                                           JASON C. DAVIS
16
                                           Post Montgomery Center
17                                         One Montgomery Street, Suite 1800
                                           San Francisco, CA  94104
18                                         Telephone:  415/288-4545
                                           415/288-4534 (fax)
19                                         shawnw@rgrdlaw.com
                                           jdavis@rgrdlaw.com
20
                                           ROBBINS GELLER RUDMAN
21                                          & DOWD LLP
                                           SPENCER A. BURKHOLZ
22                                         THEODORE J. PINTAR
                                           HEATHER G. GEIGER
23                                         NICOLE Q. GILLILAND
                                           EVELYN SANCHEZ GONZALEZ
24                                         655 West Broadway, Suite 1900
                                           San Diego, CA  92101
25                                         Telephone:  619/231-1058
                                           619/231-7423 (fax)
26                                         spenceb@rgrdlaw.com
                                           tedp@rgrdlaw.com
27                                         hgeiger@rgrdlaw.com
                                           ngilliland@rgrdlaw.com
28                                         egonzalez@rgrdlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SAXENA WHITE P.A.
DAVID R. KAPLAN
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Telephone:  858/997-0860
858/369-0096 (fax)
dkaplan@saxenawhite.com

SAXENA WHITE P.A.
STEVEN B. SINGER
RACHEL A. AVAN
JOSHUA H. SALTZMAN (admitted *pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY  10606
Telephone:  914/437-8551
888/631-3611 (fax)
ssinger@saxenawhite.com
ravan@saxenawhite.com
jsaltzman@saxenawhite.com

SAXENA WHITE P.A.
LESTER R. HOOKER
7777 Glades Road, Suite 300
Boca Raton, FL  33434
Telephone:  561/394-3399
561/394-3382 (fax)
lhooker@saxenawhite.com

Lead Counsel for Lead Plaintiffs

1

<u>**CERTIFICATE OF SERVICE**</u>

2        I hereby certify under penalty of perjury that on May 23, 2025, I authorized the electronic

3  filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send

4  notification of such filing to the email addresses on the attached Electronic Mail Notice List, and

5  I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to

6  the non-CM/ECF participants indicated on the attached Manual Notice List.

7

                                                  */s/ Jason C. Davis*

8                                              JASON C. DAVIS

9                                         ROBBINS GELLER RUDMAN
                                                 & DOWD LLP

10                                      Post Montgomery Center
                                      One Montgomery Street, Suite 1800

11                                     San Francisco, CA 94104
                                     Telephone: 415/288-4545

12                                     415/288-4534 (fax)
                                     Email: jdavis@rgrdlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# APPENDIX A

CareDx – Schedule for Settlement-Related Events

| Event | Deadlines Included In The Court's Appendix A To ECF No. 176 | The Parties' Proposed Deadlines |
|---|---|---|
| Motion for Settlement Plaintiffs' Motion for Preliminary Approval of Class Action Settlement | July 25, 2025 | May 23, 2025 |
| Responses to Preliminary Approval Motion | August 8, 2025 | N/A (Motion is Unopposed) |
| Replies | August 15, 2025 | N/A (Motion is Unopposed) |
| Hearing for the Motion for Preliminary Approval of Class Action Settlement | September 23, 2025, 02:00 PM | The Parties respectfully submit that the Motion is unopposed and appropriate for determination on the papers. However, the Parties are available at the Court's convenience, including on the previously-set June 17, 2025 class certification hearing date |
| Class data to be provided to Settlement Administrator | October 24, 2025 | June 24, 2025 (or no later than seven (7) calendar days after the Court enters the Preliminary Approval Order) |
| Class Notice to be sent (the "Notice Date") | November 7, 2025 | July 7, 2025 (or within twenty (20) calendar days after the Court signs the Preliminary Approval Order to provide the Claims Administrator sufficient time to prepare and print notices) |
| Class Notice to be published | N/A | July 14, 2025 (or no later than seven (7) calendar days after the Notice Date) |
| Class Counsel to file their motion for fees and costs and Class Representative awards | February 23, 2026 | August 28, 2025 (or no later than thirty-five (35) calendar days before the Fairness and Final Approval Hearing) |
| Motion for Final Approval to be filed | February 23, 2026 | September 16, 2025 (or no later than thirty-five (35) calendar days before the Fairness and Final Approval Hearing) |
| Postmark deadline to submit objection or request for exclusion | January 9, 2026 | September 30, 2025 (or no later than twenty-one (21) calendar days prior to the Fairness and Final Approval Hearing) |
| Claim Form deadline | N/A | October 6, 2025 (or ninety (90) calendar days from the Notice Date) |

CareDx – Schedule for Settlement-Related Events

| Event | Deadlines Included In The Court's Appendix A To ECF No. 176 | The Parties' Proposed Deadlines |
|---|---|---|
| Class counsel and settlement administrator to submit supplemental statements regarding status of notice program, objections, opt-outs | March 27, 2026 | October 14, 2025 (or least seven (7) calendar days prior to the Fairness and Final Approval Hearing) |
| Fairness and Final Approval Hearing | April 14, 2026 NOTE: Subject to change without further notice to the Class. | October 21, 2025, 02:00 PM (or at least 100 days from the date of the Preliminary Approval Order). NOTE: Subject to change without further notice to the Class. |

# APPENDIX B

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
JASON C. DAVIS (253370)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
jdavis@rgrdlaw.com
           – and –
SPENCER A. BURKHOLZ (147029)
THEODORE J. PINTAR (131372)
HEATHER G. GEIGER (322937)
NICOLE Q. GILLILAND (335132)
EVELYN SANCHEZ GONZALEZ (360232)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
tedp@rgrdlaw.com
hgeiger@rgrdlaw.com
ngilliland@rgrdlaw.com
egonzalez@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PLUMBERS & PIPEFITTERS LOCAL UNION #295 PENSION FUND, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CAREDX, INC., et al., <br><br> Defendants. | Case No. 3:22-cv-03023-TLT (Securities Case) <br><br> CLASS ACTION <br><br> **APPENDIX ADDRESSING THE COURT'S PROCEDURAL GUIDANCE FOR CLASS ACTION SETTLEMENTS** |

In conjunction with their accompanying Unopposed Motion for Preliminary Approval of Class Action Settlement, Lead Plaintiffs respectfully submit the following Appendix of information addressing the Northern District of California's Procedural Guidance for Class Action Settlements[1]:

**PRELIMINARY APPROVAL**

**1) INFORMATION ABOUT THE SETTLEMENT**

The motion for preliminary approval should state, where applicable:

a.    Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate.

**RESPONSE**: The TAC alleged a class period starting April 30, 2020.  However, because the alleged false and misleading statements made that day were issued after trading hours, Plaintiffs seek certification of a Class Period beginning May 1, 2020 – the following trading day. *See* Stipulation at ¶1.5.  Notwithstanding this *de minimis* start date change, the Class Period for which Lead Plaintiffs now seek certification for purposes of the Settlement is effectively the same as the class period alleged in the TAC.

b.    Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate.

**RESPONSE**: The claims being released are the same claims alleged in the TAC.  The TAC alleges federal securities law claims (under the Securities Exchange Act of 1934) based on certain misrepresentations and omissions by Defendants.  As outlined in the TAC, CareDx's stock price was artificially inflated as a result of Defendants' alleged false and misleading statements, and CareDx's stock price declined when the alleged truth regarding Defendants' alleged

---

[1]  *See*  www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements.    All capitalized terms herein have the same meanings as in the Stipulation of Settlement (the "Stipulation") or Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, and for Approval of Modified Schedule, and Memorandum of Points and Authorities in Support Thereof ("Motion").  Unless otherwise noted, all emphasis is added.

1   misrepresentations was revealed.  Similar to the claims asserted in the TAC, the definition of

2   Released Claims in the Stipulation (¶1.24) is properly limited to:  "all claims (including, but not

3   limited to, Unknown Claims), demands, losses, rights, and causes of action of any nature

4   whatsoever, . . . which arise out of, are based on, or relate in any way to, directly or indirectly: (i)

5   any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or

6   omissions involved, set forth, alleged or referred to, in the Action, or which could have been

7   alleged in the Action; and (ii) the purchase or acquisition of CareDx common stock by any

8   members of the Class during the Class Period."  Accordingly, the release is carefully tailored to

9   the claims alleged in the operative TAC.

10          c.      The class recovery under the settlement (including details about and the value of

11   injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their

12   claims, claim by claim, and a justification of the discount applied to the claims.

13          **RESPONSE**: The Class will receive $20,250,000 in cash, less Court-approved fees and

14   expenses.  Lead Plaintiffs' Motion explains in detail why the Settlement Amount is fully justified.

15   The total estimated damages are just north of $400 million, however, there are a number of reasons

16   that recoverable damages (if any) would likely have been far less had the case proceeded to trial.

17   Most significantly, as set forth in the accompanying Motion, CareDx had a dwindling applicable

18   insurance tower of just $15 million that continued to further erode as litigation progressed.  CareDx

19   also had limited available cash to fund a settlement beyond its insurance, particularly given that

20   CareDx has suffered net losses nearly every quarter for the past five years.  Further, as set forth in

21   the Motion, Defendants advanced credible arguments regarding the core elements of falsity,

22   scienter, and loss causation that, if accepted by the Court or a jury at class certification, summary

23   judgment, or trial, could have significantly reduced damages or eliminated them entirely.  Indeed,

24   Defendants likely would have continued to argue that none of their statements were false, none of

25   their statements were made with fraudulent intent, and none of the alleged corrective disclosures

26   were causally connected to the alleged false statements, such that damages should have been zero.

27          d.      Any other cases that will be affected by the settlement, an explanation of what

28   claims will be released in those cases if the settlement is approved, the class definitions in those

1  cases, their procedural posture, whether plaintiffs' counsel in those cases participated in the

2  settlement negotiations, a brief history of plaintiffs' counsel's discussions with counsel for

3  plaintiffs in those other cases before and during the settlement negotiations, an explanation of the

4  level of coordination between the two groups of plaintiffs' counsel, and an explanation of the

5  significance of those factors on settlement approval.  If there are no such cases, counsel should so

6  state.

7  **RESPONSE**: The Parties do not believe that any other case is affected by the Settlement.

8  The Stipulation specifically exempts any other derivative or ERISA action based on similar

9  allegations as those set forth in the TAC (*see* Stipulation ¶4.4).

10  e.    The proposed allocation plan for the settlement fund.

11  **RESPONSE**: The proposed Plan of Allocation was developed by Lead Plaintiffs' highly

12  experienced expert, Chad Coffman, is comparable to plans of allocation approved in numerous

13  other securities class actions, and is set forth in the proposed Notice.

14  f.    If there is a claim form, an estimate of the expected claim rate in light of the

15  experience of the selected claims administrator and/or counsel based on comparable settlements,

16  the identity of the examples used for the estimate, and the reason for the selection of those

17  examples.

18  **RESPONSE**: Based on A.B. Data's experience, the substantial majority of large value

19  valid claims will be filed by institutional investors.  *See* accompanying Declaration of Eric A.

20  Nordskog in Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of

21  Settlement ("Nordskog Decl.") at ¶19.  Many, if not most, institutional investors such as mutual

22  funds, pension funds, endowment funds, hedge funds, commercial banks, and insurance companies

23  file, or hire a third-party claims filing service to file claims on the investor's behalf.  *Id.* at ¶2 and

24  Ex. A.  Because institutional investors typically file the largest claims in a case, these investors

25  typically receive the largest portion of the Net Settlement Fund.  *Id*.  Accordingly, it is A.B Data's

26  expectation that here, as in most other securities class actions, institutional investors will file the

27  largest claims in the Action and receive the bulk of the Net Settlement Fund.  *Id*.  In recent years,

28  in comparable securities class actions involving purchasers of publicly-traded common stock and

1   similar notice programs, A.B. Data has found that the claims received (including those filed on

2   behalf of institutional investors) usually represent over 70% of the total number of damaged shares

3   as estimated by plaintiffs' experts based on their modeling of the trading in the company's stock—

4   and often exceed 85% to 95% of the total damaged shares. *See, e.g.*, *SEB Invest. Mgmt. AB v.*

5   *Symantec Corp.*, No. 3:18-cv-02902, Post-Distribution Accounting at 1 (N.D. Cal. Feb. 16, 2023),

6   ECF No. 451 (claims received represented 96% of estimated damaged shares); *In re Spectrum*

7   *Brands Sec. Litig.*, No. 19-cv-347, Reply Memo at 6 (W.D. Wis. Mar. 4, 2022), ECF No. 113

8   (claims received represented 90% of estimated damaged shares); *In re RH, Inc. Sec. Litig.*, No.

9   4:17-cv-00554, Post Distribution Accounting at 1 (N.D. Cal. Apr. 7, 2020), ECF No. 160 (claims

10  received represented 94% of estimated damaged shares).

11      g.      In light of Ninth Circuit case law disfavoring reversions, whether and under what

12  circumstances money originally designated for class recovery will revert to any defendant, the

13  expected and potential amount of any such reversion, and an explanation as to why a reversion is

14  appropriate.

15      **RESPONSE**: N/A.  The Settlement is non-revisionary.

16  **2)      SETTLEMENT ADMINISTRATION**

17      The parties are expected to get multiple competing bids from potential settlement

18  administrators.  In the motion for preliminary approval, the parties should:

19      a.      Identify the proposed settlement administrator, the settlement administrator

20  selection process, how many settlement administrators submitted proposals, what methods of

21  notice and claims payment were proposed, and the lead class counsel's firms' history of

22  engagements with the settlement administrator over the last two years.

23      **RESPONSE**: A.B. Data has been retained by Lead Counsel, subject to Court approval, to

24  act as the Claims Administrator and provide notice and claims administration services for the

25  Settlement.  Lead Counsel sent requests for proposals ("RFPs") to five highly experienced,

26  national class action settlement administration firms, all of whom have extensive experience in

27  providing settlement administration for securities class action settlements.  All five firms submitted

28  comprehensive proposals in response to Lead Counsel's RFPs requesting information on the

1   estimated number of Class members, the estimated claims response rate, and the costs of

2   administration.  The five firms submitted substantially similar methods of notice, and generally

3   proposed similar methods of claims processing and payment, consistent with industry standards

4   developed in the securities class action context.  A.B. Data outlines these methods at length in the

5   Nordskog Decl. at ¶¶7-17.  Lead Counsel carefully analyzed all the responses in light of the

6   requirements of this Settlement, taking into account both the estimated costs provided by each and

7   the quality of the submissions, before selecting A.B. Data.  As noted above in the response to point

8   1(f), courts have routinely found A.B. Data as experienced in claims administration of securities

9   class action settlements, including in this District.  Co-Lead Counsel Robbins Geller and Saxena

10  White have engaged or worked on settlements with A.B. Data 13 times within the last two years,

11  including in *Leventhal v. Chegg, Inc., et al.*, No. 5:21-cv-09953 (N.D. Cal.); *In re Merit Medical*

12  *Systems, Inc. Sec. Litig.*, No. 8:19-cv-02326 (C.D. Cal.); *In re Perrigo Co. PLC Sec. Litig.*, No.

13  1:19-cv-00070 (S.D.N.Y.); *In re James River Group Holdings, Ltd. Sec. Litig.*, No. 3:21-cv-00444

14  (E.D. Va.); *In re Apache Corp. Sec. Litig.*, No. 4:21-cv-00575 (S.D. Tex.); *City of Hollywood*

15  *Police Officers' Retirement System, et al. v. Henry Schein, Inc., et al.*, No. 2:19-cv-05530

16  (E.D.N.Y.); *Plymouth County Retirement System & Oklahoma Police Pension & Retirement*

17  *System v. Evolent Health, Inc., et al.*, No. 1:19-cv-01031 (E.D. Va.); *In re: McKinsey & Co., Inc.*

18  *National Prescription Opiate Consultant Litig.*, No. 3:21-md-02996 (N.D. Cal.); *Howard v.*

19  *Arconic Inc., et al.*, No. 2:17-cv-01057 (W.D. Pa.); *Nayani v. LifeStance Health Group, Inc., et*

20  *al.*, No. 1:22-cv-06833 (S.D.N.Y.); *In re GoHealth, Inc. Sec. Litig.*, No. 1:20-cv-05593 (N.D. Ill.);

21  *Russo v. Walgreen Co.*, No. 1:17-cv-02246 (N.D. Ill.); and *In re Funko, Inc. Sec. Litig.*, No. 17-2-

22  29838-7 SEA (Wash.).

23          b.      Address the settlement administrator's procedures for securely handling class

24  member data (including technical, administrative, and physical controls; retention; destruction;

25  audits; crisis response; etc.), the settlement administrator's acceptance of responsibility and

26  maintenance of insurance in case of errors, the anticipated administrative costs, the reasonableness

27  of those costs in relation to the value of the settlement, and who will pay the costs.

28

1    **RESPONSE**: Eric Nordskog of A.B. Data, the proposed Claims Administrator, addresses

2    these considerations in his Declaration at ¶4 and Exhibit B.

3    **3)    NOTICE**

4         The parties should ensure that the class notice is easily understandable, in light of the class

5    members' communication patterns, education levels, and language needs.  The notice should

6    include the following information:

7         a.    Contact information for class counsel to answer questions.

8    **RESPONSE**: The proposed Postcard Notice, Summary Notice, and Notice all provide this

9    information.

10        b.    The address for a website, maintained by the claims administrator or class counsel,

11   that lists key deadlines and has links to the notice, claim form (if any), preliminary approval order,

12   motions for preliminary and final approval and for attorneys' fees, and any other important

13   documents in the case.

14   **RESPONSE**: The proposed Postcard Notice, Summary Notice, and Notice all provide this

15   information.

16        c.    Instructions on how to access the case docket via PACER or in person at any of the

17   court's locations.

18   **RESPONSE**: The proposed Postcard Notice, Summary Notice, and Notice all provide this

19   information.

20        d.    The date and time of the final approval hearing, clearly stating that the date may

21   change without further notice to the class.

22   **RESPONSE**: Although the date of the final approval hearing has yet to be set by the Court,

23   there is a placeholder for this information in the proposed Postcard Notice, Summary Notice, and

24   Notice.

25        e.    A note to advise class members to check the settlement website or the Court's

26   PACER site to confirm that the date has not been changed.

27   **RESPONSE**: The proposed Postcard Notice, Summary Notice, and Notice all provide this

28   information.

1        The parties should explain how the notice distribution plan is effective.  Class counsel

2   should consider the following ways to increase notice to class members: identification of potential

3   class members through third-party data sources; use of text messages and social media to provide

4   notice to class members; hiring a marketing specialist; providing a settlement website that

5   estimates claim amounts for each specific class member and updating the website periodically to

6   provide accurate claim amounts based on the number of participating class members; and

7   distributions to class members via direct deposit.

8        **RESPONSE**: A.B. Data's declaration provides a comprehensive explanation of how the

9   notice distribution plan is effective and consistent with industry standards.  In particular, A.B. Data

10   believes that in a securities class action settlement, it is essential that brokers and/or third parties

11   who hold stock in "street name" timely either provide lists of securities holders of CareDx during

12   the Class Period or request copies of the notice to send on to such securities holders.  Based on

13   A.B. Data's experience, the majority of large value valid claims will be filed by institutional

14   investors.  Nordskog Decl. at ¶19.  Social media and text messaging is not often utilized in

15   securities class action settlement notification because, as mentioned above, the majority of

16   potential class members for any securities class action hold their securities in "street name,"

17   meaning social media and text messaging notification would likely not significantly increase

18   settlement participation.  *Id*. at ¶8.  A.B. Data has a team of advertising/media experts who help

19   design, develop, and implement notice programs to meet the requirements of Rule 23 and relevant

20   state court rules.  *Id*.

21        f.    The notice distribution plan should rely on U.S. mail, email, and/or social media as

22   appropriate to achieve the best notice that is practicable under the circumstances, consistent with

23   Federal Rule of Civil Procedure 23(c)(2).  If U.S. mail is part of the notice distribution plan, the

24   notice envelope should be designed to enhance the chance that it will be opened.

25        **RESPONSE**: These points are addressed in the Nordskog Decl. at ¶¶7-17.  In A.B. Data's

26   opinion, the proposed notice plan provides the best notice practicable under the circumstances, is

27   consistent with the requirements of Rule 23 and the Private Securities Litigation Reform Act, 15

28   U.S.C. §78u-4 (the "PSLRA"), and is consistent with other similar court-approved security class

1   action notice programs.  *See, e.g.*, *Electrical Workers Pension Fund, Local 103, I.B.E.W., et al. v.*

2   *HP Inc., et al.*, No. 3:20-cv-01260 (N.D. Cal.); and *Vataj v. Johnson, et al.*, No. 4:19-cv-06996

3   (N.D. Cal.) (approving postcard notice programs).  The supplemental digital posting through

4   DTC's LENS, the print placement in *The Wall Street Journal*, the distribution of a press release

5   over *PR Newswire*, and the establishment of the case-specific website, toll-free telephone number,

6   and email will further enhance notice exposure.  Regarding U.S. mail notice, A.B. Data will utilize

7   the same types of postcards it has successfully used in other securities class action settlements,

8   which are designed to enhance the chance it will be read.  To the extent any notice packages are

9   necessary or requested, A.B. Data will utilize the same types of notice envelopes it has successfully

10  used in other securities class action settlements.  A.B. Data will also provide email notice, when

11  email addresses are available and appropriate, which will be in a similar format to emails A.B.

12  Data has successfully utilized in other securities class action settlements.  The proposed notice

13  plan is designed to reach as many Class Members as possible and inform them about the Settlement

14  and their rights and options.

15  **4)    OPT-OUTS**

16          The notice should instruct class members who wish to opt out of the settlement to send a

17  letter, setting forth their name and information needed to be properly identified and to opt out of

18  the settlement, to the settlement administrator and/or the person or entity designated to receive opt

19  outs.  It should require only the information needed to opt out of the settlement and no extraneous

20  information or hurdles.  The notice should clearly advise class members of the deadline, methods

21  to opt out, and the consequences of opting out.

22          **RESPONSE**: The proposed Postcard Notice, Summary Notice, and Notice all provide this

23  information.

24  **5)    OBJECTIONS**

25          Objections must comply with Federal Rule of Civil Procedure 23(e)(5).  The notice should

26  instruct class members who wish to object to the settlement to send their written objections only

27  to the court.  All objections will be scanned into the electronic case docket, and the parties will

28  receive electronic notices of filings.  The notice should make clear that the court can only approve

1   or deny the settlement and cannot change the terms of the settlement.  The notice should clearly

2   advise class members of the deadline for submission of any objections.

3       **RESPONSE**: The proposed Notice provides this information.

4   **6)    ATTORNEYS' FEES AND COSTS**

5       Although attorneys' fee requests will not be approved until the final approval hearing, class

6   counsel should include information about the fees and costs (including expert fees) they intend to

7   request, their lodestar calculation (including total hours), and resulting multiplier in the motion for

8   preliminary approval.  In a common fund case, the parties should include information about the

9   relationship between the amount of the common fund, the requested fee, and the lodestar.  To the

10  extent counsel base their fee request on having obtained injunctive relief and/or other non-

11  monetary relief for the class, counsel should discuss the benefit conferred on the class.

12      **RESPONSE**: Lead Plaintiffs will move for an award of attorneys' fees and litigation

13  expenses in tandem with their motion for final approval of the Settlement.  Lead Plaintiffs intend

14  to request attorneys' fees of no more than 30% of the Settlement Fund (*i.e.*, $6,075,000 plus

15  interest).  A request of 30% of the Settlement Fund would, excluding interest, approximate to a

16  modest lodestar multiplier of 0.88.

17      At final approval, Lead Counsel will provide declarations providing a full accounting of

18  their lodestar by timekeeper.  In the interim, Lead Counsel have estimated their aggregate lodestar.

19  While subject to change in the exercise of appropriate billing judgment, Lead Counsel estimate

20  that their total lodestar is $6.89 million.  This is based on a total of 10,097 hours billed by all

21  timekeepers and the firms' current hourly rates, which are the same as, or comparable to, the rates

22  accepted by courts in other securities class action litigation or shareholder litigation, including

23  courts within this Circuit.

24      Lead Counsel will also seek an award of litigation expenses of no more than $450,000.  In

25  addition, Lead Plaintiffs may each seek an award in an amount not to exceed $7,500, pursuant to

26  15 U.S.C. §78u-4(a)(4), in connection with their representation of the Class.

27      At final approval, Lead Counsel will provide a declaration providing a full accounting of

28  all expenses by category.  Lead Counsel have estimated their current litigation expenses at

1    approximately $356,000 (and this includes expert-related expenses of approximately $170,000).

2    This litigation expense figure is subject to change in the exercise of appropriate billing judgment

3    – and given (i) additional litigation expenses necessary to effectuate the Settlement; and (ii) the

4    receipt of further invoices for work already completed.

5           Finally, A.B. Data estimates that administering the Settlement, including disseminating

6    notice to the Class, processing Claims received, and distributing the net Settlement proceeds in

7    accordance with the Plan of Allocation, will cost approximately $225,000, which excludes the

8    anticipated requests from nominees for reimbursement of their expenses in connection with

9    providing notice.   Nordskog Decl. at ¶¶26-27.   Additionally, A.B. Data estimates nominee

10   expenses may be up to $60,000.  *Id.*

11   **7)       SERVICE AWARDS**

12          Judges in this district have different perspectives on extra payments to named plaintiffs or

13   class representatives that are not made available to other class members.  Counsel seeking approval

14   of service awards should consult relevant prior orders by the judge reviewing the request.

15   Although service award requests will not be approved until the final approval hearing, the parties

16   should include information about the service awards they intend to request as well as a summary

17   of the evidence supporting the awards in the motion for preliminary approval.  The parties should

18   ensure that neither the size nor any conditions placed on the incentive awards undermine the

19   adequacy of the named plaintiffs or class representatives.  In general, unused funds allocated to

20   incentive awards should be distributed to the class *pro rata* or awarded to *cy pres* recipients.

21          **RESPONSE**: As noted above in response to point 6, Lead Plaintiffs may each seek an

22   award in an amount not to exceed $7,500, pursuant to 15 U.S.C. §78u-4(a)(4), in connection with

23   their representation of the Class.  This amount is fully supported by the work undertaken

24   throughout the Litigation, which will be supported by a declaration from each Plaintiff in

25   connection with Lead Counsel's forthcoming fee and expense motion.

26          As noted, Congress expressly envisioned such awards in the PSLRA, and this Court and

27   other Courts in this District routinely award similar awards in securities class actions.  *See, e.g.*, *In*

28   *re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1049 (N.D. Cal. 2008) (reimbursing lead

1   plaintiffs for "time and expenses" in the amount of $29,913.80); *Davis v. Yelp, Inc.*, 2023 WL

2   3063823, at *2 (N.D. Cal. Jan. 27, 2023) (approving $15,000 award to one lead plaintiff).

3   **8)    *CY PRES* AWARDEES**

4          If the settlement contemplates a *cy pres* award, the parties should identify their chosen *cy*

5   *pres* recipients, if any, and how those recipients are related to the subject matter of the lawsuit and

6   the class members' claims.  The parties should also identify any relationship they or their counsel

7   have with the proposed *cy pres* recipients.  In general, unused funds allocated to attorneys' fees,

8   service awards, settlement administration costs, and class member payments should be distributed

9   to the class *pro rata* if feasible, or else awarded to *cy pres* recipients or to the relevant government

10  authorities.

11         **RESPONSE**: The Settling Parties have chosen the Council for Institutional Investors as

12  the designated recipient for any *de minimis* balance remaining after all reallocations are completed.

13         Lead Counsel have no relationship with Council of Institutional Investors, but Council of

14  Institutional Investors has been designated a *cy pres* beneficiary in settlements in which Lead

15  Counsel were involved.

16  **9)    TIMELINE**

17         The parties should ensure that class members have at least thirty-five days to opt out or

18  object to the settlement and the motion for attorney's fees and costs.

19         **RESPONSE**: Lead Plaintiffs have done so and propose a schedule for notice, the Final

20  Approving Hearing, and related dates in Appendix A to their Motion, reproduced below.

| <u>Event</u> | <u>Proposed Due Date</u> |
|---|---|
| Deadline for mailing the Postcard Notice to the Class (Preliminary Approval Order ¶13) | Not later than 20 calendar days after entry of Preliminary Approval Order (the "Notice Date") |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶14) | Not later than 7 calendar days after the Notice Date |
| Deadline for receipt of Claim Forms (Preliminary Approval Order ¶15) | No later than 90 calendar days after the Notice Date |
| Deadline for filing of papers in support of final approval of Settlement, Plan of | 35 calendar days prior to the Final Approval Hearing |

| **Event** | **Proposed Due Date** |
|---|---|
| Allocation, and Lead Counsel's application for attorneys' fees and expenses (Preliminary Approval Order ¶24) | |
| Deadline for receipt of exclusion requests and objections (Preliminary Approval Order ¶¶21-22) | 21 calendar days prior to Final Approval Hearing |
| Deadline for filing reply papers and submitting proof of the mailing of the Postcard Notice to Class Members and publication of the Notice and Summary Notice (Preliminary Approval Order ¶24) | 7 calendar days prior to the Final Approval Hearing |
| Final Approval Hearing (Preliminary Approval Order ¶8) | At least 100 calendar days after entry of Preliminary Approval Order |

**10)    CLASS ACTION FAIRNESS ACT (CAFA) AND SIMILAR REQUIREMENTS**

The parties should address whether CAFA notice is required and, if so, when it will be given. In addition, the parties should address substantive compliance with CAFA. For example, if the settlement includes coupons, the parties should explain how the settlement complies with 28 U.S.C. §1712. In addition, the parties should address whether any other required notices to government entities or others have been provided, such as notice to the Labor & Workforce Development Agency (LWDA) pursuant to the Private Attorneys General Act (PAGA).

**RESPONSE**: Defendants have agreed in the Stipulation (¶3.4) that they shall timely serve a CAFA notice within ten (10) calendar days of the filing of the Stipulation with the Court and shall provide Lead Counsel with a copy of such notice within five (5) calendar days of such service.

**11)    COMPARABLE OUTCOMES**

Lead class counsel should provide information about comparable cases, including settlements and litigation outcomes. Lead class counsel should provide the following information for as many as feasible (and at least one) comparable class settlements (*i.e.*, settlements involving the same or similar claims, parties, issues):

a.    The claims being released, the total settlement fund, the total number of class members, the total number of class members to whom notice was sent, the method(s) of notice,

the number and percentage of claim forms submitted, the average recovery per class member or claimant, the amounts distributed to *cy pres* recipients, the administrative costs, the attorneys' fees and costs, the total exposure if the plaintiffs had prevailed on every claim.

**RESPONSE**:

| |
|---|
| Case name and citation: *Fleming v. Impax Laboratories, Inc.*, No. 4:16-cv-06557-HSG (N.D. Cal.) |
| Claims Asserted: Securities Exchange Act §§ 10(b) and 20(a) |
| Total Settlement Amount: $33 million |
| Notices Mailed: 49,620 |
| Total Claims Submitted: 13,863<br>Response Rate: 28% |
| Total Valid Claims: 5,398 |
| Average Recovery per Claimant: $4,236.68<br>Median Recovery per Claimant: $81.71 |
| Method of Notice:  Direct Mail; Published in *The Wall Street Journal* and *PR Newswire*; posted on the settlement website; DTC LENS notice posting |
| Administrative Costs: $311,213.89 |
| Litigation Expenses Reimbursed: $176,501.78 |
| Attorneys' Fees Awarded<br>% of Settlement Fund: 30%<br>Multiplier: 2.59 |
| Cy-Pres Designee: Investor Protection Trust<br>Cy-Pres Distribution: $0 |
| Total Amount Distributed: $22,869,617.96 |

| |
|---|
| Case name and citation: *Davis v. Yelp*, No. 3:18-cv-00400-EMC (N.D. Cal.) |
| Claims Asserted: Securities Exchange Act §§ 10(b) and 20(a) |
| Total Settlement Amount: $22.25 million |
| Notices Mailed: 44,942 |
| Total Claims Submitted: 7,517<br>Response Rate: 17% |
| Total Valid Claims: 4,291 |
| Average Recovery per Claimant: $1,849.05<br>Median Recovery per Claimant: $55.94 |
| Method of Notice:  Direct Mail; Published in *Investor's Business Daily* and *PR Newswire*; posted on the settlement website; DTC LENS notice posting |
| Administrative Costs: $290,835.65 |
| Litigation Expenses Reimbursed: $930,782.70 |
| Attorneys' Fees Awarded<br>% of Settlement Fund: 33%<br>Multiplier: 0.81 |
| Cy-Pres Designee: Public Justice Foundation |

| Cy-Pres Distribution: $56,066.50 |
| Total Amount Distributed: $13,899,342.19 |

| Case name and citation: *In re Tezos Sec. Litig.*, No. 3:17-cv-06779-RS (N.D. Cal.) |
| Claims Asserted: Securities Act of 1933 under §§ 5, 12(a)(1), 15 |
| Total Settlement Amount: $ 25,000,000 |
| Notices Sent: 59,498 sent (52,036 successfully delivered) |
| Total Claims Submitted: 2,137<br>Response Rate: 4% |
| Total Valid Claims: $11,851,974.71 |
| Average Recovery per Claimant: Unknown |
| Median Recovery per Claimant: Unknown |
| Method of Notice:  E-notice, publication on cryptocurrency associated websites |
| Administrative Costs: $271,363.39 |
| Litigation Expenses Reimbursed: $203,017.93 |
| Attorneys' Fees Awarded: $8,333,333.33<br>% of Settlement Fund: 33.3%<br>Multiplier: 0.88 |
| Cy-Pres Designee: San Francisco Food Bank<br>Cy-Pres Distribution: Unknown |
| Total Amount Distributed: Unknown |

b.      Where class members are entitled to non-monetary relief, such as discount coupons or debit cards or similar instruments, the number of class members availing themselves of such relief and the aggregate value redeemed by the class members and/or by any assignees or transferees of the class members' interests.

**RESPONSE**: N/A

c.      Where injunctive and/or other non-monetary relief has been obtained, discuss the benefit conferred on the class.

**RESPONSE**: N/A

**12)    ELECTRONIC VERSIONS**

Electronic versions (Microsoft Word or WordPerfect) of all proposed orders and notices should be submitted to the presiding judge's Proposed Order (PO) email address when filed.

**RESPONSE**: Lead Counsel have and will comply with this requirement.

**13)    OVERLAPPING CASES**

1    Within one day of filing of the preliminary approval motion, the defendants should serve a

2 copy on counsel for any plaintiffs with pending litigation, whether at the trial court or appellate

3 court level, whether active or stayed, asserting claims on a representative (*e.g.*, class, collective,

4 PAGA, etc.) basis that defendants believe may be released by virtue of the settlement.

5    **RESPONSE**: As noted above in response to point 1(d), Plaintiffs do not believe the

6 Settlement has a legal effect on any other representative case.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28