ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
JASON C. DAVIS (253370)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
jdavis@rgrdlaw.com
      – and –
SPENCER A. BURKHOLZ (147029)
THEODORE J. PINTAR (131372)
HEATHER G. GEIGER (322937)
NICOLE Q. GILLILAND (335132)
EVELYN SANCHEZ GONZALEZ (360232)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
tedp@rgrdlaw.com
hgeiger@rgrdlaw.com
ngilliland@rgrdlaw.com
egonzalez@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PLUMBERS & PIPEFITTERS LOCAL UNION #295 PENSION FUND, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CAREDX, INC., et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Case No. 3:22-cv-03023-TLT (Securities Case)

CLASS ACTION

LEAD PLAINTIFFS' NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

DATE: December 2, 2025
TIME: 2:00 p.m.
DEPT: Courtroom 9, 19th Floor
JUDGE: Honorable Trina L. Thompson

4919-2249-9178.v3

1

**TABLE OF CONTENTS**

2

**Page**

3    I.      INTRODUCTION ................................................................................................1

4    II.     FACTUAL AND PROCEDURAL BACKGROUND.........................................4

5    III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
             SETTLEMENTS..................................................................................................6

6

             A.      Class Certification Remains Appropriate .................................................6

7
             B.      The Settlement Warrants Final Approval .................................................6

8
             C.      The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)..................8

9
                     1.      Rule 23(e)(2)(A): Plaintiffs and Their Counsel Have Adequately
10                           Represented the Class ..................................................................8

11                   2.      Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at
                             Arm's Length After Mediation with an Experienced Mediator..................8

12
                     3.      Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate
13                           Considering the Costs, Risk, and Delay of Trial and Appeal ....................9

14                           a.      The Costs and Risks of Trial and Appeal Support Approval
                                     of the Settlement ...............................................................10

15
                             b.      The Proposed Settlement Eliminates the Additional Cost
16                                   and Delay of Continued Litigation .................................12

17                   4.      Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing Relief
                             Is Effective .................................................................................13

18
                     5.      Rule 23(e)(2)(C)(iii): Attorneys' Fees ......................................14

19
                     6.      Rule 23(e)(2)(C)(iv): Other Agreements ...................................15

20
                     7.      Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Class
21                           Members Equitably.....................................................................15

22           D.      The Remaining Ninth Circuit Factors Are Satisfied...............................16

23                   1.      Discovery Completed and Stage of the Proceedings ................16

24                   2.      Lead Counsel View This Good-Faith Settlement as Fair,
                             Reasonable, and Adequate .........................................................17

25
                     3.      The Positive Reaction of Class Members to the Settlement ....................18

26
                     4.      The Settlement Amount .............................................................18

27
                     5.      The Risk of Maintaining Class Certification .............................19

28

1

2                                                                                                          **Page**

3    IV.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION..........................20

4    V.     NOTICE TO THE CLASS SATISFIES DUE PROCESS ...............................................20

5    VI.    CONCLUSION.............................................................................................................21

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

Page

3

**CASES**

4

*Baron v. HyreCar Inc.*,
    2024 WL 3504234 (C.D. Cal Jul 19, 2024).................................................................15, 20

5

6

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2020) ...............................................................................................8

7

8

*Cheng Jiangchen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019).....................................................................9, 10

9

10

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ..............................................................................................9, 11

11

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ................................................................................................21

12

13

*Destefano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ..........................................................................13

14

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005).................................................................................................................11

15

16

*Fleming v. Impax Lab'ys Inc.*,
    2022 WL 2789496 (N.D. Cal. July 15, 2022).........................................................8, 19, 20, 23

17

18

*Gudimetla v. Ambow Educ. Holding*,
    2015 WL 12752443 (C.D. Cal. Mar. 16, 2015) ......................................................................15

19

*Hameed-Bolden v. Forever 21 Retail, Inc.*,
    2021 WL 5107729 (C.D. Cal. Sept. 27, 2021) ........................................................................10

20

21

*Hampton v. Aqua Metals, Inc.*,
    2021 WL 4553578 (N.D. Cal. Oct. 5, 2021)............................................................................16

22

*Hayes v. MagnaChip Semiconductor Corp.*,
    2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ........................................................................23

23

24

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
    *aff'd sub nom., Hefler v. Pekoc*,
    802 F. App'x 285 (9th Cir. 2020) ...........................................................................................11

25

26

27

28

1

2                                                                         **Page**

3 *Hsu v. Puma Biotechnology, Inc.*,
    No. 8:15-cv-00865-DOC-SHK, ECF 913 (C.D. Cal. Aug. 3, 2022) 14*In re Alphabet, Inc. Sec.*
4     *Litig.*,
    2024 WL 4354988 (N.D. Cal. Sept. 30, 2024) .................................................................8
5

6 *In re BofI Holding, Inc. Sec. Litig.*,
    2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) .................................................................17
7

8 *In re Chrysler-Dodge-Jeep EcoDiesel Mktg.*,
    *Sales Pracs., & Prods. Liab. Litig.*,
    2019 WL 2554232 (N.D. Cal. May 3, 2019) ...................................................................9
9

10 *In re Genworth Fin. Sec. Litig.*,
    210 F. Supp. 3d 837 (E.D. Va. 2016) ...........................................................................20
11

12 *In re Hewlett-Packard Co. Sec. Litig.*,
    2015 WL 13917012 (C.D. Cal. Nov. 9, 2015) ..............................................................16
13

14 *In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ........................................................................................10
15 *In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007)..........................................................................13
16

17 *In re ImmunityBio, Inc. Sec. Litig.*,
    2025 WL 1686263 (S.D. Cal. Jun. 16, 2025) ................................................................10
18 *In re Lyft, Inc. Sec. Litig.*,
    2022 WL 17740302 (N.D. Cal. Dec. 16, 2022)............................................................16
19

20 *In re Lyft Inc. Sec. Litig.*,
    2023 WL 5068504 (N.D. Cal. Aug. 7, 2023) ...............................................................18
21

22 *In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................................17, 19
23 *In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ........................................................................................17
24

25 *In re Stable Rd. Acquisition Corp.*,
    2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) ..........................................................18, 21
26 *In re Veritas Software Corp. Sec. Litig.*,
    496 F.3d 962 (9th Cir. 2007) ........................................................................................22
27

28 LEAD PLAINTIFFS' NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF - 3:22-cv-03023-TLT (Securities Case)     - iv -
4919-2249-9178.v3

**Page**

*In re Volkswagen "Clean Diesel" Mktg.,*
    *Sales Pracs., & Prods. Liab. Litig.,*
    895 F.3d 597 (9th Cir. 2018) ............................................................................8

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
    2020 WL 4212811 (N.D. Cal. July 22, 2020),
    *aff'd,* 2022 WL 2304236 (9th Cir. June 27, 2022) ...............................14

*Khoja v. Orexigen Therapeutics, Inc.,*
    2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) .......................................18

*Longo v. OSI Sys., Inc.,*
    2022 U.S. Dist. LEXIS 158606 (C.D. Cal. Aug. 31, 2022).............................11, 17

*Mauss v. NuVasive, Inc.,*
    2018 WL 6421623 (S.D. Cal. Dec. 6, 2018).........................................22

*Mendoza v. Hyundai Motor Co.,*
    2017 WL 342059 (N.D. Cal. Jan. 23, 2017) .........................................9

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.,*
    688 F.2d 615 (9th Cir. 1982) ....................................................8, 11

*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.,*
    2021 WL 1387110 (D. Colo. Apr. 13, 2021) ........................................20

*Redwen v. Sino Clean Energy, Inc.,*
    2013 WL 12303367 (C.D. Cal. July 9, 2013) ......................................12

*Rodriguez v. W. Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) .............................................10, 18, 22

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993) ........................................................14

*Vataj v. Johnson,*
    2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) .......................................21

*Vataj v. Johnson,*
    2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ........................................18

*Vinh Nguyen v. Radient Pharms. Corp.,*
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ........................................14

| | Page |
|---|---|

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §78j(b) ..................................................................................................................6, 11
    §78t(a) ..........................................................................................................................6

Federal Rules of Civil Procedure
    Rule 23 ...........................................................................................................2, 22, 23
    Rule 23(c)(1) ...............................................................................................................21
    Rule 23(c)(2)(B) .........................................................................................................22
    Rule 23(e) ..............................................................................................................1, 8
    Rule 23(e)(1)(B) .........................................................................................................22
    Rule 23(e)(2) .......................................................................................................8, 9, 11
    Rule 23(e)(2)(A) ..........................................................................................................9
    Rule 23(e)(2)(B) .........................................................................................................10
    Rule 23(e)(2)(C) .........................................................................................................11
    Rule 23(e)(2)(C)(i) .....................................................................................................11
    Rule 23(e)(2)(C)(ii) ....................................................................................................15
    Rule 23(e)(2)(C)(iii) ...................................................................................................16
    Rule 23(e)(2)(C)(iv) ...................................................................................................16
    Rule 23(e)(2)(D) .........................................................................................................17

**SECONDARY AUTHORITIES**

Cornerstone Research, *Securities Class Action Settlements;*
    *2024 Review & Analysis* (2025) .............................................................................3, 19

1  **NOTICE OF MOTION AND MOTION**

2  TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD

3         PLEASE TAKE NOTICE THAT at 2:00 p.m. on December 2, 2025, in the courtroom of

4  the Honorable Trina L. Thompson, at the United States District Court, Northern District of

5  California, Phillip Burton Federal Building & United States Courthouse, Courtroom 9, 19th Floor,

6  450 Golden Gate Avenue, San Francisco, CA 94102, Oklahoma Police Pension and Retirement

7  System, Sheet Metal Workers Local 19 Pension Fund, Local 353, I.B.E.W. Pension Fund, and

8  Beaumont Firemen's Relief & Retirement Fund (together, "Lead Plaintiffs" or "Plaintiffs"), will

9  and hereby do respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for

10  entry of a judgment granting final approval of the proposed Settlement and entry of an order

11  granting approval of the proposed Plan of Allocation.

12         This Motion is based on the following Memorandum of Points and Authorities, as well as

13  the accompanying Joint Declaration of Jason C. Davis and Joshua H. Saltzman in Support of Final

14  Approval of Class Action Settlement; Approval of Plan of Allocation; an Award of Attorneys'

15  Fees and Expenses; and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Joint

16  Declaration" or "Joint Decl."), with attached exhibits, the Stipulation of Settlement, all prior

17  pleadings and papers in this Action, the arguments of counsel, and such additional information or

18  argument as may be required by the Court.

19         A proposed Final Judgment and Order of Dismissal with Prejudice and proposed Order

20  granting approval of the proposed Plan of Allocation will be submitted with Lead Plaintiffs' reply

21  submission on October 28, 2025, after the October 14, 2025 deadline for Class Members to object

22  to the Settlement or Plan of Allocation has passed.

23

24

25

26

27

28

1

## STATEMENT OF ISSUES TO BE DECIDED

2    1.    Whether the Court should grant final approval of the Settlement.

3    2.    Whether the Court should approve the Plan of Allocation.

4    3.    Whether the notice plan satisfies Rule 23 and due process.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.    INTRODUCTION**

3          After years of hard-fought litigation, the $20.25 million all-cash Settlement is an excellent

4  result for the Class.[1]  The Settlement is more than double the median settlement amount for similar

5  securities class action cases in the Ninth Circuit for the past decade, avoids the substantial risks

6  and delays of continued litigation, and falls well within the range of settlements that courts in this

7  Circuit regularly approve.[2]  The significance of this Settlement is further underscored by the fact

8  that it represents a recovery well beyond available insurance and includes a considerable cash

9  contribution directly from CareDx, which has faced recent diminishment of its financial condition.

10 In short, the Settlement secures a highly favorable recovery for the Class.

11         The Settlement was reached only after the proceedings had reached a stage where a careful

12 evaluation of the Action and the propriety of Settlement could be (and was) made to resolve the

13 Action.   For example, Lead Plaintiffs had, among other things: (i) conducted an extensive

14 investigation that included interviewing over twenty former CareDx employees and independently

15 investigating and considering the allegations brought forward by a whistleblower (as well as

16 interviewing the whistleblower himself); (ii) filed three detailed amended complaints, including

17 the Third Amended Class Action Complaint for Violations of the Federal Securities Laws; (iii)

18 successfully litigated the case to proceed into discovery after Defendants moved to dismiss three

19 separate times; (iv) negotiated for and engaged in the review and analysis of over 2.4 million pages

20 of documents produced by Defendants and third parties; (v) served interrogatories and deposition

21

22 ———————————
   [1]    The terms of the Settlement are set forth in the Stipulation of Settlement dated May 16, 2025
23 (ECF 177-2) (the "Stipulation").  All capitalized terms not defined herein shall have the same
   meaning set forth in the Stipulation, in Lead Plaintiffs' Unopposed Motion for Preliminary
24 Approval of Class Action Settlement, and for Approval of Modified Schedule, and Memorandum
   of Points and Authorities in Support Thereof (ECF 177), and in the Joint Declaration.  Unless
25 otherwise noted, all emphasis is added and all internal quotation marks and citations are omitted.

26 [2]    *See* Ex. F to the Joint Decl. (Cornerstone Research, *Securities Class Action Settlements; 2024*
   *Review & Analysis*, at 20 (2025), and also available at https://www.cornerstone.com/wp-
27 content/uploads/2025/03/Securities-Class-Action-Settlements-2024-Review-and-Analysis.pdf
   (the "Cornerstone Report")).

28 LEAD PLAINTIFFS' NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION
   SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
   AND AUTHORITIES IN SUPPORT THEREOF - 3:22-cv-03023-TLT (Securities Case)          - 1 -
   4919-2249-9178.v3

subpoenas and notices; (vi) responded to Defendants' discovery requests; (vii) prepared a detailed mediation statement; (viii) participated in a mediation session on April 1, 2025, with the Hon. Gary A. Feess (Ret.) of Phillips ADR Enterprises; and (ix) after the April 1, 2025 mediation was unsuccessful, conducted weeks of settlement discussions with Judge Feess's assistance, which ultimately resulted in a "mediator's proposal" accepted by the Parties.  As a result of these extensive litigation and settlement efforts, Lead Plaintiffs and Lead Counsel had a thorough understanding of the relative strengths and weaknesses of the Class's claims and the propriety of the Settlement.

While Lead Counsel believe the Class's claims are meritorious, from the outset and throughout the Action, Defendants adamantly denied liability and asserted they possessed absolute defenses to the Class's claims.  Lead Plaintiffs persevered in pursuing securities fraud claims in the face of Defendants moving to dismiss three times.  Discovery efforts were beginning to substantiate the claims.  Yet Defendants were prepared to aggressively assert their defenses to falsity, scienter, loss causation, and damages, and continued to put up hurdles in an already complex case that was to be litigated under a tight pretrial schedule.  Even prevailing at summary judgment and trial would not have assured recovery, as Defendants would have brought appeals.  Moreover, even if Lead Plaintiffs had prevailed, in full or in part, in ongoing litigation, there was a significant risk that any recovery achieved would not be meaningfully larger than the Settlement given CareDx's limited available insurance and other funds – which would have continued to dwindle as Defendants paid for the costs of protracted litigation.  Indeed, as this Court recognized in its Order Granting Motion for Preliminary Approval of Class Action Settlement, ECF 185 (the "Preliminary Approval Order"), "[i]t is extremely unlikely that the Class could have recovered anything close to Plaintiffs' damages estimates (or, indeed, anything meaningfully above the Settlement Amount) had they continued litigating, especially given the increase in attorney's fees and expenses with continued litigation, including class certification."  ECF 185 at 7.  Thus, the result is an exceptional settlement that Plaintiffs and Lead Counsel firmly believe is very favorable to the Class and in its best interest.

Additionally, Lead Plaintiffs – who are exemplars of the type of institutional investors Congress envisioned serving in that role when passing the PSLRA – fully support the Settlement and consider it fair and reasonable.[3] The Class's reaction to date similarly reflects approval of the Settlement. Notice was provided to potential Class Members pursuant to the Preliminary Approval Order, commencing August 14, 2025. *See* Declaration of Kathleen Brauns Regarding: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; (C) Establishment of Settlement Website and Call Center Services; and (D) Report on Exclusions and Objections ("Brauns Decl."), ¶¶4-13, attached as Ex. E to the Joint Decl. While the October 14, 2025 deadline to object to the Settlement and Plan of Allocation has not yet passed, no objections or requests for exclusion have been received to date.[4]

Lead Plaintiffs also request that the Court approve the proposed Plan of Allocation, which was detailed in the long-form Notice. The Plan of Allocation governs how claims will be calculated and how Settlement proceeds will be distributed among Authorized Claimants. The Plan of Allocation is based on the analysis of Lead Plaintiffs' damages expert and subjects all Class Members to the same formulas for calculating out-of-pocket damages, *i.e.*, the difference between what Class Members paid for their CareDx common stock during the Class Period and what they would have paid had the alleged misstatements and omissions not been made.

---

[3] *See* Declaration of Ginger Sigler Filed on Behalf of Oklahoma Police Pension and Retirement System in Support of (I) Lead Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Oklahoma Police Decl."), ¶4; Declaration of Tom Klingenberg Filed on Behalf of Sheet Metal Workers Local 19 Pension Fund in Support of (I) Lead Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Local 19 Decl."), ¶4; Declaration of Kim MacPherson in Support of Plaintiffs' Motion for Final Approval of Settlement, filed on behalf of Local 353, I.B.E.W. Pension Fund ("Local 353 Decl."), ¶4; and Declaration of Luke Skelton in Support of Plaintiffs' Motion for Final Approval of Settlement, filed on behalf of Beaumont Firemen's Relief & Retirement Fund ("Beaumont Fire Decl."), ¶4, attached as Exs. A, B, C, and D, respectively, to the Joint Declaration.

[4] Lead Counsel will address any timely objections in their reply brief, which is due on October 28, 2025.

LEAD PLAINTIFFS' NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:22-cv-03023-TLT (Securities Case)        - 3 -

In short, the $20.25 million Settlement and the Plan of Allocation are fair and reasonable. The Settlement is an extremely positive result for the Class.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The Action brings claims against CareDx and its executive officers Peter Maag and Reginald Seeto (together, "Defendants") for violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  Among other things, Plaintiffs allege that between May 1, 2020 and November 3, 2022, Defendants made false and misleading statements claiming that CareDx was lawfully and legitimately generating revenues by sending medical bills to Medicare to pay for kidney patients' blood tests, and was in compliance with all applicable healthcare laws.  Plaintiffs alleged that, in reality, Defendants were improperly billing Medicare for medically unnecessary tests and were engaged in paying kickbacks to doctors for ordering those tests.  Plaintiffs further alleged that, as the truth came out through a series of corrective disclosures, CareDx's stock price fell precipitously, harming investors.

The initial class action complaint was filed in this Court on May 23, 2022.  ECF 1.  Having filed the sole lead plaintiff application with the Court, Lead Plaintiffs were appointed on August 25, 2022, and their selection of Lead Counsel approved.  ECF 43.  Lead Plaintiffs investigated and filed an amended complaint on November 28, 2022, alleging violations of §§10(b) and 20(a) of the Exchange Act against CareDx and certain of its executive officers.  ECF 53.

After the Court granted Defendants' motion to strike certain allegations from the amended complaint and granted Defendants' motion to dismiss with leave to amend (ECF 75), Lead Plaintiffs filed a second amended complaint on June 28, 2023 (ECF 81).  On July 26, 2023, Defendants moved to dismiss Plaintiffs' second amended complaint and moved to strike certain allegations in the complaint.  ECF 89-91.  On September 18, 2024, the Court granted in part and denied in part Defendants' motion to dismiss and motion to strike.  ECF 123.  Specifically, the Court found that Lead Plaintiffs had sufficiently alleged falsity as to: (i) representations regarding CareDx's compliance with healthcare laws that CareDx made in underwriter agreements it entered into; and (ii) statements regarding CareDx's testing services revenue and historical RemoTraC

1    data that failed to disclose that some of the testing resulted in illegal chargebacks to Medicare. *Id.*

2    at 21, 26, 43. The Court also found that Lead Plaintiffs had sufficiently alleged loss causation. *Id.*

3    at 41, 43. The Court nonetheless granted Defendants' motion to dismiss on scienter grounds, but

4    granted leave to amend the complaint. *Id.* at 38, 43.

5           On November 1, 2024, Lead Plaintiffs filed a third amended complaint (the "TAC"), which

6    alleged additional facts to support scienter, including new allegations from a recently unsealed

7    whistleblower complaint and from interviews with the whistleblower (Dr. Michael Olymbios) and

8    other former employees. ECF 133. Defendants again moved to dismiss (ECF 136-137), but on

9    February 18, 2025, the Court denied Defendants' motion in full (ECF 154). Subsequently, the

10    Parties commenced with discovery, serving various requests for production, interrogatories, and

11    deposition notices and subpoenas. Lead Plaintiffs' discovery efforts resulted in Defendants' and

12    third parties' production of over 2.4 million pages of documents as Lead Plaintiffs began preparing

13    to take witness depositions to further support the claims.

14           As settlement negotiations were underway, Lead Plaintiffs moved to certify the class on

15    April 18, 2025. ECF 170.

16           To assist in settlement negotiations, the Parties engaged an experienced neutral, third-party

17    mediator, the Hon. Gary A. Feess (Ret.) of Phillips ADR Enterprises. In advance of the mediation,

18    which took place in person on April 1, 2025, the Parties exchanged mediation briefs that set forth

19    their views on the strengths and weaknesses of the claims, defenses, and damages. The mediation

20    proved unsuccessful in resolving the Action. Nevertheless, with the assistance of Judge Feess, the

21    Parties continued to engage in phone calls and correspondence to discuss a potential resolution.

22    On April 21, 2025, Judge Feess issued a mediator's proposal to resolve the Action for $20,250,000,

23    which the Parties accepted, subject to the negotiation of the terms of a stipulation of settlement

24    and approval by the Court.

25

26

27

28

III.    **STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS**

A.    **Class Certification Remains Appropriate**

In granting preliminary approval, the Court found this case appropriate for class certification for settlement purposes, and appointed Plaintiffs as class representatives and Lead Counsel as class counsel.  ECF 185 at 6.  Because nothing has changed since preliminary approval that would undermine the Court's conclusion, class certification for settlement purposes remains appropriate.  *See In re Alphabet, Inc. Sec. Litig.*, 2024 WL 4354988, at *4 (N.D. Cal. Sept. 30, 2024) (Thompson, J.); *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *4 (N.D. Cal. July 15, 2022).

B.    **The Settlement Warrants Final Approval**

The Ninth Circuit recognizes a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (citation modified).  "Deciding whether a settlement is fair is . . . best left to the district judge."  *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018).  Courts, however, should not convert settlement approval into an inquiry into the merits, as "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties."  *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982); *Alphabet*, 2024 WL 4354988, at *3 ("In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class.").

Federal Rule of Civil Procedure 23(e) requires judicial approval for the settlement of claims brought as a class action and provides "the court may approve [a proposed settlement] only after

1  a hearing and only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

2  To determine whether a settlement is "fair, reasonable, and adequate," the Court must

3      consider[] whether: (A) the class representatives and class counsel have adequately
       represented the class; (B) the proposal was negotiated at arm's length; (C) the relief
4      provided for the class is adequate, taking into account: (i) the costs, risks, and delay
       of trial and appeal; (ii) the effectiveness of any proposed method of distributing
5      relief to the class, including the method of processing class-member claims; (iii)
       the terms of any proposed award of attorney's fees, including timing of payment;
6      (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the
       proposal treats class members equitably relative to each other.

7  *Id.*

8      In addition to the Rule 23(e)(2) considerations, courts in the Ninth Circuit consider the

9  following factors when examining whether a proposed settlement is fair, reasonable, and adequate:

10     (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely
11     duration of further litigation; (3) the risk of maintaining class action status
       throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery
12     completed and the stage of the proceedings; (6) the experience and views of
       counsel; (7) the presence of a governmental participant; and (8) the reaction of the
13     class members to the proposed settlement.[5]

14  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).[6]

15     The Court's Preliminary Approval Order assessed the Settlement and found, after a

16  preliminary review, that it was fair, reasonable, and adequate, subject to further consideration at

17  the Settlement Hearing.  *See* ECF 185 at 1, 12.  The Court's conclusion on preliminary approval

18  is equally true now, as nothing has changed between July 23, 2025 and the present.  *See In re*

19  *Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2554232, at

20

21

22  _____
    [5]    "Because there is no governmental entity involved in this litigation, this [seventh] factor is
23  inapplicable."  *Mendoza v. Hyundai Motor Co.*, 2017 WL 342059, at *7 (N.D. Cal. Jan. 23, 2017).

24  [6]    The Northern District's Procedural Guidance for Class Action Settlements ("Northern District
    Guidelines"), Final Approval, §1, states that the motion for final approval briefing should include
25  information about the number of undeliverable class notices and claim packets, the number of
    valid claims, the number of opt outs and objections, and address any objections.  The number of
26  undeliverable notices and claim packages, and the number of valid claims is addressed in the
    Brauns Decl., ¶¶12, 22, as well as the number of opt outs.  *Id.*, ¶20.  Lead Counsel will address
27  any objections, requests for exclusion, and the number of claims received in their reply brief to be
    filed on October 28, 2025.

28

*2 (N.D. Cal. May 3, 2019) ("Those conclusions [drawn at preliminary approval] stand and counsel equally in favor of final approval now.").

### C. The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)

#### 1. Rule 23(e)(2)(A): Plaintiffs and Their Counsel Have Adequately Represented the Class

Lead Plaintiffs and Lead Counsel have adequately represented the Class as required by Rule 23(e)(2)(A). Lead Counsel are highly qualified and experienced in securities litigation, *see* Joint Decl., ¶75, actively pursued the claims of CareDx investors in this Court, and zealously advocated for the Class's best interests throughout the litigation. *See generally* Oklahoma Police Decl., Local 19 Decl., Local 353 Decl., and Beaumont Fire Decl.; *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding this factor satisfied where lead counsel "has significant experience in securities class action lawsuits"). The Settlement is the result of Lead Counsel's diligent prosecution of this Action for years. *See, e.g.*, *Rentech*, 2019 WL 5173771, at *5 (finding this factor satisfied where lead counsel vigorously pursued plaintiff's claims through multiple rounds of motions to dismiss and amended complaints).

In addition, Lead Plaintiffs and Lead Counsel have no interests antagonistic to those of other Class Members; rather, their claims "arise from the same alleged conduct: the purchase of [CareDx] stock at inflated prices based on Defendants' alleged . . . misstatements." *Id.* Accordingly, Lead Plaintiffs share the common interest in obtaining the largest possible recovery for themselves and the Class. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) ("To determine legal adequacy, we resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"). This factor weighs in favor of final approval.

#### 2. Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at Arm's Length After Mediation with an Experienced Mediator

Rule 23(e)(2)(B) asks whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). "[The Ninth Circuit] put[s] a good deal of stock in the product of an arms-length,

non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). The Parties here reached the Settlement only after a mediation session and extensive, hard-fought litigation, including amending the complaint and briefing Defendants' motions to dismiss three separate times, and undertaking significant document discovery. Following weeks of additional negotiations overseen by Judge Feess, the case was ultimately resolved only when the Parties accepted Judge Feess's mediator's proposal. *See* Joint Decl., ¶36; *see also Hameed-Bolden v. Forever 21 Retail, Inc.*, 2021 WL 5107729, at *5 (C.D. Cal. Sept. 27, 2021) (recognizing "arm's-length negotiations using the services of former District Court Judge Gary Feess as mediator" as a factor supporting fairness of settlement); *In re ImmunityBio, Inc. Sec. Litig.*, 2025 WL 1686263, at *7 (S.D. Cal. Jun. 16, 2025) (after initial discovery, settlement negotiations included an in-person mediation and mediator's proposal, "evincing that the settlement was reached via non-collusive means"). Moreover, given Plaintiffs' years-long efforts to pursue the Action against an adversary determined to terminate it, there can be no question that counsel "'had a sound basis for measuring the terms of the settlement.'" *Longo v. OSI Sys., Inc.*, 2022 U.S. Dist. LEXIS 158606, at *11 (C.D. Cal. Aug. 31, 2022). These facts demonstrate that the Settlement is the result of arm's-length negotiations and "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Just.*, 688 F.2d at 625.

### 3. Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate Considering the Costs, Risk, and Delay of Trial and Appeal

Pursuant to Rule 23(e)(2)(C), the Court considers "the costs, risks, and delay of trial and appeal," and the relevant overlapping Ninth Circuit factors address "the strength of the plaintiffs' case" and "the risk, expense, complexity, and likely duration of further litigation." Fed. R. Civ. P. 23(e)(2); *Churchill*, 361 F.3d at 575. While Lead Plaintiffs believe their claims have merit and that they would prevail at class certification and against Defendants' anticipated motion for summary judgment, they nevertheless recognize the numerous risks and uncertainties in proceeding to trial. In fact, securities class actions "'are highly complex and [litigating] securities class litigation is notably difficult and notoriously uncertain.'" *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom.*, *Hefler v. Pekoc*, 802 F. App'x 285

LEAD PLAINTIFFS' NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:22-cv-03023-TLT (Securities Case)     - 9 -
4919-2249-9178.v3

(9th Cir. 2020).  As discussed below, the benefits conferred on Class Members by the Settlement far outweigh the costs, risks, and delay of further litigation, and confirm the adequacy and reasonableness of the Settlement.

<blockquote>

a.        **The Costs and Risks of Trial and Appeal Support Approval of the Settlement**

</blockquote>

To prove liability under §10(b) of the Exchange Act, a plaintiff must establish all elements of the claim, including that the defendants knowingly or recklessly made the materially false and misleading statements and that the material misrepresentations caused investors' losses.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).  Plaintiffs would be required to prove each of these elements to prevail, whereas Defendants needed only to succeed on one defense to defeat the entire action.  Although Plaintiffs are confident in the abilities of Lead Counsel to prove their case, the risk of an unfavorable judgment or verdict was still real.  *See Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.") (citation modified).

Defendants advanced several plausible arguments disputing both liability and damages. Lead Counsel anticipate that Defendants would have pressed these arguments throughout the litigation, including at trial.  For example, Defendants had and would continue to forcefully challenge the element of falsity for the alleged misstatement remaining in the case following the Court's final motion to dismiss order (ECF 154).  Specifically, Plaintiffs intended to prove Defendants' statements that (i) CareDx complied with the law, (ii) its testing service revenue was lawfully obtained, and (iii) it had not violated the Stark Law through illegal kickbacks to doctors, were materially false or misleading, but Defendants would likely argue that the alleged misstatements cannot be false unless Plaintiffs also prove material violations of the underlying applicable statutes, which would be both factually and legally intensive.  Defendants would have vigorously maintained that CareDx never violated the False Claims Act, Anti-Kickback Statute, Stark Law, or other healthcare laws, and would have similarly maintained that their revenues were not dependent on any illegal or improper conduct.  Moreover, the already difficult task of proving

1   both the underlying violations of the federal healthcare laws and the falsity of Defendants' alleged

2   misstatements was further exacerbated by the fact that multiple regulators who investigated

3   CareDx on similar allegations to Plaintiffs' declined to pursue further action against the Company.

4   Joint Decl., ¶42.

5           In disputing the requisite element of scienter, *i.e.*, that the statements were knowingly or

6   recklessly false, Defendants would have asserted that, even assuming any of their actions arguably

7   violated any laws, they made good faith attempts to comply with the law and/or had good faith

8   bases to believe their actions were proper under the applicable laws.  Arguing that they had not

9   knowingly or intentionally violated any such laws, they likewise would argue they had not

10  knowingly or recklessly made the alleged misstatements.  Defendants further contended that the

11  CareDx whistleblower (Dr. Olymbios), whose allegations and information helped support

12  Plaintiffs' claims, was not credible and could not sustain a finding that Defendants had intended

13  to engage in the misconduct alleged.  Defendants also claimed they had no motive to commit the

14  alleged fraud.  *Id.*, ¶43.

15          To challenge loss causation, Defendants would continue to argue that the stock drops

16  alleged by Plaintiffs did not reveal any fraud, and that only one of them was even expressly related

17  to the underlying alleged improper conduct.  For example, Defendants would have continued to

18  argue that the October 28, 2021 corrective disclosure revealed only that government investigations

19  were occurring – not that the investigations had found wrongdoing – and thus could not have

20  revealed fraud to the market.  With respect to the other corrective disclosures – which primarily

21  concerned negative financial results and/or executive resignations – Defendants would have

22  continued to argue that the disclosures revealed no information whatsoever that expressly related

23  to any alleged healthcare law violations, and that there was no provable link between the disclosed

24  information and the alleged fraud.  *Id.*, ¶44.

25          Having asserted some variation of each of these substantive arguments in the course of the

26  three rounds of motions to dismiss, there is little doubt that Defendants would re-assert such

27  arguments and seek to assemble supporting evidence, at summary judgment and trial.  *Id.*, ¶¶41-

28  ---

45.  Although Lead Plaintiffs were prepared to garner their own evidence to oppose Defendants' anticipated defenses, even if Lead Plaintiffs were successful in defeating summary judgment, establishing each element would be difficult and scienter is notoriously "complex and difficult to establish at trial." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007).

Likewise, "in any securities litigation case, it is difficult for plaintiff to prove loss causation and damages at trial." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *9 (N.D. Cal. Feb. 11, 2016) (citation modified).  Because Defendants had already targeted loss causation in their motions to dismiss, Lead Plaintiffs anticipated facing similar arguments again had litigation proceeded.  In particular, only one of the alleged corrective disclosures overtly related to the alleged underlying illegal conduct, while the connection between the alleged fraud and the other corrective disclosures was implied rather than explicit.  While Lead Plaintiffs believe they had valid loss causation arguments, there is no guarantee they would have prevailed.  *See* Joint Decl., ¶44.  Finally, to prove and calculate damages involves "complex analysis, requiring [a] jury to parse divergent positions of expert witnesses in a complex area of the law," rendering "[t]he outcome of that analysis . . . inherently difficult to predict and risky." *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014); *see also* Joint Decl., ¶¶12, 22, 44.  Defendants certainly would have challenged Lead Plaintiffs' expert's damages calculation, and there is no guarantee that Lead Plaintiffs would have successfully proven all or even a part of their claimed damages.

### b.    The Proposed Settlement Eliminates the Additional Cost and Delay of Continued Litigation

There remained much work for Lead Plaintiffs in the Action had the Parties not reached the Settlement.  For instance, if the Settlement was not reached, the Parties still faced completing document discovery, taking and/or defending many fact and expert depositions, litigating any discovery disputes that may arise, completing the briefing on class certification, summary judgment, motions to exclude experts, motions *in limine*, and trying the case before a jury.  *See* Joint Decl., ¶¶32-34, 37.  And even if Lead Plaintiffs had prevailed at trial, it would have taken potentially years to resolve any resulting appeals. *See, e.g.*, *Hsu v. Puma Biotechnology, Inc.*, No.

8:15-cv-00865-DOC-SHK, ECF 913 (C.D. Cal. Aug. 3, 2022) (granting final approval of securities class action settlement 2.5 years after a February 4, 2019 jury verdict in plaintiff's favor following trial).  Moreover, prolonged litigation presented a risk that Defendants would be unable to pay any amount recovered, as Defendants' $15 million insurance tower diminished with each passing day's litigation costs and expenses, while CareDx reported net losses in nearly every quarter for the last five years.  Expert discovery and trial preparation would have only heightened these financial risks.

"By contrast, the Settlement provides . . . timely and certain recovery." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020), *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022).  The Settlement at this juncture results in an immediate, substantial, and tangible recovery, without "the cost, complexity and time of fully litigating the case" – key factors in evaluating the reasonableness of a settlement.  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *see also Gudimetla v. Ambow Educ. Holding*, 2015 WL 12752443, at *4 (C.D. Cal. Mar. 16, 2015) ("Although the Parties have engaged in multiple motions to dismiss and have amended their Complaint multiple times, Plaintiffs predict that discovery in preparation for potential motions for summary judgment and trial would prove to be risky, costly, and reduce the possible recovery for the Class[,]" while the settlement, by contrast, conferred an immediate and valuable cash benefit to the Class.).  Thus, the Settlement is a far better option for the Class.

### 4. Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing Relief Is Effective

Lead Plaintiffs and Lead Counsel have also made substantial efforts to notify the Class about the proposed Settlement under Rule 23(e)(2)(C)(ii).  Pursuant to the Preliminary Approval Order, a total of 31,190 Postcard Notices were emailed or mailed to potential Class Members and nominees; the Summary Notice was published in *The Wall Street Journal* and transmitted over *PR Newswire*; and the website created for this Action contains key documents, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order.  *See generally* Brauns Decl.

1   The claims process here is identical to those commonly and effectively used in connection

2   with other securities class action settlements.  *See Baron v. HyreCar Inc.*, 2024 WL 3504234, at

3   *9 (C.D. Cal Jul 19, 2024) ("The Court finds that the effectiveness of the proposed method of

4   distribution, involving a claims administrator and *pro rata* relief based on a claimant's

5   demonstrable injury, weighs in favor of approving the Proposed Settlement Agreement."); Brauns

6   Decl., ¶19 (citing cases where A.B. Data has successfully implemented similar notice and claims

7   processing programs).  The standard claim form requests the information necessary to calculate a

8   claimant's claim amount pursuant to the Plan of Allocation.  The Plan of Allocation, discussed

9   further in §IV below, will govern how claims will be calculated and, ultimately, how funds will be

10  distributed to claimants.[7]

11          **5.      Rule 23(e)(2)(C)(iii): Attorneys' Fees**

12          Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees,

13  including timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).  As discussed in Lead Counsel's

14  Motion for an Award of Attorneys' Fees and Expenses and Awards to Lead Plaintiffs Pursuant to

15  15 U.S.C. §78u-4(a)(4), and Memorandum of Points and Authorities in Support Thereof ("Fee

16  Memorandum"), submitted herewith, Lead Counsel seek an award of attorneys' fees of 25% of the

17  Settlement Amount and expenses of $368,880.02, plus interest on both amounts.  This is the sole

18  fee and expense request being made in connection with resolving the Action, and the first and only

19  time Lead Counsel will be compensated for their efforts.  The fee requested is smaller than the fee

20

---

21  [7]    Once Notice and Administration Costs, Taxes, Tax Expenses, and Court-approved attorneys'
    fees and expenses have been paid from the Settlement Fund, the remaining amount will be

22  distributed pursuant to the Plan of Allocation.  *See* Stipulation, ¶5.4.  These distributions shall be
    repeated until the balance remaining in the Settlement Fund is *de minimis*.  *Id.*, ¶5.12.  If there are

23  any *de minimis* residual funds that are not feasible or economical to reallocate, Lead Plaintiffs
    propose that such funds be donated to the Council of Institutional Investors ("CII"), a nonprofit,

24  nonpartisan association that advocates for effective corporate governance and shareholder rights.
    *Id.*; *see, e.g.*, *In re Hewlett-Packard Co. Sec. Litig.*, 2015 WL 13917012, at *2 (C.D. Cal. Nov. 9,

25  2015) (approving Council of Institutional Investors as *cy pres* recipient in securities settlement).
    The Court's Preliminary Approval Order (at 4) requires Settlement Counsel to provide a

26  declaration indicating that no member of either firm is on the Board of CII, the chosen *cy pres*
    recipient, and that there is no actual conflict or appearance of conflict between the Parties and CII.

27  Lead Counsel have included a statement complying with this order in the Joint Declaration (at
    ¶88).

28

1  disclosed in the Postcard Notice and Notice (Brauns Decl., Exs. A and C, Notice, ¶5), is approved

2  by Lead Plaintiffs (Oklahoma Police Decl., ¶5; Local 19 Decl., ¶5; Local 353 Decl., ¶5; and

3  Beaumont Fire Decl., ¶5), comports with the Ninth Circuit benchmark for fee awards as noted by

4  this Court (ECF 185 at 3 n.1), and is justified by the time and diligence expended on prosecuting

5  the Action.  *See* Fee Memorandum, §III.B.

6  **6.     Rule 23(e)(2)(C)(iv): Other Agreements**

7  As stated in Lead Plaintiffs' motion for preliminary approval (ECF 177), the Parties have

8  entered into a standard supplemental agreement, which provides that if Class Members opt out of

9  the Settlement such that the number of damaged shares of CareDx common stock represented by

10  such opt-outs equals or exceeds a certain amount, Defendants shall have the option to terminate

11  the Settlement.  Stipulation, ¶7.3.  Again, such agreements are common and do not undermine the

12  propriety of the Settlement.  *See, e.g.*, *In re Lyft, Inc. Sec. Litig.*, 2022 WL 17740302, at *6 (N.D.

13  Cal. Dec. 16, 2022) ("The existence of a termination option triggered by the number of class

14  members who opt out of the settlement does not by itself render the settlement unfair."); *Hampton*

15  *v. Aqua Metals, Inc.*, 2021 WL 4553578, at *10 (N.D. Cal. Oct. 5, 2021) (same).   While the

16  Supplemental Agreement is identified in the Stipulation (Stipulation, ¶7.3), and the nature of the

17  agreement is explained in the Stipulation and here, the terms are properly kept confidential.[8]

18  **7.     Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Class Members Equitably**

19

20  Pursuant to Rule 23(e)(2)(D), the Plan of Allocation must "treat[] class members equitably

21  relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  Assessment of the Settlement's Plan of

22  Allocation "'is governed by the same standards of review applicable to approval of the settlement

23  as a whole: the plan must be fair, reasonable and adequate.'"  *In re Omnivision Techs., Inc.*, 559

24  F. Supp. 2d 1036, 1045 (N.D. Cal. 2008).  The Plan of Allocation, developed in consultation with

25  Lead Plaintiffs' damages expert, details how the Settlement proceeds will be distributed among

26  _____

27  [8]     *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (finding that the settlement was not rendered unfair by the inclusion of an opt-out provision where "[o]nly the exact threshold, for practical reasons, was kept confidential").

28  LEAD PLAINTIFFS' NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:22-cv-03023-TLT (Securities Case)             - 15 -
4919-2249-9178.v3

Authorized Claimants and provides formulas for calculating the recognized claim of each Class Member based on each such Person's purchases or acquisitions of CareDx common stock during the Class Period and if or when they sold. Joint Decl., ¶¶56-61. It is fair, reasonable, and adequate because all eligible Class Members (including Lead Plaintiffs) will be subject to the same formulas for distribution of the Settlement and each Authorized Claimant will receive his, her, or its *pro rata* share of the distribution. *See, e.g.*, *In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at *8 (S.D. Cal. Oct. 14, 2022) ("no indication that the distribution and allocation methods proposed . . . will result in unequitable treatment of Class Members" where the "Claims Administrator will determine each Authorized Claimant's share of the Net Settlement Fund based upon the information submitted in the Proof of Claim Form and based on the calculation of recognized loss, distributed on a *pro rata* basis"); *Longo*, 2022 U.S. Dist. LEXIS 158606, at *18 ("Specifically, each authorized claimant's share of the net settlement amount will be based on when the claimant acquired and sold the subject securities. Accordingly, this factor also weighs in favor of final approval.").

### D. The Remaining Ninth Circuit Factors Are Satisfied

#### 1. Discovery Completed and Stage of the Proceedings

The Parties reached the Settlement after Lead Plaintiffs commenced their review and analysis of over 2.4 million pages of documents produced by Defendants and third parties. *See* Joint Decl., ¶32. In the course of their review, Lead Plaintiffs used technology-assisted prioritization and searches to ensure that they quickly located the most relevant documents. That discovery provided significant insight into the strengths and challenges of the Action, and the Parties had a thorough understanding of the arguments, evidence, and potential witnesses that would inform the trial, and did inform Lead Plaintiffs' positions at the mediation and when considering the Settlement. *See id.*, ¶33. There can be no question that Lead Plaintiffs and Lead Counsel had sufficient information to evaluate the case and the merits of the Settlement by the time it was reached. *See In re Lyft Inc. Sec. Litig.*, 2023 WL 5068504, at *8 (N.D. Cal. Aug. 7, 2023) (When the "parties settled only after conducting significant discovery and investigation into

1   [p]laintiff's claims," counsel "entered the settlement discussions with a substantial understanding

2   of the factual and legal issues, so as to allow them to assess the likelihood of success on the

3   merits."); *Vataj v. Johnson*, 2021 WL 5161927, at *7 (N.D. Cal. Nov. 5, 2021) (finding "[t]his

4   factor weighs in favor of approval" where "[t]he parties settled . . . after they had informally

5   exchanged significant information relevant to Plaintiffs' claims"). This factor weighs in favor of

6   final approval of the Settlement.

7               **2.      Lead Counsel View This Good-Faith Settlement as Fair,**
                         **Reasonable, and Adequate**

8          The Ninth Circuit recognizes that parties "'represented by competent counsel are better

9   positioned than courts to produce a settlement that fairly reflects each party's expected outcome

10  in litigation.'"   *Rodriguez*, 563 F.3d at 967.    Thus, courts accord great weight to the

11  recommendations and opinions of experienced counsel. *See In re Stable Rd. Acquisition Corp.*,

12  2024 WL 3643393, at *9 (C.D. Cal. Apr. 23, 2024) ("'The recommendation of experienced

13  counsel carries significant weight in the court's determination of the reasonableness of the

14  settlement.'"); *Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at *7 (S.D. Cal. Nov. 30,

15  2021) ("Given Lead Counsel's experience with the case and expertise with securities class actions,

16  the Court presumes reasonable . . . counsel should be given a presumption of reasonableness.

17  Attorneys, having an intimate familiarity with a lawsuit after spending years in litigation, are in

18  the best position to evaluation the action . . . . . '") (second ellipsis in original).

19         Lead Counsel have extensive experience representing plaintiffs in securities and other

20  complex class action litigation and have negotiated numerous substantial class action settlements

21  across the country. Joint Decl., ¶75. As a result of this experience, and with the assistance of

22  sophisticated consultants when appropriate, Lead Counsel possessed a clear understanding of Lead

23  Plaintiffs' claims by the time the Settlement was reached, and based thereon, Lead Counsel

24  concluded that the Settlement is an outstanding result for the Class. Therefore, here, "[t]here is

25  nothing to counter the presumption that Lead Counsel's recommendation is reasonable."

26  *Omnivision*, 559 F. Supp. 2d at 1043.

27

28

**3.      The Positive Reaction of Class Members to the Settlement**

While the deadline to object to the Settlement is October 14, 2025, to date, no objections or requests for exclusion have been received.  Should any objection or requests to be excluded from the Class be received, Lead Plaintiffs will address them in their reply papers.  "'[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.'"  *Id*.  The Class's overwhelmingly positive reaction to the Settlement to date supports final approval.  *See Impax*, 2022 WL 2789496, at *7 ("[T]he absence of objections indicates strong support among the Class Members and weighs in favor of approval.").

**4.      The Settlement Amount**

The $20.25 million Settlement is a significant result for the Class reflecting the persistent diligence applied in pursuing the claims.  The Settlement is more than 40% higher than the $14 million median settlement amount for securities class actions in 2024.[9]  It is also 80% higher than the $11.3 million median settlement amount for federal securities class actions from 2015-2023, and more than double the median settlement amount for securities class actions in the Ninth Circuit from 2015-2024.[10]

Additional circumstances warrant finding that the $20.25 million all-cash Settlement is well within the range of reasonableness and merits final approval.  As the Court recognized in the Preliminary Approval Order, "[i]t is extremely unlikely that the Class could have recovered anything close to Plaintiffs' damages estimates (or, indeed, anything meaningfully above the Settlement Amount) had they continued litigating, especially given the increase in attorney's fees and expenses with continued litigation, including class certification."  ECF 185 at 7.  Certainly, Defendants would have persisted in arguing that Lead Plaintiffs' and the Class's damages were zero and taken every opportunity – from class certification, summary judgment, trial, to appeal –

---

[9]    Cornerstone Report at 19.

[10]    *Id*. at 1, 20.

1    to slash at any recovery to be gained for the Class in further litigation, all while dwindling the very

2    funds that might form the recovery.

3        Furthermore, the Settlement is particularly noteworthy given that "the recovery for

4    investors not only includes the proceeds of Defendants' insurance tower, but also includes a

5    substantial monetary contribution by [CareDx]." *Peace Officers' Annuity & Benefit Fund of Ga.*

6    *v. DaVita Inc.*, 2021 WL 1387110, at *4 (D. Colo. Apr. 13, 2021); *see also In re Genworth Fin.*

7    *Sec. Litig.*, 210 F. Supp. 3d 837, 842 (E.D. Va. 2016) (company's contribution "of its own cash to

8    the Settlement" "strongly demonstrate[d] the adequacy of the Settlement amount").  In this Action,

9    CareDx's direct contribution is even more significant given its limited cash position and financial

10   resources.  As of March 31, 2025, right before the April 1, 2025 mediation, CareDx's cash and

11   cash equivalents had declined 23% from December 31, 2024 to $88 million, and continued to

12   decline in the next quarter, reporting just $68 million in cash and cash equivalents as of June 30,

13   2025 – a 40% decline from December 31, 2024.  Moreover, CareDx has suffered net losses in

14   nearly every quarter for the past five years.  Given these financial constraints, including CareDx's

15   limited available insurance tower that would have been rapidly consumed if the Action were to

16   continue, the Settlement provides a certain and extremely positive outcome for the Class.  *See*

17   *HyreCar*, 2024 WL 3504234, at *9 ("'It is not unreasonable for counsel and the class

18   representative to prefer the bird in hand, given concerns about [the defendant company's] strained

19   financial state and its ability to pay a judgment following further litigation.'").

20              **5.    The Risk of Maintaining Class Certification**

21       Although at the time of the Settlement Lead Plaintiffs had moved for class certification

22   (ECF 170), it was not fully briefed and there is always the risk that the Class would not be certified.

23   *See Stable Rd.*, 2024 WL 3643393, at *6.  Certification of a litigation class is never guaranteed,

24   and even if the Court were to certify a litigation class here, Defendants may have succeeded in

25   convincing the Court to shorten the class period, and may later have moved to decertify the Class.

26   Joint Decl., ¶39.  Rule 23(c)(1) provides that a class certification order may be altered or amended

27   at any time before a decision on the merits.  This factor weighs in favor of approval.

28

1                                          *      *      *

2          In sum, Lead Counsel attained an excellent result for the Class.  The Court should find that

3  the Settlement is fair, reasonable, and adequate, and should grant final approval.

4  **IV.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION**

5          In addition to seeking final approval of the Settlement, Plaintiffs seek final approval of the

6  Plan of Allocation that the Court preliminarily approved on July 23, 2025.  ECF 185.  The Plan of

7  Allocation is considered separately from the fairness of the Settlement but is nevertheless governed

8  by the same legal standards: the plan must be fair and reasonable.  *See Class Plaintiffs v. City of*

9  *Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *see also Vataj v. Johnson*, 2021 WL 1550478, at *10

10  (N.D. Cal. Apr. 20, 2021) ("'[C]ourts recognize that an allocation formula need only have a

11  reasonable, rational basis, particularly if recommended by experienced and competent counsel.'")

12  (alteration in original).  As noted, the Plan of Allocation here provides an equitable basis to allocate

13  the Net Settlement Fund among all Authorized Claimants (Class Members who submit an

14  acceptable Proof of Claim and who have a recognized loss under the Plan of Allocation).

15  Individual claimants' recoveries will depend on when they bought CareDx common stock during

16  the Class Period and whether and when they sold their shares or options.  Authorized Claimants

17  will recover their proportional "*pro rata*" amount of the Net Settlement Fund.  This is the

18  traditional and reasonable approach to allocating securities settlements.  *See, e.g.*, *Mauss v.*

19  *NuVasive, Inc.*, 2018 WL 6421623, at *4 (S.D. Cal. Dec. 6, 2018) ("'A plan of allocation that

20  reimburses class members based on the extent of their injuries is generally reasonable.'").  To date,

21  there has been no objection to the Plan of Allocation.  As a result, the Plan of Allocation is fair

22  and reasonable and should be approved.

23  **V.      NOTICE TO THE CLASS SATISFIES DUE PROCESS**

24          A district court "must direct notice in a reasonable manner to all class members who would

25  be bound by the proposal," Fed. R. Civ. P. 23(e)(1)(B), and "must direct to class members the best

26  notice that is practicable under the circumstances, including individual notice to all members who

27  can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B).  The notice also must

28

describe "'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez*, 563 F.3d at 962.  The PSLRA further requires that the settlement notice include a statement explaining a plaintiff's recovery "to allow class members to evaluate a proposed settlement."  *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th Cir. 2007).

The substance of the Notice, which the Court preliminarily approved as amended, satisfies Rule 23 and due process.  The Claims Administrator has emailed or mailed a total of 31,190 copies of the Court-approved Postcard Notice to potential Class Members and their nominees who could be identified with reasonable effort.  *See* Brauns Decl., ¶12.  In addition, the Court-approved Summary Notice was published in *The Wall Street Journal* and transmitted over *PR Newswire*.  *Id.*, ¶13.  The Claims Administrator also provided all information regarding the Settlement online through the Settlement Website.  *Id.*, ¶14.  The Notice provides the necessary information for Class Members to make an informed decision regarding the proposed Settlement, as required by the PSLRA.  The Notice further explains that the Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely Proofs of Claim under the Plan as described in the Notice.  The notice plan here fairly apprises Class Members of their rights with respect to the Settlement, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Rule 23, the PSLRA, and due process.  *See, e.g.*, *Fleming*, 2022 WL 2789496, at *5-*6; *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *4 (N.D. Cal. Nov. 21, 2016).

## VI.    CONCLUSION

Lead Plaintiffs and Lead Counsel achieved an outstanding settlement for the Class.  Lead Plaintiffs therefore respectfully request that the Court approve the Settlement and Plan of Allocation.

DATED:  September 30, 2025

Respectfully submitted,
ROBBINS GELLER RUDMAN
 & DOWD LLP
SHAWN A. WILLIAMS
JASON C. DAVIS

1

2

3                                                                    *s/ Jason C. Davis*
                                                       _____
                                                                    JASON C. DAVIS

4                                                      Post Montgomery Center
                                                       One Montgomery Street, Suite 1800
5                                                      San Francisco, CA  94104
                                                       Telephone:  415/288-4545
6                                                      415/288-4534 (fax)
                                                       shawnw@rgrdlaw.com
7                                                      jdavis@rgrdlaw.com

8                                                      ROBBINS GELLER RUDMAN
                                                         & DOWD LLP
9                                                      SPENCER A. BURKHOLZ
                                                       THEODORE J. PINTAR
10                                                     HEATHER G. GEIGER
                                                       NICOLE Q. GILLILAND
11                                                     EVELYN SANCHEZ GONZALEZ
                                                       655 West Broadway, Suite 1900
12                                                     San Diego, CA  92101
                                                       Telephone:  619/231-1058
13                                                     619/231-7423 (fax)
                                                       spenceb@rgrdlaw.com
14                                                     tedp@rgrdlaw.com
                                                       hgeiger@rgrdlaw.com
15                                                     ngilliland@rgrdlaw.com
                                                       egonzalez@rgrdlaw.com
16
                                                       SAXENA WHITE P.A.
17                                                     DAVID R. KAPLAN
                                                       505 Lomas Santa Fe Drive, Suite 180
18                                                     Solana Beach, CA  92075
                                                       Telephone:  858/997-0860
19                                                     858/369-0096 (fax)
                                                       dkaplan@saxenawhite.com
20
                                                       SAXENA WHITE P.A.
21                                                     STEVEN B. SINGER
                                                       RACHEL A. AVAN
22                                                     JOSHUA H. SALTZMAN (admitted *pro hac
                                                       vice*)
23                                                     10 Bank Street, 8th Floor
                                                       White Plains, NY  10606
24                                                     Telephone:  914/437-8551
                                                       888/631-3611 (fax)
25                                                     ssinger@saxenawhite.com
                                                       ravan@saxenawhite.com
26                                                     jsaltzman@saxenawhite.com

27                                                     SAXENA WHITE P.A.
                                                       LESTER R. HOOKER
28
LEAD PLAINTIFFS' NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF - 3:22-cv-03023-TLT (Securities Case)              - 22 -
4919-2249-9178.v3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

7777 Glades Road, Suite 300
Boca Raton, FL  33434
Telephone:  561/394-3399
561/394-3382 (fax)
lhooker@saxenawhite.com

Lead Counsel for Lead Plaintiffs

LEAD PLAINTIFFS' NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF - 3:22-cv-03023-TLT (Securities Case)              - 23 -
4919-2249-9178.v3