1 ROBBINS GELLER RUDMAN
   & DOWD LLP
2 SHAWN A. WILLIAMS (213113)
JASON C. DAVIS (253370)
3 Post Montgomery Center
One Montgomery Street, Suite 1800
4 San Francisco, CA 94104
Telephone: 415/288-4545
5 415/288-4534 (fax)
shawnw@rgrdlaw.com
6 jdavis@rgrdlaw.com
   – and –
7 SPENCER A. BURKHOLZ (147029)
THEODORE J. PINTAR (131372)
8 HEATHER G. GEIGER (322937)
NICOLE Q. GILLILAND (335132)
9 EVELYN SANCHEZ GONZALEZ (360232)
655 West Broadway, Suite 1900
10 San Diego, CA 92101
Telephone: 619/231-1058
11 619/231-7423 (fax)
spenceb@rgrdlaw.com
12 tedp@rgrdlaw.com
hgeiger@rgrdlaw.com
13 ngilliland@rgrdlaw.com
egonzalez@rgrdlaw.com
14
Lead Counsel for Lead Plaintiffs
15
[Additional counsel appear on signature page.]
16

UNITED STATES DISTRICT COURT

17

NORTHERN DISTRICT OF CALIFORNIA

18

SAN FRANCISCO DIVISION

19

| | |
|---|---|
| PLUMBERS & PIPEFITTERS LOCAL UNION #295 PENSION FUND, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CAREDX, INC., et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Case No. 3:22-cv-03023-TLT (Securities Case)

LEAD COUNSEL'S NOTICE OF MOTION, MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARDS TO LEAD PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4), AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

DATE: December 2, 2025
TIME: 2:00 p.m.
CTRM: 9, 19th Floor
JUDGE: Hon. Trina L. Thompson

4911-9035-3512.v3

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................1

II.    PROCEDURAL AND FACTUAL BACKGROUND.............................................3

III.   THE REQUESTED FEE IS FAIR AND REASONABLE....................................4

    A.     A Reasonable Percentage of the Fund Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases....................................4

    B.     Factors Considered by Courts in the Ninth Circuit Support Approval of the Requested Fee ...........................................................................................5

        1.    Lead Counsel Achieved an Exceptional Result for the Class....................6

        2.    The Litigation Was Uncertain and Highly Complex ..................................7

        3.    The Skill Required and Quality of Work....................................................10

        4.    The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel ...........................................................................11

        5.    Awards Made in Similar Cases Support the Fee Request.........................13

        6.    The Class's Reaction to Date Supports the Fee Request ..........................13

        7.    A Lodestar Cross-Check Confirms that the Requested Fee Is Reasonable ...............................................................................................14

IV.    LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED .........................................................................................................16

V.     LEAD PLAINTIFFS' REQUEST FOR AWARDS PURSUANT TO 15 U.S.C. §78u-4(a)(4) ARE REASONABLE.......................................................................17

VI.    CONCLUSION.....................................................................................................18

# TABLE OF AUTHORITIES

Page

*Abadilla v. Precigen, Inc.*,
   2023 WL 7305053 (N.D. Cal. Nov. 6, 2023) ........................................................5

*Baron v. HyreCar Inc.*,
   2024 WL 3504234 (C.D. Cal. July 19, 2024) .................................................7, 9

*Baum v. Harman Int'l Indus.*,
   2022 WL 17037516 (D. Conn. Nov. 10, 2022) ...................................................6

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ...........................................................................................4

*Booth v. Strategic Realty Tr., Inc.*,
   2015 WL 6002919 (N.D. Cal. Oct. 15, 2015) ...................................................16

*Chang v. Wells Fargo Bank, N.A.*,
   2023 WL 6961555 (N.D. Cal. Oct. 19, 2023) .............................................2, 13

*Cheng Jiangchen v. Rentech, Inc.*,
   2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ...........................7, 10, 11, 15

*Davis v. Yelp, Inc.*,
   2023 WL 3063823 (N.D. Cal. Jan. 27, 2023) .........................................3, 6, 18

*Destefano v. Zynga*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ...........................8, 10, 11, 12

*Dicker v. TuSimple Holdings, Inc.*,
   2024 WL 5181968 (S.D. Cal. Dec. 18, 2024) ...................................................6

*Fleming v. Impax Lab'ys Inc.*,
   2022 WL 2789496 (N.D. Cal. July 15, 2022) .............................4, 6, 15, 17

*Fosbre v. Las Vegas Sands Corp.*,
   2017 WL 55878 (D. Nev. Jan. 3, 2017), *aff'd sub nom.*
   *Pompano Beach Police & Firefighters' Ret. Sys. v.*
   *Las Vegas Sands Corp.*, 732 F. App'x 543 (9th Cir. 2018) ...............................12

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ................................................................................16

*Hatamian v. Advanced Micro Devices*,
   2018 WL 8950656 (N.D. Cal. Mar. 2, 2018) ...........................................14, 18

*Hayden v. Portola Pharms. Inc.*,
   2023 WL 2375242 (N.D. Cal. Mar. 6, 2023) ...........................................14, 16

| | Page |
|---|---|

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
2010 WL 4156342 (S.D. Cal. Oct. 15, 2010) ........................................................................14

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom.*
*Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ....................................................... *passim*

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .................................................................................................................6

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ..................................................................2, 11

*In re Amkor Tech. Inc. Sec. Litig.*,
2009 WL 10708030 (D. Ariz. Nov. 19, 2009) ..........................................................................4

*In re Apollo Grp. Inc. Sec. Litig.*,
2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ............................................................................6

*In re Apple Inc. Device Performance Litig.*,
2023 WL 2090981 (N.D. Cal. Feb. 17, 2023) ........................................................................10

*In re Apple Inc. Sec. Litig.*,
2024 WL 4246282 (N.D. Cal. Sept. 18, 2024) ......................................................................18

*In re Banc of Cal. Sec Litig.*,
2020 WL 1283486 (S.D. Cal. Mar. 16, 2020) ..........................................................................2

*In re BankAtlantic Bancorp, Inc.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011),
*aff'd on other grounds sub nom.*
*Hubbard v. BankAtlantic Bancorp., Inc.*, 688 F.3d 713 (11th Cir. 2021) .................................9

*In re Capacitors Antitrust Litig.*,
2017 WL 9613950 (N.D. Cal. June 27, 2017) ..........................................................................4

*In re Checking Acct. Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) ..................................................................................10

*In re Eros Int'l PLC Sec Litig.*,
2023 WL 8519091 (D.N.J. Nov. 28, 2023) ..............................................................................6

*In re Extreme Networks, Inc. Sec. Litig.*,
2019 WL 3290770 (N.D. Cal. July 22, 2019) ........................................................................16

**Page**

*In re FibroGen, Inc. Sec. Litig.*,
No. 3:21-cv-02623-EMC, ECF 252 (N.D. Cal. Apr. 4, 2024)................................16

*In re Genworth Fin. Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016) ...........................................................7

*In re Heritage Bond Litig.*,
2005 WL 1594389 (C.D. Cal. June 10, 2005) ...........................................5

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ...........................................11

*In re Immune Response Corp. Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007)...............................................8, 18

*In re JDS Uniphase Corp. Sec. Litig.*,
2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ...........................................9

*In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*,
768 F. App'x. 651 (9th Cir. 2019) .........................................................4

*In re NFL "Sunday Ticket" Antitrust Litig.*,
2024 WL 3628118 (C.D. Cal. Aug. 1, 2024)...........................................9

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................4, 6, 8, 18

*In re Oracle Corp. Sec. Litig.*,
2009 WL 1709050 (N.D. Cal. June 16, 2009),
*aff'd*, 627 F.3d 376 (9th Cir. 2010)........................................................12

*In re Robinhood Outage Litig.*,
2023 WL 5321525 (N.D. Cal. July 28, 2023)...........................................4

*In re Silver Wheaton*,
2020 WL 4581642 (C.D. Cal. Aug. 6, 2020)...........................................6

*In re Stable Road Acquisition Corp.*,
2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) ...........................................5

*In re Tesla Inc., Sec. Litig.*,
2023 WL 4032010 (N.D. Cal. June 14, 2023),
*aff'd*, 2024 WL 4688894 (9th Cir. Nov. 6, 2024)......................................9

*In re Tezos Sec. Litig.*,
2020 WL 13699946 (N.D. Cal. Aug. 28, 2020) ...........................................6

Page

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007) ........................................................................14

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ............................................................14

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ................................................... *passim*

*In re Wash. Mut., Inc. Sec. Litig*,
2011 WL 8190466 (W.D. Wash. Nov. 4, 2011) ........................................................13

*Kendall v. Odonate Therapeutics, Inc.*,
2022 WL 1997530 (S.D. Cal. June 6, 2022) ..............................................................8

*Lamartina v. VMware, Inc.*,
2025 WL 1085566 (N.D. Cal. Mar. 31, 2025) ............................................................6

*Micholle v. Ophhotec Corp.*,
2022 WL 16571095 (S.D.N.Y. Sept. 16, 2022) ..........................................................6

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ..............................................................................13

*Or. Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*,
2024 WL 98387 (D. Colo. Jan. 1, 2024) .....................................................................2

*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*,
2021 WL 1387110 (D. Colo. Apr. 13, 2021) ...............................................................7

*Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc.*,
2021 WL 1659848 (E.D. Va. Apr. 23, 2021) ..............................................................6

*Purple Mountain Tr. v. Wells Fargo & Co.*,
2023 WL 11872699 (N.D. Cal. Sept. 26, 2023) ........................................................15

*Robbins v. Kroger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ...................................................................................9

*Savani v. URS Pro. Sols. LLC*,
2014 WL 172503 (D.S.C. Jan. 15, 2014) ..................................................................12

*Stanger v. China Elec. Motor, Inc.*,
812 F.3d 734 (9th Cir. 2016) .....................................................................................11

**Page**

*Tellabs, Inc v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)...............................................................................................................11

*Thomas v. MagnaChip Semiconductor Corp.*,
    2018 WL 2234598 (N.D. Cal. May 15, 2018)...............................................................17

*Vataj v. Johnson*,
    2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ...............................................................14

*Vincent v. Hughes Air W., Inc.*,
    557 F.2d 759 (9th Cir. 1977) ........................................................................................4

*Vincent v. Reser*,
    2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ...............................................................16

*Vinh Nguyen v. Radient Pharms. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ............................................................5, 9

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .................................................................................5, 6

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(4) ........................................................................................................ *passim*
    §78u-4(a)(6) .....................................................................................................................5

**SECONDARY AUTHORITIES**

Cornerstone Research, *Securities Class Action Settlements;*
    *2024 Review & Analysis* (2025)....................................................................................7

# NOTICE OF MOTION AND MOTION

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on December 2, 2025, at 2:00 p.m., before the Honorable Trina L. Thompson, at the United States District Court, Northern District of California, Phillip Burton Federal Building & United States Courthouse, Courtroom 9, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Lead Counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Saxena White P.A. ("Saxena White" and together with Robbins Geller, "Lead Counsel") will and hereby do respectfully move the Court for entry of an order awarding attorneys' fees and providing for payment of litigation expenses and awards pursuant to 15 U.S.C. §78u-4(a)(4) to Lead Plaintiffs Oklahoma Police Pension and Retirement System, Sheet Metal Workers Local 19 Pension Fund, Local 353, I.B.E.W. Pension Fund, and Beaumont Firemen's Relief & Retirement Fund (collectively, "Lead Plaintiffs" or "Plaintiffs").

This Motion is based on the following Memorandum of Points and Authorities, as well as the accompanying Joint Declaration of Jason C. Davis and Joshua H. Saltzman in Support of Final Approval of Class Action Settlement; Approval of Plan of Allocation; an Award of Attorneys' Fees and Expenses; and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Joint Declaration" or "Joint Decl."), with attached exhibits, the Declaration of Jason C. Davis Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Declaration" or "Robbins Geller Decl."), the Declaration of Joshua H. Saltzman Filed on Behalf of Saxena White P.A. in Support of Application for Award of Attorneys' Fees and Expenses ("Saxena White Declaration" or "Saxena White Decl."), all prior pleadings and papers in this Action, the arguments of counsel, and such additional information or argument as may be required by the Court.

A proposed Order will be submitted with Lead Counsel's reply submission on October 28, 2025, after the October 14, 2025 deadline for Class Members to object to the motion for fees and expenses has passed.

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether the Court should approve as fair and reasonable Lead Counsel's application for an attorneys' fee award in the amount of 25% of the Settlement Fund (the Settlement Amount, plus all interest accrued thereon).

2.    Whether the Court should approve Lead Counsel's request for payment of $368,880.02 in litigation costs and expenses incurred by Lead Counsel in the Action, plus all interest accrued thereon.

3.    Whether the Court should approve awards to Lead Plaintiffs, pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of their Class.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

After nearly three years of hard-fought litigation, working on a fully contingent basis and

4 with no guarantee of ever being paid, Court-appointed Lead Counsel secured an outstanding

5 Settlement of $20,250,000 on behalf of the Class.[1]  As compensation for their efforts, Lead Counsel

6 respectfully request that the Court approve an award of attorneys' fees in the amount of 25% of the

7 Settlement Fund.

8

Lead Counsel's fee request is reasonable, particularly considering counsel's substantial

9 efforts, significant achievement, and the considerable risks they faced in prosecuting this case.

10 Indeed, absent Lead Counsel's efforts, the Class would have almost certainly recovered nothing for

11 their claims, as Saxena White initiated this Action and Saxena White and Robbins Geller were the

12 only law firms to submit a leadership application at the lead plaintiff stage.  Moreover, in the almost

13 three years this case was pending prior to settlement, Lead Counsel: (a) conducted an extensive

14 investigation, including interviews with dozens of former CareDx employees and other confidential

15 witnesses, including Dr. Olymbios; (b) drafted three detailed amended complaints; (c) briefed three

16 motions to dismiss, eventually defeating Defendants' motion to dismiss the third amended complaint

17 due to Lead Counsel's persistent and extensive efforts; (d) fought for and obtained discovery from

18 Defendants; (e) responded to discovery propounded by Defendants; (f) consulted with multiple

19 financial and industry experts; (g) moved for class certification; (h) exchanged comprehensive

20 mediation statements with Defendants; and (i) engaged in a mediation session overseen by the Hon.

21 Gary A. Feess (Ret.).

22

From the outset, Defendants adamantly denied liability and asserted they possessed absolute

23 defenses to the Class's claims.  Highlighting the difficulty in pursuing Plaintiffs' claims, the Court

24 granted Defendants' initial motion to dismiss the entire case (without prejudice) and granted in part

25

---

[1]    Unless otherwise noted, all capitalized terms not defined herein shall have the same meaning
26 set forth in the Stipulation of Settlement, dated May 16, 2025 (ECF 177-2), in Lead Plaintiffs'
Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation, and
27 Memorandum of Points and Authorities in Support Thereof (the "Final Approval Memorandum"),
and in the Joint Declaration, filed herewith.  All citations and internal quotations are omitted, and all
28 emphasis is added, unless otherwise noted.

1    and denied in part Defendants' second motion to dismiss.  Moreover, Lead Counsel litigated – and
2    likely would have had to continue litigating – this case without the benefit of findings of fact or law
3    by any government agency concerning the underlying alleged conduct, as multiple government
4    agencies concluded their investigations of CareDx with no finding of wrongdoing, no civil penalties,
5    and no settlements.  Finally, the Company's limited financial resources and limited available
6    insurance posed an additional substantial risk to recovery.  Lead Counsel nevertheless achieved a
7    settlement that exceeds Defendants' available insurance and includes a significant contribution by
8    CareDx.

9         Considering the outstanding recovery and the significant efforts undertaken in achieving it,
10   Lead Counsel's fee request of 25% of the Settlement Fund is fair and reasonable.  The requested
11   award seeks no enhancement to the Ninth Circuit's benchmark rate, and is in line with (or below) the
12   fee awards in this District, elsewhere in the Ninth Circuit, and across the nation in similar complex
13   securities fraud class action settlements.  *See, e.g.*, *In re Banc of Cal. Sec Litig.*, 2020 WL 1283486,
14   at *1 (S.D. Cal. Mar. 16, 2020) (awarding 33% of $19,750,000 settlement fund); *Or. Laborers Emps.*
15   *Pension Tr. Fund v. Maxar Techs. Inc.*, 2024 WL 98387, at *8 (D. Colo. Jan. 1, 2024) (30% fee
16   awarded on $27 million settlement); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D.
17   Cal. Oct. 25, 2016) (finding benchmark 25% award on $95 million settlement in securities class
18   action was "below the range allowed in similar cases").  The 25% fee award also represents a
19   negative lodestar multiplier of 0.88 – meaning that the value of Lead Counsel's time is more than the
20   amount of the fee requested, which further supports the reasonableness of the request.  *See Chang v.*
21   *Wells Fargo Bank, N.A.*, 2023 WL 6961555, at *8 (N.D. Cal. Oct. 19, 2023) ("[A] *negative*
22   multiplier of .54 . . . 'further demonstrates the reasonableness of the fee request.'") (emphasis in
23   original).

24        Likewise, Lead Counsel's litigation expenses of $368,880.02 (plus interest accrued thereon)
25   should be awarded in full, as they were reasonably and necessarily incurred in the prosecution of the
26   Action.  Robbins Geller Decl., Ex. C; Saxena White Decl., Ex. C.  Finally, Lead Plaintiffs
27   respectfully move for a total of $20,640 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their
28   representation of the Class and their contribution to this result.  The costs and expenses requested by

1   Lead Plaintiffs are reasonable in amount, and they were necessarily incurred in the successful

2   prosecution of the Action.  *See, e.g.*, *Davis v. Yelp, Inc.*, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27,

3   2023) (granting similar awards).

4          In accordance with the Preliminary Approval Order, a total of 31,190 Postcard Notices have

5   been sent to potential Class Members and nominees.  *See* Declaration of Kathleen Brauns Regarding:

6   (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; (C) Establishment of

7   Settlement Website and Call Center Services; and (D) Report on Exclusions and Objections

8   ("Brauns Decl."), ¶12, attached as Ex. E to the Joint Declaration.  The Postcard Notice, as well as the

9   Notice posted on the Settlement Website, advised potential Class Members that Lead Counsel would

10  apply for: (i) an award of attorneys' fees in an amount not to exceed 30% of the Settlement Amount,

11  plus the interest earned thereon; and (ii) payment of litigation expenses in an amount not to exceed

12  $450,000, together with interest earned thereon.  *See* Brauns Decl., Ex. A, Postcard Notice; Ex. C,

13  Notice.  The deadline set by the Court to object to the requested attorneys' fees and expenses has not

14  yet passed, but to date, no objections have been received.[2]

15         Lead Counsel respectfully submit that the requested fee, approved by each of the Lead

16  Plaintiffs, is fair and reasonable and should be granted.

17  **II.    PROCEDURAL AND FACTUAL BACKGROUND**

18         Lead Counsel have invested substantial time and expenses in the prosecution of the Action,

19  all in furtherance of, and resulting in, the $20,250,000 Settlement now before the Court.  Consistent

20  with this District's Procedural Guidance for Class Action Settlements ("Northern District

21  Guidelines"), the relevant history and facts are set out in Lead Plaintiff's Preliminary Approval and

22  Final Approval Memoranda and the Joint Declaration and are not repeated here.  *See* Northern

23  District Guidelines, Final Approval, §2 ("If the plaintiffs choose to file two separate motions, they

24  should not repeat the case history and background facts in both motions.").  This motion simply

25  "refer[s] to the history and facts set out in the motion for final approval."  *Id.*

26

27  [2]      The deadline for submitting objections is October 14, 2025.  Should any objections be

28  received, Lead Counsel will address them in their reply papers, due on October 28, 2025.

LEAD COUNSEL'S MOTION FOR FEES AND EXPENSES - 3:22-cv-03023-TLT (Securities Case)          - 3 -
4911-9035-3512.v3

1

## III.    THE REQUESTED FEE IS FAIR AND REASONABLE

2

### A.    A Reasonable Percentage of the Fund Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

3

4    The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common

5    fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's

6    fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Ninth

7    Circuit similarly holds that "a private plaintiff, or his attorney, whose efforts create, discover,

8    increase or preserve a fund to which others also have a claim is entitled to recover from the fund the

9    costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769

10    (9th Cir. 1977); *accord In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*, 768

11    F. App'x. 651, 653 (9th Cir. 2019). The purpose of the common fund doctrine is to adequately

12    compensate class counsel for services rendered and to ensure that all class members contribute

13    equally towards the costs associated with the litigation. *Fleming v. Impax Lab'ys Inc.*, 2022 WL

14    2789496, at *7 (N.D. Cal. July 15, 2022) ("'[T]hose who benefit from the creation of the fund

15    [should] share the wealth with the lawyers whose skill and effort helped create it.'").

16    In *Blum v. Stenson*, the Supreme Court recognized that under the common fund doctrine, a

17    reasonable fee may be based "on a percentage of the fund bestowed on the class." 465 U.S. 886, 900

18    n.16 (1984). Although courts have discretion to employ either the percentage of recovery or lodestar

19    method, "'[t]he use of the percentage-of-the-fund method in common-fund cases is the prevailing

20    practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a

21    showing that a fund conferring benefits on a class was created through the efforts of plaintiffs'

22    counsel.'" *In re Robinhood Outage Litig.*, 2023 WL 5321525, at *5 (N.D. Cal. July 28, 2023); *see

23    also In re Capacitors Antitrust Litig.*, 2017 WL 9613950, at *2 (N.D. Cal. June 27, 2017) ("The

24    percentage-of-the-fund method is preferred when counsel's efforts have created a common fund for

25    the benefit of the class."); *In re Amkor Tech. Inc. Sec. Litig.*, 2009 WL 10708030, at *1 (D. Ariz.

26    Nov. 19, 2009) (percentage-of-recovery method most appropriate to award attorneys' fees in

27    securities class actions); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008)

28    ("use of the percentage method in common fund cases appears to be dominant"). Thus, the Ninth

Circuit has expressly and consistently approved the use of the percentage method in common fund cases.  *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002).

As courts in this Circuit have explained, "[t]here are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires."  *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014).  Further, the PSLRA contemplates that fees be awarded on a percentage basis, authorizing attorneys' fees and expenses to counsel that do not exceed "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."  15 U.S.C. §78u-4(a)(6); *see also In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *11 (C.D. Cal. Apr. 23, 2024) (citing 15 U.S.C. §78u-4(a)(6) and noting "'the near-universal adoption of the percentage method in securities cases'").

## B. Factors Considered by Courts in the Ninth Circuit Support Approval of the Requested Fee

Courts in this Circuit consider 25% of the common fund the benchmark or "starting point" for the award of fees in a common fund settlement and consider several factors to determine whether to adjust a fee award from the benchmark:

> (1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to the class beyond the immediate generation of a cash fund; (4) whether the percentage rate is above or below the market rate; (5) the contingent nature of the representation and the opportunity cost of bringing the suit; (6) reactions from the class; and (7) a lodestar cross-check.

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 1047834, at *1 (N.D. Cal. Mar. 17, 2017) (citing *Vizcaino*, 290 F.3d at 1048-52).[3]

Lead Counsel seek a fee of 25% of the Settlement Fund, which is presumptively reasonable.  *See, e.g.*, *Abadilla v. Precigen, Inc.*, 2023 WL 7305053, at *9 (N.D. Cal. Nov. 6, 2023).  This request is also well within the range (or indeed, below) of percentage fees that courts in this Circuit have awarded in other complex class actions.  *See, e.g.*, *Lamartina v. VMware, Inc.*, 2025 WL 1085566, at

---

[3] The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances. *Vizcaino*, 290 F.3d at 1048-50.

*1 (N.D. Cal. Mar. 31, 2025) (awarding fee of 25% of $102,500,000 settlement); *Dicker v. TuSimple Holdings, Inc.*, 2024 WL 5181968, at *1 (S.D. Cal. Dec. 18, 2024) (awarding fee of 25% of $189 million settlement); *Yelp*, 2023 WL 3063823, at *2 (awarding 33.3% attorneys' fees on $22.25 million securities class action settlement); *Fleming*, 2022 WL 2789496, at *8 (awarding 30% of $33 million settlement); *In re Tezos Sec. Litig.*, 2020 WL 13699946, at *1 (N.D. Cal. Aug. 28, 2020) (awarding 33.33% of $25 million settlement fund); *In re Silver Wheaton*, 2020 WL 4581642, at *4 (C.D. Cal. Aug. 6, 2020) (awarding 30% of $41.5 million settlement); *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012) (awarding 33.3% of $145 million settlement); *In re Heritage Bond Litig.*, 2005 WL 1594389, at *9 (C.D. Cal. June 10, 2005) (awarding one-third of a $27.78 million settlement); *see also Vizcaino*, 290 F.3d at 1050-51 (affirming award of 28% of $97 million settlement). In fact, "in most common fund cases, the award exceeds that benchmark." *Omnivision*, 559 F. Supp. 2d at 1047.[4]

As discussed below, the various factors to be considered by the Court, including the outstanding result achieved and the substantial risks support the reasonableness of the requested benchmark 25% fee award in this case.

### 1.    Lead Counsel Achieved an Exceptional Result for the Class

Courts have consistently recognized that the result achieved is "the most critical factor" to consider in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Fleming*, 2022 WL 2789496, at *8; *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

Here, against substantial risks, Lead Counsel obtained an exceptional recovery for the Class, $20,250,000. The Settlement is more than 40% higher than the $14 million median settlement

---

[4] An examination of fee decisions in securities class actions in other Circuits with comparable settlements further demonstrates the requested fees are reasonable. *See, e.g., In re Eros Int'l PLC Sec Litig.*, 2023 WL 8519091, at *1 (D.N.J. Nov. 28, 2023) (33.33% fee awarded on $25 million settlement); *Baum v. Harman Int'l Indus.*, 2022 WL 17037516, at *1 (D. Conn. Nov. 10, 2022) (31% fee awarded on $28 million settlement); *Micholle v. Ophhotec Corp.*, 2022 WL 16571095, at *1 (S.D.N.Y. Sept. 16, 2022) (30% fee awarded on $29 million settlement); *Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc.*, 2021 WL 1659848, at *5 (E.D. Va. Apr. 23, 2021) (33% fee awarded on $25 million settlement).

1    amount for securities class actions in 2024.[5]  It is also 80% higher than the $11.3 million median

2    settlement amount for federal securities class actions from 2015-2023, and more than double the $10

3    million median settlement amount for securities class actions in the Ninth Circuit from 2015-2024.[6]

4    The outstanding result obtained for the Class here strongly supports Lead Counsel's fee request.

5         The Settlement was achieved despite CareDx's limited (and rapidly wasting) available

6    insurance funds, as well as its dwindling cash position and otherwise limited financial resources.

7    Significantly, the recovery is substantially ***above*** Defendants' available insurance and includes a

8    meaningful cash contribution from the Company.  As of March 31, 2025, when the Parties agreed to

9    the Settlement, CareDx had just $88 million in cash and cash equivalents – a 23% decline from

10   December 31, 2024.  Moreover, CareDx had suffered net losses in nearly every quarter in the

11   previous five years.  *Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, 2021 WL

12   1387110, at *4 (D. Colo. Apr. 13, 2021) (settlement particularly remarkable given that "the recovery

13   for investors not only includes the proceeds of Defendants' insurance tower, but also includes a

14   substantial monetary contribution by [the defendant company]"); *see also In re Genworth Fin. Sec.*

15   *Litig.*, 210 F. Supp. 3d 837, 842 (E.D. Va. 2016) (company's contribution "of its own cash to the

16   Settlement" "strongly demonstrate[d] the adequacy of the Settlement amount").

17                    **2.    The Litigation Was Uncertain and Highly Complex**

18         "'The risk that further litigation might result in Plaintiffs not recovering at all, particularly a

19   case involving complicated legal issues, is a significant factor in the award of fees.'"  *Cheng*

20   *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019).  "'[I]n general,

21   securities actions are highly complex and . . . securities class litigation is notably difficult and

22   notoriously uncertain.'"  *Hefler*, 2018 WL 6619983, at *13; *see also Baron v. HyreCar Inc.*, 2024

23   WL 3504234, at *8 (C.D. Cal. July 19, 2024) ("'Courts experienced with securities fraud litigation

24   routinely recognize that securities class actions present hurdles to proving liability that are difficult

25

_____

26   [5] *See* Ex. F to the Joint Decl. (Cornerstone Research, *Securities Class Action Settlements; 2024 Review & Analysis*, at 19 (2025), and also available at https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-Class-Action-Settlements-2024-Review-and-Analysis.pdf).

27

28   [6] *Id*. at 1, 20.

1    for plaintiffs to clear.'"). For these reasons, in securities class actions, fee awards often exceed the

2    25% benchmark. *See Omnivision*, 559 F. Supp. 2d at 1047.

3        Despite their ultimate success, Lead Counsel assumed significant risk. In fact, throughout

4    the pleading stage, Defendants raised numerous challenges disputing the falsity of their alleged

5    misstatements, their scienter, and loss causation. *See In re Immune Response Corp. Sec. Litig.*, 497

6    F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) ("[T]he issue[] of scienter . . . [is] complex and difficult to

7    establish at trial."); *Destefano v. Zynga*, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) ("[T]he

8    risks associated with this case were substantial given the challenges of obtaining class certification

9    and establishing the falsity of the misrepresentations and loss causation."). *See generally*,

10   Preliminary Approval Memorandum (ECF 177).

11       Defendants filed three motions to dismiss challenging falsity, scienter, and loss causation.

12   *See* ECF 58-60, 89-91, and 136. In fact, this case was initially dismissed (without prejudice) in

13   response to Defendants' first motion to dismiss (ECF 74-75). Defendants again moved to dismiss

14   Plaintiffs' second amended complaint, which the Court granted in part and denied in part (ECF 123).

15   Despite a second denial, Lead Counsel continued with their investigation and their persistent and

16   extensive efforts finally led to an interview with Dr. Olymbios. Due in large part to the interview

17   with Dr. Olymbios, Lead Counsel ultimately prevailed in response to Defendants' third motion to

18   dismiss, as the Court upheld Plaintiffs' third amended complaint (ECF 154).

19       Defendants certainly would have argued on summary judgment and at trial that their

20   statements were not false and misleading because neither CMS nor any regulatory body or court ever

21   concluded that their billing practices were clearly improper. Defendants would also likely have

22   argued that they had no scienter, because they had a good faith belief that their practices were proper

23   and legal. *See Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997510, at *4 (S.D. Cal. June 6,

24   2022) ("Plaintiff may have also faced difficulty establishing necessary elements of falsity or scienter

25   at the summary judgment and trial stage. . . . '[C]ourts have recognized that a defendant's state of

26   mind in a securities case is the most difficult element of proof and one that is rarely supported by

27   direct evidence.'"). The DOJ and SEC both concluded their investigations of the Company without

28   taking further action, having recovered $0 for investors. Likewise, Defendants likely would have

1    vigorously contested loss causation, price impact, and damages at class certification and at summary

2    judgment.  *HyreCar*, 2024 WL 3504234, at *8 ("'In any securities litigation case, it is difficult for

3    plaintiff to prove loss causation and damages at trial.'").

4         At trial, the case would have turned largely on expert testimony concerning highly technical

5    falsity, scienter, loss causation and damages matters, as well as the credibility of fact witnesses –

6    many of whom would likely be represented by defense counsel and/or still employed at CareDx.

7    Defendants needed only to defeat one element of Lead Plaintiffs' claims to prevail, and there was a

8    significant risk the jury would agree with Defendants' experts and find no liability, no damages, or

9    award far less than Lead Plaintiffs sought to recover.  *See, e.g.*, *Radient*, 2014 WL 1802293, at *2

10   (noting, in securities class action, that "[p]roving and calculating damages required a complex

11   analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the

12   law.  The outcome of that analysis is inherently difficult to predict and risky"); *see also, e.g.*, *In re*

13   *Tesla Inc.*, *Sec. Litig.*, 2023 WL 4032010, at *1 (N.D. Cal. June 14, 2023) (detailing how jury

14   returned verdict for defendants despite grant of partial summary judgment in plaintiff's favor), *aff'd*,

15   2024 WL 4688894 (9th Cir. Nov. 6, 2024); *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556

16   (N.D. Cal. Nov. 27, 2007) (after lengthy trial involving securities claims, the jury reached a verdict

17   in defendants' favor).  And even if Lead Plaintiffs survived summary judgment and obtained a

18   favorable verdict at the liability phase of trial, they would ***still*** have faced the risk of partial or

19   complete reversal in post-trial proceedings.  *See, e.g.*, *In re NFL "Sunday Ticket" Antitrust Litig.*,

20   2024 WL 3628118, at *1 (C.D. Cal. Aug. 1, 2024) (granting defendants' motion as a matter of law

21   after class action plaintiffs obtained a jury verdict for more than $4.6 billion after nearly nine years

22   of litigation); *Robbins v. Kroger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict

23   of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *38 (S.D. Fla.

24   Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs'

25   verdict), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp., Inc.*, 688 F.3d 713

26   (11th Cir. 2021).

27        Thus, there existed a significant risk that class-wide recoverable damages could have been far

28   less than $20,250,000, including the risk of no recovery at all.  *Volkswagen*, 2017 WL 1047834, at

*2 ("Class Counsel 'recognize there are always uncertainties in litigation[.]'  It is possible that 'a litigation Class would receive less or nothing at all, despite the compelling merit of its claims . . . .'").  And any recovery absent the Settlement "'would come years in the future and at far greater expense to the . . . Class.'"  *Id.*  The $20,250,000 Settlement, achieved in the face of these significant risks, amply supports the requested 25% benchmark fee award.

### 3.    The Skill Required and Quality of Work

In determining a reasonable fee, courts often consider the quality of the work performed and the skill required in the action.  "'The prosecution and management of a complex national class action requires unique legal skills and abilities.  This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss.'"  *Rentech*, 2019 WL 5173771, at *10.

Here, the quality of Lead Counsel's representation further supports the reasonableness of the requested fee.  Saxena White not only initiated this Action, but Lead Counsel filed the only leadership application submitted at the lead plaintiff stage.  Without Lead Counsel's efforts, the Settlement would not have been possible.  Lead Counsel successfully and thoroughly litigated the case.  Following resolution of Defendants' three motions to dismiss, as well as two motions to strike portions of Plaintiffs' complaints, Lead Counsel vigorously pursued discovery from Defendants and third parties, "all of which was of great benefit to the Class."  *In re Apple Inc. Device Performance Litig.*, 2023 WL 2090981, at *14 (N.D. Cal. Feb. 17, 2023).  Plaintiffs also filed their Motion to Certify Class, Appoint Class Representatives, and Appoint Class Counsel.  ECF 170.  Finally, following the exchange of detailed mediation briefs, the Parties participated in an in-person mediation session on April 1, 2025.  Here, Lead Counsel's skill and experience brought about an exceptional result, further supporting the requested fee award.  *See Zynga*, 2016 WL 537946, at *17 ("Here, Lead Counsel engaged in significant pre-filing investigation, shepherded this case past . . . motions to dismiss . . . and reached a settlement quickly before expending resources that would otherwise have gone to the Class after further litigation," finding "the skill required and quality of work performed supports the fee award sought."); *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1359 (S.D. Fla. 2011) ("Class Counsel took on a great deal of risk . . . and turned a

potentially empty well into a significant [recovery]. That kind of initiative and skill must be adequately compensated to insure that counsel of this caliber is available to undertake these kinds of risky but important cases in the future.").

The standing of opposing counsel should also be weighed because such standing reflects the challenge faced by Lead Counsel. *See Zynga*, 2016 WL 537946, at *17; *see also Rentech*, 2019 WL 5173771, at *10 (finding "requested fee" supported because "Lead Counsel faced a vigorous defense" from "a respected national law firm"). Lead Counsel was opposed by Willkie Farr & Gallagher LLP, a global law firm, with a well-deserved reputation for vigorous advocacy in the defense of complex civil litigation. Lead Plaintiffs ability to obtain a favorable result for the Class while litigating against this formidable defense firm further evidences the quality of Lead Counsel's work and weighs in favor of approving the requested fee.

### 4. The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel

"It is an established practice to reward attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all." *Volkswagen*, 2017 WL 1047834, at *3. Indeed, as this Court recognized in *In re Alphabet, Inc. Sec. Litig.*, the fact that "Plaintiffs' counsel handled the case on a contingency fee basis and has received no compensation thus far, . . . weighs in favor of granting higher attorney fees." 2024 WL 4354988, at *6 (N.D. Cal. Sept. 30, 2024). Further, the "'importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee.'" *Rentech*, 2019 WL 5173771, at *10. "This incentive is especially important in securities cases." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016).[7]

---

[7] Courts have "'recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature.'" *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *17 n.15 (S.D.N.Y. Dec. 19, 2014). Indeed, the Supreme Court has stated that securities class actions such as this one are "an essential supplement to . . . civil enforcement actions" brought by the SEC. *Tellabs, Inc v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007).

1        Unlike counsel for Defendants, who were likely paid and reimbursed for their fees and

2  expenses on an ongoing basis, Lead Counsel have not received any compensation for their efforts

3  over the course of the Action. "The risk of no recovery in complex cases of this sort is not merely

4  hypothetical." *Savani v. URS Pro. Sols. LLC*, 2014 WL 172503, at \*5 (D.S.C. Jan. 15, 2014). There

5  have been many class actions in which counsel for plaintiffs, including Lead Counsel here, took on

6  the risk of pursuing claims on a contingency basis, expended thousands of hours and millions of

7  dollars, yet received no remuneration whatsoever despite their diligence and expertise. *Supra*,

8  §III.B.2; *see also In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 16, 2009) (court

9  granted summary judgment to defendants after eight years of litigation, and after Robbins Geller

10  incurred over $6 million in expenses, and worked over 100,000 hours, representing a lodestar of

11  approximately $40 million), *aff'd*, 627 F.3d 376 (9th Cir. 2010); *Fosbre v. Las Vegas Sands Corp.*,

12  2017 WL 55878 (D. Nev. Jan. 3, 2017) (Robbins Geller case in which summary judgment was

13  granted to defendants after more than six years of litigation where plaintiff's counsel incurred over

14  $2.3 million in expenses and worked over 38,600 hours, representing lodestar of approximately

15  $21.4 million), *aff'd sub nom. Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands*

16  *Corp.*, 732 F. App'x 543 (9th Cir. 2018).

17        Here, Lead Counsel did not have the luxury of piggybacking on a prior admitted fraud or

18  financial restatement or findings of fact or law by a government agency, and have received no

19  compensation throughout the course of the Action, despite investing over 8,700 hours and incurring

20  substantial expenses in prosecuting this case. *See Zynga*, 2016 WL 537946, at \*17. Additional

21  (uncompensated) work already has been undertaken in connection with the Settlement and hundreds

22  of thousands of dollars in additional time will likely be required going forward in connection with

23  the Settlement and claims administration.

24        Any fee award has always been contingent on the result achieved. Indeed, the only certainty

25  was that there would be no fee without a successful result. Nevertheless, Lead Counsel committed

26  significant resources of both time and money to vigorously prosecute this Action, and

27  notwithstanding the serious risk of no recovery at all, successfully brought it to a highly favorable

28  conclusion for the Class's benefit. The contingent nature of counsel's representation thus supports

1  approval of the requested fee. *Chang*, 2023 WL 6961555, at \*7 ("The risk that counsel took in

2  litigating this case on a contingency basis for the last few years weighs in favor of a substantial

3  attorneys' fee award.").

### 5.    Awards Made in Similar Cases Support the Fee Request

5      Lead Counsel's fee request is also supported by awards made in similar cases. As discussed

6  in §III.B, the 25% benchmark fee request is at/or even below the range of fee percentages awarded in

7  comparable settlements in this Circuit.

### 6.    The Class's Reaction to Date Supports the Fee Request

9      Courts within the Ninth Circuit also consider the reaction of the class when deciding whether

10 to award the requested fee. *See, e.g.*, *Volkswagen*, 2017 WL 1047834, at \*4 (considering that

11 "[o]nly four Class Members out of a class of approximately 475,000 objected to the proposed fee

12 award" to be "a strong, positive response from the class, supporting Class Counsel's requested

13 fees"); *In re Wash. Mut., Inc. Sec. Litig*, 2011 WL 8190466, at \*2 (W.D. Wash. Nov. 4, 2011)

14 (noting, in approving fee request, that "no substantive objections to the amount of fees and expenses

15 requested were filed"). While a certain number of objections are to be expected in a large class

16 action such as this, "the absence of a large number of objections to a proposed class action

17 settlement raises a strong presumption that the terms of a proposed class settlement action are

18 favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523,

19 529 (C.D. Cal. 2004); *Hefler*, 2018 WL 6619983, at \*15 ("As with the Settlement itself, the lack of

20 objections from institutional investors 'who presumably had the means, the motive, and the

21 sophistication to raise objections' [to the attorneys' fee] weighs in favor of approval.").

22      Class Members were informed in the Postcard Notice and the Notice, that Lead Counsel

23 would move the Court for an award of attorneys' fees in an amount not to exceed 30% of the

24 Settlement Amount (5% above Lead Counsel's current request), and for payment of litigation

25 expenses not to exceed $450,000 ($81,119.98 above Lead Counsel's current request), plus interest

26 earned thereon. Class Members were also advised of their right to object to the fee and expense

27 request, and that such objections are to be submitted to the Court no later than October 14, 2025.

28 While this deadline has not yet passed, to date, not a ***single*** objection has been received.

Lead Plaintiffs' endorsement of the fee request further supports its approval.  *See* Joint Decl. at Exs. A-D; *see also Hatamian v. Advanced Micro Devices*, 2018 WL 8950656, at *2 (N.D. Cal. Mar. 2, 2018) (approving fee where request was "reviewed and approved as fair and reasonable by Class Representatives, sophisticated institutional investors"); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *8 (S.D.N.Y. Nov. 7, 2007) ("Since passage of the PSLRA, courts . . . have found that in a PSLRA case, a fee request which has been approved and endorsed by a properly-appointed lead plaintiff is 'presumptively reasonable,' especially where the lead plaintiff is a sophisticated institutional investor."); *Hayden v. Portola Pharms. Inc.*, 2023 WL 2375242, at *2 (N.D. Cal. Mar. 6, 2023) (approving fee request supported by lead plaintiffs and noting that "institutional investors that have been directly involved in the prosecution and resolution of the Action . . . have substantial interests in ensuring that any fees and expenses paid to counsel are duly earned and not excessive").

In sum, each of the relevant factors supports the award of attorneys' fees of 25% of the Settlement Fund.  Accordingly, this fee request is reasonable and should be approved.

### 7. A Lodestar Cross-Check Confirms that the Requested Fee Is Reasonable

To ensure the reasonableness of a fee awarded under the percentage-of-recovery method, courts in this Circuit may cross-check the proposed fee award against counsel's lodestar, although such a cross-check is not required.  *See Vataj v. Johnson*, 2021 WL 5161927, at *8 (N.D. Cal. Nov. 5, 2021) (noting that "'trial courts have discretion to conduct a lodestar cross-check on a percentage fee'" but "'also retain . . . discretion to forgo a lodestar cross-check'"); *HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, 2010 WL 4156342, at *2 (S.D. Cal. Oct. 15, 2010) (noting that "lodestar analysis is not necessary when the requested fee is within the accepted benchmark").  When the lodestar is used as a cross check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys."  *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *accord Volkswagen*, 2017 WL 1047834, at *5 n.5 (overruling objection that "the information provided in support of Class Counsel's lodestar amount as

1  inadequate" because "'it is well established that "[t]he lodestar cross-check calculation need entail

2  neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by

3  the attorneys and need not review actual billing records"'") (alterations in original); *Hefler*, 2018

4  WL 6619983, at *14 (confirming that "'trial courts need not, and indeed should not, become green-

5  eyeshade accountants'" in context of lodestar cross check, and noting that "the Court seeks to 'do

6  rough justice, not to achieve auditing perfection'").

7          "[C]ourts 'calculate[] the fee award by multiplying the number of hours reasonably spent by

8  a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks

9  associated with the representation.'"  *Rentech*, 2019 WL 5173771, at *10 (second alteration in

10  original).  As detailed here, in the Robbins Geller Declaration, and the Saxena White Declaration,

11  over 8,700 hours of attorney and para-professional time were expended prosecuting the Action for

12  the benefit of the Class.  The hours spent to obtain the results are more than reasonable.  As detailed

13  in the Joint Declaration, there is no question that the hours expended were necessary.  Notably, the

14  lodestar does not include time for additional services to be provided by Lead Counsel to the Class,

15  including attending the final settlement hearing, responding to Class Members' inquiries, supervising

16  the Claims Administrator in the review and processing of claims, and overseeing the distribution of

17  checks to Class Members.

18          Lead Counsel's hourly rates, too, are reasonable.  In fact, Lead Counsel's rates have recent

19  judicial approval in this District.  *See Alphabet*, 2024 WL 4354988, at *7 (this Court approving

20  Robbins Geller's hourly rates ranging from $110 to $1,400); *see Purple Mountain Tr. v. Wells Fargo*

21  *& Co.*, 2023 WL 11872699, at *5 (N.D. Cal. Sept. 26, 2023) (Judge Donato approving Robbins

22  Geller's fee request based on its prevailing hourly rates); *Fleming*, 2022 WL 2789496, at *9 (Judge

23  Gilliam approving hourly rates of $760 to $1,325 for partners, $895 to $1,150 for counsel, and $175

24  to $520 for associates, and finding Robbins Geller's "billing rates in line with prevailing rates in this

25  district for personnel of comparable experience, skill, and reputation"); *In re FibroGen, Inc. Sec.*

26  *Litig.*, No. 3:21-cv-02623-EMC, ECF 252, Ex. E (N.D. Cal. Apr. 4, 2024); *id.*, ECF 259 (N.D. Cal.

27  Aug. 1, 2024) (approving Saxena White's then-current rates of $1,085 for shareholders, $825-$1,085

28  for directors, and $400-$795 for attorneys and senior attorneys).

1      The last piece of the cross-check analysis is the risk multiplier.  Lead Counsel's lodestar,

2  derived by multiplying the hours spent on the Action by each attorney and litigation professional by

3  their current hourly rates, is $5,729,546.00.   The requested fee of 25% represents a **negative**

4  multiplier of 0.88 on Lead Counsel's lodestar.  A **negative** multiplier is below the acceptable range

5  and is therefore presumptively reasonable.  *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL

6  3290770, at *11 (N.D. Cal. July 22, 2019) ("[A] multiplier below 1.0 is below the range typically

7  awarded by courts and is presumptively reasonable."); *Booth v. Strategic Realty Tr., Inc.*, 2015 WL

8  6002919, at *7-*8 (N.D. Cal. Oct. 15, 2015) (finding a 25% award that resulted in a lodestar

9  multiplier of 0.87 confirmed the fee award was "'presumptively reasonable'").

10      Each of the relevant factors supports the award of attorneys' fees of 25% of the Settlement

11  Fund.  Accordingly, this fee request is reasonable and should be approved.

12  **IV.    LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED**

13

14      Lead Counsel further request an award of their litigation expenses in the amount of

15  $368,880.02 (less than the $450,000 contained in the Postcard Notice and Notice).  These expenses

16  were incurred in prosecuting and resolving the Action on behalf of the Class.  Robbins Geller Decl.,

17  Ex. C; Saxena White Decl., Ex. C.

18      "Attorneys who create a common fund are entitled to the reimbursement of expenses they

19  advanced for the benefit of the class." *Vincent v. Reser*, 2013 WL 621865, at *5 (N.D. Cal. Feb. 19,

20  2013).  In assessing whether counsel's expenses are compensable in a common fund case, courts

21  look to whether the particular costs are the type of "out-of-pocket expenses that 'would normally be

22  charged to a fee paying client.'" *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *Hefler*,

23  2018 WL 6619983, at *16.  Here, the expenses sought by Lead Counsel, *i.e.*, those associated with,

24  among other things, consultants and investigators, document management, travel, mediation, service

25  of process, and online legal and factual research (including transcripts) – are of the type that are

26  routinely charged to hourly paying clients and, therefore, should be paid out of the common fund.

27  *See, e.g.*, *Portola Pharms.*, 2023 WL 2375242, at *2 (awarding $750,612.54 in costs in $17.5

28  million settlement, principally for consultant/expert fees, online research charges, mediation fees,

and travel); *Thomas v. MagnaChip Semiconductor Corp.*, 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018) (approving award of $795,401.42 for expert costs, "court fees, online research fees, postage and copying, travel costs, electronic discovery expenses, deposition costs, mediation charges, and travel costs").

Because these costs, charges, and expenses were reasonable and necessary, Lead Counsel respectfully request an award in the amount of $368,880.02. To date, no objections to this request have been filed.

## V.   LEAD PLAINTIFFS' REQUEST FOR AWARDS PURSUANT TO 15 U.S.C. §78u-4(a)(4) ARE REASONABLE

Lead Plaintiffs seek awards of $6,300 (for Oklahoma Police Pension and Retirement System), $7,500 (for Sheet Metal Workers Local 19 Pension Fund), $3,340 (for Local 353, I.B.E.W. Pension Fund), and $3,500 (for Beaumont Firemen's Relief & Retirement Fund), pursuant to 15 U.S.C. §78u-4(a)(4), in connection with their representation of the Class, as detailed in their declarations.[8] The PSLRA authorizes the Court to allow reimbursement to a representative plaintiff for its "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." *See* 15 U.S.C. §78u-4(a)(4); *Fleming*, 2022 WL 2789496, at *10 (noting that incentive awards are expressly authorized by the PSLRA, "'are fairly typical in class action cases,'" and are designed to "'compensate class representatives for work done on behalf of the class'").

Consistent with the Northern District Guidelines, Lead Plaintiffs have submitted declarations herewith setting forth the time and effort each Lead Plaintiff spent communicating with counsel

---

[8] *See* Declaration of Ginger Sigler Filed on Behalf of Oklahoma Police Pension and Retirement System in Support of (I) Lead Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Oklahoma Police Decl."), ¶7; Declaration of Tom Klingenberg Filed on Behalf of Sheet Metal Workers Local 19 Pension Fund in Support of (I) Lead Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Local 19 Decl."), ¶7; Declaration of Kim MacPherson in Support of Plaintiffs' Motion for Final Approval of Settlement filed on behalf of Local 353, I.B.E.W. Pension Fund ("Local 353 Decl."), ¶6; and Declaration of Luke Skelton in Support of Plaintiffs' Motion for Final Approval of Settlement filed on behalf of Beaumont Firemen's Relief & Retirement Fund ("Beaumont Fire Decl."), ¶6, attached as Exs. A, B, C, and D, respectively, to the Joint Declaration.

1  about the Action, review of pleadings and filings, staying informed about the mediation, and

2  considering and approving the Settlement, all of which provided significant value to the Class.

3  Oklahoma Police Decl., ¶3; Local 19 Decl., ¶3; Local 353 Decl., ¶3; Beaumont Fire Decl., ¶3.  Lead

4  Plaintiffs were actively involved through every step of the Action.  Accordingly, based on the time

5  they expended prosecuting this Action, they request awards of $6,300 (for Oklahoma Police Pension

6  and Retirement System), $7,500 (for Sheet Metal Workers Local 19 Pension Fund), $3,340 (for

7  Local 353, I.B.E.W. Pension Fund), and $3,500 (for Beaumont Firemen's Relief & Retirement

8  Fund), pursuant to 15 U.S.C. §78u-4(a)(4), in connection with their representation of the Class.

9  Judge Gonzalez Rogers recently recognized that "[b]ecause the laws are not self-enforcing, it is

10  appropriate to give incentives to those who come forward with little to gain and at personal risk and

11  who work to achieve a settlement that confers substantial benefits on others."  *In re Apple Inc. Sec.

12  Litig.*, 2024 WL 4246282, at *7 (N.D. Cal. Sept. 18, 2024) (approving $29,946.40 award to lead

13  plaintiff pursuant to 15 U.S.C. §78u-4(a)(4)); *see also Immune Response*, 497 F. Supp. 2d at 1173-74

14  (approving a $40,000 §78u-4(a)(4) award to lead plaintiff representing rate based on his

15  compensation as a CEO); *Omnivision*, 559 F. Supp. 2d at 1049 (reimbursing lead plaintiffs for "time

16  and expenses" in the amount of $29,913.80); *Yelp*, 2023 WL 3063823, at *2 (approving $15,000

17  award to one lead plaintiff); *Hatamian*, 2018 WL 8950656, at *2 (granting lead plaintiffs PSLRA

18  service award of $14,875 and $8,348.25).

19      Moreover, the requested award is particularly appropriate here given that the Notice advised

20  Class Members that Lead Plaintiffs would each seek up to $7,500 as an award, and no Class Member

21  has objected to this amount as of the date of this filing.

22  **VI.    CONCLUSION**

23      Lead Counsel's efforts on behalf of the Class resulted in an outstanding result under any

24  measure.  Based on the foregoing and upon the entire record herein, Lead Plaintiffs and Lead

25  Counsel respectfully request that the Court: (i) award Lead Counsel attorneys' fees of 25% of the

26

27

28

1  Settlement Amount and payment of $368,880.02 in litigation expenses, plus interest on both

2  amounts at the same rate as earned by the Settlement Fund; and (ii) approve PSLRA awards to Lead

3  Plaintiffs in the aggregate amount of $20,640 in connection with their representation of the Class.

4  DATED:  September 30, 2025                Respectfully submitted,
                                            ROBBINS GELLER RUDMAN
5                                             & DOWD LLP
                                            SHAWN A. WILLIAMS
6                                           JASON C. DAVIS

7

8                                                  *s/ Jason C. Davis*
                                             JASON C. DAVIS
9
                                            Post Montgomery Center
10                                          One Montgomery Street, Suite 1800
                                            San Francisco, CA  94104
11                                          Telephone:  415/288-4545
                                            415/288-4534 (fax)
12                                          shawnw@rgrdlaw.com
                                            jdavis@rgrdlaw.com
13
                                            ROBBINS GELLER RUDMAN
14                                            & DOWD LLP
                                            SPENCER A. BURKHOLZ
15                                          THEODORE J. PINTAR
                                            HEATHER G. GEIGER
16                                          NICOLE Q. GILLILAND
                                            EVELYN SANCHEZ GONZALEZ
17                                          655 West Broadway, Suite 1900
                                            San Diego, CA  92101
18                                          Telephone:  619/231-1058
                                            619/231-7423 (fax)
19                                          spenceb@rgrdlaw.com
                                            tedp@rgrdlaw.com
20                                          hgeiger@rgrdlaw.com
                                            ngilliland@rgrdlaw.com
21                                          egonzalez@rgrdlaw.com

22                                          SAXENA WHITE P.A.
                                            DAVID R. KAPLAN
23                                          505 Lomas Santa Fe Drive, Suite 180
                                            Solana Beach, CA  92075
24                                          Telephone:  858/997-0860
                                            858/369-0096 (fax)
25                                          dkaplan@saxenawhite.com

26

27

28

LEAD COUNSEL'S MOTION FOR FEES AND EXPENSES - 3:22-cv-03023-TLT (Securities Case)      - 19 -
4911-9035-3512.v3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SAXENA WHITE P.A.
STEVEN B. SINGER
RACHEL A. AVAN
JOSHUA H. SALTZMAN (admitted *pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY  10606
Telephone:  914/437-8551
888/631-3611 (fax)
ssinger@saxenawhite.com
ravan@saxenawhite.com
jsaltzman@saxenawhite.com

SAXENA WHITE P.A.
LESTER R. HOOKER
7777 Glades Road, Suite 300
Boca Raton, FL  33434
Telephone:  561/394-3399
561/394-3382 (fax)
lhooker@saxenawhite.com

Lead Counsel for Lead Plaintiffs