# EXHIBIT E

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PLUMBERS & PIPEFITTERS LOCAL UNION #295 PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>    vs.<br><br>CAREDX, INC., et al.,<br><br>                    Defendants. | Case No. 3:22-cv-03023-TLT (Securities Case)<br><br>CLASS ACTION<br><br>**DECLARATION OF KATHLEEN BRAUNS REGARDING: (A) MAILING OF THE POSTCARD NOTICE; (B) PUBLICATION OF THE SUMMARY NOTICE; (C) ESTABLISHMENT OF SETTLEMENT WEBSITE AND CALL CENTER SERVICES; AND (D) REPORT ON EXCLUSIONS AND OBJECTIONS**<br><br>DATE: December 2, 2025<br>TIME: 2:00 p.m.<br>DEPT: Courtroom 9, 19th Floor<br>JUDGE: Honorable Trina L. Thompson |

Brauns Dec. ISO Motion for
Final Approval
Case No. 3:22-cv-03023-TLT

I, Kathleen Brauns, declare as follows:

1. I am a Project Manager of the Class Action Administration Division of A.B. Data, Ltd. ("A.B. Data"), whose corporate office is located in Milwaukee, Wisconsin. I am over 21 years of age and am not a party to the Action.[1] The following statements are based on my personal knowledge and information provided by A.B. Data employees working under my supervision, and if called on to do so, I could and would testify competently thereto.

2. On July 22, 2025, the Court entered its Order Granting Motion for Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order," ECF 185), which granted Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF 177); and approved the Notice (ECF 177-2, Ex. A-1), Proof of Claim and Release Form ("Claim Form") (ECF 177-2, Ex. A-2), Summary Notice (ECF 177-2, Ex. A-3), and Postcard Notice (ECF 177-2, Ex. A-4).

3. Pursuant to the Preliminary Approval Order, A.B. Data is authorized to act as the Claims Administrator in connection with the Action. I submit this declaration to provide the Court and the Parties information regarding, among other things, the mailing of the Postcard Notice, the publication of the Summary Notice, and updates concerning other aspects of the settlement administration process.

### **MAILING OF THE POSTCARD NOTICE**

4. Pursuant to the Preliminary Approval Order, A.B. Data was responsible for mailing and emailing the Postcard Notice to potential Class Members and nominees. True and correct copies of the Postcard Notice and Email Notice are attached hereto as Exhibits A and B.

5. On July 28, 2025, A.B. Data received a data file provided by counsel to Defendants containing the names, addresses, and email address, if available, of 330 unique persons or entities who were identified as record holders of CareDx common stock during the Class Period.  On August 14, 2025, A.B. Data caused Postcard Notices to be disseminated by First-Class Mail or email to the 330 potential Class Members identified in the data file.

---

[1] Unless otherwise noted, all capitalized terms not defined herein shall have the same definitions as in the Stipulation of Settlement ("Stipulation") filed on May 16, 2025 (ECF 175-1).

Brauns Dec. ISO Motion for
Final Approval
Case No. 3:22-cv-03023-TLT

1

6. For potential Class Members whose email addresses were undeliverable, A.B. Data provided direct notice by mailing the Postcard Notice to the mailing addresses provided in the class information. On August 27, 2025, A.B. Data caused the Postcard Notice to be mailed via First-Class U.S. Mail to 59 potential members of the Class whose emailed Postcard Notice was undeliverable.

7. As in most securities class actions of this nature, the large majority of potential Class Members are expected to be beneficial purchasers whose securities are held in "street name"—*i.e.*, the securities are purchased by brokerage firms, banks, institutions, and other third-party nominees in the name of the respective nominees, on behalf of the beneficial purchasers. A.B. Data maintains a proprietary database with names and addresses of the largest and most common banks, brokers, and other nominees (the "Broker Mailing Database"). A.B. Data's Broker Mailing Database is updated from time to time as new nominees are identified and others cease operations. At the time of the deadline for mailing or emailing the Postcard Notice to the Class, the Broker Mailing Database contained 4,899 mailing records. On August 14, 2025, A.B. Data caused the Postcard Notices to be sent by First-Class Mail to the 4,899 addresses for banks, brokers, and other nominees whose mailing records were contained in the Broker Mailing Database.

8. A.B. Data also sent an email to nominees in the Broker Mailing Database who have an email address on record. The email attached a copy of the Postcard Notice, the Notice, and the Claim Form. True and correct copies of the Notice and Claim Form are attached hereto as Exhibits C and D, respectively.

9. As part of the notice plan for this Action, on August 14, 2025, A.B. Data also provided an electronic copy of the Notice and Claim Form to the Depository Trust Company ("DTC") for posting on its Legal Notice System ("LENS"). The LENS may be accessed by any nominee that participates in DTC's security system and provides the DTC participants with the ability to search and download legal notices as well as receive email alerts based on particular notice or particular security identifiers (known as CUSIPs).

10. Pursuant to the Preliminary Approval Order, the Notice directed those who purchased or otherwise acquired CareDx common stock during the Class Period for the beneficial interest of other

Brauns Dec. ISO Motion for
Final Approval
Case No. 3:22-cv-03023-TLT

2

persons or entities to, within seven (7) calendar days of receipt, either: (a) send the Postcard Notice to such beneficial owners of such CareDx common stock, or (b) send a list of the names and email and/or physical addresses of such beneficial owners to A.B. Data, who then would promptly email or mail the Postcard Notice to such beneficial owners.

11.     As of September 30, 2025, A.B. Data has received an additional 8,046 names and addresses of potential Class Members from individuals or brokerage firms, banks, institutions, and other nominees. A.B. Data also received requests from brokers and other nominee holders for 17,915 Postcard Notices to be forwarded by the nominees to their customers. All such requests have been, and will continue to be, complied with and addressed in a timely manner.

12.     As of September 30, 2025, a total of 31,190 Postcard and Email Notices have been disseminated to potential Class Members and nominees. Of the 31,190 Postcard Notices sent, 343 were returned as undeliverable.  A.B. Data has since re-mailed 185 Postcard Notices to persons and entities whose original mailings were returned by the U.S. Postal Service ("USPS"), and for whom updated addresses were provided to A.B. Data by the USPS or ascertained through a third-party information provider.

## PUBLICATION OF THE SUMMARY NOTICE

13.     In accordance with the Preliminary Approval Order, A.B. Data caused the Summary Notice to be published in *The Wall Street Journal* and released via *PR Newswire* on August 14, 2025. Copies of proof of publication of the Summary Notice in *The Wall Street Journal* and over *PR Newswire* are attached hereto as Exhibits E and F, respectively.

## ESTABLISHMENT OF SETTLEMENT WEBSITE

14.     A.B. Data designed, implemented, and currently maintains a website dedicated to the Settlement, www.CareDxSecuritiesLitigation.com (the "Settlement Website"), to facilitate the notice program and claims filing process set forth in the Preliminary Approval Order, and otherwise assist potential Class Members. The Settlement Website became operational beginning on August 14, 2025, and is accessible 24 hours a day, 7 days a week. The Settlement Website includes general information

Brauns Dec. ISO Motion for                                                                      3
Final Approval
Case No. 3:22-cv-03023-TLT

regarding the proposed Settlement, including the exclusion, objection, and claim-filing deadlines, as well as the date and time of the Court's Settlement Hearing. In addition, copies of important documents, including, among others, the Stipulation, Preliminary Approval Order, Notice, Claim Form, and Complaint are available on the Settlement Website for downloading.

15. Moreover, the Settlement Website allows potential Class Members to file claims online and provides instructions and a claim filing template for institutional investors, as well as individuals or entities filing claims with a large number of transactions (specifically, fifty or more transactions).

16. The Settlement Website will continue to be updated with relevant case information and Court documents.

### ESTABLISHMENT OF CALL CENTER SERVICES

17. On August 14, 2025, A.B. Data established a case-specific, toll-free telephone helpline, (877) 423-0707, with an interactive voice response system and live operators, to respond to potential Class Members who have questions about the Action and the Settlement, such as requests for a Notice and Claim Form and instructions on how to complete and submit the Claim Form. The automated attendant answers the calls and presents callers with a series of choices to respond to basic questions. Callers requiring further help have the option to be transferred to a live operator during business hours. A.B. Data continues to maintain the telephone helpline and will update the interactive voice response system as necessary through the administration of the Settlement.

18. As of September 30, 2025, 15 calls had been received by the toll-free telephone from potential Class Members. The total length of these calls was approximately 45.5 minutes. I understand that all inquiries received through the toll-free telephone helpline were appropriately addressed.

19. In sum, the notice and claims processing program used in this Settlement uses customary procedures that have been widely adopted in securities class action cases, including those where A.B. Data has successfully implemented the same notice and claims processing program. *See, e.g.*, *Bos. Ret. Sys. v. Uber Techs., Inc., et al.*, No. 19-cv-06361-RS, slip op. at 5 (N.D. Cal. Aug. 9, 2024) ("The Court approves the form, substance and requirements of . . . the Settlement Postcard."); *Ferraro Family*

Brauns Dec. ISO Motion for
Final Approval
Case No. 3:22-cv-03023-TLT

4

*Found., Inc., et al. v. Corcept Therapeutics Inc., et al.*, No. 3:19-cv-01372-JD, slip op. at 5 (N.D. Cal. Jan. 4, 2024) ("The Court preliminarily approves, as to form and content, . . . the Postcard Notice."); *Vataj v. Johnson, et al.*, No. 4:19-cv-06996-HSG, slip op. at 19 (N.D. Cal. Apr. 20, 2021) ("The Court therefore finds . . . the content of the proposed notice provides sufficient information about the case and thus conforms with due process requirements.").

## REPORT ON EXCLUSIONS AND OBJECTIONS

20.     Pursuant to the Preliminary Approval Order, the Postcard Notice, Notice, Summary Notice, and Settlement Website inform potential Class Members that written requests for exclusion are to be sent to the Claims Administrator such that they are received no later than October 14, 2025. The Notice also sets forth the information that must be included in each request for exclusion. As of the date of this declaration, A.B. Data has not received any requests for exclusion. A.B. Data will submit a supplemental declaration after the October 14, 2025, deadline addressing all requests for exclusion received.

21.     Pursuant to the Preliminary Approval Order, the Postcard Notice, Notice, Summary Notice, and Settlement Website informs Class Members wishing to object to the Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and litigation expenses that they are required to submit their objection in writing such that the request is received or filed with the Court no later than October 14, 2025. Despite these instructions, Class Members sometimes send objections to the Claims Administrator instead. As of the date of this declaration, A.B. Data has not received any objections, and is not aware of any objections being filed with the Court.

## CLAIMS RECEIVED TO DATE

22.     Pursuant to the Preliminary Approval Order, Claims are to be submitted no later November 12, 2025.  As of the date of this Declaration, A.B. Data has received a total of 156 Claims. Based on A.B. Data's preliminary review 104 Claims have been provisionally accepted and deemed valid.  In my professional experience, it is common for the vast majority of Claims to be received on or near the claim filing deadline. A.B. Data will submit a supplemental declaration prior to the Settlement Hearing with an updated count of claims received.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on September 30, 2025.

_____
Kathleen Brauns

Brauns Dec. ISO Motion for
Final Approval
Case No. 3:22-cv-03023-TLT

6

# EXHIBIT A

**LEGAL NOTICE**

**Court-Ordered Legal Notice (Forwarding Service Requested)**

This notice contains important information about a securities class action settlement.

You may be entitled to a payment. This notice may affect your legal rights.

Please read it carefully.

www.CareDxSecuritiesLitigation.com

*CareDx Securities Litigation*
c/o A.B. Data, Ltd.
P.O. Box 173096
Milwaukee, WI 53217

*Plumbers & Pipefitters Local Union #295 Pension Fund v. CareDx, Inc., et al.*,
  No. 3:22-cv-03023-TLT (N.D. Cal.)

[NAME 1]
[NAME 2]
[NAME 3]
[ADDRESS 1]
[ADDRESS 2]

If you purchased CareDx, Inc. ("CareDx" or the "Company") common stock between May 1, 2020 and November 3, 2022, inclusive, you could be entitled to a payment from a proposed settlement ("Settlement") reached in this action ("Action"). Your rights may be affected by this Action and the Settlement. A hearing will be held on December 2, 2025, at 2:00 p.m. ("Settlement Hearing"), before the Honorable Trina L. Thompson at the United States District Court for the Northern District of California, Philip Burton Federal Building & United States Courthouse, Courtroom 9 – 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102 to determine whether the proposed settlement of the Action against Defendants CareDx, Peter Maag, and Reginald Seeto for $20.25 million and the Plan of Allocation should be approved as fair, reasonable, and adequate; whether the Action should be dismissed with prejudice against the Defendants, as set forth in the Stipulation of Settlement ("Stipulation") filed with the Court; and whether Lead Counsel's application for an award of attorneys' fees of up to 30% of the Settlement Amount, plus interest, and expenses not to exceed $450,000, plus interest, and awards to Lead Plaintiffs, should be granted. All capitalized terms used herein that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation.

The proposed Settlement would resolve a class action lawsuit alleging that, in violation of the U.S. securities laws, Defendants made material misrepresentations and omissions, with scienter, in connection with the Company's compliance-with-law statements and statements about testing services revenue and historical RemoTraC data. Defendants deny these allegations. For a full description of the Settlement, your rights, and to make a claim, you may obtain the Stipulation, long-form Notice, and the Proof of Claim and Release Form ("Claim Form") by visiting the website: www.CareDxSecuritiesLitigation.com ("Settlement Website") or you may request copies from the Claims Administrator by: (i) mail: *CareDx Securities Litigation*, c/o A.B. Data, Ltd., P.O. Box 173096, Milwaukee, WI 53217; or (ii) call toll-free: 1-877-423-0707.

To qualify for payment, you must submit a valid Claim Form, with supporting documentation, received no later than November 12, 2025.[1] You will be bound by any Judgment entered in the Action, regardless of whether you submit a Claim Form, unless you exclude yourself from the Class. If you exclude yourself from the Class, you cannot get money from this Settlement. If you want to exclude yourself from the Class, you must submit a request for exclusion, such that it is received no later than October 14, 2025, to: *CareDx Securities Litigation*, Exclusions, c/o A.B. Data, Ltd., P.O. Box 173001, Milwaukee, WI 53217. If you do not exclude yourself and stay in the Class, you may object to the Settlement, Plan of Allocation, and/or the request for an award of attorneys' fees and expenses and awards to Lead Plaintiffs no later than October 14, 2025. The long-form Notice and the Settlement Website explain how to exclude yourself from the Class or how to object.

Lead Plaintiffs and the Class are represented by Lead Counsel: Jason C. Davis at Robbins Geller Rudman & Dowd LLP, Post Montgomery Center, One Montgomery Street, Suite 1800, San Francisco, CA 94104, settlementinfo@rgrdlaw.com, and Lester R. Hooker at Saxena White P.A., 7777 Glades Road, Suite 300, Boca Raton, FL 33434, lhooker@saxenawhite.com. You may, but do not have to, attend the Settlement Hearing to be heard. The Court reserves the right to hold the Settlement Hearing telephonically or by other virtual means. Please check the Settlement Website or the Court's PACER site to confirm that the date/or time has not been changed. As detailed in the long-form Notice, you may access the case docket via PACER or in person at any of the Court's locations.

---

[1] Proofs of Claim, requests for exclusion, and objections that are legibly postmarked will be treated as received on the postmark date.

# EXHIBIT B

Subject Line: Notice of Proposed Settlement: CareDx Securities Litigation
From: CareDx Securities Litigation Claims Administrator
Reply to: info@CareDxSecuritiesLitigation.com

**Notice ID Number:**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| PLUMBERS & PIPEFITTERS LOCAL UNION #295 PENSION FUND, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No. 3:22-cv-03023-TLT (Securities Case) |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| CAREDX, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

**This notice contains important information about a securities class action settlement. You may be entitled to a payment. This notice may affect your legal rights.**

**If you purchased CareDx, Inc. ("CareDx" or the "Company") common stock between May 1, 2020 and November 3, 2022, inclusive, you could be entitled to a payment from a proposed settlement ("Settlement") reached in this action ("Action").**

## What is this Lawsuit About?

The proposed Settlement would resolve a class action lawsuit alleging that, in violation of the U.S. securities laws, Defendants made material misrepresentations and omissions, with scienter, in connection with the Company's compliance-with-law statements and statements about testing services revenue and historical RemoTraC data. Defendants deny these allegations.

## Who are the lawyers representing the Class?

Lead Plaintiffs and the Class are represented by Lead Counsel: Jason C. Davis at Robbins Geller Rudman & Dowd LLP, Post Montgomery Center, One Montgomery Street, Suite 1800, San Francisco, CA 94104, settlementinfo@rgrdlaw.com, and Lester R. Hooker at Saxena White P.A., 7777 Glades Road, Suite 300, Boca Raton, FL 33434, lhooker@saxenawhite.com.

## Why am I getting this Notice?

You are receiving this notice because you may have purchased or acquired CareDx, Inc. common stock during the Class Period between May 1, 2020 and November 3, 2022, inclusive, and who were damaged thereby.

**What are my options?**

1. **Submit a Claim Form**

   To qualify for payment, you must submit a valid Claim Form, with supporting documentation, received no later than November 12, 2025.[1] You will be bound by any Judgment entered in the Action, regardless of whether you submit a Claim Form, unless you exclude yourself from the Class.

2. **Exclude Yourself from the Class**

   If you exclude yourself from the Class, you cannot get money from this Settlement.  If you want to exclude yourself from the Class, you must submit a request for exclusion, such that it is received no later than October 14, 2025, to: CareDx Securities Litigation, Exclusions, c/o A.B. Data, Ltd., P.O. Box 173001, Milwaukee, WI 53217.

3. **Object to the Settlement**

   If you do not exclude yourself and stay in the Class, you may object to the Settlement, Plan of Allocation, and/or the request for an award of attorneys' fees and expenses and awards to Lead Plaintiffs no later than October 14, 2025.  The long-form Notice and the Settlement Website explain how to exclude yourself from the Class or how to object.

**When and Where Will the Court Decide Whether to Approve the Settlement?**

A hearing will be held on December 2, 2025, at 2:00 p.m. ("Settlement Hearing") before the Honorable Trina L. Thompson at the United States District Court for the Northern District of California, Philip Burton Federal Building & United States Courthouse, Courtroom 9 – 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102 to determine whether the proposed settlement of the Action against Defendants CareDx, Peter Maag, and Reginald Seeto for $20.25 million and the Plan of Allocation should be approved as fair, reasonable, and adequate; whether the Action should be dismissed with prejudice against the Defendants, as set forth in the Stipulation of Settlement ("Stipulation") filed with the Court; and whether Lead Counsel's application for an award of attorneys' fees of up to 30% of the Settlement Amount, plus interest, and expenses not to exceed $450,000, plus interest, and awards to Lead Plaintiffs, should be granted. All capitalized terms used herein that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation.

**Do I Have to Come to the Hearing?**

You may, but do not have to, attend the Settlement Hearing to be heard.  The Court reserves the right to hold the Settlement Hearing telephonically or by other virtual means.  Please check the Settlement Website or the Court's PACER site to confirm that the date/ or time has not been changed.  As detailed in the long-form Notice, you may access the case docket via PACER or in person at any of the Court's locations.

**Where can I access further information?**

For a full description of the Settlement, your rights, and to make a claim, you may obtain the Stipulation, long-form Notice, and the Proof of Claim and Release Form ("Claim Form") by visiting the website: www.CareDxSecuritiesLitigation.com ("Settlement Website") or you may request copies from the Claims Administrator by: (i) mail: *CareDx Securities Litigation*, c/o A.B. Data, Ltd., P.O. Box 173096, Milwaukee, WI 53217; or (ii) call toll-free: 1-877-423-0707.

---

[1] Proofs of Claim, requests for exclusion, and objections that are legibly postmarked will be treated as received on the postmark date.

# EXHIBIT C

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| PLUMBERS & PIPEFITTERS LOCAL UNION #295 PENSION FUND, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No. 3:22-cv-03023-TLT (Securities Case) |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | NOTICE OF: (i) PENDENCY OF CLASS ACTION, CERTIFICATION OF CLASS, AND |
| vs. | ) ) | PROPOSED SETTLEMENT AND PLAN OF ALLOCATION; (ii) SETTLEMENT FAIRNESS |
| CAREDX, INC., et al., | ) ) | HEARING; AND (iii) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND |
| Defendants. | ) ) | LITIGATION EXPENSES |

*A Federal Court Authorized This Notice.  This Is Not a Solicitation from a Lawyer.*

**NOTICE OF PENDENCY OF CLASS ACTION:  Please be advised that your rights may be affected by the above-captioned class action lawsuit pending in this Court (the "Action") if you purchased common stock of CareDx, Inc. ("CareDx" or the "Company") between May 1, 2020 and November 3, 2022, inclusive (the "Class Period").**

**NOTICE OF SETTLEMENT:  Please also be advised that lead plaintiffs Oklahoma Police Pension and Retirement System, Sheet Metal Workers Local 19 Pension Fund, Local 353, I.B.E.W. Pension Fund, and Beaumont Firemen's Relief & Retirement Fund ("Lead Plaintiffs"), on behalf of the Class (as defined in ¶1 below), have reached a proposed settlement of the Action for a total of $20.25 million in cash that will resolve all claims in the Action (the "Settlement").**

**This Notice explains important rights you may have, including your possible receipt of cash from the Settlement. Your legal rights will be affected whether or not you act.  Please read this Notice carefully**.  **If you are a broker or custodian, please immediately review this Notice for instructions on providing timely notification to beneficial owners.**

      1.     **Description of the Action and the Class**:  This Notice relates to a proposed Settlement of a class action lawsuit pending against the following defendants: CareDx, Inc., Peter Maag, and Reginald Seeto ("Defendants") (collectively, with Lead Plaintiffs, the "Settling Parties" or "Parties").  The proposed Settlement, if approved by the Court, will apply to the following Class (the "Class"): all persons or entities who purchased CareDx, Inc. common stock between May 1, 2020 and November 3, 2022, inclusive, and were damaged thereby.  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.  Also excluded from the Class are those persons and entities who timely and validly request exclusion from the Class pursuant to this Notice.[1]

      2.     **Statement of Class Recovery**:  Subject to Court approval, and as described more fully in ¶¶3-6 below, Lead Plaintiffs, on behalf of the Class, have agreed to settle all Released Claims (as defined in ¶53 below) against Defendants and other Released Defendants Parties (as defined in ¶55 below) in exchange for a settlement payment of $20.25 million in cash (the "Settlement Amount") to be deposited into an escrow account.  The Net Settlement Fund (the Settlement Fund less Taxes and Tax Expenses, Notice and Administration Costs, and attorneys' fees and litigation expenses) will be distributed in accordance with a plan of allocation (the "Plan of Allocation") that will be approved by the Court and will determine how the Net Settlement Fund shall be distributed to members of the Class.  The Plan of Allocation is a basis for determining the relative positions of Class Members for purposes of allocating the Net Settlement Fund.  The proposed Plan

---

[1]     All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings provided in the Stipulation of Settlement dated May 16, 2025 ("Stipulation"), which is available on the website www.CareDxSecuritiesLitigation.com.

of Allocation is included in this Notice, and may be modified by the Court without further notice.

3.    **Statement of Average Distribution Per Share**:  The Settlement Fund consists of the $20.25 million Settlement Amount plus interest earned.  Assuming all potential Class Members elect to participate, the estimated average recovery is $0.32 per damaged share before fees and expenses.  Class Members may recover more or less than this amount depending on, among other factors, the aggregate value of the Recognized Claims represented by valid and acceptable Proof of Claim and Release Forms (the "Claim Form" or "Proof of Claim") as explained in the Plan of Allocation; when their shares were purchased and the price at the time of purchase; and whether the shares were sold, and if so, when they were sold and for how much.  In addition, the actual recovery of Class Members may be further reduced by the payment of fees and expenses from the Settlement Fund, as approved by the Court.

4.    **Statement of the Parties' Position on Damages**:  Defendants deny all claims of wrongdoing, that they engaged in any wrongdoing, that they are liable to Lead Plaintiffs and/or the Class, and that Lead Plaintiffs or other members of the Class suffered any injury.  Moreover, the Parties do not agree on the amount of recoverable damages if Lead Plaintiffs were to prevail on each of the claims.  The issues on which the Parties disagree include, but are not limited to, whether: (i) the statements made or facts allegedly omitted were material, false, or misleading; (ii) Defendants are otherwise liable under the securities laws for those statements or omissions; and (iii) all or part of the damages allegedly suffered by members of the Class were caused by economic conditions or factors other than the allegedly false or misleading statements or omissions.

5.    **Statement of Attorneys' Fees and Expenses Sought**:  Lead Counsel will apply to the Court for an award of attorneys' fees from the Settlement Fund of no more than 30% of the Settlement Amount, plus interest earned at the same rate and for the same period as earned by the Settlement Fund.  In addition, Lead Counsel also will apply to the Court for payment from the Settlement Fund for Lead Counsel's litigation expenses (reasonable expenses or charges of Lead Counsel in connection with commencing and prosecuting the Action), in a total amount not to exceed $450,000, plus interest earned at the same rate and for the same period as earned by the Settlement Fund.  If the Court approves Lead Counsel's fee and expense application, the estimated average cost per damaged share is $0.10.  In addition, Lead Plaintiffs may each seek an award in an amount not to exceed $7,500, pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class.

6.    **Identification of Attorneys' Representatives**:  Lead Plaintiffs and the Class are represented by Robbins Geller Rudman & Dowd LLP and Saxena White P.A. ("Lead Counsel"): Jason C. Davis at Robbins Geller Rudman & Dowd LLP, Post Montgomery Center, One Montgomery Street, Suite 1800, San Francisco, CA  94104, 1-800-449-4900, settlementinfo@rgrdlaw.com and Lester R. Hooker at Saxena White P.A., 7777 Glades Road, Suite 300, Boca Raton, FL 33434, lhooker@saxenawhite.com.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| DO NOTHING | Get no payment.  Remain a Class Member.  Give up your rights. |
| REMAIN A MEMBER OF THE CLASS AND SUBMIT A CLAIM FORM *RECEIVED[2] OR SUBMITTED ONLINE* NO LATER THAN NOVEMBER 12, 2025 | This is the only way to be *potentially* eligible to receive a payment.  If you wish to obtain a payment as a member of the Class, you will need to file a claim form (the "Claim Form" or "Proof of Claim Form"), received no later than November 12, 2025. |
| EXCLUDE YOURSELF FROM THE CLASS BY SUBMITTING A REQUEST FOR EXCLUSION THAT IS *RECEIVED* NO LATER THAN OCTOBER 14, 2025 | Get no payment.  This is the only option that potentially allows you to ever be part of any other lawsuit against the Defendants or any other Released Defendants Parties about the legal claims being resolved by this Settlement.<br><br>You cannot object to the proposed Settlement and cannot submit a Claim Form if you exclude yourself. |
| OBJECT TO THE SETTLEMENT SO THAT IT IS *FILED OR RECEIVED* NO LATER THAN OCTOBER 14, 2025 | If you do not like the proposed Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and litigation expenses, you may write to the Court and explain why you do not like them.  You cannot object to the Settlement, the Plan of Allocation, or the fee and expense request unless you are a Class Member and do not exclude yourself from the Class.  You do not need to submit a Claim Form to object.  However, if you object, you must still submit a Claim Form in order to be potentially eligible to receive any money from the Net Settlement Fund.  If you submit a written objection, you may (but do not have to) attend the hearing. |
| GO TO THE HEARING ON DECEMBER 2, 2025, AT 2:00 P.M., AND FILE A NOTICE OF INTENTION TO APPEAR SO THAT IT IS *RECEIVED* NO LATER THAN OCTOBER 14, 2025 | Ask to speak in Court about the fairness of the Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and litigation expenses. |

---

[2]     Claims, objections, requests for exclusion, and other correspondence that are legibly postmarked will be treated as received on the postmark date.  Please be advised that the U.S. Postal Service may not postmark mail which is not presented in person.

| WHAT THIS NOTICE CONTAINS | |
|---|---|
| What Is The Purpose of This Notice? | Page 4 |
| What Is This Case About?  What Has Happened So Far? | Page 5 |
| How Do I Know If I Am Affected By The Settlement? | Page 6 |
| What Are Lead Plaintiffs' Reasons For The Settlement? | Page 6 |
| What Might Happen If There Were No Settlement? | Page 7 |
| How Much Will My Payment Be? | Page 7 |
| Plan of Allocation | Page 7 |
| How are Class Members Affected by the Action and the Settlement? | Page 12 |
| What Payment are the Attorneys for the Class Seeking? How Will the Lawyers be Paid? | Page 13 |
| How Do I Participate in the Settlement? What Do I Need to Do? | Page 13 |
| What if I Do Not Want to be a Member of the Class? How Do I Exclude Myself? | Page 13 |
| When And Where Will The Court Decide Whether To Approve The Settlement?  Do I Have To Come To The Hearing?<br>May I Speak At The Hearing If I Do Not Like The Settlement? | Page 14 |
| What If I Bought Shares On Someone Else's Behalf? | Page 15 |
| Can I See The Court File?  Whom Should I Contact If I Have Questions? | Page 16 |

## WHAT IS THE PURPOSE OF THIS NOTICE?

7.      The purpose of this Notice is to inform you about: (i) this Action; (ii) the terms of the proposed Settlement; and (iii) your rights in connection with a hearing to be held before the United States District Court for the Northern District of California (the "Court"), on December 2, 2025, at 2:00 p.m., to consider the fairness, reasonableness, and adequacy of the Settlement and related matters.  This Notice also describes the steps to be taken by those who wish to seek to be potentially eligible to share in the distribution of the Net Settlement Fund in the event the Settlement is approved by the Court.

8.      A class action is a type of lawsuit in which the claims of a number of individuals are resolved together, thus providing the class members with both consistency and efficiency.  In a class action lawsuit, one or more people, known as class representatives, sue on behalf of people who have similar claims.  All of the people with similar claims are referred to as a Class or Class Members.  One court resolves the issues for all Class Members, except for those Class Members who exclude themselves from the Class.  In this Action, the Court has preliminarily certified the Class for settlement purposes and appointed Lead Plaintiffs Oklahoma Police Pension and Retirement System, Sheet Metal Workers Local 19 Pension Fund, Local 353, I.B.E.W. Pension Fund, and Beaumont Firemen's Relief & Retirement Fund as the representatives of the Class and Lead Counsel as Class Counsel.

9.      The Court in charge of this case is the United States District Court for the Northern District of California, and the case is known as *Plumbers & Pipefitters Local Union #295 Pension Fund v. CareDx, Inc., et al.*, No. 3:22-cv-03023-TLT (N.D. Cal.).  The judge presiding over this case is the Honorable Trina L. Thompson, United States District Judge.  The entities who are suing are called Lead Plaintiffs, and those who are being sued are called defendants.  In this case, the Defendants are CareDx, Peter Maag, and Reginald Seeto.

10.     This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.  The purpose of this Notice is to inform you of this case, that it is a class action, and how you might be affected.  It also informs you of the terms of the proposed Settlement, and of a hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the proposed Settlement, the proposed Plan of Allocation, and the application by Lead Counsel for attorneys' fees and litigation expenses (the "Settlement Hearing").

11.     The Settlement Hearing will be held on December 2, 2025, at 2:00 p.m., before the Honorable Trina L. Thompson, at the United States District Court, Northern District of California, Philip Burton Federal Building & United States Courthouse, Courtroom 9 – 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, for the following purposes:

(a)     to determine whether the Class should finally be certified pursuant to Rule 23;

(b)     to determine whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate and should be approved by the Court;

(c)     to determine whether the Judgment as provided for under the Stipulation should be entered;

(d)     to determine whether the proposed Plan of Allocation for the net proceeds of the Settlement is fair and reasonable and should be approved by the Court;

(e)     to determine whether the application by Lead Counsel for an award of attorneys' fees and litigation expenses and awards to Lead Plaintiffs should be approved; and

(f)     to rule upon such other matters as the Court may deem appropriate.

12.     This Notice does not express any opinion by the Court concerning the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement. If the Court approves the Settlement, payments to Authorized Claimants will be made after any appeals are resolved, and after the completion of all claims processing. This process takes time. Please be patient.

## WHAT IS THIS CASE ABOUT?  WHAT HAS HAPPENED SO FAR?

13.     Lead Plaintiffs allege that during the period between April 30, 2020 and November 3, 2022, Defendants purportedly made materially false or misleading statements in violation of §10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, which caused the price of CareDx common stock to trade at allegedly inflated prices. Specifically, Lead Plaintiffs allege that Defendants purportedly made material misrepresentations and omissions, with scienter, in connection with the Company's compliance-with-law statements and statements about testing services revenue and historical RemoTraC data. Lead Plaintiffs allege that persons who purchased CareDx common stock during the Class Period allegedly suffered economic losses when the price of CareDx common stock declined after the Company reported declining testing revenue, among other things, on certain dates in 2021 and 2022. Defendants have denied and continue to deny each and all of the claims alleged by Lead Plaintiffs in the Action and have denied and continued to deny that they engaged in any wrongdoing whatsoever or that persons who purchased CareDx common stock during the relevant time period suffered any economic losses as a result of any purported wrongdoing by Defendants.

14.     The original securities class action complaint in the Action was filed in this District on May 23, 2022. ECF 1. Plaintiffs then moved for an order appointing them as Lead Plaintiffs in the case and approving their selection of lead counsel for the Class. ECF 31. The Court subsequently granted Plaintiffs' motion and appointed Plaintiffs as Lead Plaintiffs for the case and the firms of Robbins Geller Rudman & Dowd LLP and Saxena White P.A. as Lead Counsel. ECF 43.

15.     On November 28, 2022, Plaintiffs filed their first amended complaint ("FAC"). ECF 53. Defendants moved to dismiss and to strike portions of the FAC. ECF 58, 60. The Court struck some paragraphs from the FAC and dismissed the FAC entirely, with leave to amend. ECF 75.

16.     On June 28, 2023, Plaintiffs filed their second amended complaint ("SAC"). ECF 81. Defendants again moved to dismiss and to strike portions of the SAC. ECF 89, 91. The Court again struck certain paragraphs from the SAC and dismissed the SAC entirely, with leave to amend. ECF 123. However, the Court found that for their Section 10(b) and Rule 10b-5 claim, Plaintiffs had sufficiently alleged falsity as to statements regarding underwriting representations and statements regarding testing services revenue and historical RemoTraC data. *Id.* at 43. The Court also found that Plaintiffs had sufficiently alleged loss causation. *Id.*

17.     On November 1, 2024, Plaintiffs filed their corrected third amended complaint ("TAC"). ECF 133. Plaintiffs allege that Defendants CareDx, Dr. Maag, and Dr. Seeto violated: (1) Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder; and (2) Section 20(a) of the Exchange Act. *Id.*, ¶¶367-380. Defendants subsequently moved to dismiss the TAC. ECF 136. Plaintiffs timely filed an opposition, and Defendants timely filed a reply. ECF 138, 144. The Court heard oral argument on January 28, 2025. ECF 150. On February 18, 2025, the Court denied Defendants' motion to dismiss the TAC. ECF 154.

18.     The Parties thereafter exchanged Initial Disclosures pursuant to Fed. R. Civ. P. 26 and began formal fact discovery and negotiations regarding an ESI Protocol and Protective Order. Plaintiffs served two sets of Requests for Production of Documents, Interrogatories and several deposition subpoenas and notices, and Defendants served Interrogatories, Requests for Production of Documents and notices for the depositions of all Plaintiffs. During this time,

Defendants produced over 2.4 million pages of documents to Plaintiffs in response to Plaintiffs' First Requests for Production. Plaintiffs commenced reviewing and analyzing those materials.

19.    During the course of the Action, the Parties engaged a neutral, third-party mediator, the Hon. Gary A. Feess (Ret.), to aid in settlement negotiations. Judge Feess has extensive experience mediating complex class action litigations such as this Action. The Parties engaged in an in-person mediation session and numerous teleconferences with Judge Feess in an effort to resolve the Action throughout April 2025. The Parties also exchanged mediation briefs ahead of their in-person mediation session, setting forth their respective arguments concerning liability and damages and respective views of the merits of the Action. Though the Parties' initial mediation session on April 1, 2025 was unsuccessful in resolving the case, the Parties continued to have telephonic and email exchanges with Judge Feess regarding a potential resolution.

20.    On April 21, 2025, Judge Feess issued a mediator's proposal to resolve the Action for $20,250,000, which the Settling Parties accepted as an agreement in principle.

21.    On July 23, 2025, the Court preliminarily approved the Settlement, authorized this Notice to be disseminated to potential Class Members, provisionally certified the Class, and scheduled the Settlement Hearing to consider, among other things, whether to grant final approval of the Settlement.

## HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENT?

22.    If you are a member of the Class, you are subject to the Settlement unless you timely request to be excluded. The Class consists of all persons or entities who purchased CareDx, Inc. common stock between May 1, 2020 and November 3, 2022, inclusive, and were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded from the Class are those persons and entities who timely and validly request exclusion from the Class pursuant to this Notice.

RECEIPT OF THIS NOTICE OR POSTCARD NOTICE DOES NOT NECESSARILY MEAN THAT YOU ARE A CLASS MEMBER OR THAT YOU ARE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENT. IF YOU WISH TO BE POTENTIALLY ELIGIBLE TO RECEIVE A DISTRIBUTION OF THE SETTLEMENT PROCEEDS, YOU MUST COMPLETE, SIGN, AND SUBMIT THE CLAIM FORM TO BE RECEIVED NO LATER THAN NOVEMBER 12, 2025. YOU MAY ALSO SUBMIT A CLAIM FORM ONLINE AT WWW.CAREDXSECURITIESLITIGATION.COM BY NOVEMBER 12, 2025.

## WHAT ARE LEAD PLAINTIFFS' REASONS FOR THE SETTLEMENT?

23.    Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit. Lead Plaintiffs and Lead Counsel recognize, however, the expense and length of continued proceedings necessary to pursue their claims against Defendants through trial and appeals, as well as the difficulties in establishing liability and damages. Lead Plaintiffs and Lead Counsel have considered the amount of the Settlement, as well as the uncertain outcome and risk in complex lawsuits like this one. Such risks include, in particular, the risk that the anticipated motion(s) for summary judgment and challenges to Lead Plaintiffs' experts could be granted and the risk, among others, that Lead Plaintiffs could be unsuccessful in proving that Defendants' alleged misstatements were materially false and misleading, made with scienter (that is, the requisite state of mind), or caused compensable damages to the Class.

24.    In light of the amount of the Settlement and the immediacy of recovery to the Class, Lead Plaintiffs and Lead Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Class. Lead Plaintiffs and Lead Counsel believe that the Settlement provides a substantial benefit now, namely $20.25 million in cash (less the various deductions described in this Notice), as compared to the risk that the claims would produce a smaller recovery, or no recovery after resolution of Plaintiffs' motion for class certification, Defendants' anticipated summary judgment motion(s), trial and appeals, possibly years in the future. Moreover, Lead Plaintiffs and Lead Counsel considered CareDx's current financial condition and limited available resources to fund a settlement, including CareDx's finite available D&O insurance policies. Further litigation, given its likely length and intensity, would have rapidly depleted these insurance policies and Lead Plaintiffs and Lead Counsel believe there was a very real risk (if not a virtual certainty) that the Class would have recovered less than the $20.25 million settlement amount, or nothing at all.

25.    Defendants have denied and continue to deny each and all of the claims alleged by Lead Plaintiffs in the Action. Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising

out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Action. Defendants also have denied and continue to deny, among other things, the allegations that Lead Plaintiffs or the Class have suffered any damage, and that Lead Plaintiffs or the Class were harmed by the conduct alleged in the Action.

## WHAT MIGHT HAPPEN IF THERE WERE NO SETTLEMENT?

26. If there were no Settlement and Lead Plaintiffs failed to establish any essential legal or factual element of the alleged claims, neither Lead Plaintiffs nor the Class would recover anything from Defendants. Also, if Defendants were successful in proving any of their defenses, the Class likely would recover substantially less than the amount provided in the Settlement, or nothing at all. Furthermore, even if Lead Plaintiffs successfully continued litigation (including at summary judgment, at trial, or on appeal), given CareDx's limited available resources to fund any such recovery, there was a significant risk that the Action would produce a smaller, or no, recovery.

## HOW MUCH WILL MY PAYMENT BE?

27. Defendants have agreed to cause to be paid $20,250,000.00 in cash into escrow for the benefit of the Class. At this time, it is not possible to make any determination as to how much individual Class Members may receive from the Settlement. Lead Plaintiffs have proposed a plan for allocating the Net Settlement Fund to those Class Members who timely submit valid Proofs of Claim. The Plan of Allocation proposed by Lead Plaintiffs is set forth below, and additional information is available on the case-specific website, www.CareDxSecuritiesLitigation.com.

28. The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the claim of any member of the Class.

29. The Plan of Allocation set forth below is the proposed plan submitted by Lead Plaintiffs and Lead Counsel for the Court's approval. The Court may approve this plan as proposed or it may modify it without further notice to the Class.

30. Each claimant shall be deemed to have submitted to the jurisdiction of the United States District Court for the Northern District of California, with respect to their, his, her, or its Claim Form.

31. Persons and entities that request to exclude themselves from the Class will not be eligible to receive a distribution from the Net Settlement Fund and shall not submit a Claim Form.

## PLAN OF ALLOCATION

32. The Settlement Amount of $20.25 million and any interest earned thereon shall be the "Settlement Fund." The Settlement Fund, less all taxes, tax expenses, notice and administration expenses, approved attorneys' fees and expenses, and any other fees or expenses approved by the Court is the "Net Settlement Fund." The Net Settlement Fund shall be distributed to Class Members who submit timely and valid Proofs of Claim to the Claims Administrator ("Authorized Claimants").

33. The Plan of Allocation set forth herein is the plan that is being proposed by Lead Plaintiffs and their counsel to the Court for approval. The Court may approve this Plan of Allocation or modify it without additional notice to the Class. Any order modifying the Plan of Allocation will be posted on the Settlement website at: www.CareDxSecuritiesLitigation.com.

34. The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund among Authorized Claimants who suffered economic losses as a proximate result of the alleged wrongdoing. The calculations made pursuant to the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Class Members might have been able to recover after a trial. Nor are the calculations pursuant to the Plan of Allocation intended to be estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement. The computations under the Plan of Allocation are only a method to weigh the claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund.

35. The Plan of Allocation was created with the assistance of a consulting damages expert and reflects the assumption that Defendants' alleged false and misleading statements and material omissions proximately caused the price of CareDx common stock to be artificially inflated throughout the Class Period. In calculating the estimated artificial

inflation allegedly caused by Defendants' alleged misrepresentations and omissions, Lead Plaintiffs' damages expert considered price changes in CareDx common stock in reaction to certain public announcements allegedly revealing the truth concerning Defendants' alleged misrepresentations and material omissions, adjusting for price changes that were attributable to market or industry forces.

36.    In order to have recoverable damages, the disclosure of the allegedly misrepresented information must be the cause of the decline in the price of CareDx common stock.  In this case, Lead Plaintiffs allege that Defendants made false statements and omitted material facts during the period between April 30, 2020 through November 3, 2022, which had the effect of artificially inflating the price of CareDx common stock.  Lead Plaintiffs further allege that relevant information was released to the market on October 28, 2021 (after market close), January 10, 2022 (before market open), May 5, 2022 (after market close), May 23, 2022 (before market open), September 1, 2022 (after market close), and November 3, 2022 (after market close), which removed the artificial inflation from the price of CareDx common stock on October 29, 2021, May 6, 2022, May 23, 2022, September 2, 2022, and November 4, 2022, while also causing artificial inflation to increase on January 10, 2022.

37.    Recognized Loss Amounts are based primarily on the difference in the amount of alleged artificial inflation in the prices of CareDx common stock at the time of purchase or acquisition and at the time of sale, or the difference between the actual purchase price and sale price.  Accordingly, in order to have a Recognized Loss under the Plan of Allocation, a Class Member who or which purchased or otherwise acquired CareDx common stock during the Class Period must have held those shares through at least October 29, 2021.

## CALCULATION OF RECOGNIZED LOSS AMOUNTS

38.    Based on the formula stated below, a "Recognized Loss Amount" will be calculated for each purchase or acquisition of publicly traded CareDx common stock made in the United States that is listed on the Claim Form and for which adequate documentation is provided.  If a Recognized Loss Amount calculates to a negative number or zero under the formula below, that number will be zero.

39.    For each share of publicly traded CareDx common stock purchased or otherwise acquired in the United States during the Class Period (*i.e.*, during the period from May 1, 2020 through and including the close of trading on November 3, 2022), and:

i.    sold before October 29, 2021, the Recognized Loss Amount will be $0.00.

ii.    sold from October 29, 2021 through the close of trading on November 3, 2022, the Recognized Loss Amount will be ***the least of:*** (i) the amount of artificial inflation per share on the date of purchase/acquisition, as shown in Table A below minus the amount of artificial inflation per share on the date of sale as shown in Table A below; (ii) the purchase/acquisition price minus the sale price.

iii.    sold from November 4, 2022 through and including the close of trading on February 1, 2023, the Recognized Loss Amount will be ***the least of:*** (i) the amount of artificial inflation per share on the date of purchase/acquisition, as shown in Table A below; (ii) the purchase/acquisition price minus the average closing price between November 4, 2022 and the date of sale as stated in Table B below; or (iii) the purchase/acquisition price minus the sale price.

iv.    held as of the close of trading on February 1, 2023, the Recognized Loss Amount will be ***the lesser of:*** (i) the amount of artificial inflation per share on the date of purchase/acquisition as shown in Table A; or (ii) the purchase/acquisition price minus $13.21.[3]

---

[3]    Pursuant to Section 21D(e)(1) of the Exchange Act, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." Consistent with the requirements of the Exchange Act, Recognized Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of CareDx common stock during the "90-day look-back period," November 4, 2022 through and including February 1, 2023.  The mean (average) closing price for CareDx common stock during this 90-day look-back period was $13.21.

## ADDITIONAL PROVISIONS

40.    **Calculation of Claimant's "Recognized Claim"**:  A Claimant's "Recognized Claim" will be the sum of his, her, or its Recognized Loss Amounts as calculated above with respect to CareDx common stock.

41.    **FIFO Matching**: If a Class Member made more than one purchase/acquisition or sale of CareDx common stock during the Class Period, all purchases/acquisitions and sales will be matched on a First In, First Out ("FIFO") basis. Class Period sales will be matched first against any holdings at the beginning of the Class Period, and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Class Period.

42.    **"Purchase/Sale" Dates**:  Purchases or acquisitions and sales of CareDx common stock will be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.  The receipt or grant by gift, inheritance, or operation of law of CareDx common stock during the Class Period shall not be deemed a purchase, acquisition or sale of CareDx common stock for the calculation of a claimant's Recognized Loss Amount, nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition/sale of CareDx common stock unless (i) the donor or decedent purchased or otherwise acquired or sold CareDx common stock during the Class Period; (ii) the instrument of gift or assignment specifically provides that it is intended to transfer such rights; and (iii) no Claim was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such shares of CareDx common stock.

43.    **Short Sales**:  The date of covering a "short sale" is deemed to be the date of purchase or acquisition of the CareDx common stock.  The date of a "short sale" is deemed to be the date of sale of the CareDx common stock.  In accordance with the Plan of Allocation, however, the Recognized Loss Amount on "short sales" and the purchases covering "short sales" is zero.

44.    In the event that a claimant has an opening short position in CareDx common stock, the earliest purchases or acquisitions of CareDx common stock during the Class Period will be matched against such opening short position and not be entitled to a recovery until that short position is fully covered.

45.    **Common Stock Purchased/Sold Through the Exercise of Options**: With respect to CareDx common stock purchased or sold through the exercise of an option, the purchase/sale date of the common stock is the exercise date of the option and the purchase/sale price is the exercise price of the option.

46.    **Determination of Distribution Amount**: If the sum total of Recognized Claims of all Authorized Claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund.  The *pro rata* share will be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

47.    If the Net Settlement Fund exceeds the sum total amount of the Recognized Claims of all Authorized Claimants entitled to receive payment out of the Net Settlement Fund, the excess amount in the Net Settlement Fund will be distributed *pro rata* to all Authorized Claimants entitled to receive payment.

48.    If an Authorized Claimant's Distribution Amount calculates to less than $10.00, no distribution will be made to that Authorized Claimant.

49.    After the initial distribution of the Net Settlement Fund, the Claims Administrator will make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks.  If there is any balance remaining in the Net Settlement Fund after a reasonable amount of time following the date of the initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible, reallocate such balance among Authorized Claimants who negotiated the checks sent to them in the initial distribution and who would receive at least $10.00 in an equitable and economical fashion.  These reallocations shall be repeated until the balance remaining in the Net Settlement Fund is *de minimis* and such remaining balance shall then be donated to the Council of Institutional Investors.

50.    Payment pursuant to the Plan of Allocation, or such other plan of allocation as may be approved by the Court, will be conclusive against all Authorized Claimants.  No person shall have any claim against Lead Plaintiffs, Lead Counsel, Lead Plaintiffs' damages expert, Lead Plaintiffs' consulting experts, Defendants, Defendants' Counsel, or any of the other Released Parties, or the Claims Administrator or other agent designated by Lead Counsel arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or further Orders of the Court.  Lead Plaintiffs, the Defendants and their respective counsel, and all other Released Defendants Parties, shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement

Fund, the Plan of Allocation, the determination, administration, calculation, or payment of any Claim or nonperformance of the Claims Administrator, the payment or withholding of Taxes, or any losses incurred in connection therewith.

51.    The Plan of Allocation stated herein is the plan that is being proposed to the Court for its approval by Lead Plaintiffs after consultation with their damages expert. The Court may approve this plan as proposed or it may modify the Plan of Allocation without further notice to the Class. Any Orders regarding any modification of the Plan of Allocation will be posted on the case website, www.CareDxSecuritiesLitigation.com.

## TABLE A

**Estimated Artificial Inflation with Respect to CareDx Common Stock Transactions**
**May 1, 2020 Through and Including November 3, 2022**

| Date Range of Transaction | Artificial Inflation Per Share |
|---|---|
| 5/1/2020 - 10/28/2021 | $19.65 |
| 10/29/2021 - 1/9/2022 | $0.42 |
| 1/10/2022 - 5/5/2022 | $7.42 |
| 5/6/2022 - 5/22/2022 | $5.57 |
| 5/23/2022 - 9/1/2022 | $3.08 |
| 9/2/2022 - 11/3/2022 | $1.81 |
| 11/4/2022 - Present | $0.00 |

**TABLE B**
**90-Day Look-back Table for CareDx Common Stock**
**Closing Price and Average Closing Price**
**November 4, 2022 through February 1, 2023**

| Date | Closing Price | Average Closing Price Between November 04, 2022 and Date Shown | Date | Closing Price | Average Closing Price Between November 04, 2022 and Date Shown |
|---|---|---|---|---|---|
| 11/4/2022 | $16.02 | $16.02 | 12/19/2022 | $11.54 | $13.33 |
| 11/7/2022 | $15.86 | $15.94 | 12/20/2022 | $11.61 | $13.27 |
| 11/8/2022 | $16.42 | $16.10 | 12/21/2022 | $11.44 | $13.22 |
| 11/9/2022 | $14.84 | $15.79 | 12/22/2022 | $11.67 | $13.17 |
| 11/10/2022 | $13.10 | $15.25 | 12/23/2022 | $11.26 | $13.12 |
| 11/11/2022 | $15.34 | $15.26 | 12/27/2022 | $10.88 | $13.06 |
| 11/14/2022 | $14.20 | $15.11 | 12/28/2022 | $11.09 | $13.00 |
| 11/15/2022 | $13.81 | $14.95 | 12/29/2022 | $11.42 | $12.96 |
| 11/16/2022 | $13.64 | $14.80 | 12/30/2022 | $11.41 | $12.92 |
| 11/17/2022 | $14.56 | $14.78 | 1/3/2023 | $11.10 | $12.88 |
| 11/18/2022 | $12.85 | $14.60 | 1/4/2023 | $11.44 | $12.84 |
| 11/21/2022 | $12.46 | $14.43 | 1/5/2023 | $11.07 | $12.80 |
| 11/22/2022 | $12.42 | $14.27 | 1/6/2023 | $11.24 | $12.76 |
| 11/23/2022 | $12.71 | $14.16 | 1/9/2023 | $11.87 | $12.74 |
| 11/25/2022 | $12.79 | $14.07 | 1/10/2023 | $12.64 | $12.74 |
| 11/28/2022 | $12.39 | $13.96 | 1/11/2023 | $13.68 | $12.76 |
| 11/29/2022 | $12.06 | $13.85 | 1/12/2023 | $13.90 | $12.79 |
| 11/30/2022 | $12.95 | $13.80 | 1/13/2023 | $14.24 | $12.82 |
| 12/1/2022 | $13.18 | $13.77 | 1/17/2023 | $14.19 | $12.84 |
| 12/2/2022 | $13.22 | $13.74 | 1/18/2023 | $14.14 | $12.87 |
| 12/5/2022 | $12.53 | $13.68 | 1/19/2023 | $13.69 | $12.89 |
| 12/6/2022 | $13.19 | $13.66 | 1/20/2023 | $14.33 | $12.91 |
| 12/7/2022 | $13.06 | $13.63 | 1/23/2023 | $15.05 | $12.95 |
| 12/8/2022 | $12.71 | $13.60 | 1/24/2023 | $15.16 | $12.99 |
| 12/9/2022 | $12.29 | $13.54 | 1/25/2023 | $15.03 | $13.03 |
| 12/12/2022 | $12.65 | $13.51 | 1/26/2023 | $15.20 | $13.07 |
| 12/13/2022 | $12.57 | $13.47 | 1/27/2023 | $15.28 | $13.11 |
| 12/14/2022 | $12.85 | $13.45 | 1/30/2023 | $14.65 | $13.14 |
| 12/15/2022 | $12.55 | $13.42 | 1/31/2023 | $14.94 | $13.17 |
| 12/16/2022 | $12.42 | $13.39 | 2/1/2023 | $15.66 | $13.21 |

| **HOW ARE CLASS MEMBERS AFFECTED BY THE ACTION AND THE SETTLEMENT?** |
|---|

52.    If the Settlement is approved, the Court will enter a judgment (the "Judgment").  The Judgment will dismiss with prejudice the claims against Defendants and will provide that Lead Plaintiffs, and all other Released Plaintiffs Parties (as defined in ¶56 below) shall have waived, released, discharged, and relinquished each and every one of the Released Claims (as defined in ¶53 below), including Unknown Claims (as defined in ¶57 below), against each and every one of the Released Defendants Parties (as defined in ¶55 below) and shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Defendants Parties, whether or not they execute and deliver the Claim Form or share in the Settlement Fund.  Claims to enforce the terms of the Settlement are not released.

53.    "Released Claims" means all claims (including, but not limited to, Unknown Claims), demands, losses, rights, and causes of action of any nature whatsoever, that have been or could have been asserted in the Action or could in the future be asserted in any forum, whether foreign or domestic, whether arising under federal, state, common or foreign law, by Plaintiffs, any member of the Class, or their successors, assigns, executors, administrators, representatives, attorneys and agents, whether brought directly or indirectly against any of the Released Defendants Parties, which arise out of, are based on, or relate in any way to, directly or indirectly: (i) any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to, in the Action, or which could have been alleged in the Action; and (ii) the purchase or acquisition of CareDx common stock by any member of the Class during the Class Period.  For the avoidance of doubt, "Released Claims" does not include claims to enforce the Settlement.

54.    "Released Defendants' Claims" means all claims (including, but not limited to, Unknown Claims), demands, losses, rights, and causes of action of any nature whatsoever, that have been or could have been asserted in the Action by the Released Defendants Parties or any of them against any of the Released Plaintiffs Parties, which arise out of or relate in any way to the institution, prosecution, assertion, settlement, or resolution of the Action (except for claims to enforce the Settlement).  Excluded from this definition are any claims by the Released Defendants Parties against Dr. Michael Olymbios, the relator in the action captioned *United States of America, ex. rel. Olymbios v. CareDx, Inc., et al.*, No. 21-CV-00774 (E.D.N.Y.).

55.    "Released Defendants Parties" means: (i) each and all of the Defendants; (ii) each of their respective family members (for individuals) and past, present, and future direct and indirect parent entities, subsidiaries, related entities, and affiliates; and (iii) for any of the entities listed in parts (i) and (ii), their respective past and present general partners, limited partners, principals, shareholders, investors (however denominated), joint ventures, members, officers, directors, managers, managing directors, supervisors, employees, contractors, consultants, auditors, accountants, financial advisors, professional advisors, investment bankers, representatives, insurers, trustees, trustors, agents, attorneys, professionals, predecessors, successors, assigns, heirs, executors, administrators, and any controlling person thereof.

56.    "Released Plaintiffs Parties" means: (i) each and all of the Plaintiffs and members of the Class; (ii) each of their respective family members, and their respective past, present, and future general partners, limited partners, principals, shareholders, investors (however denominated), joint ventures, members, officers, directors, managers, managing directors, supervisors, employees, contractors, consultants, auditors, accountants, financial advisors, professional advisors, investment bankers, representatives, insurers, trustees, trustors, agents, attorneys, professionals, predecessors, successors, assigns, heirs, executors, administrators, and any controlling person thereof; and (iii) Lead Counsel and other counsel representing Plaintiffs and the Class.  Excluded from this definition is Dr. Michael Olymbios, the relator in the action captioned *United States of America, ex. rel. Olymbios v. CareDx, Inc., et al.*, No. 21-CV-00774 (E.D.N.Y.).

57.    "Unknown Claims" means any and all Released Claims that Lead Plaintiffs or any other Class Members do not know or suspect to exist in their favor at the time of the release of the Released Defendants Parties, and any and all Released Defendants' Claims that any Defendant does not know or suspect to exist in his, her or its favor, which if known by him, her, or it, might have affected his, her, or its decision(s) to enter into this Settlement, execute the Stipulation, and agree to all the various releases set forth herein, or might have affected his, her, or its decision(s) not to object to this Settlement or not exclude himself, herself, or itself from the Class.  Unknown Claims include, without limitation, those claims in which some or all of the facts composing the claim may be unsuspected, undisclosed, concealed, or hidden.  With respect to any and all Released Claims and Released Defendants' Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiffs and Class Members (as regards the Released Claims) and the Defendants (as regards the Released Defendants' Claims) shall expressly waive and relinquish, and each Class Member shall be deemed to have and by operation of law and of the Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, any and all provisions, rights, and benefits conferred by California Civil Code §1542, or any law of any state or territory

of the United States, or principle of common law or of international or foreign law, which is similar, comparable, or equivalent to Cal. Civ. Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Settling Parties may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims or Released Defendants' Claims, but such person or entity shall expressly settle and release, and each Member of the Class, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims and Released Defendants' Claims, known or unknown, suspected or unsuspected, contingent or non- contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Lead Plaintiffs and Defendants acknowledge and the members of the Class by operation of the Judgment shall be deemed to have acknowledged that the waivers contained in this paragraph, and the inclusion of "Unknown Claims" in the definition of Released Claims and Released Defendants' Claims, were separately bargained for and are material elements of the Settlement.

## WHAT PAYMENT ARE THE ATTORNEYS FOR THE CLASS SEEKING?  HOW WILL THE LAWYERS BE PAID?

58.	Lead Counsel has not received any payment for its services in pursuing claims against Defendants on behalf of the Class, nor has Lead Counsel been paid for its expenses.  Before final approval of the Settlement, Lead Counsel intends to apply to the Court for an award of attorneys' fees from the Settlement Fund of no more than 30% of the Settlement Amount, plus interest.  At the same time, Lead Counsel also intends to apply for payment from the Settlement Fund for counsel's litigation expenses in a total amount not to exceed $450,000, plus interest.  The Court will determine the amount of the award of fees and expenses.  Such sums as may be approved by the Court will be paid from the Settlement Fund. Class Members are not personally liable for any such fees or expenses.

## HOW DO I PARTICIPATE IN THE SETTLEMENT? WHAT DO I NEED TO DO?

59.	To be eligible for a payment from the proceeds of the Settlement, you must be a member of the Class, and you must timely complete and return the Claim Form with adequate supporting documentation postmarked or submitted online no later than November 12, 2025.  You may go to the website maintained by the Claims Administrator for the Settlement to download a Claim Form.  The website is www.CareDxSecuritiesLitigation.com.  You may also request a Claim Form by calling toll-free 1-877-423-0707.  Those who submit a valid and timely request to exclude themselves from the Class, and those who do not submit timely and valid Claim Forms with adequate supporting documentation, will not be entitled to share in the proceeds of the Settlement unless otherwise ordered by the Court.  Please retain all original records of your ownership of, or transactions in the shares, as they may be needed to document your claim.

## WHAT IF I DO NOT WANT TO BE A MEMBER OF THE CLASS?  HOW DO I EXCLUDE MYSELF?

60.	To exclude yourself from the Class, you must send a letter by First-Class Mail stating that you "request exclusion from the Class in the *CareDx Securities Litigation*."  To be valid, your letter must include the number of shares of CareDx common stock purchased/acquired and sold during the Class Period and the dates and prices of each purchase/acquisition and sale, and the number of shares held at the beginning of the Class Period.  In addition, you must include your name, address, telephone number, and your signature.  You must submit your exclusion request so that it is **received no later than October 14, 2025** to:

*CareDx Securities Litigation*
c/o A.B. Data, Ltd.
Claims Administrator
EXCLUSIONS
P.O. Box 173001
Milwaukee, WI 53217

61.    A request for exclusion shall not be effective unless it provides all the information called for in this Notice and is received within the time stated above, or is otherwise accepted by the Court.  If you ask to be excluded, you will not get any payment from the Settlement, and you cannot object to the Settlement.  If you exclude yourself, you may not send in a Claim Form to ask for any money.  You will not be legally bound by anything that happens in this lawsuit, and you may be able to sue the Defendants and the other Released Defendants Parties about the Released Claims in the future.

62.    Unless you exclude yourself, you give up any rights you may potentially have to sue the Defendants and the other Released Defendants Parties for any and all Released Claims.  If you have a pending lawsuit against the Released Defendants Parties, speak to your lawyer in that case immediately.  You must exclude yourself from the Class in this Action to continue your own lawsuit.  Remember, the exclusion deadline is October 14, 2025.

---

**WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?
DO I HAVE TO COME TO THE HEARING?
MAY I SPEAK AT THE HEARING IF I DO NOT LIKE THE SETTLEMENT?**

---

63.    **If you do not wish to object in person to the proposed Settlement, the proposed Plan of Allocation, and/or the application for attorneys' fees and litigation expenses, you do not need to attend the Settlement Hearing. You can object to or participate in the Settlement without attending the Settlement Hearing.**

64.    The Settlement Hearing will be held on December 2, 2025, at 2:00 p.m., before the Honorable Trina L. Thompson, at the United States District Court, Northern District of California, Philip Burton Federal Building & United States Courthouse, Courtroom 9 – 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102.  The Court reserves the right to approve the Settlement or the Plan of Allocation, Lead Counsel's motion for an award of attorneys' fees and expenses, and/or any other matter related to the Settlement at or after the Settlement Hearing without further notice to the members of the Class.

65.    Any Class Member who has not submitted a request for exclusion may object to the Settlement, the Plan of Allocation, or Lead Counsel's request for an award of attorneys' fees and litigation expenses.[4]  You can ask the Court to deny approval by filing an objection.  You cannot ask the Court to order a different settlement; the Court can only approve or reject the Settlement.  If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

66.    Any objection to the proposed Settlement must be in writing.  If you file a timely written objection, you may, but are not required to, appear at the Settlement Hearing, either in person or through your own attorney.  If you appear through your own attorney, you are responsible for hiring and paying that attorney.  All written objections and supporting papers must: (i) clearly identify the case name and number (*Plumbers & Pipefitters Local Union #295 Pension Fund v. CareDx, Inc., et al.*, No. 3:22-cv-03023-TLT (N.D. Cal.)); (ii) be submitted to the Court either by mailing them to the Clerk of the Court, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, or by filing them electronically or in person at any location of the United States District Court for the Northern District of California; and (iii) be filed or received on or before October 14, 2025.

67.    The notice of objection must include documentation establishing the objecting Person's membership in the Class, including the number of shares of CareDx common stock that the objecting Person: (i) owned as of the opening of trading on May 1, 2020; and (ii) purchased and/or sold during the Class Period, as well as the dates and prices for each such purchase and sale, and contain a statement of reasons for the objection, copies of any papers, briefs, or other documents upon which the objection is based, a statement of whether the objector intends to appear at the Settlement Hearing, and the objector's signature, even if represented by counsel.  The objection must state whether it applies only to the objector, to a specific subset of the Class, or to the entire Class.  In addition, the objector must identify all class action settlements to which the objector and his, her, or its counsel have previously objected.  Documentation establishing membership in the Class must consist of copies of brokerage confirmation slips or monthly brokerage account statements, or an authorized statement from the objector's broker containing the transactional and holding information found in a broker confirmation slip or account statement.  Objectors who desire to present evidence at the Settlement Hearing in support of their objection

---

[4]    Lead Plaintiffs' initial motion papers in support of these matters will be filed with the Court on or before September 30, 2025.

must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and any exhibits they intend to introduce into evidence at the hearing.

68.    You may not object to the Settlement or any aspect of it, if you exclude yourself from the Class.

69.    You may file a written objection without having to appear at the Settlement Hearing. You may not appear at the Settlement Hearing to present your objection, however, unless you have first filed a written objection in accordance with the procedures described above, unless the Court orders otherwise.

70.    You are not required to hire an attorney to represent you in making written objections or in appearing at the Settlement Hearing. If you decide to hire an attorney, which will be at your own expense, he or she must file a notice of appearance with the Court so that the notice is received on or before October 14, 2025.

71.    The Settlement Hearing may be adjourned by the Court without further written notice to the Class. Class Members should check the Court's PACER site or the Settlement website, www.CareDxSecuritiesLitigation.com. Any updates regarding the Settlement Hearing, including any changes to the date or time of the hearing, or updates regarding in-person, telephonic, or video conference appearances at the hearing, will be posted to the Settlement website.

**Unless the Court orders otherwise, any Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement, the proposed Plan of Allocation, or Lead Counsel's request for an award of attorneys' fees and litigation expenses. Class Members do not need to appear at the hearing or take any other action to indicate their approval.**

## WHAT IF I BOUGHT SHARES ON SOMEONE ELSE'S BEHALF?

72.    If you purchased or otherwise acquired CareDx common stock during the Class Period for the beneficial interest of persons or organizations other than yourself, you must either: (i) request within seven (7) calendar days of receipt of the Postcard Notice sufficient copies of the Postcard Notice from the Claims Administrator to forward to all such beneficial owners; or (ii) send a list of the names and addresses (including email addresses if available) of such beneficial owners to the Claims Administrator within seven (7) calendar days after receipt of the Postcard Notice. If a nominee elects to send the Postcard Notice to beneficial owners, such nominee is directed to email or mail (where an email is unavailable) the Postcard Notice within seven (7) calendar days of receipt of those documents from the Claims Administrator, and upon such emailing or mailing, the nominee shall send a statement to the Claims Administrator confirming that the emailing or mailing was made as directed, and the nominee shall retain the list of names and addresses for use in connection with any possible future notice to the Class. Upon full compliance with these instructions, including the timely emailing or mailing of the Postcard Notice to beneficial owners, such nominees may seek reimbursement of their reasonable expenses actually incurred in complying with these instructions by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought and reflecting compliance with these instructions, including timely emailing or mailing of the Postcard Notice, if the nominee elected or elects to do so. Reasonable out of-pocket expenses actually incurred in connection with the foregoing includes up to $0.03 for providing names, addresses, and email addresses to the Claims Administrator per record; up to a maximum of $0.03 per Postcard Notice mailed by you, plus postage at the rate used by the Claims Administrator; or $0.03 per notice sent by email. Such properly documented expenses incurred by nominees in compliance with the terms of these instructions will be paid from the Settlement Fund. Copies of this Notice may also be obtained by calling toll-free 1-877-423-0707, and may be downloaded from the Settlement website, www.CareDxSecuritiesLitigation.com.

| CAN I SEE THE COURT FILE? |
| :---: |
| **WHOM SHOULD I CONTACT IF I HAVE QUESTIONS?** |

73.    This Notice contains only a summary of the terms of the proposed Settlement.  More detailed information about the matters involved in the Action is available at www.CareDxSecuritiesLitigation.com, including, among other documents, copies of the Stipulation and Claim Form.  This Notice summarizes the proposed Settlement.  For the precise terms and conditions of the Settlement, please see the Stipulation available at www.CareDxSecuritiesLitigation.com, or by contacting the Claims Administrator at info@CareDxSecuritiesLitigation.com.  You may also access the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays. All inquiries concerning this Notice or the Claim Form should be directed to:

*CareDx Securities Litigation*
c/o A.B. Data, Ltd.
Claims Administrator
P.O. Box 173096
Milwaukee, WI 53217
1-877-423-0707

**-or-**

Jason C. Davis, Esq.
Robbins Geller Rudman & Dowd LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104

Lester R. Hooker
Saxena White P.A.
7777 Glades Road, Suite 300
Boca Raton, FL 33434

*Lead Counsel*

**DO NOT CALL OR WRITE THE COURT, DEFENDANTS, DEFENDANTS' COUNSEL, OR THE OFFICE OF THE CLERK OF COURT REGARDING THIS NOTICE.**

Dated: July 23, 2025                                        By Order of the Court
                                                                         United States District Court
                                                                         Northern District of California

# EXHIBIT D

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PLUMBERS & PIPEFITTERS LOCAL UNION #295 PENSION FUND, Individually and on Behalf of All Others Similarly Situated, | ) Case No. 3:22-cv-03023-TLT (Securities Case) ) ) <u>CLASS ACTION</u> ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| CAREDX, INC., et al., | ) ) |
| Defendants. | ) ) ) |

## <u>PROOF OF CLAIM AND RELEASE FORM</u>

To be eligible to receive a share of the Net Settlement Fund in connection with the Settlement of this Action, you must complete and sign this Proof of Claim and Release Form ("Claim Form") and mail it by first-class mail to the below address, *received* **no later than November 12, 2025 or submit it online at the below website on or before November 12, 2025**.[1]

Failure to submit your Claim Form by the date specified will subject your claim to rejection and may preclude you from being eligible to receive any money in connection with the Settlement.

**Do not mail or deliver your Claim Form to the Court, the parties to the Action, or their counsel.  Submit your Claim Form only to the Claims Administrator at the address set forth below**.

*CareDx Securities Litigation*
**c/o A.B. Data, Ltd.**
**P.O. Box 173096**
**Milwaukee, WI 53217**
**Toll-Free Number:  1-877-423-0707**

**Email:  info@CareDxSecuritiesLitigation.com**
**Website:  www.CareDxSecuritiesLitigation.com**

---

[1]    This Claim Form incorporates by reference the definitions in the Stipulation of Settlement ("Stipulation"), which can be obtained at www.CareDxSecuritiesLitigation.com

## PART I – INSTRUCTIONS

### A.    GENERAL INSTRUCTIONS

1.    This Claim Form is directed to all persons who purchased CareDx, Inc. ("CareDx" or the "Company") common stock during the period from May 1, 2020 through November 3, 2022, inclusive (the "Class Period").[2]  To recover as a member of the Class based on your claims in the action entitled *Plumbers & Pipefitters Local Union #295 Pension Fund v. CareDx, Inc., et al.*, No. 3:22-cv-03023-TLT (N.D. Cal.) (the "Action"), you must complete and, on page 7 hereof, sign this Proof of Claim and Release Form ("Claim Form").  If you fail to submit a properly addressed (as set forth in paragraph 3 below) Claim Form, your claim may be rejected, and you may be precluded from any recovery from the Net Settlement Fund created in connection with the proposed settlement of the Action.

2.    Submission of this Claim Form, however, does not assure that you will share in the settlement proceeds.

3.    THE COURT-APPOINTED CLAIMS ADMINISTRATOR IN THIS CASE MUST RECEIVE YOUR COMPLETED AND SIGNED CLAIM FORM, ACCOMPANIED BY COPIES OF THE DOCUMENTS REQUESTED HEREIN, AT THE FOLLOWING ADDRESS OR WEBSITE:

*CareDx Securities Litigation*
c/o A.B. Data, Ltd.
Claims Administrator
P.O. Box 173096
Milwaukee, WI 53217
www.CareDxSecuritiesLitigation.com

YOUR CLAIM FORM MUST BE SUBMITTED ONLINE OR RECEIVED BY MAIL NO LATER THAN NOVEMBER 12, 2025.[3]  If you are NOT a member of the Class, as defined below and in the Notice of: (i) Pendency of Class Action, Certification of Class, and Proposed Settlement and Plan of Allocation; (ii) Settlement Fairness Hearing; and (iii) Motion for an Award of Attorneys' Fees and Litigation Expenses (the "Notice"), DO NOT submit a Claim Form.

4.    If you are a member of the Class and you do not timely and validly request exclusion from the Class, you are bound by the terms of any judgment entered in the Action, including the releases provided therein, WHETHER OR NOT YOU SUBMIT A CLAIM FORM.

5.    It is important that you completely read and understand the Notice that can be found on the Settlement website, www.CareDxSecuritiesLitigation.com, including the Plan of Allocation of the Net Settlement Fund set forth in the Notice.  The Notice describes the proposed Settlement, how Class Members are affected by the Settlement, and the manner in which the Net Settlement Fund will be distributed if the Settlement and Plan of Allocation are approved by the Court.  The Notice also contains the definitions of many of the defined terms (which are indicated by initial capital letters) used in this Claim Form.  By signing and submitting this Claim Form, you will be certifying that you have read and that you understand the Notice, including the terms of the releases described therein and provided for herein.

---

[2]    Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.  Also excluded from the Class are those persons and entities who timely and validly request exclusion from the Class pursuant to the Notice.

[3]    Claim Forms that are legibly postmarked will be treated as received on the postmark date.  Please be advised that the U.S. Postal Service may not postmark mail which is not presented in person.

**B.      CLAIMANT IDENTIFICATION**

1.      If you purchased or otherwise acquired CareDx common stock during the Class Period and held the common stock in your name, you are the beneficial owner as well as the record owner.  If, however, you purchased or otherwise acquired CareDx common stock during the Class Period through a third party, such as a brokerage firm, you are the beneficial owner, and the third party is the record owner.

2.      Use Part II of this form entitled "Claimant Information" to identify each purchaser or acquirer of record ("nominee"), if different from the beneficial purchaser or acquirer of the CareDx common stock which forms the basis of this claim.  The complete name(s) of the beneficial owner(s) must be entered.  THIS CLAIM MUST BE FILED AND SIGNED BY THE ACTUAL BENEFICIAL PURCHASER(S) OR ACQUIRER(S), OR THE LEGAL REPRESENTATIVE OF SUCH PURCHASER(S) OR ACQUIRER(S) OF CAREDX COMMON STOCK UPON WHICH THIS CLAIM IS BASED.

3.      All joint purchasers or acquirers must sign this Claim Form and be identified in Part II.  Executors, administrators, guardians, conservators and trustees must complete and sign this Claim Form on behalf of persons represented by them and their authority must accompany this Claim Form and their titles or capacities must be stated.  The last four digits of the Social Security Number (or full Taxpayer Identification Number) and telephone number of the beneficial owner may be used in verifying the claim.  Failure to provide the foregoing information could delay verification of your claim or result in rejection of the claim.

4.      **One Claim Form should be submitted for each separate legal entity**.  Separate Claim Forms should be submitted for each separate legal entity (*e.g.*, a claim from joint owners should not include separate transactions of just one of the joint owners, and an individual should not combine his or her IRA transactions with transactions made solely in the individual's name).  Conversely, a single Claim Form should be submitted on behalf of one legal entity that includes all transactions made by that entity, no matter how many separate accounts that entity has (*e.g.*, a corporation with multiple brokerage accounts should include all transactions made in all accounts on one Claim Form).

5.      By submitting a signed Claim Form, you will be swearing that you:

(a)      own or owned the CareDx common stock you have listed in the Claim Form; or

(b)      are expressly authorized to act on behalf of the owner thereof.

**C.      CLAIM FORM**

1.      Use Part III of this form entitled "Schedule of Transactions in CareDx Common Stock" to supply all required details of your transaction(s) in CareDx common stock.  If you need more space or additional schedules, attach separate sheets giving all of the required information in substantially the same form.  Sign and print or type your name on each additional sheet.

2.      On the schedules, provide all of the requested information with respect to all of your purchases and all of your sales of CareDx common stock that took place at any time on or between and including May 1, 2020, through February 1, 2023, whether such transactions resulted in a profit or a loss.  Failure to report all such transactions may result in the rejection of your claim.  Also, list the number of shares of CareDx common stock held at the close of trading on April 30, 2020, November 3, 2022, and February 1, 2023.

3.      List each transaction separately and in chronological order, by trade date, beginning with the earliest.  You must accurately provide the month, day, and year of each transaction you list.

4.      You are required to submit genuine and sufficient documentation for all of your transactions in and holdings of CareDx common stock set forth in the Claim Form.  Documentation may consist of copies of brokerage confirmation slips or monthly brokerage account statements, or an authorized statement from your broker containing the transactional and holding information found in a broker confirmation slip or account statement.  THE PARTIES AND THE CLAIMS ADMINISTRATOR DO NOT INDEPENDENTLY HAVE INFORMATION ABOUT YOUR INVESTMENTS IN CAREDX COMMON STOCK.  IF SUCH DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN COPIES OF THE DOCUMENTS OR EQUIVALENT DOCUMENTS FROM YOUR BROKER. FAILURE TO SUPPLY THIS DOCUMENTATION MAY RESULT IN THE REJECTION OF YOUR CLAIM.  DO NOT SEND ORIGINAL DOCUMENTS.  **Please keep a copy of all documents that you send to the Claims Administrator.  Also, do not highlight any portion of the Claim Form or any supporting documents**.

5.      **PLEASE NOTE**:  As set forth in the Plan of Allocation, each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund, provided any such share is $10.00 or more.  If the prorated payment to any claimant calculates to less than $10.00, no payment shall be made to that claimant.

6.      If you have questions concerning the Claim Form, or need additional copies of the Claim Form or the Notice, you may contact the Claims Administrator, A.B. Data, Ltd., at the address on the first page of the Claim Form, by email at info@CareDxSecuritiesLitigation.com, or by toll-free phone at 1-877-423-0707, or you can visit the website, www.CareDxSecuritiesLitigation.com, where copies of the Claim Form and Notice are available for downloading.

7.      NOTICE REGARDING ELECTRONIC FILES:  Certain claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files.  To obtain the *mandatory* electronic filing requirements and file layout, you may visit the Settlement website at www.CareDxSecuritiesLitigation.com or you may email the Claims Administrator's electronic filing department at info@CareDxSecuritiesLitigation.com.  **Any file not in accordance with the required electronic filing format will be subject to rejection**.  Only one claim should be submitted for each separate legal entity (*see* above) and the *complete* name of the beneficial owner(s) of the securities must be entered where called for (*see* above).  **No electronic files will be considered to have been submitted unless the Claims Administrator issues an email to that effect.  Do not assume that your file has been received until you receive this email.  If you do not receive such an email within ten (10) days of your submission, you should contact the electronic filing department at info@CareDxSecuritiesLitigation.com to inquire about your file and confirm it was received**.

**<u>PART II: CLAIMANT INFORMATION</u>**

The Claims Administrator will use this information for all communications regarding this Claim Form. If this information changes, you MUST notify the Claims Administrator in writing at the address above. Complete names of all persons and entities must be provided.

Beneficial Owner's Name (First, Middle, Last) or Entity Name (if claimant is not an individual):

Joint Beneficial Owner's Name (if applicable) (First, Middle, Last):

Name of Representative, if applicable (executor, administrator, trustee, c/o, etc.), if different from Beneficial Owner:

Street Address (Street Name and Number):

Address 2 (apartment, unit, or box number):

| City | State | Zip Code/Province Code | Country |
| --- | --- | --- | --- |
|  |  |  |  |

Social Security Number (Last four digits only) or Taxpayer Identification Number (last four digits):

| Telephone Number (Home): | Telephone Number (Cell): |
| --- | --- |
|  |  |

Email Address:

Account Number (if filing for multiple accounts, file a separate Claim Form for each account):

Claimant Account Type (check appropriate box):

Individual (includes joint owner accounts) ☐    Pension Plan ☐
Corporation ☐    Estate ☐
IRA/401k ☐    Trust ☐

Other_____ (please specify)

**PART III:    SCHEDULE OF TRANSACTIONS IN CAREDX COMMON STOCK**

Please be sure to include proper documentation with your Claim Form as described in detail in ¶C.4 of the Instructions.  Do not include information regarding securities other than CareDx common stock.

**1.  HOLDINGS AS OF APRIL 30, 2020** – State the total number of CareDx common stock held at the close of trading on April 30, 2020. (Must be documented.)  If none, write "zero" or "0."

**2.   PURCHASES/ACQUISITIONS OF CAREDX COMMON STOCK** – Separately list every purchase/acquisition of CareDx common stock from after the opening of trading on May 1, 2020, through February 1, 2023, inclusive[4] (Must be documented.):

**IMPORTANT:  If any purchase listed covered a "short sale," please mark Yes: ☐ Yes**

| Date of Purchase (List Chronologically) (Month/Day/Year) | Number of Shares Purchased | Purchase Price Per Share | Total Purchase Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| /        / | | $ | $ |
| /        / | | $ | $ |
| /        / | | $ | $ |
| /        / | | $ | $ |

**3.  SALES OF CAREDX COMMON STOCK** – Separately list each sale/disposition of CareDx common stock from after the opening of trading on May 1, 2020, through and including the close of trading on February 1, 2023. (Must be documented.)

| Date of Sale (List Chronologically) (Month/Day/Year) | Number of Shares Sold | Sale Price Per Share | Total Sale Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| /        / | | $ | $ |
| /        / | | $ | $ |
| /        / | | $ | $ |
| /        / | | $ | $ |

**4.  END HOLDINGS –** State the total number of shares of CareDx common stock held as of the close of trading on November 3, 2022. If none, write "zero" or "0." (Must be documented.)

**5.   END HOLDINGS –** State the total number of shares of CareDx common stock held as of the close of trading on February 1, 2023. If none, write "zero" or "0." (Must be documented.)

**If you require additional space, attach extra schedules in the same format as above.  Sign and print your**

**name on each additional page.**

---

[4]    Information requested about your purchases or acquisitions on November 4, 2022, through and including the close of trading on February 1, 2023, is needed only in order for the Claims Administrator to confirm that you have reported all relevant transactions. Purchases or acquisitions during this period are not eligible for a recovery because they were made outside the Class Period.

**YOU MUST READ AND SIGN THE RELEASE ON PAGE 7. FAILURE TO SIGN THE RELEASE MAY RESULT IN A DELAY IN PROCESSING OR THE REJECTION OF YOUR CLAIM.**

## PART IV – SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS

I (We) submit this Claim Form under the terms of the Stipulation described in the Notice. I (We) also submit to the jurisdiction of the United States District Court for the Northern District of California with respect to my (our) claim as a Class Member and for purposes of enforcing the release set forth herein. I (We) further acknowledge that I am (we are) bound by and subject to the terms of any judgment that may be entered in the Action. I (We) agree to furnish additional information to the Claims Administrator to support this claim if required to do so. I (We) have not submitted any other claim covering the same purchases or sales of CareDx common stock during the Class Period and know of no other Person having done so on my (our) behalf.

## PART V – RELEASES, WARRANTIES AND CERTIFICATION

1.      I (We) hereby warrant and represent that I am (we are) a Class Member as defined in the Stipulation and that I am (we are) not excluded from the Class.

2.      I (We) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally and forever release, relinquish, waive, and discharge all of the Released Claims (including Unknown Claims) against each and all of the Released Defendants Parties (as these terms are defined in the Stipulation).

3.      This release shall be of no force or effect unless and until the Court approves the Stipulation and it becomes effective on the Effective Date.

4.      I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof and have not submitted any other claim covering the same purchases of CareDx common stock and know of no other person having done so on my (our) behalf.

5.      I (We) hereby warrant and represent that I (we) have included all requested information about all of my (our) purchases of CareDx common stock during the Class Period, as well as the number of shares held at the close of trading on April 30, 2020, November 3, 2022, and February 1, 2023.

6.      The number(s) shown on this form is (are) the correct SSN/TIN(s).

7.      I (We) waive the right to trial by jury, to the extent it exists, and agree to the determination by the Court of the validity or amount of this claim, and waive any right of appeal or review with respect to such determination.

8.      I (We) certify that I am (we are) NOT subject to backup withholding under the provisions of §3406(a)(1)(C) of the Internal Revenue Code.

(NOTE: If you have been notified by the Internal Revenue Service that you are subject to backup withholding, you must cross out the prior sentence.)

I (We) declare under penalty of perjury under the laws of the United States of America that the foregoing information supplied by the undersigned is true and correct.


Executed this _____ day of _____, 20__ (Month/Year), in _____, _____. (City) (State/Country)


_____          _____
Signature of Claimant                                                      Signature of Joint Claimant, if any


_____          _____
Print Name of Claimant                                                    Print Name of Joint Claimant, if any


_____
(Capacity of person(s) signing, *e.g.*, Beneficial Purchaser, Executor, or Administrator)

ACCURATE CLAIMS PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME. THANK YOU FOR YOUR PATIENCE.

Reminder Checklist:

1.  Please sign the above release and acknowledgment.

2.  Remember to attach copies of supporting documentation.

3.  Do not send original stock certificates.  Attach only *copies* of acceptable supporting documentation as these documents will not be returned to you.

4.  Keep a copy of your Claim Form and all supporting documentation for your records.

5.  If you move, please send us your new address.

6.  If you have any questions or concerns regarding your claim, contact the Claims Administrator at *CareDx Securities Litigation*, c/o A.B. Data, Ltd., P.O. Box 173096, Milwaukee, WI 53217, by email at info@CareDxSecuritiesLitigation.com, or by toll-free phone at 1-877-423-0707, or you may visit www.CareDxSecuritiesLitigation.com.  DO NOT call CareDx, the other Defendants, or their counsel with questions regarding your claim.

# EXHIBIT E

**THE WALL STREET JOURNAL.**

## TECHNOLOGY & MEDIA

# AI Buoys Tencent's Game, Ad Businesses

**Despite increased spending, quarterly profit and revenue beat forecasts**

BY SHERRY QIN

Tencent Holdings kicked off the earnings season for China's tech giants with faster-than-expected profit growth, as AI advancements helped earnings from its game and marketing businesses while buffeting a ramp-up in spending on the new technology.

The WeChat operator, China's largest company by market capitalization, is in an artificial-intelligence race with other Chinese tech giants such as Alibaba and startups like DeepSeek, seeking to build top AI models and enhance its offerings that span gaming, social media, digital payments and cloud services.

Despite its heavy AI investment, Tencent posted an earnings beat on both the top and bottom lines on Wednesday, surprising analysts who had largely expected its profit growth to start slowing from the second quarter.

Net profit for the three months ended in June rose 17% to 55.63 billion yuan, equivalent to $7.75 billion, as contributions from domestic games and video accounts, both high-margin businesses, helped mitigate rising costs. Revenue rose 15% to 184.50 billion yuan, growing by double digits for the third straight quarter.

Capital expenditure for the period more than doubled from a year earlier. but was lower than the 27.48 billion yuan recorded in the first quarter, putting it in line with Tencent President Martin Lau's earlier projection for 2025 capex as a percentage of revenue to reach the low teens.

Tencent's core gaming business maintained momentum, with revenue from domestic games up 17%, boosted by legacy titles, such as "Honor of Kings," as well as substantial deferred revenue in the first quarter. Revenue from the international games segment surged 35%. The company said it leveraged AI in games to accelerate content production and empower marketing. Among the games in its pipeline, "Valorant Mobile," a first-person shooter game adapted from its PC version, is the next most anticipated mobile title.

Marketing services revenue sustained a rapid growth of 20%, which the company attributed to its upgraded advertising foundation model.

The company's comments on AI point to an "early sign of leveraging AI in improving core business," Citi analysts said in a note.

Nvidia's resumption of H20 chip sales to China is good news for the country's top AI spenders such as Tencent. However, Beijing's recent scrutiny of the chip's security risks has turned it into a bargaining chip in U.S.-China trade negotiations and creates new uncertainties for Chinese customers.

Ahead of the results, Tencent's Hong Kong-listed shares rose 4.7% to close at their highest level in four years.

Analysts said the recent rally in the stock likely reflects the market's renewed enthusiasm for AI's potential, with Tencent positioned to be a major beneficiary.



**Tencent quarterly revenue, change from a year earlier**

2Q 2025 +15%

Source: the company



**Second quarter share of revenue by segment**

184.50 billion yuan ($25.7B)

- Other — 1%
- Social networks — 18%
- Marketing services — 19%
- Fintech/Business services — 30%
- Games — 32%

---

**ADVERTISEMENT**

## The Marketplace

To advertise: 800-366-3975 or WSJ.com/classifieds

### CLASS ACTION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

PLUMBERS & PIPEFITTERS LOCAL UNION #295
PENSION FUND, Individually and on Behalf of
All Others Similarly Situated,
　　　　Plaintiff,
vs.
CAREDX, INC., et al.,
　　　　Defendants.

Case No. 3:22-cv-03023-TLT  (Securities Case)

CLASS ACTION

SUMMARY NOTICE

*IF YOU PURCHASED CAREDX, INC. ("CAREDX") COMMON STOCK DURING THE PERIOD BETWEEN MAY 1, 2020 AND NOVEMBER 3, 2022, INCLUSIVE (THE "CLASS PERIOD"), YOU COULD RECEIVE A PAYMENT FROM A CLASS ACTION SETTLEMENT. CERTAIN PERSONS ARE EXCLUDED FROM THE DEFINITION OF THE CLASS AS SET FORTH IN THE STIPULATION OF SETTLEMENT.*[1]

THIS NOTICE WAS AUTHORIZED BY THE COURT. IT IS NOT A LAWYER SOLICITATION. PLEASE READ THIS NOTICE CAREFULLY. YOUR RIGHTS MAY BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and Order of the United States District Court for the Northern District of California, that in the above-captioned litigation (the "Action"), a settlement has been proposed for $20,250,000.00 in cash (the "Settlement"). A hearing will be held on December 2, 2025, at 2:00 p.m., before the Honorable Trina L. Thompson, at the United States District Court, Northern District of California, Philip Burton Federal Building & United States Courthouse, Courtroom 9 – 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, for the purpose of determining whether: (i) the proposed Settlement should be approved by the Court as fair, reasonable, and adequate; (ii) the proposed Plan of Allocation for distribution of the Settlement proceeds is fair, reasonable, and adequate and therefore should be approved; (iii) the application of Lead Counsel for the payment of attorneys' fees and expenses from the Settlement Fund, including interest earned thereon, and awards to Lead Plaintiffs should be granted; and (iv) the judgment as provided under the Stipulation should be entered dismissing the Action with prejudice.

The Court may adjourn the Settlement Hearing without further written notice of any kind to the Class. Class Members should check the Court's PACER site or the Settlement Website, www.CareDxSecuritiesLitigation.com. Any updates regarding the Settlement Hearing, including any changes to the date or time of the hearing or updates regarding in-person, telephonic, or video conference appearances at the hearing, will be posted to the Settlement Website.

**IF YOU ARE A MEMBER OF THE CLASS DESCRIBED ABOVE, YOUR RIGHTS MAY BE AFFECTED BY THE SETTLEMENT OF THE LITIGATION, AND YOU MAY BE ENTITLED TO SHARE IN THE NET SETTLEMENT FUND.** You may obtain a copy of the Stipulation, the long form Notice, and the Proof of Claim and Release Form ("Proof of Claim") at www.CareDxSecuritiesLitigation.com or by contacting the Claims Administrator: *CareDx Securities Litigation*, c/o A.B. Data, Ltd., P.O. Box 173096, Milwaukee, WI 53217; 1-877-423-0707. Copies of the Notice and the Claim Form are also available by accessing the Court docket in this case, for a fee, through PACER or by visiting the Office of the Clerk of Court, United States District Court for the Northern District of California, Philip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102 or any other location of the Northern District of California between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

If you are a Class Member, to be eligible to share in the distribution of the Net Settlement Fund, you must submit a Proof of Claim by mail received no later than November 12, 2025, or submit it online by that date.[2] If you are a Class Member and do not submit a valid Proof of Claim, you will not be eligible to share in the distribution of the Net Settlement Fund, but you will still be bound by any judgment entered by the Court in this Action (including the releases provided for therein).

To exclude yourself from the Class, you must mail a written request for exclusion such that it is **received by October 14, 2025**, in the manner and form explained in the Notice. If you are a Class Member and have not excluded yourself from the Class, you will be bound by any judgment entered by the Court in this Action (including the releases provided for therein) whether or not you submit a Proof of Claim. If you submitted a valid request for exclusion, you will have no right to recover money pursuant to the Settlement.

Any objection to the proposed Settlement, the Plan of Allocation, or the fee and expense application must be filed with the Court no later than October 14, 2025.[3]

**PLEASE DO NOT CONTACT THE COURT, THE CLERK'S OFFICE, DEFENDANTS, OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE.** If you have any questions about the Settlement, or your eligibility to participate in the Settlement, you may contact the Claims Administrator or Lead Counsel at the following addresses or by calling 1-800-449-4900:

ROBBINS GELLER RUDMAN & DOWD LLP
JASON C. DAVIS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
settlementinfo@rgrdlaw.com

SAXENA WHITE P.A.
LESTER R. HOOKER
7777 Glades Road
Suite 300
Boca Raton, FL 33434
lhooker@saxenawhite.com

DATED: AUGUST 14, 2025

BY ORDER OF THE COURT
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

[1] The capitalized terms not otherwise defined herein shall have the same meaning as they have in the Stipulation of Settlement ("Stipulation"). The Stipulation can be viewed and/or obtained at www.CareDxSecuritiesLitigation.com (the "Settlement Website"), the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, visiting the office of the Clerk of the Court, or by contacting the Claims Administrator or Lead Counsel as described herein. For the precise terms of the Settlement, please see the Stipulation and/or the Notice.

[2] Proofs of Claim, requests for exclusion, and objections that are legibly postmarked will be treated as received on the postmark date.

[3] You can ask the Court to deny approval by filing an objection. You cannot ask the Court to order a different settlement; the Court can only approve or deny the Settlement and cannot change the terms. If you file a timely written objection, you may, but are not required to, appear at the Settlement Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must clearly identify the case name and number (*Plumbers & Pipefitters Local Union #295 Pension Fund v. CareDx, Inc., et al.*, No. 3:22-cv-03023-TLT (N.D. Cal.)), and include all information required by the Court as detailed in the Notice.

---

# To China, Nvidia's H20 Chip Proves a Blessing and a Curse

BY RAFFAELE HUANG
AND ROBBIE WHELAN

U.S. export controls on Nvidia's artificial-intelligence chips have been at the center of U.S.-China trade negotiations for months, yet it appears China is discouraging its companies from buying one of them: the H20.

Why?

Sales of the chips to Chinese companies helped get China to agree to reboot its exports to the U.S. of rare-earth minerals used in cars, electronics and other products, U.S. officials said. In more recent days, the Trump administration extracted an unprecedented 15% cut of chip sales to China by Nvidia and AMD in exchange for granting the companies export licenses, which could result in billions of dollars for the U.S. government.

Beijing wants access to advanced Nvidia chips because its companies need them to help train state-of-the-art AI. The H20 isn't advanced enough to train large AI models, but it is one of the best chips on the market for powering inference, the ability of AI programs to tap their training to respond to user prompts. Still, Nvidia can't sell its most powerful chips used for AI training to China because of U.S. export controls.

Chinese authorities are also worried about becoming too reliant on U.S. technology. They have repeatedly pushed domestic chip users to support Chinese chip makers whenever possible so that—eventually—the country can be self-reliant.

China's Huawei and a few other companies already have chips that are useful for AI inference, similar to what Nvidia's H20 chips can do. But there are other obstacles.

China's biggest issue with making chips for AI training is that its access to advanced chip-making equipment and other technology has been blocked by U.S. export controls that seek to maintain America's technology edge. That means even if they have good chip designs, they can hardly produce at scale. China's best chip manufacturer uses less advanced machines, keeping yields relatively low.

Chinese engineers say companies often get hooked on Nvidia's software and tools, making them reluctant to switch to other vendors.

Since the Trump administration relaxed controls on the H20 chip in July, major Chinese tech companies have ordered at least 700,000 of the chips, people familiar with the matter said. The strong demand has prompted Nvidia to change course and arrange capacity with its contract manufacturer to make new H20s to meet the demand, the people said. Nvidia initially planned to use only existing inventory to fulfill orders.

Nvidia declined to comment on its inventories or manufacturing plans.

Some Chinese AI chip makers told officials in Beijing that U.S. export controls had pushed Chinese companies to adopt home-grown alternatives faster and accelerate self-reliance. Trump's reversal, which will allow Nvidia chips to once again flow to China, could stymie that pace of improvement, they said. Some have also expressed skepticism about the security of Nvidia products.

In late July, China's cyberspace regulator summoned Nvidia representatives to discuss alleged "backdoor" security risks around the H20 chips, including the ability to track chip location and the possibility of a "kill switch" in the chips that would be operable under U.S. orders. Chinese officials have also raised concerns over proposed U.S. legislation seeking to add tracking capabilities for advanced chips sold abroad.

Nvidia and others in the industry have lobbied against the bill. The White House has said it wants to study chip tracking but hasn't weighed in on the legislation specifically.

Nvidia has said there is no backdoor risk.



A robot at the Nvidia booth at a July trade show in Beijing

CFOTO/DDP/ZUMA PRESS

---

### BANKRUPTCIES

**Information to identify the case:**
Debtor: Valves and Controls US, Inc. EIN: 04-2903959
United States Bankruptcy Court for the District of Delaware
Date case filed for chapter 11: July 25,2025
Lead Case Number: 25 – 11403 (TMH)
Official Form 309F1 (For Corporations or Partnerships)
**Notice of Chapter 11 Bankruptcy Case 10/20**
For the debtor listed above, a case has been filed under chapter 11 of the Bankruptcy Code. An order for relief has been entered.
This notice has important information about the case for creditors and debtors, including information about the meeting of creditors and deadlines. Read both pages carefully.
The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtor or the debtor's property. For example, while the stay is in effect, creditors cannot sue, assert a deficiency, repossess property, or otherwise try to collect from the debtor. Creditors cannot demand repayment from the debtor by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees.
Confirmation of a chapter 11 plan may result in a discharge of debt. A creditor who wants to have a particular debt excepted from discharge may be required to file a complaint in the bankruptcy clerk's office within the deadline specified in this notice. (See line 11 below for more information.)
To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through the Public Access to Court Electronic Records at https://pacer.uscourts.gov).
**The staff of the bankruptcy clerk's office cannot give legal advice.**
**Do not file this notice with any proof of claim or other filing in the case.**
1. Debtor's full name(s): SEE BELOW
Name of Debtor: Valves and Controls US, Inc.; Other Names Used by the Debtor in the last 8 years: Weir Valves & Controls USA Inc.; EIN Number: 04-2903959; Case Number: 25 – 11403 (TMH)
2. All other names used in the last 8 years: See above
3. Address: 2457 Main Street, Suite 2050, Fort Worth, Texas 76102
4. Debtor's attorney: COLE SCHOTZ, P.C., Patrick J. Reilley (No. 4451), Michael E. Fitzpatrick (No. 6797), Melissa M. Hartlipp (No. 7063), 500 Delaware Avenue, Suite 600, Wilmington, DE 19801, Telephone: (302) 652-3131, Facsimile: (302) 652-3117, Email: preilley@coleschotz.com, mfitzpatrick@coleschotz.com, mhartlipp@coleschotz.com -and- WEIL, GOTSHAL & MANGES LLP, Matthew S. Barr, Esq., Ronit Berkovich, Esq., Lauren Tauro, Esq., Alejandro Bascoy, Esq., 767 Fifth Avenue, New York, New York 10153, Telephone: (212) 310-8000, Facsimile: (212) 310-8007, Email: matt.barr@weil.com, ronit.berkovich@weil.com, lauren.tauro@weil.com, alejandro.bascoy@weil.com
**Debtor's Claims and Noticing Agent (for Court Documents and Case Information Inquiries): If by first class mail:** Valves and Controls US, Inc. Claims Processing Center, c/o Kroll Restructuring Administration LLC, Grand Central Station, PO Box 4850, New York, NY 10163-4850; **If by hand delivery, or overnight courier:** Valves and Controls US, Inc. Claims Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232. **US/Canada Toll-Free Number:** (888) 341-7352. **International Toll Number:** (646) 902-6077. **Email inquiries:** ValvesandcontrolsInfo@ra.kroll. **Case website:** https://cases.ra.kroll.com/valvesandcontrols

5. Bankruptcy clerk's office: Clerk of the U.S. Bankruptcy Court for the District of Delaware, 824 Market St. N., 3rd Floor, Wilmington, Delaware 19801. Hours: Monday to Friday – 8:00 a.m. to 4:00 p.m. (Prevailing Eastern Time). Telephone: (302) 252-2900. Documents in this case may be filed at this address. You may read records filed in this case at this office or online at https://pacer.uscourts.gov
6. Meeting of creditors: September 2, 2025 at 10:00 am (ET). Location: Please call 1-888-330-1716 and use access code 4631462# to join the meeting. The Debtor's representative must attend the meeting to be questioned under oath. Creditors may attend, but are not required to do so. The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket.
7. Proof of claim deadline: Deadline for filing proof of claim: TBD. A proof of claim is a signed statement describing a creditor's claim. A proof of claim form may be obtained at www.uscourts.gov or any bankruptcy clerk's office. Your claim will be allowed in the amount scheduled unless: • your claim is designated as disputed, contingent, or unliquidated; • you file a proof of claim in a different amount; or • you receive another notice. If your claim is not scheduled or if your claim is designated as disputed, contingent, or unliquidated, you must file a proof of claim or you might not be paid on your claim and you might be unable to vote on a plan. You may file a proof of claim even if your claim is scheduled. You may review the schedules at the bankruptcy clerk's office or online at https://pacer.uscourts.gov. Secured creditors retain rights in their collateral regardless of whether they file a proof of claim. Filing a proof of claim submits a creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a proof of claim may surrender important rights, including the right to a jury trial.
8. Exception to discharge deadline: If § 523(c) applies to your claim and you seek to have it excepted from discharge, you must start a judicial proceeding by filing a complaint by the deadline stated below. The bankruptcy clerk's office must receive a complaint and any required filing fee by the following deadline. Deadline for filing the complaint: To be determined.
9. Creditors with a foreign address: If you are a creditor receiving notice mailed to a foreign address, you may file a motion asking the court to extend the deadlines in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case.
10. Filing a Chapter 11 bankruptcy case: Chapter 11 allows debtors to reorganize or liquidate according to a plan. A plan is not effective unless the court confirms it. You may receive a copy of the plan and a disclosure statement telling you about the plan, and you may have the opportunity to vote on the plan. You will receive notice of the date of the confirmation hearing, and you may object to confirmation of the plan and attend the confirmation hearing. Unless a trustee is serving, the debtor will remain in possession of the property and may continue to operate its business.
11. Discharge of debts: Confirmation of a chapter 11 plan may result in a discharge of debts, which may include all or part of your debt. See 11 U.S.C. § 1141(d). A discharge means that creditors may never try to collect the debt from the debtor except as provided in the plan. If you want to have a particular debt owed to you excepted from the discharge and § 523(c) applies to your claim, you must start a judicial proceeding by filing a complaint and paying the filing fee in the bankruptcy clerk's office by the deadline.
**If you have questions about this notice, please call (888) 341-7352 or visit https://cases.ra.kroll.com/valvesandcontrols**

### COMMERCIAL REAL ESTATE



**For Sale**
Class A+ Mixed-Use High Rise Investment/
Owner-User/Conversion Opportunity;
*First Time Available in the Market.*
**333 N Central Ave, Phoenix, AZ**
**Contact Newmark Phoenix**
(602) 952-3800
phoenixcapitalmarkets@nmrk.com

### THE WALL STREET JOURNAL.

## THE MARKETPLACE

ADVERTISE TODAY

(800) 366-3975
For more information visit:
**wsj.com/classifieds**



© 2025 Dow Jones & Company, Inc.
All Rights Reserved.

---

# Firms Eye Hiring After Tax Change

*Continued from Page One*

tax revenue by $141 billion over 10 years, Congress's Joint Committee on Taxation estimated. That includes nearly $54 billion this year, in part from provisions letting companies speed up deductions for spending back to 2022.

Taxes alone rarely drive major operational decisions, and companies weighing the R&D incentive must also consider foreign tax treatment, the overall cost of U.S. and foreign hiring, and where they can find the skills they need.

The biggest companies, especially in tech, are more likely to have cash reserves that make it easier to wait for a tax deduction. Without taxable profits in the foreseeable future, very early-stage startups and other companies operating at a loss won't benefit.

"It could put a thumb on the scales for doing more in the U.S., but again that's never a frictionless proposition," said Pat Brown, co-leader of PricewaterhouseCoopers' national tax office. "Is it going to make a difference at the margins? Absolutely."

It is hard to predict whether the tax-law change will lead to more tech-oriented jobs in the U.S. overall, but the change is likely to stimulate R&D spending, said Timothy Simcoe, a Boston University business professor who studies innovation policy.

"The short-run impact may be to increase the wages of R&D labor, which in the long run should lead to more innovation," Simcoe said.

For years, Congress acted regularly to ensure companies could deduct R&D spending immediately, including by writing it into the tax overhaul adopted in late 2017. That provision expired as scheduled in 2022 for budgetary reasons—effectively raising the cost of U.S. hiring for many tech companies.

Contrary to many business leaders' expectations, Congress didn't renew it quickly. As a result, since then, companies have been required to spread tax deductions for domestic R&D spending over five years, while deductions for foreign spending have had to be spread over 15. Spreading out the deduction means companies must pay more tax up front and wait to get most of it back, squeezing cash flow.

Turing Labs, a Sunnyvale, Calif.-based startup applying artificial intelligence to consumer-product development, had been looking into hiring software engineers in Canada or Latin America, said co-founder and CEO Manmit Shrimali. Lower salaries could offset the longer wait for a full deduction, though Shrimali also worried about risks to the company's intellectual property.

The tax-law change cuts the cost of domestic hiring by 20% to 25%, so instead Turing Labs plans to add five Bay Area software engineers to the two U.S. engineers it already employs, Shrimali said.



**Number of R&D-related job postings, change from a year earlier**

Quarterly data

Note: 3Q 2025 is an estimate based on the number of job postings in the quarter as of Aug. 5.
Source: WSJ analysis of ZipRecruiter data

# EXHIBIT F

# Saxena White P.A. and Robbins Geller Rudman & Dowd LLP Announce a Proposed Settlement in the CareDx, Inc., Securities Litigation

NEWS PROVIDED BY
**Saxena White P.A. and Robbins Geller Rudman & Dowd LLP**
Aug 14, 2025, 10:00 ET

SAN FRANCISCO, Aug. 14, 2025 /PRNewswire/ --

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| PLUMBERS & PIPEFITTERS LOCAL UNION #295 PENSION FUND, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No. 3:22-cv-03023-TLT (Securities Case) |
| | ) | |
| Plaintiff, | ) | CLASS ACTION |
| | ) | |
| vs. | ) | SUMMARY NOTICE |
| CAREDX, INC., et al., | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

***IF YOU PURCHASED CAREDX, INC. ("CAREDX") COMMON STOCK DURING THE PERIOD BETWEEN MAY 1, 2020 AND NOVEMBER 3, 2022, INCLUSIVE (THE "CLASS PERIOD"), YOU COULD RECEIVE A PAYMENT FROM A CLASS ACTION SETTLEMENT. CERTAIN PERSONS ARE EXCLUDED FROM THE DEFINITION OF THE CLASS AS SET FORTH IN THE STIPULATION OF SETTLEMENT.***[1]

THIS NOTICE WAS AUTHORIZED BY THE COURT.  IT IS NOT A LAWYER SOLICITATION.  PLEASE READ THIS NOTICE CAREFULLY.  YOUR RIGHTS MAY BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and Order of the United States District Court for the Northern District of California, that in the above-captioned litigation (the "Action"), a settlement has been proposed for $20,250,000.00 in cash (the "Settlement").  A hearing will be held on December 2, 2025, at 2:00 p.m., before the Honorable Trina L. Thompson, at the United States District Court, Northern District of California, Philip Burton Federal Building & United States Courthouse, Courtroom 9 – 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, for the purpose of determining whether: (i) the proposed Settlement should be approved by the Court as fair, reasonable, and adequate; (ii) the proposed Plan of Allocation for distribution of the Settlement proceeds is fair, reasonable, and adequate and therefore should be approved; (iii) the application of Lead Counsel for the payment of attorneys' fees and expenses from the Settlement Fund, including interest earned thereon, and awards to Lead Plaintiffs should be granted; and (iv) the judgment as provided under the Stipulation should be entered dismissing the Action with prejudice.

The Court may adjourn the Settlement Hearing without further written notice of any kind to the Class. Class Members should check the Court's PACER site or the Settlement Website, **www.CareDxSecuritiesLitigation.com**.  Any updates regarding the Settlement Hearing, including any changes to the date or time of the hearing or updates regarding in-person, telephonic, or video conference appearances at the hearing, will be posted to the Settlement Website.

**IF YOU ARE A MEMBER OF THE CLASS DESCRIBED ABOVE, YOUR RIGHTS MAY BE AFFECTED BY THE SETTLEMENT OF THE LITIGATION, AND YOU MAY BE ENTITLED TO SHARE IN THE NET SETTLEMENT FUND**.  You may obtain a copy of the Stipulation, the long form Notice, and the Proof of Claim and Release Form ("Proof of Claim") at **www.CareDxSecuritiesLitigation.com** or by contacting the Claims Administrator: *CareDx Securities Litigation*, c/o A.B. Data, Ltd., P.O. Box 173096, Milwaukee, WI 53217; 1-877-423-0707.  Copies of the Notice and the Claim Form are also available by accessing the Court docket in this case, for a fee, through PACER or by visiting the Office of the Clerk of Court, United States District Court for the Northern District of California, Philip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102 or any other location of the Northern District of California between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

If you are a Class Member, to be eligible to share in the distribution of the Net Settlement Fund, you must submit a Proof of Claim by mail received no later than November 12, 2025, or submit it online by that date.[2]  If you are a Class Member and do not submit a valid Proof of Claim, you will not be eligible to share in the distribution of the Net Settlement Fund, but you will still be bound by any judgment entered by the Court in this Action (including the releases provided for therein).

To exclude yourself from the Class, you must mail a written request for exclusion such that it is **received by October 14, 2025**, in the manner and form explained in the Notice.  If you are a Class Member and have not excluded yourself from the Class, you will be bound by any judgment entered by the Court in this Action (including the releases provided for therein) whether or not you submit a Proof of Claim.  If you submitted a valid request for exclusion, you will have no right to recover money pursuant to the Settlement.

Any objection to the proposed Settlement, the Plan of Allocation, or the fee and expense application must be filed with the Court no later than October 14, 2025.[3]

**PLEASE DO NOT CONTACT THE COURT, THE CLERK'S OFFICE, DEFENDANTS, OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE.**  If you have any questions about the Settlement, or your eligibility to participate in the Settlement, you may contact the Claims Administrator or Lead Counsel at the following addresses or by calling 1-800-449-4900:

| ROBBINS GELLER RUDMAN & DOWD LLP<br>JASON C. DAVIS<br>Post Montgomery Center<br>One Montgomery Street, Suite 1800<br>San Francisco, CA  94104<br>settlementinfo@rgrdlaw.com | SAXENA WHITE P.A.<br>LESTER R. HOOKER<br>7777 Glades Road<br>Suite 300<br>Boca Raton, FL 33434<br>lhooker@saxenawhite.com |
|---|---|

DATED: AUGUST 14, 2025            BY ORDER OF THE COURT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Source:

Saxena White P.A.

Robbins Geller Rudman & Dowd LLP

[1] The capitalized terms not otherwise defined herein shall have the same meaning as they have in the Stipulation of Settlement ("Stipulation").  The Stipulation can be viewed and/or obtained at **www.CareDxSecuritiesLitigation.com** (the "Settlement Website"), the Court's Public Access to Court Electronic Records (PACER) system at **https://ecf.cand.uscourts.gov**, visiting the office of the Clerk of the Court, or by contacting the Claims Administrator or Lead Counsel as described herein.  For the precise terms of the Settlement, please see the Stipulation and/or the Notice.

[2] Proofs of Claim, requests for exclusion, and objections that are legibly postmarked will be treated as received on the postmark date.

[3] You can ask the Court to deny approval by filing an objection. You cannot ask the Court to order a different settlement; the Court can only approve or deny the Settlement and cannot change the terms.  If you file a timely written objection, you may, but are not required to, appear at the Settlement Hearing, either in person or through your own attorney.  If you appear through your own attorney, you are responsible for hiring and paying that attorney.  All written objections and supporting papers must clearly identify the case name and number (*Plumbers & Pipefitters Local Union #295 Pension Fund v. CareDx, Inc., et al.*, No. 3:22-cv-03023-TLT (N.D. Cal.)), and include all information required by the Court as detailed in the Notice.

SOURCE Saxena White P.A. and Robbins Geller Rudman & Dowd LLP

WANT YOUR COMPANY'S NEWS

## FEATURED ON PRNEWSWIRE.COM?

GET STARTED

| 440k+ | 9k+ | 270k+ |
| Newsrooms & Influencers | Digital Media Outlets | Journalists Opted In |