UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

United States District Court
Northern District of California

PLUMBERS & PIPEFITTERS LOCAL UNION #295 PENSION FUND, et al.,

Plaintiffs,

v.

CAREDX, INC., et al.,

Defendants.

Case No. 22-cv-03023-TLT

**ORDER GRANTING MOTION FOR FAIRNESS AND FINAL APPROVAL OF SETTLEMENT; MOTION FOR ATTORNEYS' FEES AND EXPENSES**

Re: Dkt. Nos. 189, 190

Before the Court is Plaintiffs' motion for final approval of the settlement, ECF 189, and Plaintiffs' motion for attorneys' fees, expenses, and awards, ECF 190. The Court finds this motion appropriate for resolution without oral argument and takes this matter under submission. *See* L.R. 7-1(b) (authorizing courts to dispense with oral argument on any motion except where oral hearing is required by statute).

The Court previously granted Preliminary Approval of a class action settlement between Lead Plaintiffs Oklahoma Police Pension and Retirement System, Sheet Metal Workers Local 19 Pension Fund, Local 353, I.B.E.W. Pension Fund, and Beaumont Firemen's Relief & Retirement Fund (collectively, "Lead Plaintiffs") and Defendants CareDx, Inc. ("CareDx"), Reginald Seeto, and Peter Maag (collectively, "Defendants"). ECF 185. As directed by the Court, Plaintiffs filed their motion for Fairness and Final approval of the settlement along with a motion for attorneys' fees and expenses. *See* ECF 189; ECF 190.

Notice has been disseminated pursuant to the preliminary approval Order. No Class Members objected to the Settlement or the fee and expense proposal, and no Class Members opted out of the Settlement Class. *See* ECF 192 at 1; ECF 192-1 ¶¶ 10–11; ECF 196 at 4.

Having considered the motion, the terms of the Settlement Agreement, the lack of objections thereto, the arguments of counsel, and the other matters on file in this action, the Court **GRANTS** the motion for Final Approval of the Settlement and further **GRANTS** the motion for attorneys' fees and expenses.

## I. PROCEDURAL HISTORY

On May 23, 2022, the initial complaint in this action was filed. ECF 1. On August 25, 2022, the Court appointed Lead Plaintiffs and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Saxena White P.A. ("Saxena White") as lead counsel. ECF 43.

On November 28, 2022, Plaintiffs filed the first amended complaint ("FAC"). ECF 53. On January 27, 2023, Defendants filed a motion to dismiss and strike portions of the FAC. *See* ECF 58; ECF 59; ECF 60. On May 24, 2023, the Court granted Defendants' motions, striking some paragraphs from the FAC and dismissing the FAC entirely, with leave to amend. *See* ECF 74; ECF 75.

On June 28, 2023, Plaintiffs filed the second amended complaint ("SAC"). ECF 81. On July 26, 2023, Defendants again moved to dismiss and to strike portions of the SAC. *See* ECF 89; ECF 90; ECF 91. On September 18, 2024, the Court granted in part and denied in part Defendants' motion to dismiss the SAC and motion to strike portions of the SAC. ECF 123. The Court granted the motion to dismiss on scienter grounds, with leave to amend. *Id.* However, the Court found that Plaintiffs sufficiently alleged falsity as to statements regarding underwriting representations and statements regarding testing services revenue and historical RemoTraC data. *Id.* at 43. The Court also found that Plaintiffs sufficiently alleged loss causation. *Id.*

On November 1, 2024, Plaintiffs filed the third amended class action complaint ("TAC"). ECF 133. Plaintiffs alleged that Defendants CareDx, Dr. Maag, and Dr. Seeto violated: (1) Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder; and (2) Section 20(a) of the Exchange Act. *Id.* ¶¶ 367–380. On November 15, 2024, Defendants filed a motion to dismiss the TAC. *See* ECF 136; ECF 137. On February 18, 2025, the Court denied Defendants' motion. ECF 154.

On April 18, 2025, Plaintiffs filed a Motion to Certify Class, Appoint Class

United States District Court
Northern District of California

Representatives, and Appoint Class Counsel. ECF 170. On May 16, 2025, the parties stipulated to vacate the class certification motion, notifying the Court that they had reached a settlement in principle. ECF 175. The Court granted the stipulation. ECF 176.

On May 23, 2025, Plaintiffs filed a motion for preliminary approval of class action settlement. ECF 177. Defendants filed a statement of non-opposition. ECF 180. On July 23, 2025, the Court preliminarily approved the class action settlement. ECF 185.

On September 30, 2025, Plaintiffs filed a motion for final approval of the settlement. ECF 189. Plaintiffs also filed a motion for attorneys' fees, expenses, and awards. ECF 190. Plaintiffs filed a declaration in support of their motions. ECF 191, Joint Declaration of Jason C. Davis and Joshua H. Saltzman ("Joint Decl."). Defendants did not file an opposition. On October 28, 2025, Plaintiffs filed an additional memorandum titled "Reply Memorandum and Statement of Non-Opposition," which was intended to serve both as a reply memorandum and a notification to the Court that ECF 189 and ECF 190 are unopposed. ECF 192; *see also* ECF 196 at 1. On November 25, 2025, Defendants filed their own statement of non-opposition to the motion for final approval of the settlement and motion for attorneys' fees, expenses, and awards. ECF 195.

On November 19, 2025, the Court ordered the parties to provide written responses to questions. ECF 193. Plaintiff filed written responses on November 25, 2025. ECF 196. On December 1, 2025, the Court took the motions under submission. ECF 197.

## II. FACTUAL BACKGROUND

### A. Terms of the Settlement Agreement

Under the terms of the Settlement Agreement, without admitting liability, Defendants paid $20,250,000 into an escrow account. *See* ECF 177-2; Joint Decl., ¶ 7. This amount, plus any interest accrued thereon, comprises the Settlement Fund. ECF 177-2. The Settlement Fund includes attorneys' fees and expenses, the cost of notice and settlement administration, and Lead Plaintiffs' service awards. The Court preliminarily approved certification of a settlement class, appointed Plaintiffs as class representatives, and appointed Lead Counsel as class counsel. ECF 185 at 6.

The parties also entered into a confidential supplemental agreement, providing that if a

certain number of Class Members opt out, Defendants may terminate the Settlement Agreement. *See* ECF 177-2 ¶ 7.3.

**i. Attorneys' Fees, Litigation Expenses, Lead Plaintiffs' Service Awards**

Under the Settlement Agreement preliminarily approved by the Court, Plaintiffs' counsel agreed to seek up to $6,075,000 in attorneys' fees (thirty percent of the settlement fund) and no more than $450,000 in litigation expenses. *See* ECF 177-2. The Court noted that Plaintiffs must provide "special circumstances" to justify departure from the Ninth Circuit's benchmark of twenty-five percent of a common fund for attorneys' fees. ECF 185 at 3 n.1. The Settlement Agreement also allowed each Lead Plaintiff to seek up to $7,500 as a service award. *See* ECF 185 at 3; ECF 177-2 at 2. Finally, A.B. Data estimated the costs of notice and administration at $285,000. *See* ECF 185 at 3; ECF 177-3, ¶ 27.

Now, in the motion for attorneys' fees and expenses, Lead Counsel seek attorneys' fees of twenty-five percent of the Settlement Fund ($5,062,500, plus interest earned at the same rate as the Settlement Fund). Joint Decl., ¶ 4. This is less than the attorneys' fees amount disclosed in the Postcard Notice and in the Notice. ECF 189 at 14–15. Lead Counsel also seek an award of $368,880.02 in litigation expenses (plus interest). *Id; id.* ¶ 62. Again, this is smaller than the litigation expenses amount disclosed in the Postcard Notice and in the Notice. ECF 189 at 14–15. Finally, Lead Counsel seek an aggregate service award of $20,640 to be distributed among Lead Plaintiffs. *Id.* Specifically, Lead Counsel request $6,300 for Oklahoma Police Pension and Retirement System, $7,500 for Sheet Metal Workers Local 19 Pension Fund, $3,340 for Local 353, I.B.E.W. Pension Fund, and $3,500 for Beaumont Firemen's Relief & Retirement Fund. Joint Decl., ¶ 62; *see also* ECF 190 at 2–3.

The estimated costs of notice and administration remain approximately $285,000. ECF 196.

**ii. Class Relief and Plan of Allocation**

Plaintiffs originally anticipated that after deductions from the common fund for fees, expenses, awards, and Notice and Administration costs, approximately $13,425,000 will remain for distribution among participating Class Members. *See* ECF 185 at 2. This estimate does not

United States District Court
Northern District of California

include interest. Now, Plaintiffs anticipate that approximately $14,513,000 will remain for distribution. *See* ECF 196 at 2. No amount will revert to Defendants.

The Plan of Allocation included in the Court-approved Notice, *see* ECF 185, distributes the Net Settlement Fund on a *pro rata* basis to Class Members who suffered economic losses as a result of Defendants' alleged misrepresentations and omissions. Joint Decl., ¶ 56. Each eligible Class Member is subject to the same formula for distribution. ECF 177 at 17. A Recognized Loss Amount will be calculated for each purchase or acquisition of publicly traded CareDX common stock made in the United States and listed on the Claim Form. ECF 177-2 ¶ 38. These Recognized Loss Amounts are "based primarily on the difference in the amount of alleged artificial inflation in the prices of CareDx common stock at the time of purchase or acquisition and at the time of sale, or the difference between the actual purchase price and sale price." *Id.* ¶ 37. Distributions will not be made if the prorated payment is less than $10.00. *Id.* ¶ 60.

***iii. Cy Pres***

Under the Settlement Agreement, if any balance remains in the Net Settlement Fund following the initial distribution, Lead Counsel shall, if feasible, reallocate such balance among Authorized Claimants. ECF 177-2, ¶ 5.12. Once reallocations are no longer feasible, the Settlement Agreement selects the Council of Institutional Investors ("CII") as the *cy pres* recipient for remaining funds. *Id.*

In the Joint Declaration submitted on September 20, 2025, Lead Counsel attested that no member of either firm is on the board of CII and there is no actual conflict or appearance of conflict between Plaintiffs, their counsel, and CII. Joint Decl., ¶ 88. The parties cannot estimate whether a *cy pres* distribution will be necessary since it depends on the residual amounts available after distribution from the Net Settlement Fund are completed. ECF 196 at 2.

**B. Class Notice and Claims Administration**

Under the Settlement Agreement, CareDx shall provide or cause to be provided to the Settlement Administrator, A.B. Data, Ltd. ("A.B. Data") records reasonably available to CareDx or its transfer agent (consisting of names, mailing addresses, and, if available, email addresses) of purchasers of CareDx common stock during the Class Period. ECF 177-3, ¶ 9. A.B. Data will

mail, or email, to the extent email addresses are available, the Postcard Notice to Class Members who can be identified. *Id.* ¶ 8. To effectuate notice to the majority of the Class, A.B. Data will mail a Postcard Notice to its list of the largest and most common Nominees who may have purchased CareDx common stock for the beneficial ownership of other persons and entities. *Id.* ¶ 10. A.B. Data will also submit the Notice to the Depository Trust Company ("DTC") to post on the DTC Legal Notice System ("LENS"). *Id.* ¶ 12.

To supplement direct mail or email, A.B. Data will also cause the Summary Notice to be published in *The Wall Street Journal* and be transmitted over *PR Newswire*. *Id.* ¶ 14. A.B. Data will establish a settlement-specific website, www.CareDxSecuritiesLitigation.com ("Settlement Website"), where Class Members can download copies of the Notice, Proof of Claim, Stipulation, and other documents related to the Settlement. *Id.* ¶ 15. A toll-free telephone number, 1-877-423-0707, and dedicated email address, info@CareDxSecuritiesLitigation.com, will also be staffed with customer service representatives trained to answer questions about the Settlement. *Id.* ¶ 16.

The Court ordered A.B. Data to distribute Class Notice according to the notice plan no later than August 14, 2025. ECF 185 at 10.

**C. Status of Notice, Opt-Out, and Objections Since Preliminary Approval**

On July 28, 2025, A.B. Data received a data file from Defendants containing the names, addresses, and email addresses, if available, of 330 unique persons or entities identified as record holders of CareDx common stock during the Class Period. ECF 191-5, Declaration of Kathleen Brauns ("Brauns Decl."), ¶ 5.

On August 14, 2025, Summary Notice was published in *The Wall Street Journal* and transmitted over *PR Newswire*. Joint Decl., ¶ 50; Brauns Decl., Exs. E, F.

Beginning on August 14, 2025, A.B. Data mailed or emailed Postcard Notices to known potential Class Members and to all institutions in A.B. Data's database of banks, brokers, and other nominees who hold shares on behalf of beneficial purchasers. Joint Decl., ¶ 50; Brauns Decl., ¶ 7. This database contained 4,899 mailing records. Brauns Decl., ¶ 7. In the letter, A.B. Data requested that the recipients either request copies of the Postcard Notice to pass along to beneficial owners or provide A.B. Data with the names and addresses of those beneficial owners

so A.B. Data can provide Postcard Notice directly. *Id.* Following the initial mailing, A.B. Data received 8,046 additional names and addresses of potential Class Members and received requests from nominee holders for 17,915 Postcard Notices to be forwarded to the nominees' customers. Brauns Decl., ¶ 11. As of October 28, 2025, A.B. Data had disseminated 31,210 Postcard Notices. ECF 192 at 2; ECF 192-1, Supplemental Declaration of Kathleen Brauns ("Supp. Brauns Decl.") ¶ 4. 475 Postcard Notices were returned as undeliverable, and A.B. Data re-mailed 256 Postcard Notices accordingly. Supp. Brauns Decl., ¶ 5.

Also on August 14, 2025, the Settlement Website went live. Joint Decl., ¶ 52; Brauns Decl., ¶ 14. The website included a copy of the longform Notice, approved by the Court in ECF 185. Joint Decl., ¶ 53.

Finally, on August 14, 2025, A.B. Data established a call center reachable through a toll-free telephone helpline to answer questions about the claims process. Brauns Decl., ¶ 17. As of October 28, 2025, 22 calls had been received. Supp. Brauns Decl., ¶ 9.

As of October 28, 2025, 1,102 Claims had been received by A.B. Data. Supp. Brauns Decl., ¶ 12. Pursuant to the Court's preliminary approval Order, Class Members have until November 12, 2025 to submit Claims. *Id.* As of October 28, 2025, no Class Members objected to the Settlement or to Lead Counsel's fee and expense request, and no Class Members opted out. ECF 192 at 1; Supp Brauns Decl., ¶ 10.

As of November 19, 2025, 24,488 Claims were received by A.B. Data, and 13,054 Claims were provisionally accepted. ECF 196 at 2. The parties anticipate an average distribution amount of $1,879, which is subject to change. *Id.*

## III. LEGAL STANDARD

A court may approve a proposed class action settlement of a certified class "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the class certification requirements. Fed. R. Civ. P. 23(e)(2). A court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir 1998). The *Hanlon* court identified the following factors relevant to assessing a settlement

proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011).

## IV.    FINAL APPROVAL OF SETTLEMENT

### A.    The Settlement Class Meets the Prerequisites for Certification

As the Court found in its preliminary approval Order, the prerequisites of Rule 23 have been satisfied and the Court certifies, for settlement purposes, a Class defined as:

> All persons or entities who purchased CareDx, Inc. common stock between May 1, 2020 and November 3, 2022, inclusive, and were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded from the Class are those persons and entities who timely and validly requested exclusion from the Class pursuant to the Notice, of which there are none.

ECF 192-2 at 1. *See also In re Alphabet, Inc. Sec. Litig.*, No. 18-cv-06245, 2024 WL 4354988, at *4 (N.D. Cal. Sept. 30, 2024) (finally certifying settlement class after preliminary approval order found Rule 23 prerequisites satisfied). The Court preliminarily certified a Class definition ending with the following sentence: "Also excluded from the Class are those persons and entities who timely and validly requested exclusion from the Class pursuant to the Notice." *See* ECF 185 at 5–6. Following expiration of the October 14, 2025 deadline to request exclusion, the parties agreed to submit the modified Class definition above to reflect the fact that no persons or entities timely requested exclusion from the Class. *See* ECF 196 at 1–2. This modification does not otherwise

United States District Court
Northern District of California

change the scope of the Class preliminarily certified by the Court.

Accordingly, the Court incorporates by reference the Court's prior analysis and finds that the Class satisfies the Rule 23(a) and (b) requirements. *See Hunt v. Bloom Energy Corp.*, No. 19-cv-02935, 2024 WL 1995840, at *3 (N.D. Cal. May 6, 2024) (granting final approval and incorporating by reference analysis of class certification "[b]ecause no facts that would affect these requirements have changed since the [c]ourt preliminarily approved the class").

**B. The Settlement Agreement is Fair, Reasonable, and Adequate**

Plaintiffs argue that the Settlement Agreement is fair, reasonable, and adequate considering (i) the costs and risks of litigation; (ii) Lead Plaintiffs and Lead Counsel's adequate representation of the class; (iii) arm's length negotiation of the Settlement Agreement; and (iv) that the Settlement Amount adequately provides relief to Class Members. ECF 189 at 8–13, 16.

**i. The Settlement Agreement is Fair, Reasonable, and Adequate Considering the Risks and Costs of Litigation**

Plaintiffs argue that following extensive investigations, discovery, and several motions to dismiss, counsel was fully informed about the strength of the case when they negotiated the Settlement Agreement. ECF 189 at 16. Plaintiffs also argue that the Settlement Agreement is fair and reasonable considering the costs of litigating falsity, scienter, loss causation, and damages in future stages of litigation. *See* Joint Decl., ¶¶ 11–13; ECF 189 at 18–20.

In evaluating the Settlement Agreement, the Court must consider whether counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000); *Aguilar Auto Repair, Inc. v. Wells Fargo Bank, N.A.*, No. 23-cv-06265, 2025 WL 1753509, at *6 (N.D. Cal. May 23, 2025) (same). Additionally, the Court must consider the "costs, risks, and delay of trial and appeal," the "strength of the plaintiffs' case," and the "risk, expense, complexity, and likely duration of further litigation." Fed. R. Civ. P. 23(e)(2)(c); *Churchill*, 361 F.3d at 575.

First, the Court finds that the parties had sufficient information about the merits of Plaintiffs' claims when negotiating the Settlement. Plaintiffs conducted an extensive investigation into Defendants' securities filings, related media reports, and documents produced in discovery.

Joint Decl., ¶¶ 26–34. Plaintiffs also defended against multiple motions to dismiss. *See* ECF 75; ECF 123; ECF 154. Accordingly, the parties were aware of the factual bases of Plaintiffs' claims and the strength of their arguments when they negotiated the Settlement Agreement. *See Aguilar*, 2025 WL 1753509, at *6 (finding an informed settlement where parties "apprised each other of their respective factual contentions, legal theories, and defenses"); *In re Lyft Inc. Sec. Litig.*, No. 19-cv-02690, 2023 WL 5068504, at *8 (N.D. Cal. Aug. 7, 2023) (finding that counsel had sufficient information to make an informed settlement decision where parties "conduct[ed] significant discovery and investigation into [p]laintiff's claims).

Second, the Court finds that the ongoing costs and risks of litigating weigh in favor of approval of the Settlement Agreement. Securities class actions often take years to resolve, and the Court recognizes that proceeding to class certification and trial would significantly delay potential recovery. "Securities actions in particular are often long, hard-fought, complicated, and extremely difficult to win." *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019). *See also Burgos v. Sunvalleytek Int'l, Inc.*, No. 18-cv-06910, 2020 WL 7319354, at *7 (N.D. Cal. Dec. 11, 2020) (settlement is preferable when "additional litigation would have, in the best-case scenario, been expensive and time-consuming—and in the worst-case scenario, could have led to Plaintiff and the class going home empty-handed."). Plaintiffs acknowledge that Defendants were likely to oppose any motion for class certification. *See* Joint Decl., ¶ 39. After class certification, Plaintiffs would have had to litigate the remaining issues of falsity, scienter, and loss causation at summary judgment or trial. *See id.* ¶¶ 40–45; ECF 189 at 10–13. Accordingly, Plaintiffs faced significant obstacles and potentially years until recovery. *See In re Extreme*, 2019 WL 3290770, at *8 (recognizing the costs of litigating remaining defenses after multiple motions to dismiss, and "the risks inherent in a 'battle of the experts' of complex economic theories in a jury trial").

Accordingly, the risks and costs of future litigation weigh in favor of approval.

**ii. Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the Class**

Plaintiffs argue that Lead Plaintiffs and Plaintiffs' Counsel have adequately represented the class because the interests of Lead Plaintiffs and Class Members are aligned and Plaintiffs'

Counsel are experienced in securities litigation. ECF 189 at 8.

Under Rule 23(e)(2)(A), the Court must consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) ("To determine legal adequacy, we resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'").

As the Court found in its preliminary approval Order, no conflicts of interest appear between Lead Plaintiffs and other members of the Class, and Lead Plaintiffs are similarly motivated to secure the largest recovery possible. *See* ECF 185 at 6. Additionally, Robbins Geller and Saxena White have demonstrated that they are experienced in class action litigation, certification, and trial, and are therefore adequate to represent the Settlement Class. S*ee also In re Extreme*, 2019 WL 3290770, at *7 (finding adequacy of representation weighs in favor of final approval where there was "no evidence of a conflict" at preliminary approval stage, and "[n]o contrary evidence has emerged").

Accordingly, this factor weighs in favor of approval.

**iii. The Settlement Agreement Was Negotiated with the Assistance of a Neutral Mediator**

Plaintiffs argue that the fact that the Settlement Agreement was negotiated before a neutral mediator weighs in favor of final approval. ECF 189 at 8–9.

Under Rule 23(e)(2)(B), the Court must consider whether the "proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).

As the Court found in its preliminary approval Order, the parties' arm's length negotiations indicate that the agreement is fair and not the product of collusion. *See* ECF 185 at 7; *In re Bluetooth*, 654 F.3d at 948 (recognizing that negotiation assistance from a neutral mediator weighs "in favor of a finding of non-collusiveness" and the settlement being "fair, adequate, and reasonable"). Here, The Honorable Gary A. Feess (Ret.) of Phillips ADR Enterprises aided the parties. Joint Decl., ¶ 35. Although the initial mediation session on April 1, 2025 was

unsuccessful, subsequent conversations with Judge Feess resolved the case. *Id.* ¶ 36. On April 21, 2025, Judge Feess issued a mediator's proposal to resolve the action for $20,250,000, which the parties adopted and which forms the basis of the Settlement Agreement. *Id.* *See Aguilar*, 2025 WL 1753509, at *4 (approving settlement where agreement was negotiated after "multiple rounds of motions to dismiss" and the agreement was not "a product of collusion between [p]laintiffs' counsel and [d]efendants").

Accordingly, this factor weighs in favor of final approval.

**iv. The Settlement Agreement Provides Adequate Relief to Class Members**

Plaintiffs argue that the $20.25 million Settlement Amount is reasonable and adequate in comparison to other securities class actions settlements. *See* Joint Decl., ¶¶ 9, 11–13; ECF 189 at 18–20. Plaintiffs also argue that the Settlement Amount is more than what Plaintiffs would have recovered at trial, since the Settlement Amount exceeds Defendants' remaining insurance funds. Joint Decl., ¶ 9.

"The amount offered in the settlement is another factor that weighs in favor of approval." *In re Lyft*, 2023 WL 5068504, at *6. However, it "is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Aguilar*, 2025 WL 1753509, at *4 (quoting *Officers for Justice v. Civ. Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982)).

The Court finds that Plaintiffs are unlikely to secure meaningfully higher recovery even if they were to prevail at trial. Here, the Settlement Amount "captures the entirety of Defendants' remaining available directors and officers insurance funds." *See* Joint Decl., ¶ 46. As such, Defendant's ability to pay a judgment exceeding $20.25 million is not guaranteed. *See* Joint Decl., ¶¶ 46–48 (explaining that CareDx has limited directors' and officers' liability insurance, has suffered net losses over the past five years, and has significantly lower stock price now than during the Class Period). Additionally, continued litigation would further deplete Defendants' funds. *See In re Diamond Foods, Inc., Sec. Litig.*, No. C 11-05386, 2014 WL 106826, at *2 (N.D. Cal. Jan. 10, 2014) ("It is not unreasonable for counsel and the class representative to prefer the bird in hand, given concerns about Diamond's strained financial state and its ability to pay a

judgment following further litigation.") (cleaned up).

Moreover, the Settlement Amount of $20.25 million is a reasonable percentage of Plaintiff's possible recovery at trial. Plaintiffs' damages expert estimated that Plaintiffs stood to receive approximately $400 million if Plaintiffs fully prevailed on their claims. ECF 177 at 12. The $20.25 million Settlement Amount, therefore, represents approximately five percent of Plaintiffs' possible recovery. Courts routinely approve of similar settlement amounts. *See* Joint Decl., Ex. F at 6–7 (documenting median settlement as a percentage of damages in Rule 10(b)-5 cases); *In re Aqua Metals, Inc. Sec. Litig.*, No. 17-cv-07142, 2022 WL 612804, at *6 (N.D. Cal. Mar. 3, 2022) (approving settlement amount of 7.3% of estimated damages as "in line with comparable class action settlements"); *Hunt*, 2024 WL 1995840, at *6 (approving settlement amount of 5.2% of estimated damages); *Sheet Metal Workers' Nat'l Pension Fund v. Bayer Aktiengesellschaft*, No. 20-cv-04737, 2025 WL 3034317, at *2 (N.D. Cal. Oct. 30, 2025) (approving settlement amount of 9% of estimated damages).

Accordingly, the Settlement Amount provides adequate relief to Class Members.

**C. Notice is Adequate and Satisfies Due Process**

Plaintiffs argue that the notice plan is effective and constitutionally adequate. *See* ECF 189 at 13–14, 20–21; ECF 192 at 1–2.

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice*, 688 F.2d at 624. Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an

United States District Court
Northern District of California

opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

As the Court found in its preliminary approval Order, the notice plan fairly apprises Class Members of their rights, is the best notice practicable, and complies with due process. ECF 185 at 8–10. As of October 28, 2025, 31,210 Postcard Notices were emailed or mailed to potential Class Members. ECF 192 at 2. The Summary Notice was published in *The Wall Street Journal* and transmitted over *PR Newswire*. ECF 189 at 13. A.B. Data has maintained the Settlement Website, a toll-free telephone number, and dedicated email address for Class Members with questions about the Settlement. *Id.*; Supp. Brauns Decl.; ECF 177-3 ¶¶ 15–16. In light of these efforts, the parties have provided the best practicable notice to the Class. *See Hunt*, 2024 WL 1995840, at *4 (finding that a similar notice plan satisfies Rule 23 and due process).

Further, A.B. Data's final estimate of Notice and Administration Costs remains $285,000, which is the same amount preliminarily approved by the Court. *See* ECF 177-3 at ¶¶ 26–28; ECF 196 at 2.

Accordingly, the notice plan satisfies Rule 23 and due process.

**D. The Plan of Allocation is Fair, Reasonable, and Adequate**

Plaintiffs argue that the plan of allocation is fair, reasonable, and adequate because eligible Class Members are subject to the same formula for distribution and each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund. ECF 189 at 15–16, 20.

"The standard for approval of a plan of allocation in a class action under Rule 23 is the same as the standard applicable to the settlement as a whole—the plan must be fair, reasonable, and adequate." *Sheet Metal Workers' Nat'l Pension Fund v. Bayer Aktiengesellschaft*, No. 20-cv-04737, 2025 WL 3034316, at *4 (N.D. Cal. Oct. 30, 2025), *judgment entered*, No. 20-04737, 2025 WL 3043944 (N.D. Cal. Oct. 31, 2025) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992)).

Courts routinely approve of allocation plans in securities class actions that distribute *pro rata* payments to Authorized Claimants based on the "recognized loss" for each share during the Class Period. *See, e.g.*, *Hunt*, 2024 WL 1995840, at *2; *In re Lyft*, 2023 WL 5068504, at *2. As

such, the Court finds that the distribution formula is fair, reasonable, and adequate. Additionally, Lead Counsel attested to the fact that no member of either firm is on the Board of CII (the *cy pres* recipient) and there is no conflict between the parties and CII. *See* Joint Decl., ¶ 88. This further indicates that the parties will strive to distribute as much as possible to Authorized Claimants. Only after these efforts will any remaining funds be distributed to the *cy pres*.

Accordingly, the Court approves the plan of allocation, whereby Authorized Claimants will recover depending on when they bought CareDx common stock during the Class Period and whether and when they sold their shares. *See* ECF 177-2 ¶¶ 37– 38. This approach, and the accompanying *pro rata* distribution, is fair, reasonable, and treats Class Members equitably.

**E. Objections and Opt-Outs**

Plaintiffs argue that Class Members' positive reactions to the Settlement Agreement weigh in favor of final approval. ECF 192 at 2–3.

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Fleming v. Impax Lab'ys Inc.*, No. 16-cv-06557, 2022 WL 2789496, at *7 (N.D. Cal. July 15, 2022) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004)); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

No Class Member filed an objection to any aspect of the Settlement Agreement by the deadline to file objections of October 14, 2025. *See* Supp. Brauns Decl.; ECF 192 at 2–3. Additionally, no Class Members opted out of the Settlement Agreement. ECF 192 at 2–3; Supp. Brauns Decl., ¶ 10. Accordingly, the lack of objections weighs in favor of approval. *See Fleming*, 2022 WL 2789496, at *7 (approving settlement where "absence of objections indicates strong support among the [c]lass [m]embers and weighs in favor of approval").

Additionally, because no Class Members timely requested exclusion from the Settlement, the Opt-Out Threshold in the Supplemental Agreement has not been reached and therefore the Settlement may not be terminated under ECF 177-2 ¶ 7.3. *See* ECF 196 at 4.

## V.    MOTION FOR ATTORNEYS' FEES AND EXPENSES

Plaintiffs argue that the Court should approve the motion for attorneys' fees and expenses, ECF 190, because (A) the attorneys' fees are a reasonable percentage of the total Settlement; (B) Lead Counsel's litigation expenses are reasonable; (C) Lead Plaintiffs' awards are reasonable. ECF 192 at 3–4.  Plaintiffs also argue that the fact that no Class Members objected to the requested fees or expenses weighs in favor of approval.  Joint Decl., ¶¶ 86–87.

### A.    The Court Approves Lead Counsel's Attorneys' Fees

Plaintiffs argue that awarding twenty-five percent of the Settlement Fund in attorneys' fees is warranted because (i) the fee amount complies with the Ninth Circuit's twenty-five percent benchmark, (ii) a lodestar cross-check confirms that the fee is reasonable; and (iii) the Ninth Circuit's remaining factors support final approval of the fee award.  ECF 190 at 4–16.  Lead Plaintiffs approve of Lead Counsel's attorneys' fees request.  *See* Joint Decl., ¶ 18; *id.*, Exs. A–D.  Of the total attorneys' fees award, Lead Counsel propose dividing the award equally between the two firms: $2,531,250 to Robbins Geller and $2,531,250 to Saxena White.  ECF 196 at 3.

Attorneys' fees may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h).  Such fees must be "fair, reasonable, and adequate" to be approved.  Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).  To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* at 963.  "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise. *Id.* at 964.  The Court analyzes an attorneys' fee request based on either a percentage of the total settlement fund made available to the class, or the "lodestar" method.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  The Ninth Circuit encourages courts to use another method as a cross-check to avoid a "mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654 F.3d at 944–45 (citing *Vizcaino*, 290 F.3d at 1050–51).

**i. The Requested Attorneys' Fees Are Within the Ninth Circuit's Twenty-Five Percent Benchmark**

Lead Counsel argue that the fee award is presumptively reasonable because twenty-five percent of the Settlement Fund complies with the Ninth Circuit's benchmark. ECF 190 at 1–2.

Under the percentage-of-the-fund method, courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). The benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.

The Court finds that Lead Counsel's fee request is presumptively reasonable because it is in line with the Ninth Circuit's benchmark. Plaintiffs previously intended to seek fees greater than the twenty-five percent, which would require "special circumstances" to justify departure from the benchmark. ECF 185 at 3. However, Lead Counsel's final fee request has been reduced from thirty percent to twenty-five percent. ECF 190 at 3. Accordingly, Lead Counsel's request is now in line with the Ninth Circuit's guidance, but the Court's analysis does not end there. *See In re Lyft*, 2023 WL 5068504, at *11 (finding request of "25% of the common fund" reasonable when comparing to Ninth Circuit's benchmark and examining remaining factors).

**ii. A Lodestar Cross-Check Confirms the Fees' Reasonableness**

Plaintiffs argue that cross-checking the requested award against Lead Counsel's lodestar further supports the reasonableness of the fee request. ECF 190 at 14–15.

Under the lodestar approach, a court multiplies the number of hours reasonably expended by the reasonable hourly rate. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [ ] in the relevant community.'").

Here, the Court finds that a lodestar cross-check supports the reasonableness of the fee. Lead Counsel expended 8,758.85 hours on this action, through and including September 15, 2025.

Joint Decl., ¶¶ 64, 68 (4,275.10 hours from Robbins Geller, 4,483 hours from Saxena White). In sum, this results in a lodestar of $5,729,546. *Id.* ¶ 68. Lead Counsel's twenty-five percent request would result in a fee award of $5,062,500. *Id.* ¶ 67. The resulting negative lodestar multiplier is .88, Joint Decl., ¶ 16, which is presumptively reasonable in the Ninth Circuit. *See In re Extreme*, 2019 WL 3290770, at *11 ("[A] multiplier below 1.0 is below the range typically awarded by courts and is presumptively reasonable.").

Further, Lead Counsel's hourly rates are similar to rates previously approved by the Court and other courts in the Ninth Circuit. *See In re Alphabet*, 2024 WL 4354988, at *7 (approving Robbins Geller's hourly rates ranging from $110 to $1,400); *In re FibroGen, Inc. Sec. Litig.*, No. 21-cv-02623, ECF 252, Ex. E (N.D. Cal. Apr. 4, 2024); *id.*, ECF 259 (N.D. Cal. Aug. 1, 2024) (approving Saxena White's hourly rates ranging from $400 to $1,085). Here, Robbins Geller spent 4,275.10 hours on the litigation and billed from $165 per hour to $1390 per hour (total lodestar of $2,820,826.00). ECF 190-1, Ex. A; *id.* ¶ 4. Saxena White spent 4,483.75 hours on the litigation and billed from $325 an hour to $1,195 per hour (total lodestar of $2,908,720.00). ECF 190-2, Ex. A; *id.* ¶ 4. Accordingly, the Court finds that the hours were reasonably incurred and the rates are "reasonable and commensurate with those charged by attorneys with similar experience in the market." *In re Alphabet*, 2024 WL 4354988, at *7 (approving attorneys' fees award and citing commensurate rates approved in other settlements).

Accordingly, a lodestar cross-check supports the reasonableness of the fee award.

**iii. The Remaining Factors Supports the Reasonableness of the Fee Award**

Plaintiffs argue that the following remaining factors weigh in favor of approving the attorneys' fees award: Lead Counsel achieved an exceptional settlement result, the litigation was uncertain and complex, Lead Counsel produced high quality work, Lead Counsel took on the risk of a contingent fee, the fee is similar to awards made in other cases, and no Class Members have objected to the fee request. ECF 190 at 5–14.

Although the percentage-of-the-fund method and a lodestar cross-check may establish presumptive reasonableness, the Court must also "take into account all of the circumstances of the case" when assessing the reasonableness of a fee award. *Vizcaino*, 290 F.3d at 1040. These

factors include: "(1) the results achieved, (2) the risk of litigation, (3) the complexity of the case and skill required, (4) the contingent nature of the litigation, and (5) awards made in similar cases." *Sheet Metal Workers*, 2025 WL 3034317, at *2 (citing *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008); *Vizcaino*, 290 F.3d at 1048–50).

First, as discussed herein, Lead Counsel obtained a significant recovery for the class by securing a $20.25 million Settlement. *See Hunt*, 2024 WL 1995840, at *8 (holding that the first and most critical factor in assessing an attorneys' fee request is "the degree of success obtained") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)); *see also Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 988 (9th Cir. 2023) ("The touchstone for determining the reasonableness of attorneys' fees in a class action is the benefit to the class."). Also as discussed above, Plaintiffs faced a considerable risk of not recovering at all, or recovering less than the Settlement Amount even if they prevailed. Thus, this factor weighs in favor of approval.

Second, the rigor of Lead Counsel's work, complexity of securities litigation, and contingent nature of the litigation weigh in favor of final approval. *See Sheet Metal Workers*, 2025 WL 3034317, at *3 (recognizing the efforts of Lead Counsel in undergoing discovery, depositions, negotiations in a securities action "on a purely contingent basis and advancing all necessary expenses over the course of five years without any certainty that they would be compensated"). As described above, Lead Counsel conducted a pre-discovery investigation, engaged in substantial document review, and defended against multiple motions to dismiss. *See Hunt*, 2024 WL 1995840, at *8 (approving attorneys' fees award where "counsel conducted an extensive investigation, engaged in substantial and voluminous fact discovery, and defended against three simultaneous motions to dismiss"). Moreover, although Lead Counsel will continue to work towards effectuating the Settlement Agreement, Lead Counsel agree not to seek additional compensation beyond the amounts mentioned herein. *Id.* ¶ 69. Thus, these factors weigh in favor of approval.

Finally, Lead Plaintiffs' endorsement of the request and the fact that no Class Members objected weighs in favor of approving the attorneys' fees award. *See Sheet Metal Workers*, 2025 WL 3034317, at *3 (approving award where, even after objection deadline, lead counsel had not

received any objections to fee request). *See also* Joint Decl., ¶ 70; ECF 191-1, Declaration of Ginger Sigler ("Sigler Decl."), ¶¶ 4–8; ECF 191-2, Declaration of Tom Klingenberg ("Klingenberg Decl."), ¶¶ 4–8; ECF 191-3, Declaration of Kim MacPherson ("MacPherson Decl."), ¶¶ 4–5; ECF 191-4, Declaration of Luke Skelton ("Skelton Decl."), ¶¶ 4–5.

Accordingly, given these factors and considering the complexity of litigation, risk taken on a contingency basis, and the result for the Class, the requested attorneys' fees award of twenty-five percent of the Settlement is reasonable.

**B. The Court Approves Lead Counsel's Litigation Expenses**

Lead Counsel argue that $368,880.02 in litigation expenses is reasonable and reimburses for expenses necessarily incurred in connection with this action. Joint Decl., ¶ 78; *id.* ¶ 17 (requesting $368,880.02 plus interest). Lead Counsel also argue that their documentation includes expenses routinely incurred in complex litigation and paid in the private marketplace—court costs, mediation fees, process servers, online legal and factual research, expert and consultant fees, costs related to document productions, e-Discovery platform, printing and reproduction, postage, and delivery expenses. Joint Decl., ¶ 81. Lead Counsel propose dividing the litigation expenses award as follows: $214,246.26 to Robbins Geller, and $154,633.76 to Saxena White. ECF 196 at 3.

Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses they would normally charge a fee-paying client. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

The Court finds that Lead Counsel's requested litigation award is reasonable and includes costs that are routinely charged to hourly paying clients. Lead Counsel provided a breakdown of expenses by category, including costs for consulting experts, mediation, document management, online legal and factual research, service of process, etc. *See In re Alphabet*, 2024 WL 4354988, at *8 (approving reimbursement of similar categories of litigation expenses). Additionally, the requested amount is less than the maximum litigation expense amount of $450,000 that the Court

previously approved as part of the Settlement Notices, and to which no Class Members objected. Joint Decl., ¶ 82; *see* ECF 185.

Accordingly, the requested litigation expenses are reasonable.

**C. The Court Approves Lead Plaintiffs' Service Awards**

Plaintiffs argue that the Court should award Lead Plaintiffs an aggregate of $20,640 for their representation of the Class. Joint Decl., ¶ 19. Specifically, Lead Plaintiffs seek $6,300 for Oklahoma Police Pension and Retirement System, $7,500 for Sheet Metal Workers Local 19 Pension Fund, $3,340 for Local 353, I.B.E.W. Pension Fund, and $3,500 for Beaumont Firemen's Relief & Retirement Fund. *Id.* Plaintiffs argue that these amounts appropriately reimburse for costs and expenses relating to their work representing the Class. ECF 190 at 17–18.

The Private Securities Litigation Reform Act "PSLRA" limits a lead plaintiff's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). "Incentive awards typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015). "Service awards as high as $5,000 are presumptively reasonable in this judicial district." *In re Extreme*, 2019 WL 3290770, at *11.

The Court finds that Lead Plaintiffs' requested awards are reasonable and do not exceed the $7,500 per Plaintiff maximum specified in the Court-approved notice. *See* ECF 177-2 ¶ 5; ECF 185 at 3. Lead Plaintiffs documented their efforts reviewing filings, staying informed about the mediation, and considering the Settlement Agreement, which are activities that benefit the Class. *See* MacPherson Decl., ¶ 3; Skelton Decl., ¶ 3; Sigler Decl., ¶ 3; Klingenberg Decl., ¶ 3.

Additionally, two Lead Plaintiffs request service awards under the presumptively reasonable benchmark of $5,000. Local 353, I.B.E.W. Pension Fund devoted approximately 20 hours in support of this action, and requests $3,340 (applying an hourly billing rate of $167). MacPherson Decl., ¶ 6. Beaumont Firemen's Relief & Retirement Fund devoted approximately

20 hours and requests $3,500 (hourly billing rate of $175). Skelton Decl., ¶ 6. The remaining two awards are also appropriate even though they exceed $5,000, given the length and complexity of the litigation. *See Sheet Metal Workers*, 2025 WL 3034317, at *3 (approving three lead plaintiffs' awards of $15,765.24, $10,845.00, and $4,845.00 where litigation took over five years). Oklahoma Police Pension and Retirement System devoted approximately 70 hours and requests $6,300 (hourly billing rate of $90). Sigler Decl., ¶ 7. Sheet Metal Workers Local 19 Pension Fund devoted approximately 74 hours, which, after applying an hourly billing rate of $153.90, would amount to $11,388.60. Klingenberg Decl., ¶ 7. However, Sheet Metal Workers Local 19 Pension Fund only requests $7,500, pursuant to the Court's order preliminarily approving no more than $7,500 per Lead Plaintiff. *Id.* ¶ 7.

Accordingly, the Court approves Lead Plaintiffs' requested awards.

## VI. CONCLUSION

Based upon the foregoing, the motion for final approval of class settlement is **GRANTED**. The motion for attorneys' fees and expenses is **GRANTED** as follows: Lead Counsel shall be paid $5,062,500.00 (plus interest) in attorneys' fees and $368,880.02 (plus interest) in litigation expenses. Lead Plaintiffs shall be paid $20,640 in the aggregate for their service as representatives of the class (specifically, Local 353, I.B.E.W. Pension Fund shall be paid $3,340, Beaumont Firemen's Relief & Retirement Fund shall be paid $3,500, Oklahoma Police Pension shall be paid $6,300, and Sheet Metal Workers Local 19 Pension Fund shall be paid $7,500.

After deductions from the common fund for fees and expenses and deduction of final Notice and Administration costs (estimated at $285,000), approximately $14,513,000 shall remain to be distributed among the participating Class Members. Class Members shall be paid according to the calculations described in ECF 177-2 ¶¶ 32–39, under Calculation of Recognized Loss Amounts.

With respect to residuals in the Net Settlement Fund, Lead Counsel shall reallocate such balance among Authorized Claimants until the funds are no longer feasible or economical to reallocate. Reallocations shall be repeated until the balance remaining in the Net Settlement Fund is *de minimis* and any remaining balance shall then be donated to the *cy pres* recipient, CII.

United States District Court
Northern District of California

Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that final judgment is **ENTERED** in accordance with the terms of the Settlement, the Order Granting Preliminary Approval of Class Action Settlement filed on February 5, 2024 (ECF 185), and this Order.

This document constitutes a final judgment for purposes of Rule 58, Federal Rules of Civil Procedure.

The parties are ordered to provide interim post-distribution accounting status reports on **June 1, 2026**, and **August 3, 2026**.

The parties shall file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements no later than **September 3, 2026**. The Court **SETS** a compliance deadline on **September 10, 2026**, on the Court's 3:00 p.m. calendar, by videoconference, to verify timely filing of the post-distribution accounting.

This Order resolves ECF 189 and ECF 190.

IT IS SO ORDERED.

Dated: December 4, 2025

TRINA L. THOMPSON
United States District Judge

Related Cases:
3:22-cv-05379-TLT, In re CareDx
3:25-cv-02036-TLT, Edelman et al